FILED ___ LODGED
___ RECEIVED ___ COPY

JUL 3 0 2019

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ M DEPUTY

**SEALED**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

**REDACTED FOR PUBLIC DISCLOSURE**

United States of America,

    Plaintiff,

v.

David Allen Harbour,

    Defendant.

No.: CR-19-00898-PHX-DLR (DMF)

**INDICTMENT**

VIO: 18 U.S.C. § 1343
Wire Fraud
(Counts 1-3)

18 U.S.C. § 1957
Transactional Money Laundering
(Counts 4-22)

18 U.S.C. § 981(a)(1)(C)
18 U.S.C. § 982(a)(1)
28 U.S.C. § 2461(c)
Forfeiture Allegations

THE GRAND JURY CHARGES:

At all times material to this indictment, within the District of Arizona and elsewhere:

**INTRODUCTION**

1. Between about January of 2010 through October of 2015, DAVID ALLEN HARBOUR ("HARBOUR") defrauded investor-victims out of approximately $2,901,242.67 by promoting and selling fraudulent high-yield investments, primarily involving investments in high rate loans to small and start-up businesses. These loans are also known as "payday loans." In relation to these purported investment opportunities, HARBOUR participated in making materially false statements and omissions to obtain investment funds, orally during in-person or written solicitations, and in writing in promissory notes, self-styled contracts, engagement letters, commercial security

agreements, operating agreements, and other documents. HARBOUR then used the investment funds for purposes other than what was promised to investor-victims, such as for personal living expenses to support his family's lavish lifestyle to include, but not limited to, golf resort membership fees, personal credit card payments, extravagant parties, mortgage payments, and private chartered jets, and other business ventures, and in some instances used funds received from later investor-victims to make payments to earlier investor-victims.

**DEFENDANT AND ENTITIES INVOLVED IN THE SCHEME TO DEFRAUD**

2. HARBOUR resides in Paradise Valley, Arizona and orchestrated the fraudulent payday investment opportunity and investment advisor scheme, acting through numerous entities, either alone or with others.

    a. In relation to the fraudulent investments in payday lending, HARBOUR and others acted primarily through the following eleven entities:

- Highpointe Capital Group, LLC (HPCG), has been at all relevant times a Limited Liability Company organized under the laws of the state of Arizona in April 2007. At all relevant times, HPCG's business office was located at 21020 N Pima Rd., Scottsdale, AZ 85255. HPCG's member/managers included HARBOUR and C.R.
- Nautical Holdings, LLC is a Montana Limited Liability Company formed on September 23, 2011. At all relevant times, Nautical Holdings business office was located at 21020 N Pima Rd., Scottsdale, AZ 85255. It was involuntarily dissolved on December 1, 2017 for failure to file an annual report.
- DCR Hospital Investment, LLC (DCR) has been at all relevant times a Limited Liability Company organized under the laws of the state of Arizona in December 2011. At all relevant times, DCR's business office was located at 21020 N Pima Rd., Scottsdale, AZ 85255.

- Pujanza Management, LLC (Pujanza) is a Wyoming Limited Liability Company formed on July 1, 2014 and managed by HARBOUR. At all relevant times Pujanza's business office was located at 21020 N Pima Rd., Scottsdale, AZ 85255. It has been dissolved by the Secretary of State of Wyoming.

- Milagro Consulting, LLC (Milagro) is a Wyoming Limited Liability Company formed on January 2, 2014 and managed by HARBOUR. At all relevant times, Milagro's business office was located at 21020 N Pima Rd., Scottsdale, AZ 85255. It has been dissolved by the Secretary of State of Wyoming.

- Oak Tree Management, LLC is a Wyoming Limited Liability Company that was formed on December 10, 2013 and managed by HARBOUR. It has been dissolved by the Secretary of State of Wyoming.

- 21020, LLC (21020) has been at all relevant times a limited liability company organized under the laws of the state of Arizona in September 2011. At all relevant times, 21020's business office was located at 21020 N Pima Rd., Scottsdale, AZ 85255. 21020's members/managers included HARBOUR, P.N., K. B., Highpointe Entertainment LLC, and KB-2011.

