**BASKIN RICHARDS PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7979
Facsímile 602-595-7800
E-mail: alan@baskinrichards.com
          mmilovic@baskinrichards.com
Name and State Bar No.:    Alan Baskin #013155
                           Mladen Z. Milovic #035560

*Attorney for Defendant*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No.  CR-19-00898-PHX-DLR(DMF) |
|---|---|
| Plaintiff, | **DEFENDANT DAVID ALLEN HARBOUR'S MEMORANDUM RE: DEFENDANT'S ALLEGED VIOLATION OF RELEASE CONDITIONS** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | |

**I.    INTRODUCTION.**

Defendant David Harbour did not violate any of the financial conditions of his pretrial release.  The government's allegations to the contrary are supported by fanciful, speculative and illogical arguments.  The Court should not modify Mr. Harbour's release conditions and should reject the government's proposed further restrictions.  [*See* Dkt. 82 at 1.]  Mr. Harbour also requests that the Court lift his travel restriction so that he can travel throughout Arizona and the United States with prior notice to Pretrial Services.

**II.   FACTUAL BACKGROUND.**

On August 5, 2019, Mr. Harbour was indicted for three counts of wire fraud and nineteen counts of money laundering involving a fraudulent investment scheme.  [*See* Dkt. 3.]  On

August 8, 2019, Mr. Harbour was released on bond. [*See* Dkt. 17.] A condition of his release was that Mr. Harbour "shall not make any financial transactions totaling over $1000.00 in any month to any person or entity without approval of Pretrial Services. Any transaction over $1000 to any person or entity in any month that benefits [Mr. Harbour] also requires Pretrial Services approval. [*See* Dkt. 17.]

The government alleges that Mr. Harbour violated the $1,000 restriction condition by using Abby Harbour's American Express ("Amex") credit card. The government also has made a blanket assertion that Ms. Harbour fraudulently obtained the card. [*See* Dkt. 82 at 2.] The government cites four transactions as support for its request for modifying Mr. Harbour's release conditions: (1) a September 19, 2019 payment to Amex of $10,797.75; (2) an October 29, 2019 charge to Ms. Harbour's Amex credit card of $59,000.00; (3) a November 6, 2019 payment to Amex of $59,300.00; and (4) a December 3, 2019 payment to Amex of $1,287.19. [*See* Dkt. 82 at 2.]

Three of these transactions are related to the purchase of a Skybox (the "Skybox") at The Phoenix Open Waste Management (the "Phoenix Open"). [*See* Dkt. 82 at 2.] Although Mr. Harbour had the right (upon payment of the required fee) to use the Skybox at this year's Phoenix Open, he did not pay for or use it. Instead, C.C, through his company, asked to use the Skybox and agreed to pay for it. Ms. Harbour paid for the Skybox with her Amex card, and C.C. reimbursed her with a $59,000 check from C.C.'s company. On January 29, 2020, counsel for Mr. Harbour sent an email to Pretrial Services Officer Tammy Mahan with a copy of the check, which was drawn on C.C.'s company's account and payable to Abby Harbour for the "2019 Phoenix Open." [*See* Exhibit 1, Emails to Mahan.] The Skybox was used exclusively by C.C., his employees, clients, family and friends.

On February 3, 2020, counsel for Mr. Harbour sent another email to Ms. Mahan with an attachment containing Ms. Harbour's Amex statement showing the charge and payment for the Skybox. [*See* Exhibit 1, Emails to Mahan.] On February 4, 2020, Ms. Mahan submitted a Petition for Action on Conditions of Pretrial Release (the "Petition") for the Court's

consideration and requested that a summons issue for Mr. Harbour's appearance on the Petition. [*See* Dkt. 58.]

## III.   ARGUMENT.

The government spends most of its memorandum argument relying on irrelevant hearsay statements to insinuate that Mr. Harbour has a propensity to fraudulently use other people's credit cards.  To that end, the government discusses unsubstantiated statements in a witness interview of "W.Y.," Mr. Harbour's former girlfriend.  Mr. Harbour was an authorized user on W.Y.'s credit card.  Allegedly, however, he did not pay the balances owed on the credit card, causing W.Y. to get sued by the credit card company.  [*See* Dkt. 82 at 3.]  This is wholly irrelevant to whether Mr. Harbour violated the financial restrictions imposed by his release conditions.

The government claims that Ms. Harbour fraudulently obtained her Amex credit card by misrepresenting her annual income.  [*See* Dkt. 82 at 3.]  The government offers no evidence regarding Ms. Harbour's income, nor any evidence beyond speculation that she fraudulently obtained the Amex credit card.  Ms. Harbour has not been indicted.  The government's attempt to draw nonexistent parallels between W.Y.'s unproven and unsubstantiated statements, and Ms. Harbour obtaining her Amex credit card, is over-reaching.  The issue before the Court is whether Mr. Harbour violated the financial restrictions of his release conditions – not how Ms. Harbour obtained her credit card or Mr. Harbour's interactions with a prior girlfriend.

