**BASKIN PLC**
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone No. 602-812-7977
E-mail: alan@baskin.law
            mmilovic@baskin.law
Name and State Bar No.:    Alan Baskin #013155
                                          Mladen Milovic #035560
*Attorneys for Defendant*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | **Case No.  CR-19-00898-PHX-DLR(DMF)** |
| Plaintiff, | **DEFENDANT DAVID ALLEN HARBOUR'S MOTION TO CONTINUE TRIAL DATE, MOTIONS IN LIMINE DATE, AND FINAL WITNESS AND EXHIBIT LIST DATE** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | |
| | **(Unopposed)** |
| | **(Expedited Ruling Requested)** |

Defendant David Allen Harbour moves to continue the trial date currently set for November 4, 2020, the motion in limine deadline currently set for September 25, 2020, and the final witness and exhibit list deadline currently set for October 2, 2020.  The government does not oppose this motion.

## I.    INTRODUCTION.

Failure to continue the trial date and other existing deadlines would significantly impinge on Mr. Harbour's Sixth Amendment rights because he may not be able to confront witnesses testifying against him, the jury may not be a representative cross-section of the

BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7977

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

community due to the societal and health effects of COVID-19, and the current COVID-19 courtroom protocols may adversely affect the jury's ability to evaluate the testifying witness' credibility.

The state of outstanding discovery and likelihood of a superseding indictment will also preclude Mr. Harbour from enjoying his constitutional right to effective assistance of counsel in pretrial preparation. The government has advised Mr. Harbour's counsel that a superseding indictment is imminent, but the timing is contingent upon grand jury availability, which will begin on September 21, 2020. *See* September 11, 2020 General Order 20-35.[1] In addition to further discovery and potential motion practice related to a new indictment, Mr. Harbour and his counsel need additional time to review certain discovery in the pending case because Mr. Harbour has only received a handful of documents pursuant to a number of subpoenas the Court issued beginning on July 23, 2020. Mr. Harbour asks the Court to continue the dates by which motions in limine and final witness and exhibit lists are due to correspond with the new trial date.

The assigned Assistant U.S. Attorney is the lead prosecutor in *United States v. Michael Lacey, et al.*, CR-18000422-001-PHX-SMB (Doc. 1031), which is set for what is expected to be a three-month long trial starting on January 21, 2021.[2] Mr. Harbour requests the Court to continue the trial to no earlier than May 18, 2021, which is approximately one month after the scheduled completion of the *Lacey* trial.

## II.    ARGUMENT.

The Court's duty to provide a fair trial and protect the health of trial participants requires postponement to preserve: (1) Mr. Harbour's right to be tried by a fair cross-section of the community; (2) Mr. Harbour's right to have meaningful confrontation with the witnesses testifying against him and an impartial jury that can reasonably be expected to hear the evidence

---

[1] A Grand Jury has not been available in this District since March 2020.
[2] That case is also known as the Backpage prosecution and has been pending trial since April 2018. According the prosecutor, a motion to continue in that case is imminent based on the unavailability of trial counsel for the January trial date.

BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7977

with the appropriate attention; (3) Mr. Harbour's right to have effective assistance of counsel, including pre-trial preparation, trial performance, and mid-trial consultation with counsel; and (4) the public interest in preventing the further spread of COVID-19.

> **A.    Continuing the Trial During the Pandemic Will Alleviate Significant Sixth Amendment Concerns Regarding Mr. Harbour's Right to a Jury That Reflects a Representative Cross-Section of the Community.**

The Sixth Amendment  and the Jury Selection and Service Act of 1968, 28 U.S.C. § 1861, *et seq.* (the "Act"), afford Mr. Harbour the right to have the jury in this trial selected from a representative cross section of the community.  *See Taylor v. Louisiana*, 419 U.S. 522, 528 (1975).  Mr. Harbour will lose that right if trial in this case commences in November.  The test for a constitutionally selected jury is the same, whether challenged under the Sixth Amendment or under the Act.  *United States v. Miller*, 771 F.2d 1219, 1227 (9th Cir. 1985).  To prevail on such a claim, Mr. Harbour must make a prima facie showing that: (1) a group alleged to be excluded from the jury selection process is a distinctive group in the community, (2) the representation of this group in venires form which juries are selected is not fair and reasonable in relation to the number of such persons in the community, and (3) this underrepresentation is due to the systematic exclusion of the group in the jury selection process.  *Duren v. Missouri*, 439 U.S. 357, 364 (1976).

