MICHAEL BAILEY
United States Attorney
District of Arizona

KEVIN M. RAPP
(Ariz. Bar No. 14249)
kevin.rapp@usdoj.gov

COLEEN SCHOCH
Georgia State Bar No. 366545
Coleen.schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>     vs.<br><br>David Allen Harbour,<br><br>            Defendant. | No.  CR-19-00898-PHX-DLR (DMF)<br><br>**UNITED STATES' SUPPLEMENTAL BRIEFING IN SUPPORT OF A PROTECTIVE ORDER**<br>**(Court Order Doc. 138 )** |

## INTRODUCTION

The Government seeks a protective order limiting the dissemination of the discovery materials it has produced, and will be producing, to Defendant David Allen Harbour ("Harbour")). In particular, the Government's proposed protective order seeks to prevent Harbour from making the discovery materials available to third parties, including disclosure (sealed or unsealed) in parallel state civil proceedings. Harbour's counsel (both in the federal criminal prosecution and at least two state civil cases) disagrees with the proposed protective order.

This Court has directed the Government to provide supplemental briefing that demonstrates good cause for the imposition of a protective order by articulating the safety

concerns the victims have for disclosure.[1] Good cause for the imposition of a protective order exists for three independent reasons. First, there is no right to public access of discovery produced to the defense. Second and importantly, the victims object to the dissemination of materials that they provided solely for the federal criminal prosecution. As victims they have a statutory right under the Crime Victim Rights Act, 18 U.S.C. § 3771, to have their sensitive information closely held for both privacy and security considerations. Lastly, the government investigation is ongoing, and it is no secret that the defendant will be charged with additional counts. The discovery related to this ongoing investigation should not be disseminated to third parties, including in parallel state civil cases as disclosure may compromise an ongoing investigation.

## LAW AND ARGUMENT

### A. Government's Discovery is Private

While protective orders related to judicial documents and criminal proceedings are subject to constitutional and common law scrutiny, protective orders related to discovery are not. *United States v. Smith*, 985 F. Supp. 2d 506 (S.D.N.Y. 2013). This is because experience and logic show that there is no right of access to discovery materials. With respect to experience, pre-trial discovery, "unlike the trial itself, is usually conducted in private," *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.,* 178 F.3d 943, 945 (7th Cir. 1999); *see also Bond v. Utreras*, 585 F.3d 1061, 1074 (7th Cir. 2009) ("At common law, pretrial proceedings were closed to the public, and the federal discovery rules have not changed this common-law tradition." (citation omitted)); *United States v. Anderson,* 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and

---

[1] The government respectfully disagrees that only basis to limit discovery for a protective order is by showing good cause that the victims have specific safety concerns for certain documents. (Doc. 138)

courts often order, that discovery information will remain private."); Richard L. Marcus, *Myth and Reality in Protective Order Litigation,* 69 Cornell L. Rev. 1, 37 (1983) ("[T]here simply is no tradition of public access to discovery.").

As noted previous pleadings, Harbour has utilized the Government's discovery for strategic reasons benefiting him in a parallel state civil proceedings and disagrees that the disclosure was inappropriate. (Doc. 128)  Simply put, absent a protective order, there is nothing to prevent him from disclosing additional discovery whenever it suits his interest. For this reason alone, the Court should impose protective order.

### B. Victim Information Is Protected

Courts often issue protective orders in criminal cases to protect the privacy and security interest of victims. The courts have "vast" discretion to "assure that a defendant's right to a fair trial [is] not overridden by the confidentiality and privacy interests of others. "*United States v. O'Keefe*, 2007 WL 1239204, at *2 (D.D.C. 2007). Indeed, courts "can and should, where appropriate, place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect." *Alderman v. United States*, 394 U.S. 165, 185, (1969). In *United States v. Johnson*, for example, the defendant was charged with being a felon in possession of a firearm. 314 F. Supp. 3d at 250. The case involved no victims and no allegations of violence. *See id.* So in refusing to issue a protective order the *Johnson* court did not consider the Crime Victim Rights Act, 18 U.S.C. § 3771, nor the obligations it places on courts to protect victims and their privacy. *See id.* at 257.

In the Court's order it finds that it would be useful to apply the standards for good cause for protective orders in civil cases under Federal Rule of Civil Procedure 26(c) useful. (Doc. 138) Yet, in *United States v. Patkar*, 2008 WL 233062 (cited in the Court's order),  it found that "this court is not convinced that the Ninth Circuit would apply these civil standards to protective orders in criminal actions."   The court in *Patkar* found that, "a crime victim, among other rights, has the right "to be treated with fairness and with respect for the victim's dignity and privacy." "18 U.S.C. § 3771(a)(8). The court concluded

that "a public disclosure of criminal discovery "would certainly act as a deterrent to a victim reporting the commission of a crime." and that " the crime victim's right to be treated with fairness and respect for his privacy clearly outweighs any public interest in disclosure." *Patkar* WL 233062, at *6.

