**BASKIN PLC**
6263 N. Scottsdale Road, Suite 340
Scottsdale, Arizona 85250
Telephone No. 602-812-7977
E-mail: alan@baskin.law
         mmilovic@baskin.law
Name and State Bar No.:   Alan Baskin #013155
                          Mladen Z. Milovic #035560

*Attorneys for Defendant*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | **Case No.  CR-19-00898-PHX-DLR(DMF)** |
| Plaintiff, | **MOTION TO DISMISS FORFEITURE COUNT AS IT RELATES TO ALLEGED INVESTOR-VICTIMS "R.G.," "A.W.," "D.W.," "C.H.," AND "P.H." AND TO DISMISS COUNTS 11 AND 12** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | **(Oral Argument Requested)** |

Pursuant to Fed. R. Crim. P. 12(b)(3)(B), David Allen Harbour moves to dismiss the forfeiture count as it relates to investor-victims "R.G.," "A.W.," "D.W.," "C.H.," and "P.H.," and their corresponding forfeiture amounts totaling $1,782,864.01 from the November 24, 2020 Indictment.  Mr. Harbour also moves to dismiss Counts 11 and 12.

**I.     INTRODUCTION.**

The government attempts to sneak several impermissible and unrelated fraud claims into the Indictment by burying them in the forfeiture claim.  The government charges Mr. Harbour with wire fraud, mail fraud, transactional money laundering, and tax charges related to transactions and events occurring between July 2014 and June 2018.  The Indictment

mentions transactions from March 2010 to January 2015 involving R.G., A.W., D.W., C.H., and P.H., but does not *include* any of those transactions in the charged counts. By doing so, the government is attempting an end-run around the five-year statute of limitations which would bar any substantive count of wire fraud, mail fraud, or money laundering related to these transactions. *See* 18 U.S.C. § 3282.

R.G.'s transaction with Mr. Harbour had nothing to do with the alleged scheme common to the wire fraud, mail fraud, and money laundering counts in the Indictment. The transactions with A.W., D.W., C.H., and P.H. similarly had nothing to do with the underlying scheme that forms the basis of the permissible charged counts. The government also improperly charged Mr. Harbour with two counts of mail fraud, Counts 11 and 12, related to a scheme that the government acknowledges ended almost two years *prior* to the charged transactions. The government fails to, and cannot logically, allege that these two transactions were in furtherance of the terminated scheme. Counts 11 and 12, must be dismissed. The Court must also dismiss, and not allow the government to include the R.G., A.W., D.W., C.H., and P.H. transaction amounts in the forfeiture allegation.

## II.     BACKGROUND.

Mr. Harbour was originally indicted on July 31, 2019. [Doc. 3.] On July 17, 2020, Mr. Harbour filed a motion to dismiss the forfeiture count as it related to alleged investor-victim "R.G.," claiming there was no factual nexus between R.G. and the high-yield, payday investment scheme the government alleged in the original Indictment. [Doc. 98.] The Court denied the motion to dismiss on September 11, 2020, stating in part that the government "shall have the opportunity at trial to prove whether R.G.'s transaction is sufficiently related to the charged conduct in the Indictment." [Doc. 132.]

On November 24, 2020, the government obtained a superseding Indictment. [Doc 154.] While Green Circle remains at the heart of the Indictment [Doc. 154 at 7-9], the government added allegations regarding R.G., along with substantive counts regarding another lending entity called KSQ. [Doc. 154 at 5-7 and 12-13.] In the wake of the briefing,

argument and ruling regarding R.G., the new allegations were in part meant to connect her to Mr. Harbour's purported high-yield investment scheme, but instead only further support the argument that she must be removed from the Indictment.

