**BASKIN PLC**
6263 N. Scottsdale Road, Suite 340
Scottsdale, Arizona 85250
Telephone No. 602-812-7977
E-mail: alan@baskin.law
         mmilovic@baskin.law
Name and State Bar No.:   Alan Baskin #013155
                          Mladen Z. Milovic #035560

*Attorneys for Defendant*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. CR-19-00898-PHX-DLR(DMF) |
|---|---|
| Plaintiff, | **REPLY IN SUPPORT OF DEFENDANT DAVID ALLEN HARBOUR'S MOTION TO DISMISS FORFEITURE COUNT AS IT RELATES TO ALLEGED INVESTOR-VICTIMS "R.G.," "A.W.," "D.W.," "C.H.," AND "P.H." AND TO DISMISS COUNTS 11 AND 12** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | |

## I.    INTRODUCTION.

The government's response ("Response") in opposition to Mr. Harbour's motion ("Motion") to dismiss (1) the forfeiture count as it relates to certain alleged investor-victims; and (2) Counts 11 and 12 alleges an entirely new scheme and goes beyond the four corners of the Superseding Indictment ("SSI").  The government also claims that Mr. Harbour somehow does not understand the fraudulent scheme as alleged.  This argument seeks to mask what is really happening; the government shape-shifts its alleged scheme every time Mr. Harbour points out the infirmities in the allegations as pled. This leaves the government with the claim that Mr. Harbour did something wrong, but it does not know how, so it indicted him and is

figuring out its theory after the fact. This "shoot first, ask questions later" approach is antithetical to the most fundamental tenets of justice. The Court must grant the Motion.

## II. RELEVANT BACKGROUND.

The July 30, 2019 indictment alleged a single "high-yield investment fraud scheme" in which Mr. Harbour "solicited investor-victims to invest by promising excessive returns in short periods of time" and told them that "their funds would be invested in short term, high interest rate loans to small and start-up businesses, also known as payday loans." [Doc. 3 at 4:12-15.] The government failed to connect alleged investor-victim R.G., who made a low interest loan, to the high-yield investment fraud scheme, but the Court decided that the issue was one for trial. [Doc. 132.]

The SSI turned the high-yield investment fraud scheme into three distinct schemes: the R.G. Fraud, the KSQ/J.T. Fraud Scheme, and the Green Circle Fraud. [Doc. 154 at 3-9.] The SSI contains additional allegations related to R.G., but still fails to connect her to the high-yield investment fraud scheme. Instead, these allegations further reveal that R.G.'s 11-year-old loan to Mr. Harbour is entirely separate from both the KSQ/J.T. and Green Circle schemes. [Doc. 199 at 4-5.]

The Response adds new allegations, claiming for the first time that Mr. Harbour hatched a scheme promising investors that he would "prevent creditors or the government from attaching their funds." [Doc. 212 at 18-19.] Worse, as detailed below, the government conjures up yet another scheme at odds with the SSI, which it supports with allegations outside the four corners of the SSI. The government cannot keep reinventing its case theory.

## III. ARGUMENT.

### A. The Court may consider the sufficiency of the forfeiture allegation at the motion to dismiss stage.

The government questions how the Motion differs from the first motion to dismiss regarding R.G., arguing that the Court found that a motion to dismiss tied to the forfeiture counts was premature. [Doc. 212 at 3:1-3.] Forfeiture counts, however, may be dismissed

2

where the government's factual allegations are legally insufficient, which is the case here. S*ee United States v. Grass*, 274 F.Supp.2d 648, 660 (M.D. Pa. 2003) (granting defendants' motion to dismiss criminal forfeiture allegation due to the government's failure to allege elements in the indictment necessary to obtain conviction for violation of 18 U.S.C. § 982(a)(2)(A)).

