**BASKIN PLC**
6263 N. Scottsdale Road, Suite 340
Scottsdale, Arizona 85250
Telephone No. 602-812-7977
E-mail: alan@baskin.law
           mmilovic@baskin.law
Name and State Bar No.:   Alan Baskin #013155
                          Mladen Milovic #035560
*Attorneys for Defendant*

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                                Plaintiff,<br><br>vs.<br><br>David Allen Harbour,<br><br>                                Defendant. | Case No.  CR-19-00898-PHX-DLR(DMF)<br><br>**DEFENDANT DAVID ALLEN HARBOUR'S REPLY IN SUPPORT OF MOTION TO CONTINUE TRIAL DATE AND ALL REMAINING PRE-TRIAL DEADLINES**<br><br>**(Expedited Ruling Requested)** |

   The standard for the Court to apply in determining whether to grant a continuance is not whether the request comports with the government's ever-changing theory of a case, its trial strategy or its trial schedule.  Instead, the Court must consider the following: (1) the degree of diligence by the defendant prior to the date the continuance is sought; (2) whether the continuance would serve a useful purpose if granted; (3) whether granting the continuance will cause inconvenience to the court or government; and (4) the amount of prejudice to be suffered by defendant if a continuance is not granted.  *Armant v. Marquez*, 772 F.2d 552, 556 (9th Cir. 1985) These factors overwhelmingly favor a continuance.

   **1.     Mr. Harbour Diligently Obtained and Enforced the Subpoenas.**

   Mr. Harbour began seeking third-party discovery ten months before the presently

scheduled trial date. Because he encountered reluctant witnesses, he had no choice but to initiate and engage in comprehensive motion practice to enforce the subpoenas, culminating with two hearings before the Court. Mr. Harbour could not have been more diligent, nor could he have predicted such a drawn out and protracted process to enforce the subpoenas. Mr. Harbour's constitutional rights to counsel and to prepare his defense should not be trampled on by delay caused solely by a victim and its principals, all of whom fought subpoenas for documents critical to his defense.[1] Mr. Harbour suspects that the government may also have had a hand in these parties refusing to produce documents responsive thereto as well.

### 2. The Court Already Found that the Subpoenaed Documents are Relevant and Necessary to Mr. Harbour's Defense.

The Court's ruled that the discovery sought by the subpoenas was relevant [Doc. 198] and ordered it be produced on a rolling basis beginning April 1 [Doc. 219], mere days before several case-critical deadlines. As Mr. Harbour exhaustively explained in the subpoena enforcement proceeding and the motion to continue, the third-party discovery will allow him to refute the government's dubious allegations in the superseding indictment ("SSI"), and its subsequent inconsistent and amorphous theories of the case. Mr. Harbour cannot do so without more time. The time delay is due to no fault on the part of Mr. Harbour, importantly.

The government argues that a continuance is not warranted because Mr. Harbour already received relevant disclosure and that his Rule 17(C) subpoena "is overly broad by seeking information unrelated to the specific allegation in the [SSI] regarding the fraud perpetrated on PAIF." [Doc. 225 at 1:27-28 and 2:4.] The government further argues that the "documents [Mr. Harbour] is awaiting from the 17(C) subpoenas are of marginal relevance." [Doc. 225 at

---

[1] As the parties who objected to the subpoenas, alleged victim PAIF and its associated principals are responsible for the motion to compel and delay in production of the requested documents. This nullifies the government's contention that the victims' rights will be harmed by a continuance. Further, a victim's statutory right to proceedings free from unreasonable delay cannot infringe on a defendant's due process right to prepare a defense, which would be the outcome if the government has its way. *See United States v. Turner*, 367 F.Supp.2d 319, 334 (E.D.N.Y. 2005); *Jordan v. DOJ*, 173 F.Supp.2d 44, 53 (S.D.N.Y. 2016).

4:8-9.] First, it is not for the government to decide what third-party discovery is relevant to Mr. Harbour's defense. The Court already concluded after exhaustive briefing and two hearings that certain information sought in Mr. Harbour's Rule 17(C) subpoena must be produced because it is relevant to the charges against him and he could not prepare his defense without production of the information and inspection of the same *in advance of trial.* [Doc. 198 at 2:19-23.] Not only did the government fail to gather this critical information during its investigation, it seeks to limit Mr. Harbour in the preparation of his defense and second-guesses this Court. Fortunately, the standard for ruling on a motion to continue is not whether a defense is at odds with the government's view of the facts and evidence. Rather, the Court is bound by "the ends of justice are served" standard found in 18 U.S.C. § 3161(h)(7)(A), which favors a continuance here.

