GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP
Arizona State Bar No. 014249
Email: Kevin.Rapp@usdoj.gov
COLEEN SCHOCH
Georgia State Bar No. 366545
Email: Coleen.Schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00898-PHX-DLR (DMF) |
| Plaintiff, | |
| v. | **UNITED STATES' REPLY TO DEFENDANT'S RESPONSE TO EX PARTE PETITION TO REVOKE DEFENDANT HARBOR'S RELEASE PENDING TRIAL [Doc. 273] AND MOTION FOR DETETION PENDING TRIAL** |
| David Allen Harbour, | |
| Defendant. | |

**INTRODUCTION AND SUMMARY**

This Court should find that Defendant David Allen Harbour has violated several conditions of his release, including probable cause to engage in witness tampering and should be detained pending trial.

*First*, Harbour has failed to rebut the allegations that he indirectly contacted MB and RT in an effort to influence their testimony in violation of both his condition not to commit a state, local and federal offense (witness tampering) and to contact victims. *Second*, Harbour has failed to explain why he did not seek the approval of pretrial services, in violation of his release conditions, to engage in numerous transactions exceeding $1000.00.

*Third*, Harbour has yet to rebut the solicitation of Kenneth Bobrow ("Bobrow") to invest $141,000 into a residence for Harbour's benefit in violation of his condition not to solicit investors for any investment. This transaction is also relevant because it involved the use of a false gift letter provided to a lender, among other issues. *Fourth and importantly*, Harbour has not provided explanation of the source of the funds involved in various transactions exceeding $1000. In light of these numerous release violations, there is no combination of conditions that will protect the community and Harbour should remain detained pending the March, 2022 trial date.

## LAW AND ARGUMENT

### A. Harbour indirectly contacted and attempted to tamper with victim MB.

Harbour fails to rebut the United States' allegation that there is clear and convincing evidence that he indirectly contacted MB. In addition, there is probable cause that he attempted to tamper with victim MB in violation of 18 U.S.C. § 1512(b)(1) by attempting to persuade him into signing a false declaration in exchange for $1,000,000. Bobrow has confirmed that he was directed by Harbour to contact MB in effort to get him to sign a declaration avowing that he was not a victim. (Ex. 18).[1] His contacts with MB are corroborated by both a recorded phone call, a voicemail, and call logs. (Exs. 8-11). These contacts were further corroborated by Bobrow's wife, Victoria Bobrow.[2]

In an attempt to refute these allegations, Harbour emphasizes exchanges between his counsel (Baskin) and MB's counsel (Davidson) *after* November 10, 2021 as evidence that they were reaching an agreement on the return of $1 million. (Mot. at 2-5). By this point, however, MB had already alerted investigating agents to the violative contact by Bobrow and was actively assisting agents to corroborate this contact. MB agreed to record phone calls with Bobrow and provided agents a recorded voicemail left by Bobrow.

---

[1] Exhibit number refers to exhibits that have been provided to this court in advance of the revocation hearing. When citing to an exhibit that was referenced in a previously filed pleading the docket number will be included.

[2] Victoria Bobrow is Kenneth Bobrow's wife and was interviewed by investigating agents on December 28, 2021.

- 2 –

His attorney also agreed to provide email exchanges between Harbour's attorneys. (*See* Doc. 267; Ex. G) Despite the representation that the $1 million was readily available, MB rejected the million-dollar offer by not signing the proposed declaration that falsely represented that MB was not a victim of Harbour's fraud. As this Court knows, defense counsel attempted to conceal the details of the declaration by falsely labeling the declarations as "work product". (Doc. 283) [3] Following counsel's failure to entice MB to sign a false declaration he withdrew from further representation of Harbour. In sum, Harbour has violated his release conditions by contacting MB, attempting to influence his testimony, and failing to advise pretrial services officer Gretchen White (White) about a transaction in excess of $1000 ($1,000,000) that was apparently available to pay MB.

