**ASHLEY D. ADAMS, PLC**
Ashley D. Adams, 013732
7502 E. Monterey Way
Scottsdale AZ 85251
Phone:      (480) 219-1366
Facsimile:  (480) 219-1451
aadams@azwhitecollarcrime.com
*Attorney for Defendant*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. CR-19-00898-PHX-DLR (DMF) |
|---|---|
| Plaintiff, | **DECLARATION OF ASHLEY D. ADAMS** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | |

1. My name is Ashley D. Adams, and I am over 18 years old. I have been licensed to practice law in the State of Arizona since 1991.

2. Currently, I am counsel of record for the Defendant in this case, although I recently filed a Motion to Withdraw, or in the Alternative a Motion to Continue the Trial.

3. As part of my preparation for Mr. Harbour's revocation hearing, I interviewed Bart Shea, on three occasions, who I intended to call as a witness at the Defendant's revocation hearing. Upon information and belief, Mr. Shea has consulted with criminal counsel, per Judge Fine's Order, and likely will be unavailable to testify at the revocation hearing. As

such, I submit this Declaration regarding statements that Mr. Shea made to me, as set forth below in the various paragraphs below.

## MR. SHEA AND SHEA CONNELLY'S BACKGROUND

4. Mr. Shea is the sole member of Shea Connelly Development, LLC (hereinafter "Shea Connelly.")

5. Mr. Shea also is the sole member of dozens of LLCs which act as holding companies for Shea Connelly's real estate projects. The LLCs are typically set up after the properties have been purchased.

6. Shea Connelly is a real estate development firm that develops various real estate projects around the Southwest, including assisted living and multi-family projects. Shea Connelly also builds custom homes, and remodels existing homes.

7. Shea Connelly has been in business for approximately 40 years.

## SHEA CONNELLY IS DAVID HARBOUR'S CURRENT EMPLOYER

8. Shea Connelly is also currently Mr. Harbour's employer, although Mr. Harbour is now in custody.

9. Mr. Harbour was hired on September 3, 2019, as Shea Connelly's VP of Projects, and works directly for Mr. Shea.

10. Mr. Harbour is a W-2 employee and receives a salary. His salary is approximately $90,000.

11. Mr. Shea has known David Harbour for approximately 18 years, or in or around 2005 or 2006. Mr. Harbour arranged financing for one of Mr. Shea's projects during this time.

12. Mr. Shea asked Mr. Harbour to find some upscale houses to remodel in the Phoenix and Paradise Valley areas. One of Mr. Shea's investors, Ken Okamoto, was particularly interested in remodeling houses in the Biltmore area.

**THE 2121 GEORGIA PROPERTY**

13. Mr. Harbour was assigned to locate this particular asset. He showed Mr. Shea various homes, including a property located at 2123 E. Georgia Ave. in Phoenix. Mr. Shea thinks that he looked at 4-5 homes, but it might have been more.

14. The Georgia property needed substantial work. It was originally designed as a "Bachelor Pad," with a number of suite-type bedrooms circled around a courtyard. The entire house needs to be remodeled. Mr. Shea noted that he is very good at these types of remodels, because he can keep the "bones" of the house in place. He remarked that the Georgia Property has "good bones," but needed to be completely updated.

15. Mr. Shea believes that the Georgia house will be profitable project, although it will take some time to get everything in place before construction will begin. Plans need to be drawn, and permits need to be obtained.

16. In or around July of 2021, Shea Connelly signed a purchase contract for the Georgia Property.

17. There is currently a mortgage on the property, as well as a seller carryback note.

18. Mr. Harbour has not made any of the mortgage payments for the Georgia Property, nor is his name on the loan. Mr. Shea's company is responsible for the loan.

3

19. As indicated in Mr. Shea's Declaration dated November 4, 2021, the original contract was in the name of Shea-Connelly, but it was changed on the advice of counsel to a new LLC that Mr. Shea formed, 2123 Georgia LLC, just prior to closing.

20. It is common in the real estate industry to create LLCs to purchase property for liability and tax purposes.

21. The Georgia Property was not bought for the benefit of Mr. Harbour, or his family.

22. Mr. Harbour asked if he could live in to house prior to, and possibly during construction, since the house was close to his children's school. Mr. Shea agreed to allow him to do so, rent free.

23. Mr. Shea advised that a number of vacant properties have been burglarized and stripped recently in the Phoenix area. Burglars are interested in stealing copper wire, appliances, and other materials that they can sell for money. It was cheaper for Mr. Shea to have Mr. Harbour and his family stay in the house, rather than to hire a security guard.

24. The Harbour family has paid the utility bills while residing there.

25. Construction has been delayed because Mr. Shea's prime architectural firm lost a draftsman. \There have been some general sketches, but the plans have not been finalized.

26. The Harbour family will be required to move out of the Georgia property, once the house is sold. It was possible that they could live there for part of the construction, but it is unclear whether conditions will permit it (dust, materials, danger on the site, etc.)

27. Mr. Harbour is not going to receive any profits related to the sale.

## MR. SHEA AND KENNY BOBROW'S LONGSTANDING RELATIONSHIP

28. Mr. Shea told me that he has known Kenny Bobrow for over 40 years. Mr. Bobrow is approximately 83 years old. Mr. Shea met Mr. Bobrow back in the 70's when Mr. Bobrow hired Mr. Shea to install cabinets on one of his projects.

