<table>
<tr><td colspan="2">Fill in this information to identify the case:</td></tr>
<tr><td>Debtor 1</td><td>Santa Clarita, LLC</td></tr>
<tr><td>Debtor 2<br>(Spouse, if filing)</td><td></td></tr>
<tr><td colspan="2">United States Bankruptcy Court for the:  District of Arizona</td></tr>
<tr><td>Case number</td><td>20-12402-MCW</td></tr>
</table>

Official Form 410

# Proof of Claim

04/19

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

| Part 1: | Identify the Claim |
| --- | --- |

**1. Who is the current creditor?**

KB-2011, LLLP

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

KB-2011, LLLP c/o Philip Mitchell
Name
Gammage & Burnham, 40 N. Central Ave
Number        Street
Phoenix          AZ          85004
City                State          ZIP Code

Contact phone 602-256-4411

Contact email pmitchell@gblaw.com

Where should payments to the creditor be sent? (if different)

KB-2011, LLLP c/o Lisa Berges, CW Clarke Ltd
Name
8060 E. Gelding Drive, Suite 108
Number        Street
Scottsdale          AZ          85260
City                State          ZIP Code

Contact phone 480-994-1624

Contact email lisa@clarkecpa.cc

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
            MM  /  DD  / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ _____ 3,063,736.71 . Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

This calculation is through 1/31/21. Charges continue to accrue until paid.

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Monies loaned.

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** Deed of Trust

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_unknown_____

**Amount of the claim that is secured:** $____3,063,736.71

**Amount of the claim that is unsecured:** $___**_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

** Claimant asserts this claim as unsecured to the extent the amount of the claim exceeds the ultimate value of the collateral.

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | **Amount entitled to priority** |

|  |  |  |
|---|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |

\* Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment.

---

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☑ I am the creditor.
☐ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   2 / 8 / 2021
MM / DD / YYYY

X _Kenneth Bobrow_ (signature)
Signature

Print the name of the person who is completing and signing this claim:

| Name | Ken Bobrow | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | c/o Philip Mitchell, Gammage & Burnham, PLC | | |
| Company | | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 40. North Central Avenue, 20th Floor | | |
| | Number          Street | | |
| | Phoenix | AZ | 85004 |
| | City | State | ZIP Code |
| Contact phone | 602-256-4411 | Email | pmitchell@gblaw.com |

# Secured

## Multiple Advance Promissory Note

Maximum Amount:  $1,350,000                                    October 15, 2019

For good value, the undersigned jointly and severally promise to pay to the order of KB-2011, LLLP, an Arizona limited liability company, or its successors ("Holder"), such sums as Holder may now or hereafter loan or advance to or for the benefit of the undersigned in accordance with the terms hereof, to the maximum principal amount of ONE MILLION, THREE HUNDRED AND FIFTY THOUSAND DOLLARS ($1,350,000), with interest at the rate of 20% per annum on the unpaid principal balance, paid in the following manner: one lump sum payment for the entire principal and all then accrued interest shall be made on or before October 15, 2020. Payments not made within five (5) days of the due date shall be subject to a 25% late charge. This note may be prepaid in whole or in part without premium or penalty with all prepayments being applied first to accrued interest and then to the unpaid principal balance.

Borrower shall be entitled to two (2) six (6) month extensions provided that Borrower pays Lender one-half point of the then-outstanding principal balance for each extension prior to the then maturity date.

Advances shall be made as follows:

    $1,000,000 by no later than October 15, 2019;

    $175,000 by no later than October 31, 2019; and

    $175,000 within three business days of request by the undersigned.

This Note is secured by two deeds of trust encumbering certain real property located in Los Angeles County, California.

This Note shall, at the option of Holder, be due and payable upon the:

    1.   Failure of the undersigned to make any payment within 30 days of its due date.

    2.   Breach of any security interest, mortgage or deed of trust, loan agreement, pledge agreement or guarantee granted as collateral security for this note.

    3.   Breach of any loan agreement, security agreement, mortgage or deed of trust, if any, having a priority over any loan agreement, security agreement, mortgage or deed of trust granted, in whole or in part, as collateral security for this note.

    4.   Death or incapacity of Bart Shea or David W. Lund, or dissolution or liquidation of either of the undersigned, or any endorser, guarantor or surety.

    5.   Filing by any of the undersigned of an assignment for the benefit of creditors, bankruptcy or other form of insolvency, or by suffering an involuntary petition in bankruptcy or receivership not vacated within thirty (30) days.

Upon any such default, the principal amount and all accrued but unpaid interest shall bear interest at the rate of 25% per annum.

If this note shall be in default and placed for collection, the undersigned shall pay all reasonable attorneys' fees and costs of collection.

Payments shall be made to such address as may from time to time be designated by Holder.

The undersigned and all other parties to this note, whether as endorsers, guarantors or sureties, shall remain fully bound until this note is paid and waive demand, notice, presentment and protest and all notices thereto and further agree to remain bound, notwithstanding any extension, modification, waiver, or other indulgence or discharge or release of any obligor hereunder or exchange, substitution, or release of any collateral granted as security for this note. No modification or indulgence by Holder shall be binding unless in writing; and any indulgence on any one occasion shall not be an indulgence for any other or future occasion. The rights of Holder shall be cumulative and not necessarily successive. This note shall take effect as a sealed instrument and be governed and enforced in accordance with the laws of the State of Arizona.

SANTA CLARITA, L.L.C., a Delaware limited liability company, by and through its Managing Member, Remediation Financial, Inc.

By: _____
Name: David W. Lunn
Title:  Chief Executive Officer

By: _____
Name: Bart Shea
Title:  President

BERMITE RECOVERY, L.L.C., a Delaware limited liability company, by and through its Managing Member, Remediation Financial, Inc.

By: _____
Name: David W. Lunn
Title:   Chief Executive Officer

By: _____
Name: Bart Shea
Title:   President

## Secured Multiple Advance Promissory Note

Maximum Amount: $690,000                                    December 10, 2019

For good value, the undersigned jointly and severally promise to pay to the order of KB-2011, LLLP, an Arizona limited liability limited partnership, or its successors ("Holder"), such sums as Holder may now or hereafter loan or advance to or for the benefit of the undersigned in accordance with the terms hereof, to the maximum principal amount of SIX HUNDRED AND NINETY THOUSAND DOLLARS ($690,000), with interest at the rate of 20% per annum on the unpaid principal balance, paid in the following manner: one lump sum payment in the amount of each advance and all then accrued interest on such advance shall be made on or before the one-year anniversary of such advance. Payments not made within five (5) days of the due date shall be subject to a 25% late charge. This note may be prepaid in whole or in part without premium or penalty with all prepayments being applied first to accrued interest on all advances and then to the unpaid principal balance of the earliest still outstanding advance.

Borrowers shall be entitled to two (2) six (6) month extensions for the payment of each advance provided that Borrowers pay Lender, prior to the then maturity date for the applicable advance, one-half point of the then-outstanding principal balance of that advance as an extension fee for each extension. Such extension fees will not be applicable to the unpaid principal balance of any advance then outstanding.

Advances shall be made as follows:

$75,000 by no later than December 10, 2019;

$8,000 by no later than December 23, 2019;

$67,000 by no later than January 21, 2020;

$40,000 by no later than March 4, 2020;

$155,000 by no later than April 20, 2020;

$150,000 by no later than May 12, 2020;

$150,000 by no later than May 29, 2020; and

$45,000 by no later than June 12, 2020.

This Note is secured by two deeds of trust encumbering certain real property owned by Borrowers Santa Clarita, LLC and Bermite Recovery, LLC located in Los Angeles County, California..

This Note shall, at the option of Holder, be due and payable upon the:

1.  Failure of the undersigned to make any payment within 30 days of its due date;

2.  Breach of any security interest, mortgage or deed of trust, loan agreement, pledge agreement or guarantee granted as collateral security for this note;

3.  Breach of any loan agreement, security agreement, mortgage or deed of trust, if any, having a priority over any loan agreement, security agreement, mortgage or deed of trust granted, in whole or in part, as collateral security for this note;

6385.54.2279124.1

4. Death or incapacity of Borrowers Bart Shea or David W. Lunn, or dissolution or liquidation of Borrowers Santa Clarita, LLC and Bermite Recovery, LLC, or any endorser, guarantor or surety.

5. Filing by any of the undersigned of an assignment for the benefit of creditors, bankruptcy or other form of insolvency, or by suffering an involuntary petition in bankruptcy or receivership not vacated within thirty (30) days.

Upon any such default, the principal amount and all accrued but unpaid interest shall thereafter bear interest at the rate of 25% per annum.

If this note shall be in default and placed for collection, the undersigned shall pay all reasonable attorneys' fees and costs of collection..

Payments shall be made to such address as may from time to time be designated by Holder.

The undersigned and all other parties to this note, whether as endorsers, guarantors or sureties, shall remain fully bound until this note is paid and waive demand, notice, presentment and protest and all notices thereto and further agree to remain bound, notwithstanding any extension, modification, waiver, or other indulgence or discharge or release of any obligor hereunder or exchange, substitution, or release of any collateral granted as security for this note. No modification or indulgence by Holder shall be binding unless in writing; and any indulgence on any one occasion shall not be an indulgence for any other or future occasion. The rights of Holder shall be cumulative and not necessarily successive. This note shall take effect as a sealed instrument and be governed and enforced in accordance with the laws of the State of Arizona.

Santa Clarita, LLC, a Delaware limited liability company

By Remediation Financial, Inc., an Arizona corporation, its sole member

By: _____
Bart Shea, President

By: _____
David W. Lunn, Chief Executive Officer


_____
Bart Shea individually

Bermite Recovery, LLC, a Delaware limited liability company

By Remediation Financial, Inc., an Arizona corporation, its sole member

By: _____
Bart Shea, President

By: _____
David W. Lunn, Chief Executive Officer


_____
David W. Lunn individually

---

This Secured Multiple Advance Promissory Note restates each of the following:

a.    That certain undated (but signed on or about March 4, 2020) Secured Promissory Note in the principal amount of $40,000; and

b.    That certain Secured Multiple Advance Promissory Note dated April 20, 2020 in the maximum principal amount of $500,000.

Upon the full execution and delivery hereof, those notes shall be deemed of no force or effect.

---

### Exhibit A -- First loan to Santa Clarita

Initial  Annual Rate: 20.0 %

CASH FLOW DATA

| | Event | Date | Amount |
|---|---|---|---|
| 1 | Advance | 10/15/2019 | 1,000,000.00 |
| 2 | Advance | 10/31/2019 | 175,000.00 |
| 3 | Advance | 11/12/2019 | 175,000.00 |
| 4 | Late Charge | 10/20/2020 | 337,500.00 |
| 5 | Rate Change | 11/15/2020 | to 25.0% |

AMORTIZATION SCHEDULE - U.S. Rule (no compounding)

| Date | Advance | Pymt | Interest Accrued | Int. Paid | Prin. Paid | Interest | Balance Due Principal | Total |
|---|---|---|---|---|---|---|---|---|
| 10/15/2019 | 1,000,000.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 1,000,000.00 | 1,000,000.00 |
| 10/31/2019 | 175,000.00 | | 8,767.12 | 0.00 | 0.00 | 8,767.12 | 1,175,000.00 | 1,183,767.12 |
| 11/12/2019 | 175,000.00 | | 7,726.03 | 0.00 | 0.00 | 16,493.15 | 1,350,000.00 | 1,366,493.15 |
| 10/20/2020 | 337,500.00 | | 253,726.03 | 0.00 | 0.00 | 270,219.18 | 1,687,500.00 | 1,957,719.18 |
| 11/15/2020 | | | 24,041.10 | 0.00 | 0.00 | 294,260.28 | 1,687,500.00 | 1,981,760.28 |
| 11/15/2020 | Rate Change: | 25.0% | | | | | | |
| 01/31/2021 | | | 88,998.29 | 0.00 | 0.00 | 383,258.57 | 1,687,500.00 | **2,070,758.57** |
| | 1,687,500.00 | 0.00 | 383,258.57 | 0.00 | 0.00 | | | |

**Exhibit B - Second loan to Santa Clarita**

Initial Interest Rate: 20.0 %

CASH FLOW DATA

|  | Event | Date | Amount |
|---|---|---|---|
| 1 | Advance | 12/10/2019 | 75,000.00 |
| 2 | Advance | 12/23/2019 | 8,000.00 |
| 3 | Advance | 01/21/2020 | 67,000.00 |
| 4 | Advance | 03/03/2020 | 40,000.00 |
| 5 | Advance | 04/20/2020 | 155,000.00 |
| 6 | Advance | 05/12/2020 | 150,000.00 |
| 7 | Advance | 06/01/2020 | 150,000.00 |
| 8 | Advance | 06/21/2020 | 45,000.00 |
| 9 | Late Charge | 10/20/2020 | 172,500.00 |
| 10 | Rate Change | 11/15/2020 | to 25.0 % |