- DNA Investments, LLC is a Delaware Limited Liability Company solely managed and owned by HARBOUR. In 2015, the Department of Financial Institutions ordered HARBOUR dba DNA Investments, LLC to cease and desist from unlicensed activities and permanently banned HARBOUR from the industry, case no. C-13-1319-15-CO03.

- Blue Pine Management, LLC (Blue Pine) is a Wyoming Limited Liability Company that was formed on March 31, 2014. At all relevant times, Blue

Pine's business office was located at 21020 N Pima Rd., Scottsdale, AZ 85255.

- Mamalicious Maternity, LLC is a Wyoming Limited Liability Company formed on December 10, 2013 and managed by A.H. At all relevant times, Mamalicious Maternity's business office was located at 21020 N Pima Rd., Scottsdale, AZ 85255.
- NorthRock, LLC is a Missouri Limited Liability Company formed on January 31, 2011 and managed by Melvin Dunsworth. NorthRock's business office was located at 600 W Main, Jefferson City, MO 65102. On June 8, 2018 the business address was changed to 1625 W 50th St., Kansas City, MO 64112.

**HIGH-YIELD INVESTMENT FRAUD SCHEME**

3.     HARBOUR solicited investor-victims to invest by promising excessive returns in short periods of time. HARBOUR told investors their funds would be invested in short term, high interest rate loans to small and start-up businesses, also known as payday loans. HARBOUR represented he made 20% returns for his clients and assured investors investing in payday lending was not risky because he would offer loans to a diversity of small businesses. Investors were falsely told their funds would be used only as short term loans to small and start-up businesses, and that the funds were secured by HARBOUR'S personal guarantees.

a.     HARBOUR set up various LLCs with investor-victims to facilitate investments in payday lending. HARBOUR represented funds from investors would go to Green Circle, the Native American lending entity established by HARBOUR, which would finance consumer loans and generate profits. HARBOUR misrepresented to investors that their principle would be paid back before he took a percentage of profits generated through the payday loans. Most investors were never told they were not in first position to receive returns.

b. As a result of the fraudulent investment offerings, between January of 2010 through October of 2015, victim-investors provided $2,901,242.67 in investment funds.

c. Investors in Arizona and other states were solicited by HARBOUR in person. HARBOUR was a member of several luxury golf resorts located in Scottsdale, Arizona, Cabo San Lucas, Mexico, Palm Springs, California and Harrison, Idaho. HARBOUR solicited potential investors at these golf resorts. For several victim investors, HARBOUR invited them to his vacation condominium at Gozzer Ranch Golf and Lake Club in Harrison, Idaho or his condominium in Cabo San Lucas. HARBOUR took potential investors out on his luxury boats and out to fine dining and entertainment. HARBOUR invited investors to his Skybox during Arizona State University football games. He also invited potential investors to his 16th hole Skybox at the Phoenix Waste Management Open.

d. HARBOUR portrayed a veneer of success by telling investors about luxury expenditures that intended to give the illusion that he was a successful investor. For example, he described his 40th birthday party to one investor, where he explained how he flew all of his friends to the party location on a private chartered airplane and hired the 1970s band, The Eagles, to play at his party.

e. Through operating agreements, contracts, promissory notes, emails, and orally, HARBOUR, misrepresented virtually every material aspect of the purported investment opportunities, including but not limited to: the backgrounds and experience of the principals, the amount of funds actually going to the represented investment, that the investor principal would be paid back to the investor before HARBOUR was compensated, and the guaranteed rate of return.