None of the four transactions cited by the government constitute a release condition violation.  Even though the Skybox transactions exceeded $1,000, the Harbours did not receive any personal benefit.  Instead, Mr. Harbour was instrumental in continuing to raise funds for a charity vital to our community. The government also failed to mention that C.C. paid for the Skybox and Pretrial Services was so advised.  [*See* Exhibit 1.]  Mr. Harbour, however, is cognizant of the nature and amount of the charges for the Skybox, and understands that he needs to disclose any such transactions to Pretrial Services for approval in the future.

The December 3, 2019 payment of $1,287.19 to Amex was for ordinary credit card charges incurred during the period of October 26, 2019 to November 24, 2019. [*See* Exhibit 2, November 2020 Amex statement.] This payment was not intended to pay off any single charge of $1,287.19. Instead, it was a payment for at least 16 different purchases, none of which exceeded $1,000.00, and not all of which represented a benefit to Mr. Harbour. [*See* Exhibit 2.] To require Mr. Harbour to seek approval from Pretrial Services so that his wife can pay her credit card every month is contrary to common sense and to the intent behind the release conditions language. Ms. Harbour, for example, is not prohibited from paying off her credit card bill in two transactions of $999.00 and $288.19, per the language of the $1,000 release condition. It is unreasonable to require Ms. Harbour, who buys groceries and pays for other personal and living expenses that may not necessarily benefit Mr. Harbour, to not pay off monthly Amex credit card statements in one transaction for fear of triggering disclosure to Pretrial Services. For example, under the government's reasoning, if Ms. Harbour incurs $2,000.00 in credit card charges over the course of the month, but only $1.00 of that $2,000.00 was for Mr. Harbour's benefit, Mr. Harbour would still have to disclose Ms. Harbour's payment of $2,000.00 to Amex at the end of the month because it would be a "transaction over $1000 to any person or entity in any month that benefits defendant." [*See* Dkt. 17.] The government hinges its argument for the December 3, 2019 transaction on the idea that the language of the release condition does not require that all $1,000 of a transaction benefit Mr. Harbour in order to require such transaction's disclosure to Pretrial Services. Such a reading of the language surely cannot be consistent with the Court's intent and a reasonable person's understanding of the release condition.

The September 19, 2019 Amex payment of $10,797.75 was not a payment for a single charge, but for a combination of charges to Ms. Harbour's Amex credit card, the vast majority of which were incurred prior to Mr. Harbour's arrest and the imposition of the financial release conditions. Again, Ms. Harbour could have paid off her Amex credit card balance of $10,797.75 in eleven equal payments, all of which would have been below the $1,000.00

threshold requiring disclosure. Forcing her to do so in order to not require Mr. Harbour's disclosure of such payments to Pretrial Services does not serve the purpose and intent of the financial release conditions.

The language of the release condition is somewhat ambiguous. Such language logically seems to require disclosure of purchase transactions of $1,000.00 or more that only benefit Mr. Harbour. Reading the financial release conditions the way the government posits can only lead to more confusion, undue burden, and misunderstanding. The Court should not modify Mr. Harbour's financial restriction related to his release conditions. At best, there has been a misunderstanding. Certainly, if the Court interprets this clause otherwise, Mr. Harbor will comply in the future without the need for further modification.

Finally, Mr. Harbour has proven during his nine months of pretrial release that he is not a flight risk. He continues to contest the allegations against him; he has remained in regular contact with Pretrial Services and his wife, mother, children and job are in Arizona. Mr. Harbour's employment involves assisting in the development of real estate projects throughout Arizona and California, which necessitates travel both in and outside of Arizona. Mr. Harbour has traveled to California several times with permission from Pretrial Services without any issue. He asks that he be permitted to travel as needed for work, upon condition that he give prior notice to Pretrial Services, as opposed to requiring him to obtain permission.

**IV.   CONCLUSION.**

Based on the foregoing, the Court should not modify Mr. Harbour's pretrial release conditions related to financial restrictions. The Court should modify Mr. Harbour's pretrial release conditions by allowing him to travel as contemplated above.

5

RESPECTFULLY SUBMITTED this 18th day of May, 2020.

                BASKIN RICHARDS PLC

                /s/ Alan S. Baskin
                Alan Baskin
                Mladen Z. Milovic
                2901 N. Central Avenue, Suite 1150
                Phoenix, Arizona 85012
                *Attorney for Defendant*

BASKIN RICHARDS PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7979
Facsimile 602-595-7800

**CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing to:

Kevin M. Rapp
U.S. Attorney's Office
40 N. Central Ave., Suite 1800
Phoenix, AZ  85004
*Attorneys for Plaintiff*

 /s/ Cristina McDonald

# EXHIBIT 1 – FILED UNDER SEAL

# EXHIBIT 2 – FILED UNDER SEAL