Jury summonses issued for a November trial cannot produce a lawful cross-section of the community.  Neither the coronavirus nor its economic impact have affected all groups within the community uniformly.  Some portions of this District have suffered higher rates of infection and experienced greater risks of serious illness and death than others.[3]  Fear of the virus is not uniform along ethnic or racial lines.[4]  Additionally, job and wage losses due to

---

[3] *See* CDC, *Health Equity Considerations & Racial & Ethnic Minority Groups* (updated July 24, 2020) available at: https://www.cdc.gov/coronavirus/2019-ncov/community/health-equity/race-ethnicity.html

[4] *See* Mark Hugo Lopez, et al., Financial and health impacts of COVID-19 vary widely by race and ethnicity, Pew Research Center (May 5, 2020), available at: https://www.pewresearch.org/fact-tank/2020/05/05/financial-and-health-impacts-of-covid-19-vary-widely-by-race-and-ethnicity/.

BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7977

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COVID-19 have hit Hispanic adults the hardest and most black and Hispanic Americans do not have financial reserves to cover expenses in case of an emergency.[5]

The people who answer the summons will not resemble the group that would have been produced by this Court's pre-virus jury selection panel. Just like a jury summons issued on a major religious holiday observed by a plurality of the community would not produce a "random" selection of residents, neither would the act of sending a summons in the midst of the pandemic which impacts black and Hispanic American residents, who are "distinctive groups in the community," *see United States v. Hernandez-Estrada*, 749 F.3d 1154, 1159 (9th Cir. 2014), more severely than white residents.

The disparate impact of COVID-19 on certain age groups may also impact jury selection. As of September 13, 2020, people 40 years of age or older account for 98% of deaths from COVID-19 in the United States.[6] Such an overwhelming age skew in the risk of death from COVID-19 is an inescapable consideration that individuals in the jury pool must consider. Even younger jury pool members must weigh the danger of being near older adults in case the younger individuals are asymptomatic spreaders of COVID-19, which seems to be highly prevalent.[7] In light of such risks, the Court may err in favor of what amounts to systematic dismissal of older individuals from the jury pool, which could adversely impact Mr. Harbour's Sixth Amendment right to a representative and fair cross section of the community. *See Julian v. State,* 134 Ga. App. 592 (1975) (pool in which average age of jurors was sixty-nine cannot be considered a fairly representative cross-section of the community); *People v. Fujita*, 43 Cal. App. 3d 454 (1974) (citing age as among groups constituting cognizable classes); *State v. Holstrom*, 168 N.W.2d 574, 578 (Wisc. 1969) (court stated that systematic exclusion based on

---

[5] *Id.*

[6] *Demographic Trends of COVID-19 cases and deaths in the US reported to CDC*, Center for Disease Control and Prevention, covid.cdc.gov/covid-data-tracker/index.html#demographics.

[7] Thomas Colson, *The coronavirus pandemic is being driven by people in their 20s, 30s, and 40s who don't know they're infected, according to WHO*, (Aug. 18, 2020), https://www.businessinsider.com/who-coronavirus-being-transmitted-by-young-asymptomatic-people-2020-8.

age would render jury defective); *see also Taylor*, 419 U.S. at 538; *Duren v. Missouri*, 439 U.S. 357, 370 (1979).

A summons during this pandemic could erase the random nature of jury selection in violation of the Act. It also violates the Sixth Amendment because the issuance of such summons will likely skew the venire by large margins along multiple cognizable groups. The unequal probabilities for jury service among each group will result from systematic, rather than random, factors. For this reason, the trial should be continued.

**B.     Continuing the Trial Will Alleviate Significant Sixth Amendment Concerns Regarding Mr. Harbour's Right to Meaningfully Confront the Witnesses Against Him.**

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Maryland v. Craig*, 497 U.S. 836, 844 (1990). The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier to fact. *Id.* The Confrontation Clause guarantees includes not only a personal examination, but also (1) ensures the witness will give his or her statements under oath, (2) forces the witness to submit to cross-examination, and (3) permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his or her statement, thus aiding the jury in assessing his or her credibility. *Id.* at 845-46.