Here, the discovery involves statements from victim-investors, documents exchanged between Harbour and the victims, bank statements, emails and other correspondence, among other documents. Some of this discovery(primarily reports of interviews of the victims) was created for the federal criminal prosecution and does not exist independent of this case.

The victims have informed the government that they do not want their information disseminated to third parties. The victims are referenced by initials in the indictment. For example, victim R.T. has indicated to the investigating agent that he does not want his information disseminated (*See* Exh. A). Also, victim M.B. has indicated thorough his attorney that based on his reputational standing in his industry he does not want his information made public until trial. (*See* Exh. B) Last, victim R.G. has provided sensitive information surrounding the death of her husband that she does not want disclosed. (*See* Exh. C).

Issuing a protective order is the only way to avert the possible harm to the victims and witnesses of having their names, report of interviews, emails, text messages and other personally identifying information used for Harbour's strategic benefit in victim cases, among other forums. Again, many of these discovery items do not exist independent of the federal criminal prosecution. Because release of this information would compromise their privacy, and possibly their security, and because protecting this information will not harm Harbour or the public, the Court should enter the Government's proposed order.

**C. Disclosure Would Negatively Impact An Ongoing Investigation**

As a general proposition, courts have repeatedly recognized that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might "adversely affect law enforcement interests."

*Amodeo II,* 71 F.3d at 1050; *see also Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 120 (2nd Cir. 2006) (noting that the "danger of impairing law enforcement" may be a countervailing factor outweighing the qualified right of access); *United States v. Madoff,* 626 F. Supp. 2d 420, 427 (S.D.N.Y. 2009) (rejecting press access to emails sent by victims in a major fraud case because "disclosing the details of the Government's efforts to obtain evidence will undoubtedly hamper the investigation"); *United States v. Park,* 619 F. Supp. 2d 89, 94 (S.D.N.Y. 2009) (holding that the need to "maintain the secrecy of the Government's investigation" outweighed the public's right of access to sentencing documents). Thus, where public disclosure of certain materials might officially reveal the sources and methods law-enforcement officials have used, and will continue to use, to investigate other criminal conduct related to the publicly filed charges, courts have found it appropriate to enter a protective order. *See, e.g.*, *United States v. Bin Laden,* No. 98–CR–1023, 2001 WL 66393, at *2 (S.D.N.Y. Jan. 25, 2001) (noting that the court adopted a protective order because dissemination of discovery materials would "jeopardize the ongoing Government investigation into the activities of alleged associates of the Defendants"); *United States v. Milken,* 780 F. Supp. 123, 127 (S.D.N.Y.1991) ("[T]he public should have access to information as to the general nature and extent of defendant's cooperation, if disclosure can be made without jeopardizing ongoing or future investigations ...." (emphasis removed)).

Here, the Government continues to investigate Harbour's criminal activities post indictment. In the wake of the first indictment, a number of victims have come forward making claims similar to those of R.G., M.B. and R.T. Namely, other victims provided Harbour funds based on certain misrepresentations and those funds were diverted for Harbour's personal expenditures rather than the represented investment. One such victim, A.W., has met with investigating agents and provided relevant documents. This victim has requested that her cooperation with the investigation be kept private for the time being. (See Exh. D). In addition, the government has interviewed percipient witnesses (including Harbour's bookkeeper) regarding events relevant to additional charges. And, the

government has made no secret about possible charges of tax evasion. As noted previously, seeking additional charges have been hampered by the unavailability of a Grand Jury for over six months due to the worldwide COVID-19 pandemic. In sum, reports and other documents obtained *after* Harbour's indictment and related to the ongoing investigation should be subject to a protective order.

## CONCLUSION

The proposed protective order is appropriate in this case because the Government has demonstrated good cause to impose such an order. The discovery is a private matter but Harbour does not agree with this proposition. In sum, nothing prevents him from disseminating Government disclosures in whatever forum he chooses. In addition, the victims have expressed security and privacy concerns about the unfettered disclosure of their reports of interviews and other documents that they provided to investigating agents only for the use in this federal criminal prosecution. Lastly, there is an ongoing investigation that could be compromised by the public disclosure of discovery.

Respectfully submitted this 5th day of October, 2020.

MICHAEL BAILEY
United States Attorney
District of Arizona

*s/ Kevin Rapp*
KEVIN M. RAPP
COLEEN SCHOCH
Assistant U.S. Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Alan Baskin
Email: alan@baskinrichards.com
*Attorney for defendant David Allen Harbour*

 *s/ Marjorie Dieckman*
U.S. Attorney's Office