R.G. loaned $1,001,242.67 to Mr. Harbour's entity on March 22, 2010, over four years before anyone invested in Green Circle. [Doc. 154 at 27-28.] Although R.G.'s loan provided for only a 3% return, the government claims that she was the first investor in a "high yield" yield fraud scheme. In addition to the Green Circle investors and R.G., the Indictment names yet a third unrelated group of investor-victims, who include C.H., P.H., A.W., and D.W. (collectively, the "KSQ Investors"). KSQ also predates Green Circle. The government alleges these investors collectively invested $781,621.34 in KSQ directly or indirectly through NorthRock, LLC or Canyon Road, LLC, two entities related to Mr. Harbour. [Doc. 154 at 6:9-26.] The Indictment alleges that, from 2011 to 2014, Mr. Harbour partnered with J.T. to solicit individuals to invest in KSQ, which would use the money to invest in short-term, high-interest payday loans. [Doc. 154 at 5:13-17.] Mr. Harbour allegedly failed to disclose to the KSQ Investors that he received a 25% finder's fee from J.T. for the funds he raised for KSQ. [Doc. 154 at 5:25-27.] The alleged KSQ scheme ended in 2014. [Doc. 154 at 7:18.]

### III. ARGUMENT.

Under Rule 12(b)(3)(B), any allegations regarding the alleged 2010 transaction with R.G., the KSQ Investors' investments, and Counts 11 and 12 must be dismissed from the Indictment. *See* Fed. R. Crim. P. 12(b)(3)(B) (authorizing motion to dismiss based on a "defect in the Indictment" including "failure to state an offense"). Mr. Harbour respectfully submits that, contrary to the Court's prior ruling, forfeiture counts may be dismissed if the government's factual allegations are legally insufficient, which is the case here. *United States v. Grass*, 274 F.Supp.2d 648, 660 (M.D. Pa. 2003) (granting defendants' motion to dismiss criminal forfeiture allegation due to government's failure to allege elements in the indictment necessary to obtain conviction for violation of 18 U.S.C. § 982(a)(2)(A)).

3

**A.   R.G.'s Transaction and the Alleged KSQ/J.T. Fraud are Unrelated to the Alleged Green Circle Scheme at the Heart of the Indictment.**

R.G.'s investment with Mr. Harbour is not subject to forfeiture, which requires that her funds be related to the fraud scheme for which Mr. Harbour is charged.  *See United States v. Lo*, 839 F.3d 777, 793 (9th Cir. 2016); *United States v. Cox*, 851 F.3d 113, 129 (1st Cir. 2017); *United States v. Capoccia*, 503 F.3d 103, 116 (2d Cir. 2007).  The Indictment does not allege any connection between R.G.'s 2010 transaction and any of the offenses charged, such as the years-later Green Circle transactions and purported payments to some of the KSQ Investors.  Nor could it: to accept the government's theory of the scope of the alleged scheme in this case would take the already broad wire and mail fraud statutes and extend them beyond any reasonably permissible scope.  The Indictment lays out a confusing "scheme" that apparently spans three separate courses of conduct.  The government alleges an overarching, all-encompassing "high-yield investment fraud scheme" [Doc. 154 at 3:1.] but then refers to an "R.G. fraud" [Doc. 154 at 4:23.], a "KSQ/J.T. fraud scheme" [Doc. 154 at 5:12.], and a "Green Circle fraud" [Doc. 154 at 7:17.], each having separate start and end dates, different facts as to purported representations or omissions by Mr. Harbour, different sets of alleged victim-investors, and vastly different descriptions of the operational mechanics of the three distinct schemes.  Such a form of pleading, at best, describes three separate schemes, two of which – R.G. and KSQ – would be precluded from any substantive counts due to the five-year statute of limitations for wire and mail fraud.  *See* 18 U.S.C. § 3282.  This is not a continuing course of conduct during a discrete time period.