The cases the government relies upon in opposition to Mr. Harbour's arguments are distinguishable.[1]  The government cites *U.S. v. Palfrey*, 499 F.Supp.2d 34, 48-49 (D.D.C. 2007) for the notion that, "[i]f an indictment is not required to name specific property for later forfeiture, it would be manifestly illogical to require its allegations to specify the factual nexus between the unlawful conduct and the as-yet-unspecified property." Here, however, the property subject to forfeiture has been identified in substantial detail, as the forfeiture allegation identifies monies related to R.G., A.W., D.W., C.H., and P.H. [Doc. 154 at 17-19.]

The government's reliance on *United States v. Dote*, 150 F.Supp.2d 935, 943 (N.D. Ill. 2001) is similarly misplaced because the government identifies the exact amount subject to forfeiture. Mr. Harbour does not dispute the monetary amounts attributed to each individual and/or entity; he disputes the legal sufficiency of certain individuals' inclusion in the forfeiture allegation. This contrasts with *Dote,* where the parties merely disagreed on the calculation of how much the net revenues subject to forfeiture were. *Dote*, 150 F.Supp.2d at 943.

Last, *U.S. v. Chan*, No. CR. 96-350 WBS, 2006 WL 224389, at *2 (E.D. Cal. Jan. 27, 2006) is inapplicable because Mr. Harbour's challenge to the forfeiture allegation is based on evidence appearing on the face of the SSI, unlike in *Chan*, where the defendant disputed facts outside the indictment, including what his parents knew about his money laundering and other illegal activities, the amount of allegedly tainted money that was paid towards a mortgage, when a certain property was purchased, and the fraction of the total value of the properties

---

[1] Mr. Harbour acknowledges that the Court relied upon these cases when it denied the prior motion to dismiss, but respectfully submits that upon further review they are distinguishable.

that the funds from his money laundering scheme constituted, given the appreciation of homes in the region.

### B. The government cannot again modify its alleged scheme(s).

After two indictments detailing a high-yield investment fraud scheme related to payday lending, the government shifts its theory of the case and representation of the scheme. The government's Response – not the SSI – alleges Mr. Harbour "engaged in an investment fraud scheme that had similar hallmarks: (1) he would invest the victims' money in an unspecified and vague investment; (2) he promised high rates of return and/or efforts to prevent creditors or the government from attaching their funds; (3) he provided victims with modest interest payments (sometimes in the form of *Ponzi* payments) or none at all; and (4) their principal investment was never returned." [Doc. 212 at 2:16-21.]

Where the SSI previously alleged a specific high-yield investment fraud scheme involving payday loans, the government now for the first time takes the position that the alleged fraud involved an "unspecified and vague investment." Where the SSI previously alleged a scheme in which Mr. Harbour promised individuals rates of return as high as 20%, the government now adds alleged promises to individuals that he would prevent creditors or the government from attaching their funds, which it had never before alleged.

These newly minted arguments seek to save the forfeiture-only claims related to R.G.'s stale low interest loan to Mr. Harbour from March 2010, well before any alleged scheme began. Having realized the failings of these claims and lack of any connection to the purported scheme at the heart of the SSI, the government changes its theory of the case on the fly to include a scheme it never presented to the grand jury. This is contrary to law and to the most basic principles of justice and fair play.

A court cannot permit a defendant to be tried on charges not made in the indictment. *Stirone v. United States*, 361 U.S. 212, 217 (1960); *United States v. Ward*, 747 F.3d 1184, 1191-92 (9th Cir. 2014) (reversing defendant's conviction based on finding that the district court permitted the jury to convict defendant on aggravated identity theft counts based on

4

conduct not alleged in those counts, namely the identity theft of people not identified in the indictment). A defendant is deprived of his right to have all charges screened by the grand jury if the deviation in proof from the specifics of the indictment affects an essential element of the offense charged. *United States v. Lemire*, 720 F.2d 1327, 1344 (D.D.C. 1983). In *Stirone*, the defendant was indicted and convicted for unlawfully interfering with interstate commerce in violation of the Hobbs Act. *Stirone*, 361 U.S. at 213. The indictment alleged Stirone affected interstate commerce by bringing sand into Pennsylvania from other states. *Id*. at 213-14. The district court permitted the government to also offer evidence of the effect on interstate commerce through Stirone bringing in steel shipments, not just sand. *Id*. at 214.