Second, the "disclosures" Mr. Harbour received from the government related to PAIF, P.B., A.P., and LJP Consulting, LLC (collectively, the "Witnesses") are woefully lacking. The government's response points generally to bates-stamped groups of documents it produced, but tellingly fails to identify even one document, such as a borrowing base spreadsheet, supporting documents for the borrowing base calculations or financial projections countering Mr. Harbour's claims that he does not have the detailed information sought by the subpoenas. In essence the government seeks to suppress evidence the Court has already found must be produced.

Third, the government fails to recognize that the Court held the SSI "lacks certain necessary specifics" and ordered the government to provide a bill of particulars by March 22, 2021 that will contain further information regarding Green Circle, PAIF, Canyon Road and other charges in the SSI. [Doc. 222 at 5:1-13.] The bill of particulars will include information that Mr. Harbour, his counsel, and his experts will need to review, analyze, and then assess whether further motion practice and/or third-party subpoenas asking for additional relevant and potentially exculpatory material are necessary. Mr. Harbour is already lacking pivotal

3

information and the additional work that will flow from the bill of particulars makes a May trial date even more untenable.

### 3. A Continuance Will Not Inconvenience the Court or Government.

But for the prosecutor's trial schedule, Mr. Harbour would have sought a continuance to the fall of 2021. It is not his fault the prosecutor now has a three-month trial[2] beginning in August. The government trivializes Mr. Harbour's constitutional rights by trying to force him to trial to accommodate the prosecutor's schedule. The inability to obtain third-party discovery before case-critical deadlines erodes Mr. Harbour's constitutional right to effective assistance of counsel, and would severely prejudice him. A continuance will not inconvenience the government; instead, it will allow the prosecutor more time to prepare for an all-consuming trial and afford him a year-end holiday break followed by time to prepare for this trial.

Mr. Harbour is reluctant to comment as to the inconvenience to the Court, as that is not within his purview. With that said, given the pandemic Mr. Harbour believes it likely the Court has a significant backlog of cases jockeying for trial and can make good use of its calendar in May, particularly given the two-month gap between today and the current trial date. A continuance would alleviate some clutter, with the added likelihood of a trial under far more normal circumstances than in May.

### 4. Mr. Harbour Cannot Put on a Defense Without the Subpoenaed Documents.

Denying Mr. Harbour a continuance would deprive him of the opportunity to put on a full and vigorous defense. The government's allegations related to PAIF boil down to Mr. Harbour manipulating Borrowing Base spreadsheets and misrepresenting financial projections provided to PAIF by altering specific consumer information, such as consumer defaults, payment schedules, and late payments. [Doc. 220 at 3-4.] These serious and complex allegations are not as simple as changing a line item on a document. Defrauding a hedge fund like PAIF would be a sophisticated operation involving many moving parts.

---

[2] *United States v. Lacey, et al.*, CR-19-0422-001-PHX-SMB, also known as the Backpage Case.

The documents, communications, and consumer information necessary to refute the above allegations will likely number in the tens of thousands. It will require hundreds of hours to review and analyze, making preparation for trial impossible by May 18. Contrary to the government's conclusory assertions of what is relevant to Mr. Harbour's defense, the third-party discovery will shed significant light on when, how and on what basis PAIF concluded that the Borrowing Base calculations submitted by Green Circle and allegedly altered by Mr. Harbour were incorrect or misleading.

To refute the allegations regarding the Borrowing Base calculations Mr. Harbour must review the third-party discovery – which should contain Borrowing Bases, financial projections, and critical consumer information – and then reconstruct the Borrowing Bases submitted to PAIF. Only then can he determine what information was submitted to Green Circle and then PAIF, when that information was sent, what was allegedly altered and how it was altered.

5. **To Support its Attempt to Deny Mr. Harbour a Defense and Force the Case to Trial, the Government Yet Again Changes its Theory of the Case on the Fly, Contradicts the SSI, and Ignores and Disputes the Court's Previous Orders.**

Without a temporal limitation the SSI alleges that "[f]rom the beginning of his business arrangement with PAIF, Harbour manipulated the records to his advantage in order to entice PAIF to fund the draw requests." [Doc. 154 at 9:6-7.] According to the SSI, Mr. Harbour's fraud included misrepresentations of "financial projections and Monthly Borrowing Base Certificates regarding the financial condition and operations of Green Circle." [*Id.* at 9:3-5.] Early in its Response, the government claims it will prove that Mr. Harbour "provided false or misleading information regarding the Borrowing Base information to PAIF in order for them to continuously provide funds to Green Circle from on or about August 2015 through the fall of 2016." [Doc. 225 at 2:18-21.] None of these allegations suggest a stopping point in August 2015; to the contrary they contend that the alleged PAIF scheme *started* in August 2015.