**B.  Harbour has violated his release conditions by indirectly contacting victim RT.**

Harbour has also violated his release conditions with his interactions with RT. His recitation of the events resulting in RT signing a declaration avowing that he was no longer a victim of Harbour's fraud are just false. Importantly, Bobrow *never* invested $750,000 on behalf of Harbour as represented in Defendant's motion. (Mot. at 6) Bobrow is adamant that he invested only $250,000 that was not meant as a satisfaction for Harbour's debt to RT. (*Id.*) According to Bobrow, Harbour told him that Harbour invested $500,000 of his *own* money. [4] Unfortunately, Baskin is the sole witness on these discussions with RT as he inexplicably failed to insist that RT retain an attorney. The United States was notified that Baskin would testify at revocation hearing when Harbour had his initial appearance on the revocation petition but apparently that strategy has now been abandoned. In any event, Bobrow contacted RT to make an investment that Harbour believed benefitted him.

---

[3] Attorneys for both MB and CH independently contacted investigating agents alerting them to Harbour's efforts at influencing their client's testimony. They indicated that Harbour's counsel was unwilling to provide them with drafts of the declarations but instead read the drafts during telephonic or web meetings. (*See* Doc. 267; Exs. E & K)

[4] Harbour's payment of fund to various victims is a separate violation of his release conditions that will be addressed in more detail. *See*, *arg. supra*, ¶ D.

Harbour presented to Bobrow that he made the additional $500,000 investment with his own funds. Regardless if this was a true or false statement to Bobrow, Harbour violated his release conditions by conducting a transaction over $1,000 with his own funds or solicited another party to provide the $500,000 in investment funds that he did not have. In either situation, he did so without vetting the transaction(s) with White.

In addition, Harbour has included a number of emails to support the exchanges between RT, Baskin and Bobrow. (Doc. 273; Exs. 14-29)[5] In addition to the lack of foundation supporting the authenticity and completeness of these emails there are additional reasons to be skeptical of their provenance. During the interview of Victoria Bobrow, she advised agents that she was concerned that Harbour had used her phone without her permission to send texts to RT posing as Bobrow. On the morning of December 28, 2021, as Victoria was gathering records related to Harbour, she noticed the text messages on her phone. She opined that during a trip to the family vacation home in Flagstaff, the Harbour family accompanied the Bobrows to the residence, where Harbour would have an opportunity to use Victoria's phone without her permission. She had never sent any texts to RT and, indeed, didn't even know him. She surmised that it is possible that Harbour used her phone to send texts posing as Bobrow.

In addition, Bobrow provided Harbour an iPad for his use. This would have given Harbour the opportunity to send emails that appeared to come from Bobrow. In short, this may account for the fact that Bobrow believes that he invested $250,000 into HHL without any connection to Harbour's previous investment activity with RT. In any event, without a witness providing foundation for emails and texts between RT and Bobrow this Court

---

[5] The United States has advised defense counsel that it would object to the admission of these emails at the revocation hearing as it is unclear how counsel intended to provide foundation for their admission without a witness. Defense Counsel has provided a declaration from Baskin's paralegal (Christina McDonald) that purports to authenticate exhibits 1-44. (*See* Defense Ex. 52) This declaration does not satisfy a foundational requirement as it conflates the business records exception (FRE 803(6)) with the rule against hearsay (FRE 802). *See Monotype Corp. v. Int'l Typeface Corp.*, 43 F.3d 443, 450 (9th Cir. 1994) (holding that emails are not automatically admissible under the business records exception because e-mail is less of "systematic business activity than computer-generated business records").

should not consider these exhibits.

**C. Harbour violated the condition to seek investors for any investment.**

Harbour has not rebutted the purchase of the Georgia residence where he and his wife solicitated $141,000 from Bobrow so that the home could be purchased and importantly, they could reside there. As noted previously a false gift letter was used during this transaction. (Ex. 16) This is a clear violation of the term that prohibits him soliciting investors for any investment.