29. Mr. Shea has borrowed money from Mr. Bobrow many times related to various projects. Mr. Bobrow has also invested in some of Mr. Shea's companies' projects.

30. Mr. Shea states that Mr. Bobrow still has very sage advice and extensive experience when it comes to real estate. However, Mr. Bobrow's memory is not what it used to be. Sometimes, Mr. Shea has to spend a lot of time going over details with Mr. Bobrow to make sure that he understands what is going on.

31. Mr. Shea said that he always tells Mr. Bobrow to write things down because if he does not, he will forget, or mix things up.

32. Mr. Shea told me that Mr. Bobrow is hard of hearing and often times does not wear his hearing aids. Mr. Shea said that he would be surprised if Mr. Bobrow had recently conducted a conversation on a speaker phone.

33. Mr. Shea knows Mr. Bobrow and Mr. Harbour to be very close. He noted that Mr. Bobrow is like a father figure to Mr. Harbour.

34. I told Mr. Shea that Mr. Bobrow had called Mr. Harbour a "sociopath" during his recorded interview with Mr. Burg. Mr. Shea told me that "Kenny" says things sometimes when he is angry that he does not mean, and later apologizes. Mr. Shea told me that Mr. Bobrow had called Mr. Shea a sociopath once, and later apologized. Mr. Shea said that Mr. Bobrow cares about Mr. Harbour and his family.

## MR. BOBROW'S INVOLVEMENT WITH THE GEORGIA PROPERTY

35. Mr. Shea recalls that he asked Mr. Bobrow if he would be willing to put the down payment for the Georgia Property, which was going to be $100,000. It is not uncommon for Mr. Shea to go to Mr. Bobrow and ask him to loan or invest money in his projects. Mr. Shea has a few "go to" people that he deals with when starting on a project, and Mr. Bobrow is one of them.

36. Mr. Shea recalls that Mr. Bobrow came to his office to discuss the Georgia Property. He believes that they met for approximately two hours. Mr. Shea explained that when the California property known as the "Porta Bella" closed in Santa Clarita, California, Mr. Shea would be able to pay back Mr. Bobrow for the Georgia Property down payment.

37. Mr. Shea stated that he signed a promissory note to Mr. Bobrow for $100,000. Mr. Bobrow brought the check with him to Mr. Shea's office that day for the $100,000.[1] Mr. Shea believes that Mr. Bobrow himself took the down payment to the title company's office.

38. Mr. Shea had two other major projects closing or around the same time as the Georgia Property. As such, cash flow was an issue.

39. Mr. Shea then asked Mr. Bobrow if he was willing to loan additional funds to Shea Connelly to get the Georgia Property closed.

---

[1] My independent review of the relevant documents indicate that the check from Mr. Bobrow was signed on or about July 29, 2021. Defendant intends on introducing the check into evidence.

6

40. Mr. Shea cannot remember if he contacted Timothy Gottschalk directly, or if was Mr. Harbour's idea to contact him. Even though the Gottschalk's are Abby's parents, Mr. Gottschalk has also done accounting for Mr. Shea in the past.

41. Mr. Gottschalk wired money to Mr. Bobrow, on two occasions, in the approximate amount of $200,000. Mr. Bobrow contributed the additional funds required to close, in the approximate amount of $40,000.

42. Mr. Shea entered into an amended promissory note with Mr. Bobrow on or about August 24, 2021, for the amount of $141,591.67, which represented the $100,000.00 deposit referenced above, and the additional costs for closing. (Promissory Note, DF EX 51.) The note was secured by Mr. Shea's project in Santa Clarita, California, and the KOBA I and KOBA II project in Fountain Hills. *Id.*

43. Mr. Shea entered into a promissory note with Tim and Julie Gottschalk on or about August 12, 2021, for the amount of $202,000. (Promissory Note, DF EX 51.) This note was also secured by Mr. Shea's project in Santa Clarita, California and the KOBA I and KOBA II project in Fountain Hills.

44. Mr. Shea told me that these notes were secured by the California and Fountain Hill projects because these projects were going to be completed prior to the remodel of the Georgia Property.

45. These loans were only meant to be short term, in order to get the Georgia project closed.

46. Mr. Shea told me Mr. Harbour will not benefit financially in any way from the sale of the home.

**KENNY BOBROW's GIFT LETTER**

47.  As for Kenny Bobrow's Gift Letter, Mr. Shea reported that the mortgage company, Equitable Mortgage Inc., contacted either Mr. Harbour, or Mr. Shea, and advised that Mr. Bobrow needed to sign a gift letter prior to close. Undersigned limited review of the events leading up to closing seems to indicate that that mortgage company sent a draft gift letter to Shea Connelly for Mr. Bobrow to sign. (*See* E mail from Patrice Land to Frank Madia and D. Harbour, DF EX 57.) Mr. Shea told Mr. Harbour to go to Mr. Bobrow's house and have Mr. Bobrow sign the gift letter. Mr. Shea did not remember if the gift letter was sent to the mortgage company, and if so, who would have sent it. The gift letter is not contained in the title company file produced by the government.

**ADDITIONAL ITEMS THAT MR. SHEA TOLD ME.**

48.  Mr. Shea said that he agreed to give Mr. Harbour an advance on his salary, based on future development fees.

_____
Ashley D. Adams