AMORTIZATION SCHEDULE - U.S. Rule (no compounding)

| Date | Advance | Pymt | Interest Accrued | Interest Paid | Principal Paid | -------------- Interest | Balance Due Principal | -------------- Total |
|---|---|---|---|---|---|---|---|---|
| 12/10/2019 | 75,000.00 | | 0.00 | 0.00 | 0.00 | 0.00 | 75,000.00 | 75,000.00 |
| 12/23/2019 | 8,000.00 | | 534.25 | 0.00 | 0.00 | 534.25 | 83,000.00 | 83,534.25 |
| 01/21/2020 | 67,000.00 | | 1,318.90 | 0.00 | 0.00 | 1,853.15 | 150,000.00 | 151,853.15 |
| 03/03/2020 | 40,000.00 | | 3,452.05 | 0.00 | 0.00 | 5,305.20 | 190,000.00 | 195,305.20 |
| 04/20/2020 | 155,000.00 | | 4,997.26 | 0.00 | 0.00 | 10,302.46 | 345,000.00 | 355,302.46 |
| 05/12/2020 | 150,000.00 | | 4,158.90 | 0.00 | 0.00 | 14,461.36 | 495,000.00 | 509,461.36 |
| 06/01/2020 | 150,000.00 | | 5,424.66 | 0.00 | 0.00 | 19,886.02 | 645,000.00 | 664,886.02 |
| 06/21/2020 | 45,000.00 | | 7,068.49 | 0.00 | 0.00 | 26,954.51 | 690,000.00 | 716,954.51 |
| 10/20/2020 | 172,500.00 | | 45,747.95 | 0.00 | 0.00 | 72,702.46 | 862,500.00 | 935,202.46 |
| 11/15/2020 | | | 12,287.67 | 0.00 | 0.00 | 84,990.13 | 862,500.00 | 947,490.13 |
| 11/15/2020 | *Rate Change* | *25.0 %* | | | | | | |
| 01/31/2021 | | | 45,488.01 | 0.00 | 0.00 | 130,478.14 | 862,500.00 | **992,978.14** |
| | 862,500.00 | 0.00 | 130,478.14 | 0.00 | 0.00 | | | |

RECORDING REQUESTED BY:

ORDER NO.:
    APN:  2836-012-011, 2836-012-012,
             2836-012-019 and 2836-012-032

    WHEN RECORDED MAIL TO

Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, Arizona 85004

12/16/2019

2019139809

SPACE ABOVE THIS LINE IS FOR

# Deed of Trust and Assignment of Rents

This Deed of Trust, made this 15th day of October, between Santa Clarita, LLC, a Delaware limited liabilty company, herein called TRUSTOR, whose address is 2055 South Cottonwood Drive, Tempe, Arizona 85282, Chicago Title Insurance Company, a California corporation, herein called TRUSTEE, and KB-2011, LLLP, an Arizona limited liability limited partnership, herein called BENEFICIARY,

Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS to TRUSTEE IN TRUST, WITH POWER OF SALE, that property in Los Angeles County, California, described as:

See "Exhibit A" attached hereto and made a part hereof.

In the event the herein described property, or any part thereof, or any interest therein, is sold, agreed to be sold, conveyed or alienated by the Trustor, or by the operation of law or otherwise, all obligations secured by this instrument, irrespective of the maturity dates expressed therein, as the option of the holder hereof, and without demand or notice, shall immediately become due and payable.

Together With the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

**For the Purpose of Securing:**
1. Performance of each agreement of Trustor herein contained. 2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $1,350,000.00 of executed by Trustor in favor of Beneficiary or order. 3. Payment of such further sums as the then record owner of said

Deed of Trust and Assignment of Rents                                                               Page 1 of 4

property hereafter may borrow from Beneficiary, when evidenced by another note (or notes) reciting it is so secured.

**To Protect the Security of This Deed of Trust, Trustor Agrees:**
(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may: make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure so to pay.

(8) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien of charge thereof.

(9) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as

Deed of Trust and Assignment of Rents                                                                                        Page 2 of 4

"the person or persons legally entitled thereto". Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed (unless directed in such request to retain them).

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledges, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

_____                    _____

Santa Clarita, LLC, a Delaware limited liability          Santa Clarita, LLC, a Delaware limited liability company
company

By:  Remediation Financail, Inc., an Arizona limited      By:  Remediation Financail, Inc., an Arizona limited
liability company                                         liability company

By: _____                         By: _____
Bart Shea, President                                      David W.Lunn, CEO

---

| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |
| --- |

State of <u>Arizona</u>
County of <u>Maricopa</u>

On ____11/19/19____ before me, ____Georganne M Stiles____ a Notary Public, personally appeared <u>Bart Shea and David W. Lunn</u>, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature: _____

Name: ____Georganne M Stiles____
        (Typed or Printed)                          (Seal)

Georganne M. Stiles
Notary Public - Arizona
Maricopa County
My Commission Expires
January 29, 2021

---

Exhibit A

**LEGAL DESCRIPTION**   (VACANT LAND)

Real property in the City of Santa Clarita, County of Los Angeles, State of California, described as follows:

Parcel 1:

That portion of the Rancho San Francisco, in the City of Santa Clarita, described as follows:

Commencing at the Northeast corner of lot 62, of St. John's Subdivision, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county; thence along the Easterly boundary line of Rancho San Francisco North 1 degrees 31'25" East 276.88 feet to a point designated Station No. 6 of Rancho San Francisco; thence North 89 degrees 59'00" West 4,633.40 feet; thence North 25 degrees 23'45" East 433.40 feet; thence North 34 degrees 56'05" West, 703.93 feet to the true point of beginning; thence South 34 degrees 56'05" East 703.93 feet; thence South 25 degrees 23'45" West 433.40 feet; thence South 89 degrees 59'00" East 308.40 feet; thence North 25 degrees 21'00" East 570 feet; thence North 34 degrees 58'50" West 703.93 feet; thence North 35 degrees 40'25" West 1,018 feet more or less, to the Southeasterly right of way line of the Southern Pacific Railroad; thence Southwesterly along the Southeasterly right of way line of the Southern Pacific Railroad to a point which bears North 35 degrees 37'40" West from the true point of beginning; thence South 35 degrees 37'40" East 878.59 feet more or less, to the true point of beginning.

Except all oil, gas and other hydrocarbon substances lying under and beneath said land, together with the right to enter upon said real property to explore, drill for, and extract same, including the right to drill for, and use water necessary in connection with said operations, and right of ingress and egress to, over, across and upon said real property, and the right to erect, and use such tanks, machinery, pipe lines and buildings, as may be necessary in connection with said operations, as reserved in the deed from Julius R. Schwartz, and wife recorded July 23, 1951 in Book 36817 Page 287 Official Records, in the office of the county recorder of said county.

Parcel 2:

That portion of the Rancho San Francisco, in the City of Santa Clarita, described as follows:

Beginning at the most Westerly corner of the parcel of land described in the deed to Los Angeles Powder Company, recorded in Book 43 Page 73 Official Records in the office of the county recorder of said county; thence South 86 degrees 12'40" West 2,925.28 feet to the Easterly line of Tract 1801, as per map recorded in Book 21 Pages 158 and 159 of Maps, in the office of the county recorder of said county; thence Southerly along said Easterly line to the Northerly line of Lot 60, of the St. John Subdivision, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county; thence Easterly along said Northerly line to the Southwesterly line of said parcel of land, described in the deed recorded in Book 43 Page 73 Official Records; thence along said Southwesterly line North 60 degrees 06' west to an angle point therein; thence along said Southwesterly line North 41 degrees 52' West 234.34 feet, and North 19 degrees 19'40" West 343.03 feet to the point of beginning.

Except therefrom an undivided 3 percent of all the oil, gas, other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles Home Company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official

Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas, other hydrocarbon substances and minerals, in and under said land, as granted to Norma Coleman, a widow, by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records in the office of the county recorder of said county.

Parcel 3:

Part of the Rancho San Francisco, in the City of Santa Clarita, and part of St. John's subdivision of the Rancho San Francisco, as per map recorded in Book 196 Page 306 of Miscellaneous Records, in the office of the county recorder of said county, described as a whole as follows:

Beginning at a point distant North 9 degrees 11' West 408.50 feet and North 86 degrees 12'40" East 2,925.58 feet from the Southeast corner of block 15 of Tract 1801, as per map recorded in Book 21 Pages 158 and 159 of Maps, in the office of the county recorder of said county; thence South 19 degrees 19'40" East 343.03 feet to a point on the Northerly line of a road; thence along said Northerly line South 41 degrees 52' East 234.34 feet; thence along said Northerly line South 60 degrees 06'06" East 727.59 feet; thence along said Northerly line South 69 degrees 29' East 1,653.48 feet; thence along said Northerly line North 86 degrees 51' East 153.33 feet; thence North 25 degrees 21' East 1,288.62 feet; thence North 34 degrees 58'50" West 703.93 feet; thence North 35 degrees 40'25" West 894.02 feet, more or less, to a point on the Southerly line of the right of way of the Southern Pacific Railroad; thence following the Southerly line of said right of way to a point Northwesterly 476.48 feet from the point of intersection of the Southwesterly line of the Southern Pacific Railroad right of way, and a radial line through the Southeasterly end of a single bent cattle pass 15 feet long, and described as No. 448-E, in the deed from the Newhall Land and Farming Company, a corporation to R.A. Baker, recorded in Book 4055 Page 131 Official Records, in the office of the county recorder of said county, beneath the said Southerly Pacific Railroad; thence from said point ,South 51 degrees 52' West 839.90 feet to the Southeasterly line of that certain reservoir which was reserved, and excepted in deed recorded in Book 4055 Page 131 Official Records above; thence South 8 degrees 29'50" West 173.49 feet, South 80 degrees 35'10" West 91.10 feet, South 57 degrees 54'10" West 232.35 feet, along said Southeasterly boundary line of aforesaid reservoir; thence South 8 degrees 00'10" West to the point of beginning.

Parcel 4:

That portion of Lot 62 of St. John subdivision, in the City of Santa Clarita, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county, described as follows:

Beginning at the intersection of the West line of said Lot 62, with the Southerly line of the land described in deed·to the Los Angeles powder company, recorded in Book 43 Page 73 Official Records in the office of the county recorder of said county; thence Southerly along said West line to the North line of Tract 1079, as per map recorded in Book 18 Page 155 of Maps, in the office of the county recorder of said county; thence East along the North line of said Tract 1079, to the East line of the Rancho San Francisco; thence Northerly along said East line to the North line of said Lot 62; thence West along the last mentioned North line to the Southeast line of the land described in said deed, recorded in Book 43 Page 73, or in the office of the county recorder of said county; thence Southwesterly and Westerly along the Southeasterly and Southerly boundary of the land described in said deed to the point of beginning.

Except the West 2640 feet of the South 3,300 feet thereof.

Also except the East 641.74 feet of the North 641.74 feet thereof.

Also except therefrom that portion thereof described as beginning at a point on the North line of Lot "A"of Tract 1079, as per map recorded in Book 18 Page 155 of Maps, in the office of the county recorder of said county, distant Easterly thereon 2,640 feet from its intersection with the West line of said Lot 62; thence Northerly and parallel with said West line, 2,617 feet more or less, to the Northerly line of the South 160 acres of that portion of said Lot 62, which is bounded on the South by said North line of said Lot "A", and on the West by a line parallel with the West line of said Lot 62, which passes through a point in said North line of said Lot l☐a|", distant Easterly along said North line 2,640 feet from said West line of Lot 62; thence Easterly along the North line of said South 160 acres, 2,706 feet more or less, to the East line of said Lot 62; thence Southerly along the East line, 2,618 feet more or less, to the North line of said Lot "A" thence West along said North line 2,640 feet more or less to the point of beginning.

Also except therefrom an undivided 3 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles home company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Norma Coleman, a widow by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records in the office of the county recorder of said county.

Parcel 5:

The West 2,640 feet of the South 3,300 feet of Lot 62 of St. John's subdivision of Rancho San Francisco, in the City of Santa Clarita, as per map recorded in Book 196 Page 304, et seq. of Miscellaneous Records, in the office of the county recorder of said county.

Except that portion lying within Lot 48 of Tract 34144.

Also except therefrom an undivided 3 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles home company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Norma Coleman, a widow by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records in the office of the county recorder of said county.

Parcel 6:

That portion of the Rancho San Francisco, in the City of Santa Clarita, described as follows:

Beginning at the point of intersection of the Easterly line of Tract 1801, as per map recorded in Book 21 Pages 158 and 159 of Maps, in the office of the county recorder of said county, with the Northerly line of Lot 60, of the St. John's subdivision, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county; thence Easterly along said Northerly line to the Southwesterly line of the parcel of land described in the deed to the Los Angeles powder company, a corporation recorded in Book 43 Page 73 Official Records, in

the office of the county recorder of said county; thence along said Southwesterly line South 60 degrees 06' East, to an angle point therein; thence along said Southwesterly line South 69 degrees 29' East to the Easterly line of said Lot 60, of the St. John subdivision; thence Southerly along said last mentioned Easterly line to the Southerly line of said Lot 60; thence Westerly along Southerly line to said Easterly line of Tract 1801; thence in a general Northwesterly direction following the boundary lines of said Tract 1801, to the point of beginning.