**INVESTOR-VICTIMS**

4. The investor-victims made investments of $2,901,242.67, primarily related to loans to small businesses or start-up businesses. In addition, HARBOUR made unauthorized withdrawals of investor-victim funds in the amount of approximately $1,100,000 from the lending entity Green Circle.

| Name | Account | Amount | Deposit Date (on or about) |
|---|---|---|---|
| R. G. | Highpointe Capital Group | $1,001,242.67 | 03/22/2010 |
| SNI Fund 1/ R. T. | Oak Tree Management LLC | $500,000.00 | 07/30/2014 |
| M.B. | Pujanza Management LLC | $1,000,000.00 | 12/02/2014 |
| Green Circle | Oak Tree Management | $1,100,000.00 | 08/11/2015 |
| C. W. | Oak Tree Management LLC | $400,000.00 | 10/15/2015 |
| Total | | $4,001,242.67 | |

## COUNTS 1 – 3
## WIRE FRAUD
## (18 U.S.C. § 1343)

The factual allegations in paragraphs 1 through 4 are incorporated by reference and re-alleged as though fully set forth herein.

5. Beginning at a time unknown to the grand jury, but at least as early as in or about January of 2010 and continuing to a time unknown to the grand jury, but to at least in or about October of 2015, in the District of Arizona and elsewhere, Defendant HARBOUR, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the Grand Jury, knowingly and willfully devised and intended to devise a scheme and artifice to defraud and to obtain money and property from investor-victims by means of materially false and fraudulent pretenses and representations, and by the concealment and omission of material facts.

6. On or about the dates listed below, for the purpose of executing and attempting to execute the scheme or artifice to defraud and to obtain money and property, HARBOUR, individually and doing business under the entities described above, knowingly transmitted and caused to be transmitted, by means of wire and radio communications in interstate commerce, certain writings, pictures, signals and sounds, to and from the District of

Arizona and elsewhere, as set forth below, with each instance being a separate count of this indictment:

| Count | Wire Date (On or About) | Sender | Recipient (Receiving Bank) | Item Sent |
|---|---|---|---|---|
| 1 | 07/30/2014 | SNI Fund 1/R.T. | Oak Tree Management NT 1790 | $500,000.00 |
| 2 | 12/02/2014 | M.B. | Pujanza Management, LLC BMO 5244 | $1,000,000.00 |
| 3 | 08/11/2015 | Green Circle | Oak Tree Management BMO 1964 | $1,100,000.00 |

This conduct was in violation of 18 U.S.C. § 1343.

## COUNTS 4 – 22
## TRANSACTIONAL MONEY LAUNDERING
## (18 U.S.C. § 1957)

The factual allegations in paragraphs 1 through 6 are incorporated by reference and re-alleged as though fully set forth herein.

7.    On or about the dates listed below, Defendant HARBOUR, individually and doing business under the entities described above, along with other individuals and entities known and unknown to the Grand Jury, knowingly engaged and attempted to engage in the following monetary transactions in the United States in criminally derived property of a value exceeding $10,000, derived from specified unlawful activity, namely the violation of 18 U.S.C. § 1343 (wire fraud) as alleged in counts 1 through 3 above, with each instance being a separate count under this indictment:

| Count | Date of Transaction (on or about) | Transaction Amount | Financial Institution | Description of Transaction |
|---|---|---|---|---|
| 4 | 08/05/2014 | $34,665.33 | Northern Trust | Check #1238 from DNA Investments LLC NT 9412 to D. S. |

| | | | | |
|---|---|---|---|---|
| 5 | 08/08/2014 | $37,500.00 | Northern Trust | Transfer from Oak Tree NT 1790 to DNA Management NT 3388 |
| 6 | 08/08/2014 | $37,500.00 | Northern Trust | Transfer from DNA Management NT3388 to Highpointe Capital Group, LLC BoA 3354 |
| 7 | 08/08/2014 | $37,500.00 | Bank of America | Transfer from Highpointe Capital Group LLC BoA 3354 to Herrington Park 1, LLC |
| 8 | 08/21/2014 | $12,083.90 | Northern Trust | Check #1542 from 21020 LLC NT 5180 to JRG |
| 9 | 08/27/2014 | $142,785.88 | Northern Trust | ACH Debit Payment from DNA Investments, LLC NT 9412 to HARBOUR's American Express |
| 10 | 08/28/2014 | $13,682.69 | Bank of America | Transfer from Highpointe Capital Group LLC BoA 3354 to Employment Edge |
| 11 | 12/04/2014 | $223,121.88 | Northern Trust | ACH Debit Payment from DNA Management NT 3388 to HARBOUR's American Express |
| 12 | 8/12/2015 | $915,000.00 | BMO Harris | Oak Tree Mn BMO 1964 to Milagro BMO 5236 |
| 13 | 08/13/2015 | $750,000.00 | Bank of America | Milagro BMO 5236 to David HARBOUR BoA 8017 |
| 14 | 09/02/2015 | $500,000.00 | Bank of America | David HARBOUR BoA8017 to FTC Receiver LEC |
| 15 | 10/16/2015 | $50,000.00 | BMO Harris | Transfer from Oak Tree BMO 1964 to Milagro BMO 5236 |