Here, the third element – permitting the jury to observe the demeanor of the witness – is operative. Compelling witnesses to testify while wearing a mask – a CDC and Courthouse requirement during this pandemic – would impair the jury's capacity to judge the witness' facial expressions, demeanor, and credibility when testifying in front of the jury. This would deny Mr. Harbour a critical aspect of his confrontation rights. *See People v. Sammons*, 478 N.W.2d 901, 909 (Mich. Ct. App. 1991). If the jury wears masks, Mr. Harbour would be unable to see the jury's facial expressions and reactions to testimony, which would impact his ability to prepare and adjust trial strategy as needed.

BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7977

BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7977

Mr. Harbour's right to confrontation would be adversely affected even if the Court exercises its discretion under General Order 20-26 and allows witnesses to testify without masks. *See* May 28, 2020 General Order 20-26. A person wearing, or not wearing, a mask in public can elicit a strong emotional response.[8] For some people, the sight of another person wearing a mask may trigger feelings of trust, camaraderie, and sacrifice.[9] Others may associate the practice with feelings of fear, an external threat, or an instinct to "stay back."[10] Regardless of the choice to wear or not wear a mask, the likelihood of judgment for either choice cannot be ignored.

This will necessarily add another layer to jury's perception of the witness. If the jury finds that unmasked witnesses appear nervous or concerned during their testimony, such an observation may have little probative value during a pandemic because it will be difficult to assess whether the unmasked witness is nervous about his or her safety or due to a case-related reason. Indeed, it is reasonable to anticipate that many trial participants will be afraid of merely being in public during a deadly pandemic, a matter wholly independent of the truth of their testimony. A continuance is necessary to protect the core of Mr. Harbour's confrontation right.

**C.    A Continuance is Warranted to Prevent the Continued Spread of COVID-19.**

The grant of a continuance where the risk of spreading infectious disease can be avoided by delaying a trial is not at all uncommon and certainly constitutes good cause for doing so. *See, e.g., United States v. Allen*, 2012 U.S. Dist. LEXIS 123487, at *15-16 (D.V.I. August 30, 2012) (continuing trial during chickenpox outbreak where travel could cause infectious public spread); *People v. Tucker*, 196 Cal. App. 4th 1313 (continuing trial where defendant was at risk of contracting "infectious disease" and a trial could expose "trial court personnel, jurors, and witnesses" to H1N1, a "debilitating and perhaps life-threatening illness"); *State v. Drewry*, 942

---

[8] Deborah Carr, Ph.D, *Masks in the COVID-19 Era*, Psychology Today, (May 15, 2020), https://www.psychologytoday.com/us/blog/bouncing-back/202005/masks-in-the-covid-19-era.
[9] *Id.*
[10] *Id.*

A.2d 981, 987 (Me. 2008) (continuing case where defendant under infectious disease quarantine).

In this case, many of the witnesses do not live in Arizona and some are at higher risk of COVID-19 complications due to their age.  Requiring these witnesses to travel to Arizona on a plane and potentially expose themselves in the process, and subsequently others when they are in Arizona, is not a prudent solution.  Many of them may be reluctant, or even refuse, to appear in person to testify.  Mediating and accommodating any such refusals may not only cause practical issues such as delays during the trial, but may also cause constitutional issues if Mr. Harbour cannot confront the witnesses testifying against him.  Accordingly, the Court should stay the trial date, the motion in limine date, and the final exhibits and witness list disclosure date.

**D.      Continuing the Trial Will Protect Mr. Harbour's Right to Effective Assistance of Counsel.**

Defendants enjoy a right to the assistance of counsel at all critical stages of a criminal proceeding, including trial and the period between indictment and trial.  *See Montejo v. Louisiana*, 556 U.S. 778, 786 (2009); *Kirby v. Illinois*, 406 U.S. 682, 688 (1972).  Where the effective performance of counsel is so unlikely as to amount to the functional equivalent of a complete denial of counsel, automatic reversal is merited.  *See United States v. Chronic*, 466 U.S. 648, 659 (1984).

Trial under the current circumstances would interfere with Mr. Harbour's right to counsel in multiple ways.  First, trial in a setting that threatens an attorney's own physical well-being amounts to the constructive denial of counsel.  *See Powell v. Alabama*, 287 U.S. 45, 53 (1932).  Conducting a jury trial, particularly in a complex case like this one that will last multiple weeks, requires sustained focus.  Added to the normal trial stress, a November trial would require counsel to also balance concern about exposure to a deadly virus from everyday tasks such as passing an exhibit to a trial participant, questioning a witness, consulting with co-counsel, and conferring with a  client.

BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7977

BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7977

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Second, in light of the District's mandate that all trial participants wear masks to ensure safety, Mr. Harbour's counsel will be unable to perform basic and essential functions, such as evaluating the demeanor or credibility of witnesses and the reactions of the Court and the jurors. It will also be difficult to hear trial participants when they speak, whether it be a witness' testimony or a whispered communication among co-counsel or paralegals.

Mr. Harbour has an unqualified right to consult with his attorney through trial, *see Geders v. United States*, 425 U.S. 80, 88-92 (1976), which will be extremely difficult to exercise when counsel and Mr. Harbour are wearing masks and social distancing from each other as required under General Order 20-26 and CDC recommendations.  Assuming Mr. Harbour could communicate loudly enough that his counsel could hear him, the communications would not be private, as contemplated by the Sixth Amendment.  *See Weatherford v. Bursey*, 429 U.S. 545, 554 n.4 (1977).

Mr. Harbour's right to effective assistance of counsel includes preparation for trial between the time of indictment and the trial, which the pandemic and third parties have impaired.  *See Maine v. Moulton*, 474 U.S. 159, 170 (1985).  Two months ago, on July 17, 2020, Mr. Harbour filed a Fed. R. Crim. P. 17(c) motion for the issuance of subpoenas duces tecum related to Green Circle, the payday lending entity central to Mr. Harbour's indictment. On July 23, 2020, the Court granted the Rule 17(c) motion.  [Doc. 107.]  The requested documents are critical to Mr. Harbour's defense and will likely be trial exhibits.  Due to service of process issues stemming from the COVID-19 pandemic and the apparent reluctance of certain individuals to accept service, Mr. Harbour has not been able to serve all the subpoenas. Those who have received subpoenas and contacted Mr. Harbour's counsel have yet to produce any documents, other than a handful Mr. Harbour received on September 14, 2020.

Mr. Harbour's counsel is attempting to expeditiously resolve all issues or potential disputes related to the subpoenas without the Court's intervention, but obtaining the documents necessary for Mr. Harbour's defense may require motion practice to compel their production. Acquiring these documents and reviewing them prior to trial on November 4, 2020 is becoming

BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7977

1

2

increasingly unlikely, and acquiring and reviewing them prior to the deadlines for motions in limine and final exhibit lists is no longer realistic.

3

4

5

6

7

Mr. Harbour and his counsel require additional time beyond the current trial date of November 4, 2020 to finish reviewing the existing voluminous discovery, investigate all the factual allegations, locate and interview witnesses, obtain documents pursuant to the subpoenas Mr. Harbour served, review any such obtained documents, conduct legal research and prepare and file motions in limine, finalize exhibit and witness lists, and prepare for trial.

8

9

10

11

12

13

In addition, the government will likely seek to indict Mr. Harbour on additional charges when grand juries begin assembling again on September 21, 2020. *See* September 11, 2020 General Order 20-35. Notwithstanding the constitutional issues outlined above, new charges will not allow Mr. Harbour and his counsel to prepare for trial in November or identify and brief any issues requiring motion practice.  As a result, Mr. Harbour will be deprived of the assistance of counsel to which he is entitled.

14

**III.    CONCLUSION.**

15

16

17

18

Mr. Harbour respectfully requests the Court to continue the trial date currently set for November 4, 2020 until no earlier than May 18, 2021.  Mr. Harbour has submitted a proposed Order that would set a new trial date and direct the parties to agree to submit a scheduling order addressing the remaining pre-trial deadlines.

19

RESPECTFULLY SUBMITTED this 16th day of September, 2020.

20

21

BASKIN PLC

22

23

24

25

26

/s/ Alan Baskin
Alan Baskin
Mladen Milovic
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona  85012
*Attorneys for Defendant*

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing to:

Kevin M. Rapp
U.S. Attorney's Office
40 N. Central Ave., Suite 1800
Phoenix, AZ  85004
*Attorneys for Plaintiff*

 /s/ Cristina McDonald

BASKIN PLC
2901 N. Central Avenue, Suite 1150
Phoenix, Arizona 85012
Telephone 602-812-7977

10