R.G.'s facts underscore the government's attempts to impermissibly widen the scope of the purported "high-yield investment fraud scheme."  Mr. Harbour's purported guarantee to R.G. that he would obtain a 3% return on R.G.'s money [Doc. 154 at 4:27 and 5:1] stands in stark contrast to the government's allegations of a "high-yield" investment scheme in which Mr. Harbour promised potential investors returns of 20%.  [Doc. 154 at 3:5.]  Tellingly, the words "high-yield," "short term," and "payday" do not appear anywhere in the factual

4

allegations related to R.G.  [*See* Doc. 154 at 4:23-27 and 5:1-11.]

Accepting R.G.'s transaction as part of the overarching scheme would extend the scheme to include any time Mr. Harbour ever asked anyone to borrow money and never paid it back.  If Mr. Harbour met a person on the street, asked to borrow $5.00 while promising to repay $5.15 in short order, and then failed to repay the money, that person on the street would have as much in common with the "scheme" alleged in this case as R.G. does.  R.G. is in this case for no other reason but to be a sympathetic witness in contrast to the less sympathetic cast of millionaire "victim-investors."  This is impermissible.

The KSQ investments are also not subject to forfeiture because the scheme under which they allegedly lost money ended almost seven years ago and is wholly separate from the Green Circle scheme.  The government seems to acknowledge this throughout the Indictment, treating KSQ and Green Circle as two separate schemes.  [Doc. 154 at 5:12, 7:17, 8:3-4.]  For example, the government identifies a "major difference in [Mr. Harbour]'s actions between the KSQ scheme and the Green Circle scheme."  [Doc. 154 at 8:3-4.]  This can only be interpreted as two separate courses of conduct in two separate alleged schemes, over two distinct and different periods of time.

The government's discussion of the Green Circle and KSQ "schemes" highlights the impropriety of its attempted fusion of unrelated schemes.  The alleged KSQ scheme was controlled by J.T., and Mr. Harbour allegedly solicited investors in exchange for a finder's fee that he purportedly failed to disclose to investors.  [Doc. 154 at 5:13-27.]  J.T. controlled KSQ and Mr. Harbour rightfully referred investors to J.T. if they lost money.  [Doc. 154 at 5:27 and 6:1.]  Green Circle, on the other hand, was a payday lending entity that the government alleges Mr. Harbour controlled to such an extent that he was able to misrepresent Green Circle's financials to obtain financing from PAIF, an alleged investor-victim, and also make unauthorized withdrawals from Green Circle.  [Doc. 154 at 7:18-19 and 9:6-7.]  The fundamental and material difference in the control Mr. Harbour exerted over the Green Circle scheme as opposed to his role in the KSQ/J.T. scheme prohibits a finding that the two

schemes were devised, implemented, and operated by Mr. Harbour as part of a single, overarching scheme to defraud. The Court must dismiss R.G. and the KSQ Investors from the Indictment and the forfeiture allegation.

### B. R.G.'s and the KSQ Investors' Inclusion in the Indictment is an Improper Attempt to Bypass the Wire Fraud and Mail Fraud Statute of Limitations.

The R.G. and KSQ Investors' transactions must also be dismissed from the forfeiture claim (and struck from the Indictment) because the Government cannot punish Mr. Harbour for these transactions. The Court should not allow the government to bootstrap old claims in order to avoid the statute of limitations, which has long lapsed for R.G.'s 2010 transaction and the KSQ Investors' transactions spanning from 2012 to the beginning of 2015. These claims must be dismissed.

The federal statute of limitations for mail and wire fraud is five years. 18 U.S.C. § 3282 ("Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the Indictment is found, or the information is instituted within five years next after such offense shall have been committed."). A criminal statute of limitations is Congress' bright-line articulation of the minimum requirements of due process and 18 U.S.C. § 3282 limits exposure to prosecution to a fixed period of time. Statutes of limitation are a defendant's primary safeguard against the possibility of prejudice from pre-accusation delay. *See United States v. Lovasco*, 431 U.S. 783, 789 (1977). As a result, criminal limitations statutes are "to be liberally interpreted in favor of repose." *United States v. Habig*, 390 U.S. 222, 227 (1968); *United States v. Scharton*, 285 U.S. 518, 522 (1932).