The Supreme Court held that this was an improper amendment broadening the charges because the indictment could not be fairly read as charging interference with movements of steel. *Id*. at 217. The right to have the grand jury make the charge on its own judgment was a substantial right that could not be taken away with or without court amendment. *Id*. at 219. The Court could not know whether the grand jury would have included in its indictment that commerce in steel had been interfered with. *Id*.

Here, as in *Stirone*, the deviation in purported proof from the specifics of the SSI affects an essential element of the wire and mail fraud counts – namely, the existence of a scheme to defraud. *See United States v. Jinian*, 725 F.3d 954, 960 (9th Cir. 2013) (elements of wire fraud are: (1) the existence of a scheme to defraud; (2) the use of wire, radio, or television to further the scheme; and (3) a specific intent to defraud). The grand jury that returned the SSI only charged Mr. Harbour with allegedly operating a high-yield investment fraud scheme related to payday lending.

Had the grand jury sought to charge Mr. Harbour with operating a scheme related to promising individuals that he would shield their assets from creditors and the government, it would have done so in the first or superseding indictment. Such a scheme is wholly different from the high-yield investment scheme described in the SSI and cannot be essentially "charged" for the first time by the government in a response to a motion to dismiss. Wire and

mail fraud are felonies, and the Fifth Amendment requires that prosecution of such crimes start with an indictment and not, as the government attempts here, an amendment to the indictment. *See Stirone*, 361 U.S. at 215. Allowing the government to proceed with this expanded and materially different scheme opens the door to a jury convicting Mr. Harbour on a charge the grand jury never made against him. The Court must reject the government's attempt to alter and expand the scheme alleged in the SSI.

### C. Mr. Harbour cannot be convicted under the additional alleged scheme.

The government's attempt to amend the SSI by changing the scheme fails for another reason. If a jury found that Mr. Harbour did not engage in a high-yield investment fraud scheme but instead a scheme through which he promised to shield assets from creditors and the government, it could not convict him of any crime because there are no substantive counts in the SSI connected to the latter scheme. [*See* Doc. 154 at 11-17.] The Court must disregard and dismiss the additional alleged scheme because its inclusion renders at least part of the SSI defective for failure to state a crime. *See* Fed. R. Crim. P. 12(b)(3)(B).

### D. The government does not properly allege mail fraud.

As to the mail fraud counts, the government argues that it "does not matter whether the material mailed or transmitted electronically was itself false or deceptive so long as the mails or wires were used as part of the scheme." [Doc. 212 at 4:28 and 5:1 (citing *United States v. Serang*, 156 F.3d 910, 914-15 (9th Cir. 1998) and *U.S. v. Hubbard*, 96 F.3d 1223, 1231-32 (9th Cir. 1996)).] The SSI, however, makes clear that the mailings comprising Counts 11 and 12 could not have been used in furtherance of a scheme because the scheme they were allegedly connected to, the KSQ/J.T. scheme, collapsed in 2014 – almost two years prior to the purportedly fraudulent mailings. [Doc. 154 at 7:18 and 13:1-9.] The government's Response fails to address this incongruency.

After stating that the Court is bound by the four corners of the SSI [Doc. 212 at 2:8-10; citing to *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002)], the government nevertheless attempts to introduce evidence not found in the SSI. According to the

6

government's own cited caselaw authority, the Court cannot consider any of this evidence, yet the Response's discussion of A.W.'s and C.H.'s investments [Doc. 212 at 5:8-22] in support of Counts 11 and 12 does just that.