5

When it wishes to force Mr. Harbour to trial, however, the government conveniently pivots, speaks out of both sides of its mouth and argues for the first time that the alleged PAIF fraud "is in relation to a discrete point in time and is relevant to a wire initiated on August 11, 2015." [Doc. 225 at 3:24-26.] It was not for Mr. Harbour to speculate that the government would change its tune after he sought evidence that would reveal flaws in its case. Rather, he was and is entitled to rely on the SSI. Should Mr. Harbour's review of the subpoenaed documents prove to the contrary, he will file a motion in limine to preclude evidence from after August 11, 2015, which he will fully expect the government not to oppose; if anything it should stipulate. For now, however, Mr. Harbour is entitled to get to the bottom of things, which is exactly what this Court previously ordered.

In addition, to support the PAIF allegations, the government relies entirely on Mr. Harbour's assistant L.P's interview (as opposed to PAIF's and/or Green Circle's officers and principals). L.P.'s proffered testimony is speculative, and not based on any documents, because they have never been produced. In other words, the government's only evidence for the allegedly fraudulent transfer is L.P.'s hearsay testimony about documents no one has ever seen. Absent the underlying documents, Mr. Harbour cannot test L.P.'s testimony.

Similarly, even if the government intends to introduce a yet-unknown Borrowing Base certificate and supporting documents, along with as-yet disclosed financial projections that allegedly resulted in the $1.1 million PAIF transfer, Mr. Harbour still must obtain the compelled third-party discovery to verify the accuracy or lack thereof and all communications associated with the transfer between PAIF and Green Circle, because PAIF could not have funded the $1.1 million to Green Circle who then funded Mr. Harbour's entity based on a single email and spreadsheet from L.P

Last, the government misleadingly states that the PAIF allegations against Mr. Harbour "resulted in a lawsuit filed in Arizona District Court" and cites to *FRS GC Corp v. Oak Tree Management LLC, et al.*, Case No. CV-17-02348-DGC ("*FRS*"). The implication is that Mr. Harbour would have received the information he seeks in the *FRS* case. What the government

6

left out is that Judge Campbell dismissed the lawsuit after finding that P.B., the control person of PAIF (who is also a felon), collusively invoked the Court's jurisdiction in bringing the lawsuit. *See FRS*, Case No. 2:17-cv-02348-DGC, Doc. 67. The parties never reached the merits and Mr. Harbour never got the discovery he now seeks. The government's attempt to introduce a dismissed civil lawsuit serves no purpose.

### 6. The Government Fails to Address Mr. Harbour's Need for Exculpatory Subpoenas Related to Canyon Road.

The government fails to address, and thereby concedes, Mr. Harbour's argument that a continuance is warranted to obtain information regarding Canyon Road Holdings, LLC ("Canyon Road") and the alleged investor-victims that loaned money to it. [Doc. 220 at 7-8.] Because Mr. Harbour had no control over Canyon Road and was not a signer on the bank accounts, he does not have access to any tax returns, bank statements, financial information, or communications between the alleged investor-victims and Canyon Road. Mr. Harbour also requires the government's bill of particulars to more fully understand the allegations against him related to Canyon Road and craft subpoenas to identify specific exculpatory material. Based on the resistance Mr. Harbour encountered in obtaining information pursuant to the third-party subpoenas issued in July 2020, he cannot expect to obtain responsive materials before a May trial date, much less the final exhibit and witness list disclosure deadline.

### CONCLUSION

Mr. Harbour diligently sought discovery he needs to put on a defense. Through no fault of his own, that process took 8 months, and even today, two months before trial, he still does not have any documents. None of the government's arguments alter this reality, or that Mr. Harbour does not know how many he documents he will receive or when the production will conclude. He cannot be ready for trial, nor does the government have any right to speculate and presume to the contrary as a tactic to prevent Mr. Harbour from putting on his defense.

Mr. Harbour asks only for an opportunity to receive and review the documents and incorporate in them his defense as he sees fit. He cannot do that, comply with the existing case

deadlines and be ready for a May trial. Mr. Harbour respectfully requests the Court to continue the trial date currently set for May 18, 2021 until no earlier than January 19, 2022, as it would serve the ends of justice.

RESPECTFULLY SUBMITTED this 19th day of March, 2021.

BASKIN PLC

/s/ Alan Baskin
Alan Baskin
Mladen Milovic
6263 N. Scottsdale Rd., Suite 340
Scottsdale, AZ 85250
*Attorneys for Defendant*

# CERTIFICATE OF SERVICE

I hereby certify that on March 19, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing to:

Kevin M. Rapp
Coleen Schoch
U.S. Attorney's Office
40 N. Central Ave., Suite 1800
Phoenix, AZ  85004
*Attorneys for Plaintiff*

/s/ Cristina McDonald