**D. Harbour violated his release conditions by failing to seek approval to provide monies exceeding $1000.**

The exchange with CH's counsel is relevant for a violation of Harbour's release conditions involving the disclosure of transactions to White exceeding $1000. Harbour's counsel contacted Hill's counsel (Phil Hantel, Esq.) in an effort to cajole her into signing a false declaration representing that she was not a victim of Harbour's fraud. What is important about this transaction is that Harbour never sought approval from White to engage in these transactions exceeding $1000. Harbour's counsel represented that there was $81,000 available to pay CH with a vague promise that she would receive $500,000 at a later date. (Doc. 267; Ex K) Again, as this Court knows, Harbour's counsel attempted to conceal this false declaration by erroneously labeling it "work product".

Importantly, Harbour has not only failed to rebut the allegations that he sought approval for numerous transactions exceeding $1,000 (all for his benefit) but he provides no explanation where he received monies for the following transactions:

- MB: $1,000,000
- CH: $81,000 available and additional $500,000 at a later date.
- DW and AW: $108,000 and $112,000, respectively.
- RT/HHI investment: $500,000

Because Harbour has no source of his own funds it is likely that he is engaging in the proverbial "robbing Peter to pay Paul." In short, Harbour's silence on the source of this money is deafening.

**II. Harbour should be Detained Pending Trial.**

A. Legal Standard

It is clear that Harbour has violated an array of release conditions and should be detained pending trial. Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release." Upon the government's motion to revoke a release order, such as the instant motion, "[a] judicial officer may issue a warrant for the arrest of a person charged with violating a condition of release." 18 U.S.C. § 3148(b). Once before the Court,

> [t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer – (1) finds that there is – A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release; and
> 2) finds that (A) based on the factors set forth in section 3142(g) . . . , there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
> (B) the person is unlikely to abide by any condition or combination of conditions of release." *Id*.

Accordingly, this Court, should consider the factors in 18 U.S.C. § 3142(g) when evaluating whether to detain the defendant.

Significantly, "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *Id*. (emphasis added). Here, this rebuttal presumption should be triggered by the defendant's violation of 18 U.S.C. § 1512(b)(1), on pretrial release as detailed above. Moreover, a U.S. District Court Judge Doulas L. Rayes found probable cause that Harbour had violated 18 U.S.C. §1512 based on the United States Ex Parte Petition to Revoke that did not include recorded calls and voicemails, interviews of Bobrow and Victoria Bobrow, corroborating phone logs and other financial documents.

**B. Discussion**

Harbour should be detained pending trial because he has committed serious violations of his release conditions that put the public at risk. As discussed above, there is probable cause to believe that Harbour violated 18 U.S.C. § 1512 while on pre-trial release, and clear and convincing evidence that he violated other conditions of his pre-trial release. Accordingly, this Court should consider the factors set forth in 18 U.S.C. § 3142(g) to evaluate whether, based on these factors, there is no condition or combination of conditions that will assure that he will not pose a safety to the community. The factors are (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Each of these factors support detention. In the alternative, as the defendant's conduct has shown, he should be detained because he is unlikely to abide by any condition or combination or conditions of release.

First, the particular facts of this case – the nature and circumstances of the offense charged – are uniquely disturbing. Harbour engaged in a fraudulent scheme by failing to disclose material facts to numerous investors, namely, that he was diverting their investment to pay his own personal expenses, that he was under investigating by the Federal Trade Commission, that he was paying himself a hefty 25% finder's fee, his previous investments were failures, that his associates (Joel Tucker) was under investigation by the FBI for fraud, that he was using subsequent investors funds to pay early investors, among other misrepresentations.

Second, the weight of the evidence against Harbour is overwhelming, including financial records that demonstrate a diversion of funds for his own personal expenses, numerous examples of living an unsustainable lavish lifestyle including chartering private planes, expensive restaurants and hotels, luxury suites for sporting events, multi-million-dollar condominiums, expensive clothes, etc. Importantly, he also has a long track record of failed investments that were never disclosed to unwitting and, in many cases,

unsophisticated investors.