Except therefrom an undivided 3 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles Home Company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Norma Coleman, a widow by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records.

Parcel 7:

That portion of the Rancho San Francisco, in the City of Santa Clarita, bounded as follows:

On the South by the North line of Lot 62, of St. John subdivision, as per map recorded in Book 196 Pages 304 through 309 of Miscellaneous Records, in the office of the county recorder of said county; on the Northeast by the Southeast prolongation of that certain course having a bearing of North 34 degrees 58'50" West and a length of 703.93 feet as described in deed to Bermite Powder Company, recorded July 23, 1951 as Instrument No. 1546 in Book 36817 Page 285 Official Records in the office of the county recorder of said county.

On the Northwest by the Southeast line of the Bermite Powder Company, as said line now exists being a line described as follows:

Beginning at the intersection of the North line of said Lot 62, with the Southeast line of land described in Book 43 Page 75 Official Records in the office of the county recorder of said county; thence along said Southeast line North 25 degrees 23'45" East 263.02 feet; thence along the South line of section 24, township 2 North, range 16 West, in said Rancho San Francisco South 89 degrees 59' East 308.40 feet; thence North 25 degrees 21' East, 570 feet to an angle point in the line of said land described in Book 36817 Page 285 of said Official Records.

Except 50 percent of all oil, gas, minerals and other hydrocarbon substances lying in and under said land, as reserved in the deed from Domenico Ghiggia and Mary Ghiggia, husband and wife in deed recorded November 22, 1955 in Book 49589 Page 170 of said Official Records.

Parcel 8:

That portion of Lot 62, St. John's subdivision of part of Rancho San Francisco, in the City of Santa Clarita, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county, described as follows:

Beginning at a point on the North line of Lot "A", Tract 1079, as per map recorded in Book 18 Page 155 of Maps, in the office of the county recorder of said county, distant Easterly thereon 2640 feet from its intersection with the West line of said Lot 62; thence Northerly and parallel with said West line 2,617 feet more or less, to a line parallel with the North line of said Lot "A", and distant Northerly therefrom a sufficient distance to include 160 acres of land within the parcel of land herein described; thence Easterly parallel with said North line of Lot "A" to the

Easterly line of said Lot 62, 2,706 feet more or less, to the East line of said Lot 62; thence Southerly along said East line 2,618 feet more or less, to the North line of said Lot "A"; thence West along said North line 2,640 feet more or less, to the point of beginning.

Except therefrom an undivided 3 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles home company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Norma Coleman, a widow by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records in the office of the county recorder of said county.

Parcel 9:

Lot 48 of Tract 34144, in the City of Santa Clarita, as per map recorded in Book 969 Pages 15 to 20 inclusive of Maps, in the office of the county recorder of said county.

APN: 2836-012-011 and 2836-012-012 and 2836-012-019 and 2836-012-032 (vacant land)

This page is part of your document - DO NOT DISCARD



## 20191398005



Pages:
0010

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/16/19 AT 08:52AM**

| | |
|---|---|
| FEES: | 71.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 150.00 |
| PAID: | 221.00 |



**L E A D S H E E T**



201912160650001

00017615920



010367880

**SEQ:**
**01**

DAR - Courier (Upfront Scan)

**THIS FORM IS NOT TO BE DUPLICATED**

Recording Requested By:

KB-2011, LLLP

RE APN: 2836-012-011, 2836-012-012,
2836-012-019 and 2836-012-032


WHEN RECORDED MAIL TO:
Patricia E. Nolan
Gammage & Burnham, PLC
Two North Central Avenue, 15th Floor
Phoenix, Arizona 85004

_____
(Space above this line for Recorder's use only)

### MODIFICATION TO DEED OF TRUST AND ASSIGNMENT OF RENTS

This Modification to Deed of Trust and Assignment of Rents, made February 20, 2020, between Santa Clarita, L.L.C., whose address is 2055 South Cottonwood Drive, Tempe, Arizona 85282, as the Trustor, Chicago Title, a California Corporation, as the Trustee, and KB-2011, LLLP, an Arizona limited liability limited partnership, as the Beneficiary.

Santa Clarita, LLC, Delaware limited liability company ("Trustor"), having executed and delivered that certain Deed of Trust and Assignment of Rents ("Deed of Trust") in favor of KB-2011, LLLP, an Arizona limited liability limited partnership ("Beneficiary"), which Deed of Trust was recorded as Document No. 20191398005 in the Official Records of Los Angeles County, California on December 16, 2019 against the real property that is described in the attached "Exhibit A", hereby adds the following language to the Deed of Trust which was an omission contrary to the intent of the parties of said Deed of Trust:

Beneficiary understands that, on or about January 11, 1999, a document entitled Deed of Trust With Assignment of Rents, Security Agreement and Fixture Filing (Porta Bella Lender, L.L.C.) (hereinafter referred to as the "PBL TD") was recorded as Document No. 99-0031197 in the Official Records of Los Angeles County, California. Beneficiary understands that the maturity date of the obligation for which the PBL TD is security was December 7, 2003; Beneficiary's understanding arises from the Nonrecourse Secured Promissory Note (Porta Bella Lender, L.L.C.), dated December 7, 1998 along with the Receipt for Secured Promissory Note, true and correct copies of which are attached hereto as "Exhibit B", which are evidence of that indebtedness.

Beneficiary further understands that, on or about March 1, 2000, a document entitled Deed of Trust, Assignment of Leases, Assignment of Rents, Security Agreement and Fixture Filing (hereinafter referred to as the "KF TD") was recorded as Document No. 00-0307235 in the Official Records of Los Angeles County, California. Beneficiary understands that the maturity date of the obligation for which the KF TD is security was March 1, 2001; Beneficiary's understanding arises from the Promissory Note between Kennedy Funding, Inc. Santa Clarita, L.L.C. and Bermite Recovery L.L.C., dated February 29, 2000, a true and correct copy of which is attached hereto as "Exhibit C", which is evidence of that indebtedness.

Except as amended hereby, the Deed of Trust is ratified in all respects and remains in full force and effect.

*<< Signatures and notaries on following pages>>*

**TRUSTOR:**

DATED: March **3**, 2020

SANTA CLARITA, L.L.C., a
Delaware limited liability company

By: Remediation Financial, Inc., an Arizona
corporation, its Managing Member

By: _____
    Bart Shea, President

By: _____
    David W. Lunn, CEO

STATE OF ARIZONA  )
                   ) ss.
County of Maricopa   )

On March 3, 2020, before me, Georganne Stiles, a Notary Public, personally appeared Bart Shea
and David W. Lunn who provided me on the basis of satisfactory evidence to be the persons whose
names are subscribed to the within written instrument and acknowledge to me that they executed
the same in their authorized capacities, and that by their signatures on the instrument the person,
on entity upon behalf of which the persons acted, executed the instrument.

**I certify under Penalty of Perjury under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

SIGNATURE _____ (SEAL)

> Georganne M. Stiles
> Notary Public - Arizona
> Maricopa County
> My Commission Expires
> January 29, 2021

\*\*\*\*\*\*\*\*\*\*\*

**BENEFICIARY:**

DATED: March 3rd, 2020

KB-2011, LLLP, an Arizona limited liability
limited partnership

By  KB GP, L.L.C., its general partner

By: _Kenneth Bobrow_
Kenneth Bobrow, its manager

STATE OF ARIZONA )
                 ) ss.
County of Maricopa )

On March 3, 2020, before me, Georganne Stiles, a Notary Public, personally appeared Kenneth
Bobrow who provided me on the basis of satisfactory evidence to be the person whose name is
subscribed to the within written instrument and acknowledge to me that he executed the same in
his authorized capacity, and that by his signature on the instrument the person, on entity upon
behalf of which the persons acted, executed the instrument.

**I certify under Penalty of Perjury under the laws of the State of California that the foregoing
paragraph is true and correct.**

WITNESS my hand and official seal.

SIGNATURE _____ (SEAL)

> Georganne M. Stiles
> Notary Public - Arizona
> Maricopa County
> My Commission Expires
> January 29, 2021

Exhibit A

## LEGAL DESCRIPTION   (VACANT LAND)

Real property in the City of Santa Clarita, County of Los Angeles, State of California, described as follows:

Parcel 1:

That portion of the Rancho San Francisco, in the City of Santa Clarita, described as follows:

Commencing at the Northeast corner of lot 62, of St. John's Subdivision, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county; thence along the Easterly boundary line of Rancho San Francisco North 1 degrees 31'25" East 276.88 feet to a point designated Station No. 6 of Rancho San Francisco; thence North 89 degrees 59'00" West 4,633.40 feet; thence North 25 degrees 23'45" East 433.40 feet; thence North 34 degrees 56'05" West, 703.93 feet to the true point of beginning; thence South 34 degrees 56'05" East 703.93 feet; thence South 25 degrees 23'45" West 433.40 feet; thence South 89 degrees 59'00" East 308.40 feet; thence North 25 degrees 21'00" East 570 feet; thence North 34 degrees 58'50" West 703.93 feet; thence North 35 degrees 40'25" West 1,018 feet more or less, to the Southeasterly right of way line of the Southern Pacific Railroad; thence Southwesterly along the Southeasterly right of way line of the Southern Pacific Railroad to a point which bears North 35 degrees 37'40" West from the true point of beginning; thence South 35 degrees 37'40" East 878.59 feet more or less, to the true point of beginning.

Except all oil, gas and other hydrocarbon substances lying under and beneath said land, together with the right to enter upon said real property to explore, drill for, and extract same, including the right to drill for, and use water necessary in connection with said operations, and right of ingress and egress to, over, across and upon said real property, and the right to erect, and use such tanks, machinery, pipe lines and buildings, as may be necessary in connection with said operations, as reserved in the deed from Julius R. Schwartz, and wife recorded July 23, 1951 in Book 36817 Page 287 Official Records, in the office of the county recorder of said county.

Parcel 2:

That portion of the Rancho San Francisco, in the City of Santa Clarita, described as follows:

Beginning at the most Westerly corner of the parcel of land described in the deed to Los Angeles Powder Company, recorded in Book 43 Page 73 Official Records in the office of the county recorder of said county; thence South 86 degrees 12'40" West 2,925.28 feet to the Easterly line of Tract 1801, as per map recorded in Book 21 Pages 158 and 159 of Maps, in the office of the county recorder of said county; thence Southerly along said Easterly line to the Northerly line of Lot 60, of the St. John Subdivision, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county; thence Easterly along said Northerly line to the Southwesterly line of said parcel of land, described in the deed recorded in Book 43 Page 73 Official Records; thence along said Southwesterly line North 60 degrees 06' west to an angle point therein; thence along said Southwesterly line North 41 degrees 52' West 234.34 feet, and North 19 degrees 19'40" West 343.03 feet to the point of beginning.

Except therefrom an undivided 3 percent of all the oil, gas, other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles Home Company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official

Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas, other hydrocarbon substances and minerals, in and under said land, as granted to Norma Coleman, a widow, by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records in the office of the county recorder of said county.

Parcel 3:

Part of the Rancho San Francisco, in the City of Santa Clarita, and part of St. John's subdivision of the Rancho San Francisco, as per map recorded in Book 196 Page 306 of Miscellaneous Records, in the office of the county recorder of said county, described as a whole as follows:

Beginning at a point distant North 9 degrees 11' West 408.50 feet and North 86 degrees 12'40" East 2,925.58 feet from the Southeast corner of block 15 of Tract 1801, as per map recorded in Book 21 Pages 158 and 159 of Maps, in the office of the county recorder of said county; thence South 19 degrees 19'40" East 343.03 feet to a point on the Northerly line of a road; thence along said Northerly line South 41 degrees 52' East 234.34 feet; thence along said Northerly line South 60 degrees 06'06" East 727.59 feet; thence along said Northerly line South 69 degrees 29' East 1,653.48 feet; thence along said Northerly line North 86 degrees 51' East 153.33 feet; thence North 25 degrees 21' East 1,288.62 feet; thence North 34 degrees 58'50" West 703.93 feet; thence North 35 degrees 40'25" West 894.02 feet, more or less, to a point on the Southerly line of the right of way of the Southern Pacific Railroad; thence following the Southerly line of said right of way to a point Northwesterly 476.48 feet from the point of intersection of the Southwesterly line of the Southern Pacific Railroad right of way, and a radial line through the Southeasterly end of a single bent cattle pass 15 feet long, and described as No. 448-E, in the deed from the Newhall Land and Farming Company, a corporation to R.A. Baker, recorded in Book 4055 Page 131 Official Records, in the office of the county recorder of said county, beneath the said Southerly Pacific Railroad; thence from said point ,South 51 degrees 52' West 839.90 feet to the Southeasterly line of that certain reservoir which was reserved, and excepted in deed recorded in Book 4055 Page 131 Official Records above; thence South 8 degrees 29'50" West 173.49 feet, South 80 degrees 35'10" West 91.10 feet, South 57 degrees 54'10" West 232.35 feet, along said Southeasterly boundary line of aforesaid reservoir; thence South 8 degrees 00'10" West to the point of beginning.