| | | | | |
|---|---|---|---|---|
| 16 | 10/16/2015 | $50,000.00 | BMO Harris | Transfer from Milagro BMO 5236 to HARBOUR BofA 8017 |
| 17 | 10/19/2015 | $75,000.00 | BMO Harris | Transfer from Oak Tree BMO 1964 to HARBOUR BofA 8017 |
| 18 | 10/20/2015 | $80,000.00 | Bank of America | Transfer from HARBOUR BofA 8017 to AJS Management US Bank 0603 |
| 19 | 10/20/2015 | $75,000.00 | US Bank | Transfer from AJS Management US Bank 0603 to Grand Canyon Title |
| 20 | 11/06/2015 | $75,000.00 | BMO Harris | Transfer from Oak Tree BMO 1964 to Milagro BMO 5236 |
| 21 | 11/06/2015 | $75,000.00 | BMO Harris | Transfer from Milagro BMO 5236 to HARBOUR BofA 8017 |
| 22 | 11/09/2015 | $70,099.49 | Bank of America | ACH Payment from HARBOUR BofA 8017 to HARBOUR's American Express |

This conduct was in violation of 18 U.S.C. § 1957.

## FORFEITURE ALLEGATIONS

8. The Grand Jury realleges and incorporates the allegations of Counts 1 through 22 of this Indictment, which are incorporated by reference as though fully set forth herein.

Pursuant to Title 18, United States Code, Sections 981 and 982, Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c) and upon conviction of one or more of the offenses alleged in Counts 1 through 22 of this Indictment,

the defendant(s) shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in such offense(s), or any property traceable to such property involved in the offense(s), or conspiracy to commit such offense(s), including the following: (a) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of a statute listed in Title 18, United States Code, Section 982, (b) all other property constituting proceeds obtained as a result of those violations, and (c) all property used in any manner or part to commit or to facilitate the commission of those violations including, but not limited to the sum of money representing the amount of money involved in the offense(s) and the property named below.

    a.    8901 N. Martingale Road, Paradise Valley, Arizona 85253, more particularly described as:

The Southwest Quarter of Tract 5, Squaw Peak Estates, According to the Plat of record in the Office of the County Recorder of Maricopa County, Arizona, recorded in Book 38 of Maps, page 30; Except the south 25 feet thereof.

    b.    A sum of money equal to at least $4,101,242.67 in United States currency, representing the amount of money involved in the offenses.

If any of the above-described forfeitable property, as a result of any act or omission of the defendant(s):

(1) cannot be located upon the exercise of due diligence,

(2) has been transferred or sold to, or deposited with, a third party,

(3) has been placed beyond the jurisdiction of the court,

(4) has been substantially diminished in value, or

(5) has been commingled with other property which cannot be divided without

difficulty, it is the intent of the United States to seek forfeiture of any other property of said defendant(s) up to the value of the above-described forfeitable property, pursuant to Title 21, United States Code, Section 853(p).

All in accordance with Title 18, United States Code, Sections 981 and 982, Title 21, United States Code, Section 853, Title 28, United States Code, Section 2461(c), and Rule 32.2, Federal Rules of Criminal Procedure.

A TRUE BILL

s/
FOREPERSON OF THE GRAND JURY
Date: July 30, 2019

MICHAEL BAILEY
United States Attorney
District of Arizona

s/
KEVIN M. RAPP
Assistant U.S. Attorney