Here, the government does not, and cannot, allege any instance of mail or wire fraud Mr. Harbour committed in connection with R.G. on or around March 22, 2010, C.H. on or around December 15, 2012, P.H. in or around February 8, 2013, A.W. on or around February 8, 2013, or D.W. in or around January 1, 2015. Instead, the government improperly alleges two counts of mail fraud against Mr. Harbour in connection with transactions between one of

Mr. Harbour's entities and C.H. and A.W. in 2016. As explained in Section III.C below, these two counts must fail for failure to state a crime.

By including R.G., C.H., P.H., A.W., and D.W. as part of the forfeiture allegation even though their transactions occurred more than five years before the superseding Indictment, the government essentially attempts to treat the transactions as substantive offenses without actually doing so. This is improper, as mail fraud and wire fraud are not continuing offenses. *See U.S. v. Scarano*, 975 F.2d 580, 585 (9th Cir. 1992) (wire fraud not a continuing offense for purposes of statute of limitations); *U.S. v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991) (overruled on other grounds); *United States v. Garlick*, 240 F.3d 789 (9th Cir. 2001).

### C. The Transactions With A.W. and C.H. Forming the Basis of Counts 11 and 12 in the Indictment Do Not Constitute Mail Fraud.

Although the government alleges the KSQ scheme collapsed in 2014 [Doc. 154 at 7:18.], it puzzlingly charges Mr. Harbour with two counts of mail fraud for payments in 2016 from one of Mr. Harbour's entities to A.W. for $7,500.00 and to C.H. for $255.00. [Doc. 154 at 13:1-9.] The government does not allege, nor can it, that the payments were in furtherance of an alleged mail fraud scheme that concluded almost two years prior, or how these payments comprised part of any scheme. Accordingly, the government cannot satisfy a dispositive element of mail fraud and cannot state an offense. *United States v. Hubbard*, 96 F.3d 1223, 1227-28 (9th Cir. 1996) (stating that the elements of wire fraud are (1) the existence of a scheme to defraud, and (2) using or causing the use of mails in the furtherance of the scheme); *see also United States v. O'Brien*, 17 CR 239-1, 2017 WL 5192032, at *4 (N.D. Ill. Nov. 9, 2017), aff'd, 953 F.3d 449 (7th Cir. 2020) (citing *United States v. Berardi*, 675 F.2d 894, 898 (7th Cir. 1982) (stating that a scheme is a "continuing course of conduct, during a discrete period of time").

### IV. CONCLUSION.

The government cannot successfully allege or prove any criminal allegations against Mr. Harbour involving R.G. and the KSQ Investors. To bypass this problem, the government

improperly charges Mr. Harbour with two counts of mail fraud for the KSQ scheme after the alleged scheme had already concluded and then names R.G. and the KSQ Investors as investor-victims and includes their transaction amounts totaling $1,782,864.01 in the forfeiture allegation. This is improper, as the two mail fraud counts fail to sufficiently state a crime and R.G.'s and the KSQ Investors' transactions are otherwise entirely separate and different from the alleged scheme involving Green Circle. The Court must dismiss Counts 11 and 12 and must dismiss R.G. and the KSQ Investors as "investor-victims," strike any reference to them in the Indictment, and dismiss the amount of $1,782,864.01 from the forfeiture allegation.

RESPECTFULLY SUBMITTED this 1st day of February, 2021.

BASKIN PLC

/s/ Alan S. Baskin
Alan Baskin
Mladen Z. Milovic
6263 N. Scottsdale Road, Suite 340
Scottsdale, Arizona 85250
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on February 1, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing to:

Kevin M. Rapp
Coleen Schoch
U.S. Attorney's Office
40 N. Central Ave., Suite 1800
Phoenix, AZ  85004
*Attorneys for Plaintiff*


 /s/ Cristina McDonald