For example, the government states that "neither A.W. not C.H. were informed of the exorbitant 25% finder's fee that was paid to [Mr. Harbour] upon receipt of their funds." [Doc. 212 at 5:14-16.]  A.W., however, appears nowhere in the SSI's discussion of the alleged KSQ/J.T. scheme involving the 25% finder's fee.  The government argues that "C.H. received a paltry $255 payment from [Mr. Harbour] (by mail) to her account at Liberty Trust for the purpose of keeping the account open . . .." [Doc. 212 at 5:12-13.]  The purpose of this payment does not appear in the SSI and the government cannot now backfill allegations to pass legal muster.

Also, the government claims that "when A.W. asked for her funds to be returned, [Mr. Harbour] initially told her that the funds were pooled and then later claimed they had been transferred to another venture." [Doc. 212 at 5:18-20.]  The government further alleges that "A.W. incorrectly believed her funds were protected by the promissory notes [Mr. Harbour] executed along with promises by [Mr. Harbour] that she would be paid.  [Doc. 212 at 5:20-21.]  Again, none of these allegations appear in the SSI and the Court cannot consider them in ruling on Mr. Harbour's Motion.  *Boren*, 278 F.3d at 914.

Because the SSI alleges that the mailings in Counts 11 and 12 were in furtherance of a scheme that was already completed, the government cannot satisfy a dispositive element of mail fraud and cannot state an offense.  *Hubbard*, 96 F.3d at 1227-28 (9th Cir. 1996).  The Court must dismiss Counts 11 and 12.

### E. Alleged investor-victims A.W., D.W., C.H., and P.H. must be dismissed from the SSI and the forfeiture allegation.

The government argues that its forfeiture allegations are not defective although certain funds were acquired outside the five-year statute of limitations because it "is a well-settled point of law that the government may seek the forfeiture of all proceeds involved in a scheme

or conspiracy." [Doc. 212 at 3:26-28 and 4:1-16 (citing 18 U.S.C. § 981(a)(1)(C)).] However, the Motion argues, and the Response does not refute, that the SSI lays out three distinct schemes, and that the KSQ/J.T. fraud scheme – which encompasses alleged investor victims A.W., D.W., C.H., and P.H. – collapsed in 2014 and is unrelated to the Green Circle scheme. [Doc. 199 at 3-6.] Any substantive counts related to the KSQ/J.T. fraud scheme are precluded by the five-year statute of limitations. *See* 18 U.S.C. § 3282. Absent the required connection between the alleged KSQ/J.T. and Green Circle schemes and any permissible substantive counts related to the KSQ/J.T. scheme, the government cannot allege forfeiture for sums invested in KSQ by A.W., D.W., C.H., and P.H. *See* 18 U.S.C. § 982.

### IV. CONCLUSION.

The government's Response impermissibly attempts to alter and expand the scheme alleged in the SSI and create a situation where Mr. Harbour could be convicted of a charge that was never presented to the grand jury. The real reason for the modification of the scheme is to shore up infirmities in the SSI as it relates to alleged investor-victim R.G. because the government knows it cannot connect her to the alleged high-yield investment scheme in the SSI. The government cannot now backfill the SSI's legal insufficiencies by creating new legal theories. Mr. Harbour requests that the Court grant the Motion and dismiss R.G., A.W., D.W., C.H., and P.H from the Indictment and dismiss Counts 11 and 12.

RESPECTFULLY SUBMITTED this 24th day of February, 2021.

BASKIN PLC

/s/ Alan S. Baskin
Alan Baskin
Mladen Z. Milovic
6263 N. Scottsdale Road, Suite 340
Scottsdale, Arizona 85250
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 24, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing to:

Kevin M. Rapp
Coleen Schoch
U.S. Attorney's Office
40 N. Central Ave., Suite 1800
Phoenix, AZ 85004
*Attorneys for Plaintiff*


 /s/ Cristina McDonald