*Third*, Harbour's history and characteristics demonstrate a flagrant disregard for the rule of law that implicates the fourth factor – the seriousness of the defendant's threat to the safety of the community.  In *United States v. Manafort, Jr.* the Court of Appeals for the District of Columbia, citing the District Court's conclusions on danger noted that, "The court reasoned that the witness-tampering charges indicate that Appellant poses a danger to the safety of the community through "harm to the administration of justice; harm to the integrity of the courts. While these risks are "abstract," the court explained, the charges represent "a corrupt attempt to undermine the integrity and truth of the fact-finding process upon which our system of justice depends." *Id*. Moreover, the potential harm relates to the "danger that the defendant will commit another crime of any nature while he is on release." *Id*. Weighing "the nature of allegations in the superseding indictment and the evidence supplied in support of the government's motion ... and the clear impact the statements had on the recipient, who (similar to the instant case) reported them to the prosecution as an attempt to suborn perjury."  897 F.3d 340 (DC Cir. 2018).

Here, Harbour has engaged in an astonishing effort to influence witness testimony by dangling money (not his own) to influence the testimony of victims in a pending federal criminal case.  The timing of Harbour's efforts to tamper with witnesses is important. His entreaties come nearly two and half years after indictment, following the rejection of a plea offer, and the certainty that the case will be resolved by a jury trial scheduled in March 2022. The conditions imposed by this court was clear as to what victims Harbour could not directly or indirectly contact. (Doc. 17) It is noteworthy that Harbour has numerous other victims that have lost money to him over the years but his efforts to "pay" victims only included those that were referenced in the superseding indictment.

As a result, Harbour poses a danger if released that cannot be ameliorated with a combination of conditions. *United States v. LaFontaine*, 210 F.3d 125, 134-35 (2d Cir. 2000) (rejecting the argument that "attempts to influence the testimony of [witnesses] does not constitute the type of danger to the community that would support detention"); *United*

*States v. Millan,* 4 F.3d 1038, 1048 (2d Cir. 1993) (holding that a general threat of witness tampering may justify pretrial detention); *United States v. Gamble,* 2019 WL 6877755, at *6 (D.D.C. Dec. 17, 2019) ("[O]bstruction of justice does pose a serious danger to the community as contemplated under Section 3142(g)(4) and has been a traditional ground for pretrial detention by the courts, even prior to detention for dangerousness which was instituted by the Bail Reform Act of 1984.") *United States v. LaFontaine,* 210 F.3d 125, 134 (2d Cir. 2000) (citing cases and finding that there do not need to be "violence or threats aimed against witnesses" for there to be danger to community); *see also United States v. Gotti*, 794 F.2d 773, 779 (2d Cir. 1986) (concluding that recent witness tampering in another proceeding was sufficient to justify pretrial detention); *United States v. Young*, No. 2:12-CR-502-TC-DBP, 2013 WL 12131300, at *7 (D. Utah Aug. 27, 2013) ("Danger to community may include non-violent propensities, such as a record of obstruction of justice.").

In the final analysis, Harbour cannot be trusted to comply with the court's orders. There is no combination of conditions that will prevent Harbour from complying with myriad of conditions prohibiting direct or indirect contact victims, soliciting funds for investments or engaging transactions in excess of $1000. *Manafort* 897 F.3d at 345("The District Court reasoned that "[i]t would be entirely impractical and ineffective to demand the surrender of [Manafort's] cell phone or to disconnect his internet service at home," due to the difficulty of monitoring to ensure compliance.")  As noted by Bobrow (who has known Harbour for twelve years and has a business and personal relationship with him) in a moment of stunning candor tells MB that Harbour is "a sociopath…. with no conscience." (Ex. 5)

Dated this 28th day of December, 2021.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Kevin Rapp*
KEVIN M. RAPP
COLEEN SCHOCH
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of December, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and provided a courtesy electronic copy to all registered CM/ECF participants.

*s/ Marjorie Dieckman*
U.S. Attorney's Office