Parcel 4:

That portion of Lot 62 of St. John subdivision, in the City of Santa Clarita, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county, described as follows:

Beginning at the intersection of the West line of said Lot 62, with the Southerly line of the land described in deed to the Los Angeles powder company, recorded in Book 43 Page 73 Official Records in the office of the county recorder of said county; thence Southerly along said West line to the North line of Tract 1079, as per map recorded in Book 18 Page 155 of Maps, in the office of the county recorder of said county; thence East along the North line of said Tract 1079, to the East line of the Rancho San Francisco; thence Northerly along said East line to the North line of said Lot 62; thence West along the last mentioned North line to the Southeast line of the land described in said deed, recorded in Book 43 Page 73, or in the office of the county recorder of said county; thence Southwesterly and Westerly along the Southeasterly and Southerly boundary of the land described in said deed to the point of beginning.

Except the West 2640 feet of the South 3,300 feet thereof.

Also except the East 641.74 feet of the North 641.74 feet thereof.

Also except therefrom that portion thereof described as beginning at a point on the North line of Lot "A"of Tract 1079, as per map recorded in Book 18 Page 155 of Maps, in the office of the county recorder of said county, distant Easterly thereon 2,640 feet from its intersection with the West line of said Lot 62; thence Northerly and parallel with said West line, 2.617 feet more or less, to the Northerly line of the South 160 acres of that portion of said Lot 62, which is bounded on the South by said North line of said Lot "A", and on the West by a line parallel with the West line of said Lot 62, which passes through a point in said North line of said Lot 1□al", distant Easterly along said North line 2,640 feet from said West line of Lot 62; thence Easterly along the North line of said South 160 acres, 2,706 feet more or less, to the East line of said Lot 62; thence Southerly along the East line, 2,618 feet more or less, to the North line of said Lot "A" thence West along said North line 2,640 feet more or less to the point of beginning.

Also except therefrom an undivided 3 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles home company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Norma Coleman, a widow by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records in the office of the county recorder of said county.

Parcel 5:

The West 2,640 feet of the South 3,300 feet of Lot 62 of St. John's subdivision of Rancho San Francisco, in the City of Santa Clarita, as per map recorded in Book 196 Page 304, et seq. of Miscellaneous Records, in the office of the county recorder of said county.

Except that portion lying within Lot 48 of Tract 34144.

Also except therefrom an undivided 3 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles home company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Norma Coleman, a widow by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records in the office of the county recorder of said county.

Parcel 6:

That portion of the Rancho San Francisco, in the City of Santa Clarita, described as follows:

Beginning at the point of intersection of the Easterly line of Tract 1801, as per map recorded in Book 21 Pages 158 and 159 of Maps, in the office of the county recorder of said county, with the Northerly line of Lot 60, of the St. John's subdivision, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county; thence Easterly along said Northerly line to the Southwesterly line of the parcel of land described in the deed to the Los Angeles powder company, a corporation recorded in Book 43 Page 73 Official Records, in

the office of the county recorder of said county; thence along said Southwesterly line South 60 degrees 06' East, to an angle point therein; thence along said Southwesterly line South 69 degrees 29' East to the Easterly line of said Lot 60, of the St. John subdivision; thence Southerly along said last mentioned Easterly line to the Southerly line of said Lot 60; thence Westerly along Southerly line to said Easterly line of Tract 1801; thence in a general Northwesterly direction following the boundary lines of said Tract 1801, to the point of beginning.

Except therefrom an undivided 3 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles Home Company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Norma Coleman, a widow by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records.

Parcel 7:

That portion of the Rancho San Francisco, in the City of Santa Clarita, bounded as follows:

On the South by the North line of Lot 62, of St. John subdivision, as per map recorded in Book 196 Pages 304 through 309 of Miscellaneous Records, in the office of the county recorder of said county; on the Northeast by the Southeast prolongation of that certain course having a bearing of North 34 degrees 58'50" West and a length of 703.93 feet as described in deed to Bermite Powder Company, recorded July 23, 1951 as Instrument No. 1546 in Book 36817 Page 285 Official Records in the office of the county recorder of said county.

On the Northwest by the Southeast line of the Bermite Powder Company, as said line now exists being a line described as follows:

Beginning at the intersection of the North line of said Lot 62, with the Southeast line of land described in Book 43 Page 75 Official Records in the office of the county recorder of said county; thence along said Southeast line North 25 degrees 23'45" East 263.02 feet; thence along the South line of section 24, township 2 North, range 16 West, in said Rancho San Francisco South 89 degrees 59' East 308.40 feet; thence North 25 degrees 21' East, 570 feet to an angle point in the line of said land described in Book 36817 Page 285 of said Official Records.

Except 50 percent of all oil, gas, minerals and other hydrocarbon substances lying in and under said land, as reserved in the deed from Domenico Ghiggia and Mary Ghiggia, husband and wife in deed recorded November 22, 1955 in Book 49589 Page 170 of said Official Records.

Parcel 8:

That portion of Lot 62, St. John's subdivision of part of Rancho San Francisco, in the City of Santa Clarita, as per map recorded in Book 196 Page 304 of Miscellaneous Records, in the office of the county recorder of said county, described as follows:

Beginning at a point on the North line of Lot "A", Tract 1079, as per map recorded in Book 18 Page 155 of Maps, in the office of the county recorder of said county, distant Easterly thereon 2640 feet from its intersection with the West line of said Lot 62; thence Northerly and parallel with said West line 2,617 feet more or less, to a line parallel with the North line of said Lot "A", and distant Northerly therefrom a sufficient distance to include 160 acres of land within the parcel of land herein described; thence Easterly parallel with said North line of Lot "A" to the

Easterly line of said Lot 62, 2,706 feet more or less, to the East line of said Lot 62; thence Southerly along said East line 2,618 feet more or less, to the North line of said Lot "A"; thence West along said North line 2,640 feet more or less, to the point of beginning.

Except therefrom an undivided 3 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Los Angeles home company, a corporation by deed recorded February 10, 1949 as Instrument No. 852 in Book 29022 Page 337 Official Records in the office of the county recorder of said county.

Also except therefrom an undivided 0.5 percent of all the oil, gas other hydrocarbon substances and minerals in and under said land, as granted to Norma Coleman, a widow by deed recorded February 21, 1949 as Instrument No. 802 in Book 29421 Page 270 Official Records in the office of the county recorder of said county.

Parcel 9:

Lot 48 of Tract 34144, in the City of Santa Clarita, as per map recorded in Book 969 Pages 15 to 20 inclusive of Maps, in the office of the county recorder of said county.

APN: 2836-012-011 and 2836-012-012 and 2836-012-019 and 2836-012-032 (vacant land)

# EXHIBIT B

# EXHIBIT B

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT UPON REGISTRATION UNDER SAID ACT OR PURSUANT TO AN APPLICABLE EXEMPTION FROM SAID ACT.  THIS NOTE MAY ONLY BE SOLD OR TRANSFERRED AFTER THE HOLDER HEREOF DELIVERS TO BORROWER AN ACCEPTABLE OPINION OF LEGAL COUNSEL ACCEPTABLE TO BORROWER THAT, AFTER REVIEW OF THE FACTS AND LAW (INCLUDING SAID ACT) WITH RESPECT TO SUCH PROPOSED SALE OR TRANSFER, WHICH FACTS AND LAW SHALL BE DESCRIBED IN DETAIL IN SUCH OPINION, SUCH COUNSEL IS OF THE OPINION THAT THIS NOTE MAY BE SOLD OR TRANSFERRED PURSUANT TO AN APPLICABLE EXEMPTION FROM SAID ACT, WHICH EXEMPTION SHALL BE SPECIFIED.

## NONRECOURSE SECURED PROMISSORY NOTE
(Porta Bella Lender, L.L.C.)

$35,000,000 (U.S.)                                       Santa Clarita, California
                                                        December 7, 1998

FOR VALUE RECEIVED,  SANTA CLARITA, LLC, a Delaware limited liability company  ("Borrower") promises to pay, in lawful money of the United States of America, to the order of PORTA BELLA LENDER, L.L.C., a Delaware limited liability company ("Lender") c/o Robert Turpin, 5151 North 16th Street, Suite 232, Phoenix, Arizona 85016, or at such other place as Lender may designate in writing from time to time, the principal sum of Thirty-Five Million and no/100 Dollars (U.S.) ($35,000,000) or so much thereof as may be advanced and outstanding, together with interest on each advance from the date it is disbursed until the date it is repaid, payable at the rate and in the manner provided below.

1.    Interest.  Interest shall accrue on the unpaid principal balance of this Note at the rate of twenty-five percent (25%) per annum, noncompounded.  Interest shall be payable on January 15, April 15, July 15 and October 15 of each year.

2.    Term and Repayment.  The principal balance evidenced by this Note, together with all accrued and unpaid interest, shall be due and payable on the earlier of (i) five (5) years from the date of this Note, or (ii) ninety (90) days after : (a) receipt by Borrower of the documentation hereinafter described from the DTSC as to all of the Property, and (b) the Property is in a developable condition with all requisite infrastructure, utilities, permitting and the like in place such that a merchant builder can purchase the Property in a superpad condition ((a) and (b) collectively "Regulatory Sign-Off").  The Property has been or is expected to be divided into approximately seven operable units ("OU") to facilitate cost effective and timely remediation.  The Department of Toxic Substance Control ("DTSC") is the State of California environmental regulatory agency which has been authorized to oversee the remediation and restoration of the Property.  Each OU has a unique remedial need and infrastructure requirement. Accordingly, the completion of work in each OU will be determined when all the elements of the work plan have been completed and the Borrower has received documentation from the DTSC that the remedial goals have been attained. The documentation memorializing the DTSC agreement that such goals have been attained with respect to all of the Property will come in the form of a certification document as to each OU or the Property in its entirety, as the case may be, and be created by an authorized agent of the Borrower.  Such documentation from the DTSC covering all of the Property together with the certification document created by an authorized agent of the Borrower as to all of the Property shall together constitute "Regulatory Sign-Off" for the purpose hereof.

3.    Application of Payments.  Payments received from Borrower shall be credited against the sums due hereunder in the following order of priority: (i) interest; and (ii) the balance against principal.

4.    Prepayment.  This Note may be prepaid in whole or in part without penalty or fee at any time or from time to time without advance notice provided any accrued but unpaid interest is fully paid with the principal.

5.    Security.  This Note is secured by a Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing of even date herewith (the "Deed of Trust") on the Property defined  therein  (the "Property").

6.    Default.

6.1    Events of Default.  The occurrence of any one or more of the following shall be an "Event of Default" under this Note:

                                                        Exhibit B, Page 1 of 4

(a)     The failure to make any payment of principal or interest within forty-five (45) business days of when due;

(b)     The failure by Borrower to perform any of the nonmonetary provisions of that certain Loan Agreement of even date herewith between Borrower and Lender within any applicable grace or cure period afforded in such document (the "Loan Agreement"); and/or

(c)     Any Event of Default as defined in the Loan Agreement.

6.2     <u>Remedies</u>.  If there is an Event of Default, then in addition to any other rights or remedies available to Lender, Lender may declare the entire principal balance under this Note together with all accrued and unpaid interest immediately due and payable.

7.     <u>Collection Expenses</u>.  After an Event of Default, Borrower shall reimburse Lender within thirty (30) days of written demand for all reasonable legal fees and other costs and expenses incurred in collecting or enforcing this Note and protecting or realizing upon any collateral. Without limitation, such shall include fees, costs and expenses incurred with or without suit and in any appeal, proceeding, bankruptcy action, state receivership, or in any post-judgment collection proceedings.

8.     <u>Usury Savings Clause</u>.  Notwithstanding any provision herein, the total liability for payments in the nature of interest shall not exceed the applicable limits imposed by any applicable state or federal interest rate laws. If any payments in the nature of interest, additional interest, or other charges made hereunder are held to be in excess of the applicable limits imposed by any applicable state or federal laws, it is agreed that any such amount held to be in excess shall be considered payment of principal and the indebtedness evidenced thereby shall be reduced by such amount, or if such excessive interest exceeds the unpaid principal balance of this Note, such excess shall be refunded to Borrower. All sums paid pursuant to this Note, to the extent permitted by applicable law, shall be amortized, prorated, allocated and spread throughout the full term of this Note until payment in full so that the actual rate of interest is uniform throughout the actual term of this Note or does not exceed the maximum lawful rate throughout the entire term of this Note as appropriate.

9.     <u>Borrower's Waivers</u>.

9.1     Borrower hereby waives diligence, demand, presentment for payment, notice of non-payment, protest and notice of protest, and specifically consent to and waive notice of any renewals or extensions of this Note, whether made to or in favor of Borrower or any person or persons. Borrower expressly waives all right to the benefit of any statute of limitations and any moratorium, reinstatement, marshaling, forbearance, extension, redemption, or appraisement now or hereafter provided by the Constitution or the laws of the United States or of any state thereof, as a defense to any demand against Borrower, to the fullest extent permitted by law.

9.2     Borrower and Lender hereby waive any right to trial by jury with respect to any action or proceeding brought by Borrower, Lender or any other person relating to (i) the indebtedness evidenced by this Note, or (ii) the Loan Agreement.  Borrower hereby agrees that this Note constitutes a written consent to waiver of trial by jury pursuant to the provisions of California Code of Civil Procedure Section 631 and Borrower does hereby constitute and appoint Lender its true and lawful attorney-in-fact, which appointment is coupled with an interest, and Borrower does hereby authorize and empower Lender, in the name, place and stead of Borrower, to file this Note with the clerk or judge of any court of competent jurisdiction as statutory written consent to waiver of trial by jury.

10.     <u>Lender's Rights; No Waiver by Lender</u>.  The rights, powers and remedies of Lender under this Note shall be in addition to all rights, powers and remedies given to Lender under the Loan Agreement, and any other agreement or document securing or evidencing the indebtedness evidenced hereby or by virtue of any statute or rule of law, including, but not limited to, the California Uniform Commercial Code.  All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently in Lender's sole discretion without impairing Lender's security interest, rights or available remedies.  Any forbearance, failure or delay by Lender in exercising any right, power or remedy shall not preclude further exercise thereof, and every right, power or remedy of Lender shall continue in full force and effect until such right, power or remedy is specifically waived in a writing executed by Lender. Borrower waives any right to require the Beneficiary (as defined in the Deed of Trust) to proceed against any person or to pursue any remedy in Lender's power.

11.     <u>Investment Matters</u>.  The Lender hereby represents and warrants to the Borrower the following:

2                              Exhibit B, Page 2 of 4

(a)    Investment Intent.  The Lender is acquiring the Note and the security of the Deed of Trust intended to secure same for investment purposes for its own account only and not with a view to or for sale in connection with any distribution of all or any part of the Note.  No other person will have any direct or indirect beneficial interest in or right to the Note other than the Lender.

(b)    Accredited Investors.  The Lender and its members are "accredited investor(s)" as defined in Regulation D promulgated pursuant to the Securities Act of 1933, as amended.

(c)    Disclosures.  The Lender acknowledges receipt of various informational packages and materials provided by the Borrower relating to the Property and the Borrower.  The Lender acknowledges, agrees and further represents to the Borrower and its members that: (i) it has been furnished with all documents and additional information requested by it for the purpose of evaluating whether the loan represented by this Note is suitable for the Lender, (ii) the Lender has adequate means of providing for current needs and contingencies, has no need for liquidity with respect hereto, and is able to bear the economic risk of a possible loss hereof, (iii) the Lender, by and through it manager or managing member, has extensive experience in business and investments, and (iv) the Lender understands that there are no guarantees or assurances of any economic or other benefits that may accrue by virtue of holding the Note.

12.    Non-Recourse.  The Lender acknowledges and agrees that the Borrower has caused this Note to be made, signed, executed and delivered to the Lender by and through the Borrower's managing members/officers as of the date above written.  Accordingly, such managing members/officers have executed this Note not personally but in their capacities as managing members/officers of the Borrower.  Therefore, the agreements, obligations, undertakings, and liabilities herein imposed upon the Borrower are solely those of the Borrowing entities and not those of the managing members/officers thereof.  By accepting this Note: (i) Lender, except in the case of fraud or misappropriation of funds, agrees to look solely to the Borrower's property given as security pursuant to the Loan Documents and not to any other property of the Borrower or the property and/or assets of any of  the members/officers thereof, and (ii) Lender hereby waives any claim and right to proceed for the enforcement of any of its rights hereunder against any of the members/officers of the Borrower in their personal capacities or otherwise. It is, therefore, the specific intent and design of this Note that the Lender has recourse only against the assets securing the Note and this Note is otherwise intended to be nonrecourse as against any other property of the Borrower or property of the members/officers of the Borrower.

13.    Governing Law.  This Note shall be construed, enforced and otherwise governed by the laws of the State of California.

14.    Binding Effect.  This Note shall bind the successors and assigns of Borrower and all endorsers hereto and shall inure to the benefit of Lender, and Lender's successors and assigns.  This Note may not be modified except by a written agreement signed by both Lender and Borrower.

15.    Time.  Time is of the essence with respect to each and every term and provision of this Note.

16.    Notices.  Any notice to Borrower under this Note shall be to the address for Borrower set forth in the Loan Agreement, and shall be given as provided in the Loan Agreement.

BORROWER:          SANTA CLARITA, LLC, a Delaware limited liability company

BY: Its Managing Member

Remediation Financial Inc., an Arizona corporation

By: _Myla D. Bobrow, President_
Print Name:  Myla D. Bobrow
Title:  President

3                                              Exhibit B, Page 3 of 4

# RECEIPT
## FOR
## SECURED PROMISSORY NOTE

Receipt is hereby acknowledged this 3rd day of January, 1999 of that certain Nonrecourse Secured Promissory Note (Porta Bella Lender, L.L.C.) dated as of December 7, 1998 from Santa Clarita, L.L.C., a Delaware limited liability company, to Porta Bella Lender, L.L.C., a Delaware limited liability company, in the stated principal amount of up to but not exceeding $35,000,000.00

Executed at Phoenix, Arizona  January 4, 1999.

Porta Bella Lender, L.L.C.,
a Delaware limited liability company

By: _____
Robert Turpin
Manager

Exhibit B, Page 4 of 4

THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933 AND MAY NOT BE SOLD OR TRANSFERRED EXCEPT UPON REGISTRATION UNDER SAID ACT OR PURSUANT TO AN APPLICABLE EXEMPTION FROM SAID ACT. THIS NOTE MAY ONLY BE SOLD OR TRANSFERRED AFTER THE HOLDER HEREOF DELIVERS TO BORROWER AN ACCEPTABLE OPINION OF LEGAL COUNSEL ACCEPTABLE TO BORROWER THAT, AFTER REVIEW OF THE FACTS AND LAW (INCLUDING SAID ACT) WITH RESPECT TO SUCH PROPOSED SALE OR TRANSFER, WHICH FACTS AND LAW SHALL BE DESCRIBED IN DETAIL IN SUCH OPINION, SUCH COUNSEL IS OF THE OPINION THAT THIS NOTE MAY BE SOLD OR TRANSFERRED PURSUANT TO AN APPLICABLE EXEMPTION FROM SAID ACT, WHICH EXEMPTION SHALL BE SPECIFIED.

## NONRECOURSE SECURED PROMISSORY NOTE
### (Porta Bella Lender, L.L.C.)

$35,000,000 (U.S.)                                              Santa Clarita, California
                                                                December 7, 1998

FOR VALUE RECEIVED, SANTA CLARITA, LLC, a Delaware limited liability company ("Borrower") promises to pay, in lawful money of the United States of America, to the order of PORTA BELLA LENDER, L.L.C., a Delaware limited liability company ("Lender") c/o Robert Turpin, 5151 North 16th Street, Suite 232, Phoenix, Arizona 850 16, or at such other place as Lender may designate in writing from time to time, the principal sum of Thirty-Five Million and no/100 Dollars (U.S.) ($35,000,000) or so much thereof as may be advanced and outstanding, together with interest on each advance from the date it is disbursed until the date it is repaid, payable at the rate and in the manner provided below.

1.     Interest shall accrue on the unpaid principal balance of this Note at the rate of twenty-five percent (25 %) per annum, noncompounded. Interest shall be payable on January 15, April 15, July 15 and October 15 of each year.

2.     Term and Repayment. The outstanding balance evidenced by this Note, together with all accrued and unpaid interest, shall be due and payable on the earlier of (i) five (5) years from the date of this Note, or (ii) ninety (90) days after : (a) receipt by Borrower of the documentation hereinafter described from the DTSC as to all of the Property, and (b) the Property is in a developable condition with all requisite infrastructure, utilities, permitting and the like in place such that a merchant builder can purchase the Property in a superpad condition ((a) and (b) collectively "Regulatory Sign-Off"). The Property has been or is expected to be divided into approximately seven operable units ("OU") to facilitate cost effective and timely remediation. The Department of Toxic Substance Control ("DTSC") is the State of California environmental regulatory agency which has been authorized to oversee the remediation and restoration of the Property.   Each OU has a unique remedial need and infrastructure requirement. Accordingly, the completion of work in each OU will be determined when all the elements of the work plan have been completed and the Borrower has received documentation from the DTSC that the remedial goals have been attained. The documentation memorializing the DTSC agreement that such goals have been attained with respect to all of the Property will come in the form of a certification document as to each OU or the Property in its entirety, as the case may be, and be created by an authorized agent of the Borrower.   Such documentation from the DTSC covering all of the Property together with the certification document created by an authorized agent of the Borrower as to all of the Property shall together constitute "Regulatory Sign-Off" for the purpose hereof.

3.     Application of Payments. Payments received from Borrower shall be credited against the sums due hereunder in the following order of priority: (i) interest; and (ii) the balance against principal.

4.     Prepayment. This Note may be prepaid in whole or in part without penalty or fee at any time or from time to time without advance notice provided any accrued but unpaid interest is fully paid with the principal.

5.     Security. This Note is secured by a Deed of Trust with Assignment of Rents, Security Agreement and Fixture Filing of even date herewith (the "Deed of Trust") on the Property defined therein (the "Property").

6.     Default.

6.1     Events of Default. The occurrence of any one or more of the following shall be an "Event of Default" under this Note:

(a)     The failure to make any payment of principal or interest within forty-five (45) business days of when due;

(b)     The failure by Borrower to perform any of the nonmonetary provisions of that certain Loan Agreement of even date herewith between Borrower and Lender within any applicable grace or cure period afforded in such document (the "Loan Agreement"); and/or

(c)     Any Event of Default as defined in the Loan Agreement.

6.2    <u>Remedies.</u> If there is an Event of Default, then in addition to any other rights or remedies available to Lender, Lender may declare the entire principal balance under this Note together with all accrued and unpaid interest immediately due and payable.

7.    <u>Collection Expenses.</u> After an Event of Default, Borrower shall reimburse Lender within thirty (30) days of written demand for all reasonable legal fees and other costs and expenses incurred in collecting or enforcing this Note and protecting or realizing upon any collateral. Without limitation, such shall include fees, costs and expenses incurred with or without suit and in any appeal, proceeding, bankruptcy action, state receivership, or in any post-judgment collection proceedings.

8.    <u>Usury Savings Clause.</u> Notwithstanding any provision herein, the total liability for payments in the nature of interest shall not exceed the applicable limits imposed by any applicable state or federal interest rate laws. If any payments in the nature of interest, additional interest, or other charges made hereunder are held to be in excess of the applicable limits imposed by any applicable state or federal laws, it is agreed that any such amount held to be in excess shall be considered payment of principal and the indebtedness evidenced thereby shall be reduced by such amount, or if such excessive interest exceeds the unpaid principal balance of this Note, such excess shall be refunded to Borrower. All sums paid pursuant to this Note, to the extent permitted by applicable law, shall be amortized, prorated, allocated and spread throughout the full term of this Note until payment in full so that the actual rate of interest is uniform throughout the actual term of this Note or does not exceed the maximum lawful rate throughout the entire term of this Note as appropriate.

9.    <u>Borrower's   Waivers.</u>

9.1    Borrower hereby waives diligence, demand, presentment for payment, notice of non-payment, protest and notice of protest, and specifically consent to and waive notice of any renewals or extensions of this Note, whether made to or in favor of Borrower or any person or persons. Borrower expressly waives all right to the benefit of any statute of limitations and any moratorium, reinstatement, marshaling, forbearance, extension, redemption, or appraisement now or hereafter provided by the Constitution or the laws of the United States or of any state thereof, as a defense to any demand against Borrower, to the fullest extent permitted by law.

9.2    Borrower and Lender hereby waive any right to trial by jury with respect to any action or proceeding brought by Borrower, Lender or any other person relating to (i) the indebtedness evidenced by this Note, or (ii) the Loan Agreement. Borrower hereby agrees that this Note constitutes a written consent to waiver of trial by jury pursuant to the provisions of California Code of Civil Procedure Section 63 1 and Borrower does hereby constitute and appoint Lender its true and lawful attorney-in-fact, which appointment is coupled with an interest, and Borrower does hereby authorize and empower Lender, in the name, place and stead of Borrower, to file this Note with the clerk or judge of any court of competent jurisdiction as statutory written consent to waiver of trial by jury.

10.    <u>Lender's Rights; No Waiver by Lender.</u> The rights, powers and remedies of Lender under this Note shall be in addition to all rights, powers and remedies given to Lender under the Loan Agreement, and any other agreement or document securing or evidencing the indebtedness evidenced hereby or by virtue of any statute or rule of law, including, but not limited to, the California Uniform Commercial Code. All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently in Lender's sole discretion without impairing Lender's security interest, rights or available remedies. Any forbearance, failure or delay by Lender in exercising any right, power or remedy shall not preclude further exercise thereof, and every right, power or remedy of Lender shall continue in full force and effect until such right, power or remedy is specifically waived in a writing executed by Lender. Borrower waives any right to require the Beneficiary (as defined in the Deed of Trust) to proceed against any person or to pursue any remedy in Lender's power.

11.    <u>Investment Matters.</u> The Lender hereby represents and warrants to the Borrower the following:

(a)   Investment Intent.  The Lender is acquiring the Note and the security of the Deed of Trust intended to secure same for investment purposes for its own account only and not with a view to or for sale in connection with any distribution of all or any part of the Note.   No other person will have any direct or indirect beneficial interest in or right to the Note other than the Lender.

(b)   Accredited Investors. The Lender and its members are "accredited investor(s)" as defined in Regulation D promulgated pursuant to the Securities Act of 1933, as amended.

(c)   Disclosures.   The Lender acknowledges receipt of various informational packages and materials provided by the Borrower relating to the Property and the Borrower. The Lender acknowledges, agrees and further represents to the Borrower and its members that: (i) it has been furnished with all documents and additional information requested by it for the purpose of evaluating whether the loan represented by this Note is suitable for the Lender, (ii) the Lender has adequate means of providing for current needs and contingencies, has no need for liquidity with respect hereto, and is able to bear the economic risk of a possible loss hereof, (iii) the Lender, by and through it manager or managing member, has extensive experience in business and investments, and (iv) the Lender understands that there are no guarantees or assurances of any economic or other benefits that may accrue by virtue of holding the Note.

12.   Non-Recourse. The Lender acknowledges and agrees that the Borrower has caused this Note to be made, signed, executed and delivered to the Lender by and through the Borrower's managing members/officers as of the date above written.  Accordingly, such managing members/officers have executed this Note not personally but in their capacities as managing members/officers of the Borrower.   Therefore, the agreements, obligations, undertakings, and liabilities herein imposed upon the Borrower are solely those of the Borrowing entities and not those of the managing members/officers thereof. By accepting this Note: (i) Lender, except in the case of fraud or misappropriation of funds, agrees to look solely to the Borrower's property given as security pursuant to the Loan Documents and not to any other property of the Borrower or the property and/or assets of any of the members/officers thereof, and (ii) Lender hereby waives any claim and right to proceed for the enforcement of any of its rights hereunder against any of the members/officers of the Borrower in their personal capacities or otherwise. It is, therefore, the specific intent and design of this Note that the Lender has recourse only against the assets securing the Note and this Note is otherwise intended to be nonrecourse as against any other property of the Borrower or property of the members/officers of the Borrower.

13.   Governing Law. This Note shall be construed, enforced and otherwise governed by the laws of the State of California.

14.   Binding Note. shall bind the successors and assigns of Borrower and all endorsers hereto and shall inure to the benefit of Lender, and Lender's successors and assigns.  This Note may not be modified except by a written agreement signed by both Lender and Borrower.

15.   Time. Time is of the essence with respect to each and every term and provision of this Note.

16.   Notices. tice to Borrower under this Note shall be to the address for Borrower set forth in the Loan Agreement, and shall be given as provided in the Loan Agreement.

BORROWER:          SANTA CLARITA, LLC, a Delaware limited liability company

BY: Its Managing Member

Remediation Financial Inc., an Arizona corporation

By: _____ Bobrow, President
Print Name: Myla D. Bobrow
Title: President

## RECEIPT
## FOR
## SECURED PROMISSORY NOTE

Receipt is hereby acknowledged this 3rd day of January, 1999 of that certain Nonrecourse Secured Promissory Note (Porta Bella Lender, L.L.C.) dated as of December 7, 1998 from Santa Clarita, L.L.C., a Delaware limited liability company, to Porta Bella Lender, L.L.C., a Delaware limited liability company, in the stated principal amount of up to but not exceeding $35,000,000.00

Executed at Phoenix, Arizona January 4, 1999.

Porta Bella Lender, L.L.C.,
a Delaware limited liability company

By: Robert Turpin
Robert Turpin
Manager

# EXHIBIT C

# EXHIBIT C

(best copy available)

# PROMISSORY NOTE

$22,300,000.00                                                                February 29, 2000

        FOR VALUE RECEIVED, the undersigned, SANTA CLARITA, L.L.C., a Delaware limited liability company, and BERMITE RECOVERY, L.L.C., a Delaware limited liability company, each having a mailing address at 1601 North 7th Street, Suite 420, Phoenix, AZ 85006-2210 (individually and collectively, "Borrower"), promise to pay to the order of KENNEDY FUNDING, INC. ("Agent"), as agent for the lenders identified on Schedule A annexed hereto (the lenders identified on Schedule A are hereinafter individually and collectively referred to as "Lender"), at Two University Plaza, Suite 402, Hackensack, New Jersey 07601, or at such other place hereof as the holder (the "Holder") may from time to time designate in writing, the principal sum of TWENTY TWO MILLION THREE HUNDRED THOUSAND DOLLARS ($22,300,000.00), together with interest on the unpaid principal balance thereof, due and payable as set forth below.

        The principal balance outstanding from time to time shall bear interest from and after the date advanced (the "Commencement Date") through March 1, 2001 at the rate of eleven percent (11%) per annum; provided, however, that from and after (i) the Maturity Date (as defined below), whether upon acceleration or otherwise or (ii) the date on which the interest rate hereunder is increased to the Default Rate (as hereinafter defined) as provided herein, interest shall be computed at the Default Rate. As used herein, the term "Default Rate" shall mean a rate of interest of twenty-five percent (25.0%) per annum, but in no event shall the Default Rate be in excess of the Maximum Rate (as hereinafter defined).

        Borrower acknowledges that late payment to Holder of any sums due hereunder will cause Holder to incur costs not contemplated hereunder, the exact amount of which will be impracticable or extremely difficult to ascertain. Such costs include, but are not limited to, processing and accounting charges. Accordingly, if any installment payment or any other sum due from Borrower, including but not limited to the payment due on the Maturity Date, shall not be received by Holder or Holder's designee within five (5) calendar days after it is due, Borrower shall then pay to Holder a late payment charge equal to the lesser of ten percent (10%) of such overdue amount or the maximum amount permitted by applicable law. The parties hereby agree that such late charge represents a fair and reasonable estimate of the costs Holder will incur by reason of late payment. This provision shall not, however, be construed as extending the time for payment of any amount hereunder, and acceptance of such late charge by Holder shall in no event constitute a waiver of Borrower's default with respect to such overdue amount nor prevent Holder from exercising any of the other rights and remedies with respect to such default. In addition, from and after an Event of Default under this Note and until such Event of Default is cured or waived, Holder shall have the right, upon written notice to Borrower, to increase the rate of interest per annum on amounts owing hereunder to the Default Rate and, upon said notice such rate increase shall be effective retroactively as of the date of the Event of Default. This paragraph shall not be construed as an agreement or privilege to extend the due date of any payment, nor as a waiver of any other right or remedy accruing to the Holder by reason of any Event of Default.

        Principal and interest hereunder shall be payable as follows:

(a)     Upon the Commencement Date, Borrower shall pay to Lender the sum of TWO MILLION FOUR HUNDRED FIFTY THREE THOUSAND DOLLARS ($2,453,000.00) constituting a prepayment of interest for the period beginning on and including the Commencement Date and ending on and including March 1, 2001 ("First Year Interest");

(b)     On March 1, 2001 (the "Maturity Date"), the entire unpaid principal balance and other sums due hereunder, shall be due and payable.

Each payment under this Note shall be credited first to collection expenses, next to late charges, next to unpaid interest, and the balance, if any, to the reduction of principal, except that after the occurrence and during the continuance of an Event of Default, all amounts received shall be applied in such order as Holder, in its sole discretion, may elect. The interest on this Note shall be calculated on the basis of a 30-day month and a 360-day year.

This Note may be prepaid in whole or in part at any time, without penalty or premium, it being understood and agreed however that, except as expressly provided hereinbelow, Borrower shall not be entitled, by virtue of any prepayment or otherwise, to a refund of interest or fees (including the Fee), points, charges and the like paid by Borrower to Lender or Holder in connection with the loan evidenced hereby (the "Loan") or for fees and expenses incurred by Holder or Lender in making the Loan, all of which payments shall be retained by Holder and Lender, as the case may be, from and after the date each such payment is made.

In the event that Borrower prepays this Note in whole or in part prior to the first anniversary date of the Commencement Date, provided no Event of Default nor any event which would be an Event of Default with the giving of notice, the passage of time, or both (a "Potential Default") shall then exist, any portion of the First Year Interest which is unearned through the date of such prepayment shall be refunded to the Borrower.  The foregoing provision shall apply equally if a prepayment of this Note results from the payment to Holder prior to the first anniversary date of the Commitment Date of any awards, damages or compensation by reason of any condemnation or eminent domain proceeding of all or any part of the Property (as defined below).

As an inducement to Lender to make the Loan, Borrower has, contemporaneously with the execution of this Note, paid to Lender a fee in the amount of ONE MILLION EIGHT HUNDRED FORTY TWO THOUSAND DOLLARS ($1,842,000.00) (the "Fee"). In the event that Borrower prepays this Note in whole but not part, and provided no Event of Default or Potential Default has existed or shall then exist, a portion of the Fee shall be refunded to Borrower in the following amounts based upon the following circumstances:

(a)     FOUR HUNDRED SEVEN THOUSAND FOUR HUNDRED DOLLARS ($407,400.00) in the event that this Note is prepaid in whole within ninety (90) days after the Commencement Date;

(b)     THREE HUNDRED EIGHTY NINE THOUSAND THREE HUNDRED DOLLARS ($389,300.00) in the event that this Note is prepaid in whole on or between ninety one (91) days after the Commencement Date and one hundred twenty (120) days after the Commencement Date; and

2

(c)     EIGHTEEN THOUSAND ONE HUNDRED DOLLARS ($18,100.00) in the event that this Note is prepaid in whole on or between one hundred twenty one (121) days after the Commencement Date and one hundred fifty (150) days after the Commencement Date.

Borrower and each surety, endorser and guarantor hereof hereby waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, demand for payment, diligence, protest, notice of protest, notice of dishonor and any other notice to the extent permitted by law.   No extension of time for payment of this Note or any installment hereof, no alteration, amendment or waiver of any provision of this Note and no acceptance, release or substitution of any collateral securing Borrower's obligations hereunder or any person or entity liable hereunder shall release, modify, amend, waive, extend, change, discharge, terminate or affect the liability of Borrower or any other person or entity under this Note or relating thereto.

Any forbearance by Holder in exercising any right or remedy hereunder or under any other agreement or instrument in connection with the Loan or otherwise afforded by applicable law, shall not be a waiver or preclude the exercise of any right or remedy by Holder.   The acceptance by Holder of payment of any sum payable hereunder after the due date of such payment shall not be a waiver of the right of Holder to require prompt payment when due of all other sums payable hereunder or to declare a default for failure to make prompt payment.   The acceptance by Holder of the payment of a portion of any installment at any time that such installment is due and payable in its entirety shall neither cure nor excuse the Event of Default caused by the failure to pay the whole of such installment and shall not constitute a waiver of Holder's right to require full payment when due of all future or succeeding installments.

Borrower shall upon demand by Holder (including deduction from the Loan proceeds) reimburse Holder for all out of pocket costs and expenses (including but not limited to attorney fees and costs) incurred by Holder relating to the making and closing of the Loan.   In the event Holder or Lender takes any action to enforce this Note or any of its terms, either through legal proceedings or otherwise, Holder and Lender shall be reimbursed immediately by Borrower for reasonably incurred attorneys' fees (including fees for Holder's and Lender's in-house attorneys) and all other costs and expenses so incurred.   Borrower shall also immediately reimburse Holder and Lender for all attorneys' fees and costs reasonably incurred in connection with the representation of Holder or Lender in any bankruptcy, insolvency, reorganization or other debtor relief or similar proceeding of or relating to Borrower, any guarantor, or the Property (as defined below).   Upon the Commencement Date, Borrower shall pay to Lender, or Lender shall advance out of proceeds of the Loan, the prepaid interest to be paid as set forth above and the Fee (as defined below).  The Fee shall be deemed fully earned and shall be nonrefundable except as expressly provided above.

The following shall constitute defaults under this Note (each an "Event of Default"): (1) Borrower fails to pay on or before the due date, without notice or right to cure, the entire balance of principal or interest under this Note; (2) Borrower fails to pay on or before the due date, any other amount payable hereunder within five business days after notice from Holder; (3) Borrower fails to perform or observe any other term or provision of this Note within ten days after notice from Holder; (4)  the Insurance Policy (as defined below) is canceled for any reason or notice is received by Holder that, for any reason, the Insurance Policy is or will become unenforceable, voidable or void, or will lapse or be subject to cancellation at any time prior to the Maturity Date; (5) there exists an

3

omission of a material fact from or material misrepresentation contained in any agreement, document or certificate of Borrower in connection with the Loan, including but not limited to this Note and the Deed of Trust (as defined below); (6) any default or event of default, after receipt of any required notice and expiration of any applicable cure period, under any agreement, document or certificate of Borrower executed in favor of Holder or Lender relating to the Loan (together with this Note and Deed of Trust, collectively, the "Loan Documents"), including but not limited to the Deed of Trust (as defined below), the Insurance Policy Letter Agreement (as defined below) and the Ancillary Agreement (as defined below); or (7) any breach or default, after receipt of any required notice and expiration of any applicable cure period, in any obligation of Borrower to any party secured by the Property or any portion thereof. Upon the occurrence of an Event of Default hereunder, Holder may, at its election, without notice, declare the entire balance of principal and interest thereon immediately due and payable, together with all costs of collection, including reasonable attorneys' fees and expenses incurred in connection with the protection of, or realization upon, the Property. In addition to the rights and remedies provided herein, the Holder may exercise any other right or remedy in any other document, instrument or agreement evidencing, securing or otherwise relating to the indebtedness evidenced hereby in accordance with the terms thereof, or under applicable law, all of which rights and remedies shall be cumulative.

As set forth in the Deed of Trust and other Loan Documents and except as expressly permitted therein, should Borrower, without the consent in writing of Holder hereof, sell, transfer, or convey, or permit to be sold, transferred, conveyed or encumbered by a land sale contract or in any other manner, Borrower's interest in the property described in the Deed of Trust or other Property, or any portion thereof or interest therein, or should certain other transfers not permitted by the Deed of Trust or other Loan Documents occur, then Holder may declare all sums owing hereunder immediately due and payable. This provision shall apply to each and every sale, transfer, or conveyance, regardless whether or not Holder has consented to, or waived its rights hereunder, whether by action or nonaction, in connection with any previous sale, transfer, or conveyance.

Notwithstanding anything to the contrary contained herein, under no circumstances shall the aggregate amount paid or agreed to be paid hereunder exceed the highest lawful rate permitted under applicable usury law (the "Maximum Rate") and the payment obligations of Borrower under this Note are hereby limited accordingly. If under any circumstances, whether by reason of advancement or acceleration of the maturity of the unpaid principal balance hereof or otherwise, the aggregate amounts paid on this Note shall include amounts which by law are deemed interest and which would exceed the Maximum Rate, Borrower stipulates that payment and collection of such excess amounts shall have been and will be deemed to have been the result of a mistake on the part of both Borrower and Holder, and the party receiving such excess payments shall promptly credit such excess (to the extent only of such payments in excess of the Maximum Rate) against the unpaid principal balance hereof and any portion of such excess payments not capable of being so credited shall be refunded to Borrower.

This Note is secured by, among other things, a separate Deed of Trust, Assignment of Leases, Assignment of Rents, Security Agreement and Fixture Filing of even date herewith executed by each of the entities comprising Borrower (collectively, the "Deed of Trust") encumbering the real and personal property described therein (such property, together with any other property given as security for the Note, is collectively referred to as the "Property"). In addition, in accordance with that certain letter of agreement of even date herewith (the "Insurance Policy Letter Agreement"), Borrower has obtained and delivered to Agent a Lender Environmental Collateral

4

Protection Insurance Policy from Zurich Insurance Company (the "Insurance Policy") covering certain risks as more particularly set forth therein.

Pursuant to that certain ancillary letter of agreement of even date herewith (the "Ancillary Agreement") Borrower has agreed to use due diligence to provide to Agent a Certificate of Compliance relating to that certain Development Agreement between Borrower and the City of Santa Clarita as soon as possible but in any event prior to the Maturity Date.

Borrower hereby agrees to indemnify, defend and hold harmless Holder and Lender from and against any and all claims, loss, cost, damage or expense (including, without limitation, reasonable attorneys' fees) which may be incurred by Holder or Lender in connection with or as a result of any Event of Default or a default (following notice and the opportunity to cure provided for in such document, if any) under any of the Loan Documents.

All payments of principal and interest hereunder are payable in lawful money of the United States of America and shall be made by wire transfer to the account of Agent, pursuant to wiring instructions to be provided to Borrower on the Commencement Date and thereafter from time to time. Whenever payment on this Note shall be stated to be due on a day which is not a business day, such payment shall be made on the next succeeding business day and such extension of time shall be included in the computation of the payment of interest of this Note.

Borrower is hereby prohibited from exercising against Lender (as a group) or Agent, any right or remedy which it might otherwise be entitled to exercise against any one or more (but less than all) of the parties constituting Lender, including, without limitation, any right of deduction, setoff, counterclaim or any defense. Any other claim that Borrower may have arising from or related to the Loan or transaction evidenced by this Note and the other Loan Documents, shall be asserted only against Agent and not against any of the individual parties constituting Lender. The relationship between Borrower, on the one hand, and Agent and/or Lender on the other hand, under this Note is that of borrower and lender, and the Loan and the Loan Documents will in no manner make Lender nor Agent the partner or joint venturer of Borrower.

This Note shall be binding on the parties hereto and their respective legal representatives, successors and assigns. If this Note is transferred in any manner, all rights and provisions herein shall apply with equal effect in favor of any subsequent Holder hereof. As used herein the term "Borrower" shall include the undersigned Borrower and any other person or entity who may subsequently become liable for the payment hereof. The term "Holder" shall include the named Holder as well as any other person or entity to whom this Note or any interest in this Note is conveyed, transferred or assigned. The terms "Agent" and "Lender" shall include the named Agent and Lender, respectively, and any successors or assignees thereof. Holder and Lender shall have the right at any time, without notice to or consent of Borrower or any other party, to sell, assign, transfer, hypothecate, negotiate or grant participations to other persons in all or any portion of the Loan and/or any documents relating thereto, or any of Holder's or Lender's rights or obligations thereunder. In such event, Borrower shall have a direct obligation to each such assignee or participant. All matters which are subject to the approval of Holder or Lender shall also be subject to the approval of all participants in the Loan (except as Holder, Lender and such participants may otherwise agree among themselves). Holder and Lender may, in connection with any sale, transfer, hypothecation or participation or proposed sale, transfer, hypothecation or participation, disclose and deliver copies of to the assignee, transferee, pledgee or participant or proposed assignee,

5

transferee, pledgee or participant any information relating to Borrower or any other party furnished to such Holder or Lender by or on behalf of Borrower or any other party.

This Note shall be construed without any regard to any presumption or rule requiring construction against the party causing such instrument or any portion thereof to be drafted.

All notices required or permitted in connection with this Note will be in writing and will be given at the place and in the manner provided in the Deed of Trust for the giving of notices.

If this Note is executed by more than one person or entity as Borrower, the obligations of each person or entity shall be joint and several. No person or entity will be a mere accommodation maker or surety, but each will be primarily and directly liable. The provisions of the Co-Obligor Addendum attached hereto are incorporated herein and made a part hereof.

No single or partial exercise of any power hereunder or under any other Loan Document shall preclude other or further exercise thereof or the exercise of any other power. The Holder shall at all times have the right to proceed against any portion of the security, including the Property or any portion thereof, held herefor in any such order and in any such manner as Holder may deem fit, without waiving any rights with respect to any other security. No delay or omission on the part of Holder in exercising any right hereunder shall operate as a waiver of such right or of any other right under this Note. The release of any party liable on this Note shall not operate to release any other party liable hereon.

The Loan evidenced by this Note was arranged and negotiated by a real estate broker licensed in the State of California, for which such broker received compensation.

The Loan and the Loan Documents were, in whole or in part, negotiated, executed and delivered in the State of New Jersey and the proceeds of the Loan were disbursed from the State of New Jersey. This Note shall be governed by and construed in accordance with the laws of the State of New Jersey without regard to choice of law consideration. Borrower hereby irrevocably consents to the non-exclusive jurisdiction of the courts of the State of New Jersey and of any federal court located in such State in connection with any action or proceeding arising out of or relating to this Note or the other Loan Documents. Borrower hereby designates CSC Corporation, having an address of 820 Bear Tavern Road, Trenton, New Jersey, as its duly appointed agent to accept service of process within the State of New Jersey on its behalf. Service of process may also be accomplished by other methods allowed by law.

This Note and its provisions may not be changed or terminated orally. A waiver of any term of this Note must be made in writing and will be limited to the express written terms of the waiver.

A determination that any portion of this Note is unenforceable or invalid shall not affect the enforceability or validity of any other provision, and any determination that the application of any provision of this Note to any person or circumstance is illegal or unenforceable shall not affect the enforceability or validity of such provision as it may apply to other persons or circumstances.

6

It is agreed that time is of the essence as to every term, condition and provisions of this Note.

**EACH OF BORROWER, HOLDER AND LENDER (BY THEIR ACCEPTANCE HEREOF) AGREE THAT ANY DISPUTE, SUIT, ACTION OR PROCEEDING, WHETHER IN THE NATURE OF A CLAIM OR COUNTERCLAIM, AND WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE, BROUGHT BY BORROWER, LENDER OR THE HOLDER OF THIS NOTE ON OR WITH RESPECT TO THIS NOTE OR ANY OTHER LOAN DOCUMENT OR THE DEALINGS OF THE PARTIES WITH RESPECT HERETO OR THERETO, SHALL BE TRIED ONLY BY A COURT AND NOT BY A JURY. BORROWER, HOLDER AND LENDER EACH HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH DISPUTE, SUIT, ACTION OR PROCEEDING. FURTHER, BORROWER WAIVES ANY RIGHT IT MAY HAVE TO CLAIM OR RECOVER, IN ANY SUCH SUIT, ACTION OR PROCEEDING, ANY SPECIAL, EXEMPLARY, PUNITIVE, CONSEQUENTIAL OR OTHER DAMAGES OTHER THAN, OR IN ADDITION TO, ACTUAL DAMAGES. BORROWER ACKNOWLEDGES AND AGREES THAT THIS PARAGRAPH IS A SPECIFIC AND MATERIAL ASPECT OF THIS NOTE AND THAT LENDER WOULD NOT EXTEND CREDIT TO BORROWER IF THE WAIVERS SET FORTH IN THIS PARAGRAPH WERE NOT A PART OF THIS NOTE.**

The Maturity Date may be extended two (2) times, each for a one (1) year period, (and the later date applicable to each extension shall then be the "Maturity Date" for purposes of this Note) on the following terms and conditions:

1) Not later than thirty (30) days prior to the original Maturity Date (or prior to the first extended Maturity Date, as applicable), Borrower may request an extension of the Maturity Date from Agent in writing. Such request shall be accompanied by an Insurance Policy endorsement in form and substance satisfactory to Agent, signed by Zurich Insurance Company, irrevocably extending the expiration date of the Insurance Policy to a date that is not earlier than thirty (30) days after the applicable extended Maturity Date or a different insurance policy in form, substance and from an insurance carrier, all satisfactory to Agent in its sole and absolute discretion;

2) There shall exist no act, event or condition which would, with or without the giving of notice, the passage of time or both, constitute an Event of Default hereunder;

3) There shall exist no material adverse change in the condition of the Property encumbered by the Deed of Trust, as determined in Agent's reasonable discretion;

4) Borrower has paid the entire premium payable pursuant to the extended or new Insurance Policy for the applicable policy year or paid to Agent an extension fee equal to the entire premium payable pursuant to the extended or new Insurance Policy as directed by Holder;

5) The principal balance outstanding shall bear interest during any extended period until paid in full at the rate of seventeen percent (17%) per annum instead of eleven percent per annum (11%), except in an Event of Default, in which event the Default Rate shall be applicable, interest being payable in arrears on the first day of each calendar month; and

7

6) Borrower has provided to Holder a Certificate of Compliance relating to that certain Development Agreement between Borrower and the City of Santa Clarita, as described above.

7) In the case of the second extension, Borrower previously extended the Maturity Date in the manner set forth above and fulfilled all of the terms and conditions applicable to such extension.


SANTA CLARITA, L.L.C. a Delaware
limited liability company

By:   Remediation Financial, Inc., an
      Arizona corporation, its Managing
      Member

      By: _Myla D. Bobrow, President_
          Myla D.  Bobrow
      Its:   President


BERMITE RECOVERY, L.L.C., a
Delaware limited liability company

By:   Remediation Financial, Inc., an
      Arizona corporation, its Managing
      Member

      By: _Myla D. Bobrow, President_
          Myla D.  Bobrow
      Its:   President

8

## SCHEDULE A

[LENDERS]

[to be provided]

9

## CO-OBLIGOR ADDENDUM
### [Promissory Note]

This Co-Obligor Addendum ("Addendum") is attached to and made a part of that Promissory Note ("Note") executed by Santa Clarita, L.L.C. and Bermite Recovery, L.L.C. (individually and collectively "Borrower") in favor of Kennedy Funding, Inc., its successors and assigns ("Holder"). Capitalized terms not defined in this Addendum shall be as defined in the Note. To the extent this Addendum is inconsistent with the terms of the Note, this Addendum shall control.

Each Borrower agrees that it is jointly and severally, directly, and primarily liable for payment and performance in full of the obligations under the Note and that such liability is independent of the duties, obligations and liabilities of the other Borrower. The Note and Loan Documents are a primary and an original obligation of each Borrower, and are not the creation of a surety relationship, and are an absolute, unconditional and continuing promise of payment and performance which will remain in full force and effect without respect to future changes and conditions, including any change of law or any invalidity or irregularity with respect to the Loan Documents. Each Borrower acknowledges that the obligations of such Borrower undertaken herein or in other Loan Documents might be construed by a court to consist, at least in part, of the guaranty of obligations of persons other than such Borrower or that each Borrower might be construed, at least in part, to be an accommodation party. Beneficiary shall in no event seek to have either Trustor characterized as a surety or guarantor unless Trustor or any person deriving rights from or succeeding to the liabilities of any Trustor has raised any defense alleging that its obligations are those of a surety or guarantor. In recognition of the foregoing, to the extent that either Borrower is or is determined to be a guarantor or an accommodation party in any respect, each Borrower agrees as follows:

1. **Rights of Holder.** Each Borrower consents that Holder may, and authorizes Holder at any time in its discretion without notice demand and without affecting the indebtedness and liabilities of Borrower hereunder or any other Loan Document to: (i) enter into agreements and renew, extend, amend, modify, waive, restructure, refinance, release, accelerate, or otherwise change the time for payment of, or otherwise change the terms of, the obligations, liabilities and indebtedness to Holder under the Note or the Loan Documents or other agreements secured thereby (collectively, as used in this Addendum, the "Obligations"), including, without limitation, (A) increase or decrease in the Obligations or the rate of interest on the Obligations and (B) any amendment of the Obligations to permit Holder to extend further or additional accommodations in any form, including credit by way of loan, lease, sale or purchase of assets, guarantee, or otherwise, which shall thereupon be Obligations; (ii) accept new or additional documents, instruments, or agreements relative to the Obligations; (iii) consent to the change, restructure or termination of the individual, partnership, corporate or other organizational structure or existence of any Borrower or any other person or entity and correspondingly restructure the Obligations; (iv) accept partial payments on the Obligations; (v) take and hold collateral or additional guaranties for the Obligations and amend, alter, exchange, substitute, transfer, enforce, perfect or fail to perfect, waive, subordinate, terminate, or release any such collateral or guaranties; (vi) apply any collateral, and direct the order and manner of sale thereof as Holder in its sole discretion may determine; (vii) settle, release on terms satisfactory to Holder or by operation of law or otherwise, compound, compromise, collect, or otherwise liquidate the Obligations and/or the

10

collateral or any guaranty therefor in any manner, whether in liquidation, reorganization, receivership, bankruptcy, or otherwise; (viii) release any Borrower or any other person for all or any part of the Obligations; or (ix) assign the Obligations or any rights related thereto in whole or in part.

2.    **Waiver of Defenses.**  To the maximum extent allowed by law, each Borrower waives and agrees not to assert or take advantage of (i) any right to require Holder to proceed against any other Borrower, or any other person or entity, or against any security now or hereafter held by Holder, or to pursue any other remedy whatsoever; (ii) any defense based upon any legal disability of any other Borrower or of any other person or entity or any discharge or limitation of the liability of any other Borrower or of any other person or entity to Holder, or any restraint or stay applicable to actions against any other Borrower or any other person or entity, whether such disability, discharge, limitation, restraint, or stay is consensual, arises by order of a court or other governmental authority, or arises by operation of law or any liquidation, reorganization, receivership, bankruptcy, insolvency or debtor-relief proceeding, or from any other cause, including, without limitation, any defense to the payment of interest, attorneys' fees and costs, and other charges that otherwise would accrue or become payable in respect of the Obligations after the commencement of any such proceeding, it being the intent of the parties that the Obligations shall be determined without regard to any rule of law or order that may relieve Borrower of any portion of such obligations; (iii) setoffs, counterclaims, presentment, demand, protest, notice of protest, notice of non-payment, or other notice of any kind; (iv) any defense based upon the modification, renewal, extension, or other alteration of the Obligations, or the release of any person or entity or collateral; (v) any defense based upon the negligence of Holder, including, without limitation, the failure to record an interest under a deed of trust, the failure to perfect any security interest, or the failure to file a claim in any bankruptcy of any Borrower or of any other person or entity; (vi) any defense based upon a statute of limitations (to the fullest extent permitted by law), and any defense based upon Holder's delay in enforcing this Note or any other agreement; (vii) any defense based-upon or arising out of any defense that any other Borrower may have to the performance of any part of the Obligations; (viii) all rights of subrogation, reimbursement, indemnity and contribution, all rights to enforce any remedy that Borrower may have against any other Borrower or other person or entity, and all rights to participate in any security held by Holder for the Obligations, until the Obligations have been paid and performed in full; (ix) any defense to recovery by Holder of a deficiency after non-judicial sale of real or personal property; any defense based upon the unavailability to Holder of recovery of a deficiency judgment after non-judicial sale of real or personal property; and any defense, to the extent applicable, based upon or arising out of any of Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure or based upon or arising out of Divisions 8 or 9 or other applicable divisions of the California Uniform Commercial Code or based upon any similar or comparable laws under any applicable jurisdiction; (x) any defense based upon the death, incapacity, lack of authority, or termination of existence of, or revocation hereof by, any person or entity, or the substitution of any party hereto; (xi) any defense based upon or related to Borrower's lack of knowledge as to any other Borrower's financial condition; (xii) any defense based upon the impairment of the value of any collateral for the Obligations or the impairment of any subrogation, contribution, indemnity or reimbursement rights that Borrower might have, including any defense or right based upon the acceptance by Holder or an affiliate of Holder of a deed in lieu of foreclosure without extinguishing the Obligations, even if such acceptance destroys,

11

alters, or otherwise impairs subrogation rights of Borrower, the right of Borrower to proceed against any other Borrower for reimbursement, or both; (xiii) any right to designate the application of any sums or property received by Holder (and Borrower acknowledges and agrees that Holder may apply any and all payments or recoveries from Borrower, or from any other Borrower or other person, or realized from any security, in such manner, order and priority as Holder elects); (xiv) any right to revoke this Note or obligations hereunder; and (xv) all defenses based upon suretyship or impairment of collateral, and any right or defense that is or may become available to Borrower by reason of California Civil Code Sections 2787 to and including 2855, 2899 and 3433 or similar or comparable laws under any other applicable jurisdiction.

3.    **Financial Condition.**   Each Borrower acknowledges that Borrower is relying upon Borrower's own knowledge and is fully informed with respect to the other Borrower's financial condition. Borrower assumes full responsibility for keeping fully informed of the financial condition of each other Borrower and all other circumstances affecting each other Borrower's ability to perform its obligations to Holder, and agrees that Holder will have no duty to report to Borrower any information that Holder receives about any other Borrower's financial condition or any circumstances bearing on the any other Borrower's ability to perform all or any portion of the Obligations, regardless of whether Holder has reason to believe that any such facts materially increase the risk beyond that which Borrower intends to assume or has reason to believe that such facts are unknown to Borrower or has a reasonable opportunity to communicate such facts to Borrower.

4.    **Exercise of Subrogation Rights; Subordination.**   Each Borrower agrees that (i) Borrower shall have no right of subrogation, reimbursement or indemnity against any other Borrower or against any collateral provided for the Obligations unless and until all Obligations have been paid in full; (ii) Borrower shall have no right of contribution against any other Borrower or any other person unless and until all Obligations have been paid in full; and (iii) until Borrower is permitted by the terms of this paragraph to exercise any such right of subrogation, reimbursement, indemnity or contribution, Borrower hereby waives any right to enforce any remedy that Borrower might have against any other Borrower or any other person, or to participate in any security held by Holder for the Obligations, by reason of any one or more payments by Borrower under this Note or other Loan Documents.

5.    **Impairment of Subrogation and Other Rights/Other Waivers.**

       (a)       Upon the occurrence of any Event of Default or other default under or with respect to the Obligations or by Borrower hereunder (but without limiting Holder's right to resort to any other remedy it may have in respect thereof, under or with respect to the Obligations or this Note or otherwise), Holder may elect to foreclose non-judicially or judicially against any real or personal property security it holds for the Obligations or any part thereof, or exercise any other remedy against any other Borrower or against any security. No such action by Holder shall release or limit the liability of Borrower, even if the effect of that action is to deprive Borrower, or any other person, of the right or ability to collect reimbursement from or to assert subrogation, indemnity, or contribution rights against any other Borrower or against any other person for any sums paid to Holder, or to obtain reimbursement by means of any security held by Holder for the Obligations.

12

(b)      Each Borrower waives all rights and defenses arising out of an election of remedies by Holder, even though that election of remedies, such as nonjudicial foreclosure with respect to security for the Obligations, has destroyed Borrower's rights of subrogation and/or reimbursement against any other Borrower by the operation of Section 580d of the California Code of Civil Procedure or otherwise or any similar or comparable laws of another jurisdiction.

(c)      Each Borrower waives all rights and defenses that Borrower may have because the Obligations are secured by real property. This means, among other things: (1) Holder may collect from Borrower without first foreclosing on any real or personal property collateral pledged by any other Borrower or otherwise; and (2) if Holder forecloses on any real property collateral (a) the amount of the Obligations may be reduced only by the price for which that collateral was sold at the foreclosure sale, even if the collateral is worth more than the sale price; and (b) Holder may collect from Borrower even if Holder, by foreclosing on the real property collateral, has destroyed any right Borrower may have to collect from any other Borrower. This is an unconditional and irrevocable waiver of any rights and defenses Borrower may have because the Obligations or portions thereof are secured by real property. These rights and defenses include, but are not limited to, any rights or defenses based upon Sections 580a, 580b, 580d, or 726 of the California Code of Civil Procedure.

6.      **Waiver of Notice.** Each Borrower waives demand, protest and notice of any kind, including, without limiting the generality of the foregoing, notice of the existence, creation of incurring of new or additional indebtedness or of any action or nonaction on the part of any Borrower, or any other person or entity, in connection with the Obligations.

7.      **Application of Payments.** With or without notice to Borrower, Holder in its sole discretion, at any time and from time to time, in such manner and upon terms as it considers best, may (i) apply any and all payments or recoveries from any Borrower or any endorser, or realized from any security, in such manner, order and priority as Holder elects, to any or the Obligations or other indebtedness to Holder whether or not such indebtedness is secured hereby or is otherwise secured or is due at the time of such application; and (ii) refund to any Borrower any payment received by Holder upon any of the Obligations, and payment of the amount refunded shall be fully owing hereunder.

8.      **Continuance of Note.** The liability of each Borrower hereunder and the other Loan Documents shall be reinstated and continued in effect, and the rights of Holder shall continue, with respect to any payment or performance of the Obligations that Holder shall thereafter be required to restore or return or is avoided in connection with the bankruptcy, insolvency or reorganization of any Borrower, or otherwise, all as though such payment or performance had not occurred.

9.      **Independent Obligations.** Each Borrower's obligations under this Note and other Loan Documents are independent of those of any other Borrower and of the obligations of any other person. Holder may bring a separate action against each Borrower without proceeding against any other Borrower, any other person or entity, or any security held by Holder, and without pursuing any other remedy.

**(Signatures to follow on next page)**

13

**Borrower:**

**Santa Clarita, L.L.C., a Delaware limited liability company**

By:  Remediation Financial, Inc., an Arizona corporation, its Managing Member

By: _Myla D. Bobrow, President_
    Myla D. Bobrow
Its:   President


**Bermite Recovery, L.L.C., a Delaware limited liability company**

By:  Remediation Financial, Inc., an Arizona corporation, its Managing Member

By: _Myla D. Bobrow, President_
    Myla D. Bobrow
Its:   President

14

This page is part of your document - DO NOT DISCARD

## 20200477598







Pages:
0035

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

04/30/20 AT 01:06PM

| | |
|---|---:|
| FEES: | 139.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| SB2: | 75.00 |
| PAID: | 214.00 |



LEADSHEET



202004302870019

00018043571



010616804

SEQ:
02

DAR - Mail (Intake)



THIS FORM IS NOT TO BE DUPLICATED

RECORDING REQUESTED BY
KB-2011, LLP

AND WHEN RECORDED MAIL DOCUMENT TO:

NAME Patricia E. Nolan
Gammage & Burnham, PLC
STREET ADDRESS
Two N. Central Avenue, 15th Floor

CITY, STATE &
ZIP CODE Phoenix, Arizona 85004

04/30/2020

*20200477598*

**SPACE ABOVE FOR RECORDER'S USE ONLY**

Modification to Deed of Trust and Assignment of Rents

**Title of Document**

Pursuant to Senate Bill 2 – Building Homes and Jobs Act (GC Code Section 27388.1), effective January 1, 2018, a fee of seventy-five dollars ($75.00) shall be paid at the time of recording of every real estate instrument, paper, or notice required or permitted by law to be recorded, except those expressly exempted from payment of recording fees, per each single transaction per parcel of real property. The fee imposed by this section shall not exceed two hundred twenty-five dollars ($225.00).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer subject to the imposition of documentary transfer tax (DTT).

☐ Exempt from fee per GC 27388.1 (a) (2); recorded concurrently "in connection with" a transfer of real property that is a residential dwelling to an owner-occupier.

☑ Exempt from fee per GC 27388.1 (a) (1); fee cap of $225.00 reached.

☐ Exempt from the fee per GC 27388.1 (a) (1); not related to real property.

**THIS COVER SHEET ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION**
**($3.00 Additional Recording Fee Applies)**