# LOAN AGREEMENT

THIS LOAN AGREEMENT made this _13_ day of _Aug u t_ 2021, by and among **REMEDIANTION FINANCIAL INC.**, an Arizona Corporation ("RFI"), **SHEA-CONNELLY DEVELOPMENT, LLC** an Arizona Limited Liability Company ("SCD"), **SCD CONSTRUCTION LLC** an Arizona Limited Liability Company, ("SCD Construction"), **BART SHEA**, an Individual, ("BS") and **DAVID LUNN**, an Individual ("DL"), (collectively the BORROWER"), and **DEEL INVESTMENTS, LP**, a Missouri Limited Partnership, (collectively the "LENDER"). Each of the BORROWERS and the LENDER is sometimes referred to herein individually as a "Party" and together as the "Parties".

## ARTICLE 1
## COMMITMENT; ADVANCES

1.1. Loan. Subject to the terms, provisions, conditions, covenants and agreements of the "Transaction Documents" (as defined in Section 2.1 below) Lender herby agrees to lend Borrower, and Borrower hereby agrees to borrow from Lender and repay to the Lender, the principal amount of up to EIGHT MILLION AND 00/100 DOLLARS ($8,000,000.00), pursuant to advances to be made by the Lender to the Borrower from time to time in Lenders sole and absolute discretion, plus all interest accrued thereon and all other charges herein permitted (hereinafter called the "Loan"). The obligation of the Borrower to repay the Loan shall be evidenced by a Promissory Note (the "Note") of the Borrower substantially in the form attached hereto as Exhibit A, payable to the order of the Lender for the amount of the Loan with interest, and other charges, as provided in the Note.

1.2. Term and Repayment. The Loan shall be repaid by Borrower as provided in the Transaction Documents, and specifically in the Note. Notwithstanding the foregoing, all principal, interest, other charges and Additional Payments due to Lender from Borrower under this Note and the other Transaction Documents shall be immediately due and payable by Borrower to Lender on the earlier of the sale of the Santa Clarita, CA Porta Bella Project per the Purchase and Sale Agreement between Prologis LP a Delaware Limited Liability Partnership ("Prologis") and/or Waymark Development LLC a California Limited Liability Company and Borrower (the "PSA"), but no later than January 31, 2022, unless the PSA is extended by the Court (the "Loan Maturity Date"). Borrower will provide this Agreement and the Transaction Documents along with a written payoff to the Title Company that is handling the close of escrow on the PSA and instruct the Title Company to distribute the PSA proceeds to Lender per this Agreement and the Transaction Documents. As of the date of this Agreement the Title Company listed in the PSA is First American Title Insurance Company, 101 Mission Street, Suite 1600 San Francisco CA, 94105 (the "Title Company"). Borrower will promptly notify Lender if the Title Company is changed. All payments shall be applied first to permitted charges, then to accrued interest, then to principal, then to Additional Payments. All

Initials BS

payments will be made promptly to Lender at 2601 Callaway Ridge, Joplin, MO 64804, or such other place or method as Lender may later designate in writing. Subject to the maximum outstanding principal balance permitted under the Loan set forth in Section 1.4, any amounts repaid may be re-loaned pursuant to additional advances (as defined in Section 1.4 below) at the Lender's sole and absolute discretion.

1.3. <u>Purpose</u>.  The purpose of the Loan is to provide working capital for the Borrower to implement, operate and maintain its real estate development business, make advances and loans to employees and pay expenses it deems necessary.

1.4. <u>Advances</u>.  Provided that no "Event of Default" (as defined in Section 7.1 below) exists under this Agreement or the other Transaction Documents, and that the representations and warranties as set forth in Article 3 below remain true, correct and complete in all material respects, and upon satisfaction of the condition's precedent set forth in Article 2 below, the Lender may make a disbursement under the Loan ("<u>Advances</u>") to the Borrower upon written request, which shall include the amount and method of the Advance, signed by the Manager of the Borrower or such other authorized officer or agent of the Borrower. Such written request shall be deemed to be, in addition to such matters as are expressly set forth therein, an acknowledgement by Borrower that all the representations and warranties as set forth in Article 3 below remain true, correct and complete in all material respects as of the date of the request. Advances may be made directly to a third-party and to Borrower in accordance with Section 1.3 above, but such Advance will be considered as given to Borrower under this Terms of this Agreement in Section 1.2 above and Article 3 below. Notwithstanding the foregoing, any Advance shall only be made in the Lender's sole and absolute discretion. The outstanding principal balance of the loan shall never exceed EIGHT MILLION DOLLARS ($8,000,000.00), ("Maximum Loan Amount").

1.5. <u>Collateral</u>.  The Loan shall be secured by all assets of the Borrower as set forth more specifically in the Security Agreements ("<u>Security Agreements</u>"), substantially in the form attached hereto as <u>Exhibits B, C, and D</u> to be executed by each Borrower and delivered concurrently herewith (the "Collateral").

# ARTICLE 2
## CONDITIONS PRECEDENT FOR CLOSING AND ADVANCES

The obligation of Lender to make any Advance under the Loan to the Borrower is subject to the following express conditions precedent:

2.1    <u>Transaction Documents</u>.  Borrower shall have executed (or obtained the execution of or authorized) and delivered to Lender this Agreement and the following documents (collectively, the ("Transaction Documents"), all in form satisfactory to Lender:

     (a)    Promissory Note,
     (b)    Security Agreement executed by RFI,
     (c)    Security Agreement executed by SCD,
     (d)    Security Agreement executed by Bart Shea,

Initials BS

(e)   Copy of the executed borrowing resolution of each Borrower related to this Loan in a form and content acceptable to the Lender,

(f)   Such other instruments, certificates and agreements as are required by the Lender to be delivered to the Lender in connection with the Loan, and

2.2   <u>Liens and Security Interests</u>.   The Lender's liens, security interests and other encumbrances upon the Collateral to secure the Loan shall be attached, created, filed, perfected and recorded in accordance with applicable law. The Lender shall be provided UCC, judgement and tax lien or similar searches or other written evidence as required by the Lender with respect to the validity, enforceability and priority of its liens, security interests and other encumbrances upon the Collateral to secure the Loan.

2.3   <u>Organizational Documents</u>.   The Borrower shall have delivered to the Lender certified copies of its organizational documents.

2.4   <u>Representations True</u>.   All representations and warranties by Borrower in this Agreement and the other Transaction Documents shall be true and correct as of the date hereof and as of the date of any Advance made hereunder and shall remain true and correct during any time that any obligations of Borrower remain outstanding hereunder.

2.5   <u>No Event of Default</u>.   No Event of Default exists, and no event has occurred, and no condition exists that, after notice or lapse of time, or both, could constitute an Event of Default.

## ARTICLE 3
## REPRESENTATIONS AND WARRANTIES

Borrower represents and warrants to Lender as follows:

3.1   <u>Organization</u>.   RFI is a corporation organized and in good standing in the State of Arizona. SCD is a limited liability company organized in and in good standing in the State of Arizona. SCD Construction is a limited liability company organized and in good standing in the State of Arizona.

3.2   <u>Duly Authorized</u>.   The making and performance by the Borrower of this Agreement and the execution and delivery of the Note, and any and all of the other Transaction Documents have been duly authorized by all necessary actions of the Borrower and will not violate any law, rule, regulation, order, writ, judgement decree, determination, or award presently in effect having applicability to the Borrower or any provision of the Borrower's organizational documents or any resolution of the Borrower or result in a breach of, or constitute a default under any indenture or bank loan, or credit agreement or any other agreement or instrument to which the Borrower is a party or by which its property may be bound of affected.

3.3   <u>Legally Binding Instruments</u>.   When this Agreement and the other Transaction Documents are executed by the Borrower and the Lender, and when the Transaction Documents are executed and delivered by the Borrower for value, each Transaction

Initials BS

Document shall constitute the legal, valid, and binding obligation of the Borrower enforceable against Borrower in accordance with its terms. Any security agreements, including assignments and financing statements and documents creating liens against personal property, shall constitute legal, valid and binding liens upon the Collateral, and except as otherwise provided in this Agreement or the other Transaction Documents, free and clear of all prior liens and encumbrances.

3.4   <u>No Legal Suits</u>. There are no legal actions, suits, or proceedings pending or, to the knowledge of the Borrower not already disclosed, threatened against the Borrower before any court or administrative agency, which if determined adversely to the Borrower, could have a material adverse effect on the financial condition or business of the Borrower, and no event has occurred nor does any condition exist which, after notice or lapse of time, or both, could serve as reasonable basis for the commencement of any such legal action, suit or proceeding.

3.5   <u>No Further Legal Authorization Needed</u>. No further authorization, consent or approval, or any formal exemption of any governmental body, regulatory authorities (federal, state or local), or mortgagee, creditor, or third party is or was necessary to the valid execution and delivery by the Borrower of this Agreement or any of the other Transaction Documents.

3.6   <u>Material Inducement Additional Payment</u>. Borrower acknowledges the Loan is a high-risk loan and a substantial portion, if not all, of the Collateral is illiquid and will be time consuming and costly for Lender to collect from the Collateral if Borrower has an Event of Default. Borrower agrees it needs the Loan from Lender to maintain its operations, make advances and loans to employees and would not be able to get a loan from a conventional lender. To compensate for this risk, Borrower materially induced Lender by providing additional consideration for the Loan. In addition to the terms of this Agreement and the Transaction Documents, Borrower is agreeing to also pay Lender HALF A PERCENT (.5%) of the PSA sale price net of secured liens per each FIVE HUNDRED THOUSAND DOLLAR ($500,000) Advance ("Additional Payment"). For avoidance of doubt, if the PSA sale price is $300,000,000 less $200,000,000 of secured liens, and Lender Advances $3,000,000, then the Additional Payment would be $3,000,000.

3.7   <u>No Default</u>. The Borrower is not in default, except already disclosed, of any obligation, covenant, or condition contained in any bond, debenture, note or other evidence of indebtedness or any lease, mortgage, deed of trust or collateral instrument securing the same.

3.8   <u>Compliance with Law</u>. The Borrower has all permits, licenses, authorizations, orders and approvals of, and has made will make all filings, notices, applications and registrations with federal, state or local government or regulatory bodies that are required in order for the management and operation of its business as such business is intended to be operated. All such permits, licenses, certificates of authority, orders and approvals are in full force and effect and no suspension or cancellation of any of them is threatened or will occur. All such filings, notices, applications and registrations are current and will continue to be made when due.

Initials BS

Documents shall constitute the legal, valid and binding obligation of the Borrower enforceable against Borrower in accordance with its terms. Any security agreements including assignments and financing statements and documents creating liens against personal property, shall constitute legal, valid and binding liens upon the Collateral, and except as otherwise provided in this Agreement or the other Transaction Documents, free and clear of all prior liens and encumbrances.

3.4 No Legal Suits. There are no legal actions, suits, or proceedings pending or, to the knowledge of the Borrower not already disclosed, threatened against the Borrower before any court or administrative agency which if determined adversely to the Borrower, could have a material adverse effect on the financial condition or business of the Borrower, and no event has occurred nor does any condition exist which, after notice or lapse of time, or both, could serve as reasonable basis for the commencement of any such legal action, suit or proceeding.

3.5 No Further Legal Authorization Needed. No further authorization, consent or approval, or any formal exemption of any governmental body, regulatory authorities (federal, state or local), or mortgagee, creditor, or third party is or was necessary to the valid execution and delivery by the Borrower of this Agreement or any of the other Transaction Documents.

3.6 Material Inducement; Additional Payment. Borrower acknowledges the Loan is a high-risk loan and a substantial portion, if not all, of the Collateral is illiquid and will be time consuming and costly for Lender to collect from the Collateral if Borrower has an Event of Default. Borrower agrees it needs the Loan from Lender to maintain its operations, make advances and loans to employees and would not be able to get a loan from a conventional lender. To compensate for this risk, Borrower materially induced Lender by providing additional consideration for the Loan. In addition to the terms of this Agreement and the Transaction Documents, Borrower is agreeing to also pay Lender HALF A PERCENT (.5%) of the PSA sale price net of secured liens per each FIVE HUNDRED THOUSAND DOLLAR ($500,000) Advance ("Additional Payment"). For avoidance of doubt, if the PSA sale price is $500,000,000 less $200,000,000 of secured liens, and Lender Advances $5,000,000, then the Additional Payment would be $3,000,000.

3.7 No Default. The Borrower is not in default, except already disclosed, of any obligation, covenant, or condition contained in any bond, debenture, note or other evidence of indebtedness or any lease or mortgage, deed of trust or collateral instrument securing the same.

3.8 Compliance with Law. The Borrower has all permits, licenses, authorizations, orders and approvals of, and has made all filings, notices, applications and registrations with federal, state or local government or regulatory bodies that are required in order for the management and operation of its business as such business is intended to be operated. All such permits, licenses, certificates of authority, orders and approvals are in full force and effect and no suspension or cancellation of any of them is threatened or will occur. All such filings, notices, applications and registrations are current and will continue to be made when due.

**3.9**    <u>No Violation</u>.  This Agreement, the Transaction Documents and any and all other documents and transactions contemplated hereby or thereby shall not violate any contract or agreement to which Borrower is a party, nor result in a breach of the terms or conditions of or constitute a default under or result in the creation or imposition of any lien, charge or encumbrance upon any property or assets of Borrower pursuant to any agreement to which Borrower is a party or by which Borrower may be bound.

**3.10**   <u>Continuing Compliance</u>.  All representations, warranties and covenants of the Borrower are true and correct as of the date hereof and shall continue to be true and correct until the Loan and all indebtedness hereunder have been paid in full and all of Borrower's obligations hereunder have been fully discharged. As requested from time to time by Lender, the Borrower shall provide the Lender in form and content satisfactory to it a certificate to the effect that the representations, warranties and covenants made herein by the Borrower are at such time true and correct. Lender shall be deemed to have relied upon each and every warranty and representation of the Borrower, regardless of any investigation heretofore or hereafter made by or on behalf of the Lender.

# ARTICE 4
# AFFIRMATIVE COVENTANTS

**4.1**    <u>Compliance with Loan Documents</u>.  Borrower shall punctually make all payments of interest, principal on and other amounts under the Loan and shall punctually keep and comply with all terms, conditions and provisions of the Transaction Documents.

**4.2**    <u>Payment of other Indebtedness</u>.  Borrower shall punctually pay the principal, interest and other charges due on any other indebtedness now or hereafter at any time owing by the Borrower to the Lender or any other lender.

**4.3**    <u>Payment of Taxes</u>.  Borrower shall pay all of its current tax obligations before delinquent, including all federal, state, local, property taxes and all other payments required under, federal, state or local law.

**4.4**    <u>Books and Records; Access</u>.  Borrower shall maintain, in a safe place, proper and accurate books and records relating to its operations and its business affairs. Lender shall have the right from time to time to examine, and to make abstracts from and photocopies of, Borrower's books and records.

**4.5**    <u>Financial Reports</u>.  Borrower shall maintain a standard, modern system that reflects the application of reasonable accounting principles, consistently applied. Borrower shall furnish to Lender or cause to be furnished to Lender as soon as available, but in no event later than 30 days of each fiscal quarter end, the financial statements of Borrower (prepared by a confirmed certified public accountant satisfactory to, or as otherwise approved by, the Lender unless such requirement is waived by Lender in writing).  All financial statements, including balance sheets, income statements, cash flow statements and general ledgers, provided Lender shall be certified as correct to the knowledge and belief by the Borrower. When requested by Lender, Borrower shall provide such further financial information and at such frequency as Lender may

3.9 No Violation. This Agreement, the Transaction Documents and any and all other documents and transactions contemplated thereby or thereby shall not violate any contract or agreement to which Borrower is a party, nor result in a breach of the terms or conditions of or constitute a default under or result in the creation or imposition of any lien, charge or encumbrance upon any property or assets of Borrower pursuant to any agreement to which Borrower is a party or by which Borrower may be bound.

3.10 Continuing Compliance. All representations, warranties and covenants of the Borrower are true and correct as of the date hereof and shall continue to be true and correct until the Loan and all indebtedness hereunder have been paid in full and all of Borrower's obligations hereunder have been fully discharged. As requested from time to time by Lender, the Borrower shall provide the Lender in form and content satisfactory to it a certificate to the effect that the representations, warranties and covenants made herein by the Borrower are at such time true and correct. Lender shall be deemed to have relied upon each and every warranty and representation of the Borrower, regardless of any investigation heretofore or hereafter made by or on behalf of the Lender.

## ARTICLE 4
## AFFIRMATIVE COVENANTS

4.1 Compliance with Loan Documents. Borrower shall punctually make all payments of interest, principal on and other amounts under the Loan and shall punctually keep and comply with all terms, conditions and provisions of the Transaction Documents.

4.2 Payment of other Indebtedness. Borrower shall punctually pay the principal, interest and other charges due on any other indebtedness now or hereafter at any time owing by the Borrower to the Lender or any other lender.

4.3 Payment of Taxes. Borrower shall pay all of its current tax obligations before delinquent, including all federal, state, local, property taxes and all other payments required under federal, state or local law.

4.4 Books and Records; Access. Borrower shall maintain, in a safe place, proper and accurate books and records relating to its operations and its business affairs. Lender shall have the right from time to time to examine, and to make abstracts from and photocopies of, Borrower's books and records.

4.5 Financial Reports. Borrower shall maintain a standard, modern system that reflects the application of reasonable accounting principles consistently applied. Borrower shall furnish to Lender or cause to be furnished to Lender as soon as available, but in no event later than 20 days after each fiscal quarter end, the financial statements of Borrower (prepared by a confirmed certified public accountant satisfactory to, or as otherwise approved by, the Lender unless such requirement is waived by Lender in writing). All financial statements, including balance sheets, income statements, cash flow statements and general ledgers, provided Lender shall be certified as correct to the knowledge and belief by the Borrower. When requested by Lender, Borrower shall provide such further financial information and at such frequency as Lender may

reasonably request relating to Borrower, including, but not limited to, bank statements with supporting documents, budgets, use of funds, operating agreements, development agreements and sales contracts of real estate projects.

4.6 <u>Subsequent Actions</u>. Borrower shall immediately inform Lender of any actions, suits or proceedings involving Borrower, that it has not previously disclosed, that could materially and adversely affect the repayment of the Loan, the performance by Borrower under this Agreement, or the financial condition, business or operations of Borrower.

4.7 <u>Further Assurances</u>. Borrower shall execute and deliver such additional documents and do such other acts as Lender may require in connection with the Loan.

4.8 <u>Borrower Notices</u>. Borrower shall promptly give notice in writing to Lender of the occurrence of any Event of Default.

4.9 <u>Rights of Inspection</u>. The Borrower does herby grant to the Lender, until the Note has been fully repaid with interest and other charges, the right at all reasonable hours to inspect the condition and operations of the Borrower's business and properties, and the Borrower further agrees to provide the Lender free access to the Borrower's premises and properties for the purpose of such inspection to determine the condition of the Borrower's business and properties. The Borrower will furnish the Lender with reasonable promptness such data and information concerning the business of the Borrower as may be requested by the Lender from time to time.

4.10 <u>Conduct of Business</u>. Borrower shall continue the conduct of its business, maintain its corporate existence, and maintain all rights, licenses and franchises necessary or desirable in the normal conduct of its business. Any agreements with a servicing or management company shall require that such servicing or management company comply with all rules, regulations and order of any government, regulatory body or other authority applicable to the business of the Company.

4.11 <u>Litigation</u>. Borrower and Lender each consents any litigation arising out of this Agreement will be filed in the Circuit Court of Jasper County, Missouri.

## ARTICLE 5
## NEGATIVE COVENANTS

So long as Lender has any commitment to lend to Borrower hereunder and until the Loan and all other indebtedness hereunder have been paid in full and all of Borrower's obligations hereunder have been fully discharged, Borrower shall not, and Borrower's organizational documents shall not permit, without receiving the prior written consent of Lender, which consent shall not be unreasonably withheld:

5.1 <u>No Borrowing</u>. Borrower shall not borrow any funds for the conduct of its business other than (i) the Loan, and (ii) funds for working capital borrowed on terms approved in advance by Lender.

5.2 <u>Breach of Agreement</u>. Enter into any agreement or other commitment the performance of which would constitute a breach of any of the agreements, warranties, representations or covenants contained in this Agreement or any other Transaction

Initials BS

Document, including but not limited to, any breach of the provisions of Section 4.10 above.

**5.3** <u>Change in Business</u>.  Substantially alter the general nature of the business in which it is engaged or engage in any line of business materially different in relation to the transactions contemplated by this Agreement and/or the Transaction Documents from its current business.

**5.4** <u>Permit Breach</u>.  Permit any material breach, default or event of default to occur under any note, loan agreement, indenture, lease, mortgage, contract for deed, security agreement or other contractual obligation binding upon Borrower which is not cured within any applicable cure periods thereof.

**5.5** <u>Ordinary Course of Business</u>.  Borrower shall not engage in any business or engage in any transactions outside the ordinary course of its business.

**5.6** <u>Bank Account</u> Access.  Borrower shall not permit any Affiliate or constituent party access to its bank accounts.

**5.7** <u>Affiliates</u>.  Borrower has, and will maintain, an arms-length relationship with its Affiliates.

**5.8** <u>Pledge</u>.  Except in connection with the Loan, Borrower has not pledged and will not pledge its assets or properties for the benefit of, or to secure the obligations of, any other Person or entity.

# ARTICLE 6
## WAIVER

**6.1.** <u>Waiver</u>.  Borrower waives presentment, demand, protest and notices of protest, nonpayment, partial payment and all other notices and formalities except as expressly called for in this Agreement or any other Transaction Document.

**6.2.** <u>Delay or Omission</u>.  No delay or omission by Lender in exercising and right, power, or remedy hereunder or any other Transaction Document, and no indulgence given to Borrower with respect to any term, condition or provision set for herein or therein, shall impair any right, power or remedy of Lender under this Agreement or any other Transaction Document, or be construed as a waiver by Lender of, or acquiescence in, any Event of Default. Likewise, no such delay, omission or indulgence by Lender shall be construed as a variation or waiver of any of the terms, conditions or provisions of this Agreement or any other Transaction Document. Any actual waiver by Lender of any Event of Default or of the same Event of Default after notice to Borrower demanding strict performance.

# ARTICLE 7
## DEFAULT

**7.1** <u>Event of Default</u>.  The occurrence of any of the following events or conditions shall constitute an "<u>Event of Default</u>" under this Agreement.

Initials BS

(a)     Any failure to pay any principal or interest under the Note when the same shall become due and payable, or the failure to pay any other sum due under the Note, this Agreement or any other Transaction Documents when the same shall become due and payable.

(b)     Any failure or neglect to perform or observe any of the covenants, conditions or provisions of this Agreement, the Note, or any other Transaction Document (other than a failure or neglect described in one or more of the other provisions of this Section 7.1) and such failure or neglect either cannot be remedied or, if it can be remedied, it continues unremedied for a period of thirty (30) days after notice thereof to Borrower.

(c)     Any warranty, representation or statement contained in this Agreement, in the Note or any other Transaction Document, or made or furnished to Lender by or on behalf of Borrower, that shall be or shall prove to have been false when made or furnished.

(d)     The filing by Borrower of any proceeding under the federal bankruptcy laws now or hereafter existing or any other similar statute now or hereafter in effect; the entity of an order for relief under such laws with respect to Borrower, or the appointment of a receiver, trustee, custodian or conservator of all or any part of the assets of Borrower.

(e)     The insolvency of Borrower, excluding RFI, or the execution by Borrower of an assignment for the benefit of creditors; or the convening by Borrower of a meeting of its creditors, or any class thereof, for purpose of effecting a moratorium upon or extension or composition of its debts; or the failure of Borrower to pay its debts as they mature; or if Borrower is generally not paying its debts as they mature.

(f)     The admission in writing by Borrower that it is unable to pay its debts as they mature or that it is generally not paying its debts as they mature.

(g)     If Borrower defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other indebtedness, with any other creditor or person that may materially affect any of Borrower's property of Borrower's ability to perform its obligations under this Agreement or any of the other Transaction Documents.

(h)     If, with regard to the performance of the terms of any agreement with and tribal, federal, state or local government authority, agency or instrumentality, the Borrower fails to comply with any requirement of any such agreement within fifteen (15) days after receipt of notice in writing of such requirement or within the time specified in such notice, whichever is greater.

(i)     The occurrence of any event of default under the Note, or any other Transaction Documents and the expiration of any applicable notice and cure period.

Initials BS

    (j)    If anything happens that is reasonably believed by the Lender to significantly impair the value of the Collateral or causes the Lender to reasonably believe that the Lender will have difficulty collecting the Loan.

7.2    <u>Remedies</u>.  Upon the occurrence of any Event of Default and at any time while such Event of Default is continuing, Lender may do one or more of the following:

    (a)    Terminate any commitment or obligation to disburse any amounts to Borrow pursuant to the Transaction Documents.

    (b)    Accelerate and declare the full balance immediately due on the Note and commence suit for collection thereof.

    (c)    Specifically enforce the terms of the Note and other Transaction Documents.

    (d)    Pursue any and all other remedies available under law to enforce the terms of this Agreement and the other Transaction Documents and the Lender's rights to the Collateral identified in this Agreement and the other Transaction Documents. Notwithstanding any other provision of the Transaction Documents, including the availability of the foregoing remedies, if **any** amounts due Lender hereunder and under the Note are not promptly paid when due upon an Event of Default or the occurrence of the Loan Maturity Date, Borrower shall execute and deliver an assignment of all the Collateral. The remedies provided herein are not exclusive and are in addition to any other remedy available in law or equity and Borrower shall remain liable for any deficiency balance if what the Lender receives from the Collateral, if any, for the Loan does not satisfy all amounts owed it by Borrower.

7.3    <u>Enforcement Costs</u>. Borrower shall pay all costs and expenses, including without limitation court costs and reasonable in-house and outside attorney's fees, incurred by Lender in enforcing payment and performance of the Loan and the other indebtedness and obligations of Borrower hereunder and under the other Transaction Documents or in exercising the rights and remedies of Lender hereunder or thereunder. In the event of any court proceedings, court costs and attorneys' fees shall be set by the court and not by jury and shall be included in any judgement obtained by Lender.

## ARTICLE 8
## (Intentionally left blank)

Initials BS

# ARTICLE 9
# MISCELLANEOUS

**9.1**    <u>Integration</u>. This Agreement and the other Transaction Documents embody the entire agreement of the parties with regard to the subject matter hereof. There are no representations, promises, warranties, understandings or agreements expressed or implied, oral or otherwise, in relation thereto, except those referred to or set forth herein. Borrower acknowledges it was represented by legal counsel in the execution and delivery of this Agreement and is its free and voluntary act and deed, and that said execution and delivery have not been induced by, nor done in reliance upon, any representations, promises, warranties, understandings or agreements made by Lender, its agents, officers, employees or representatives, except as provided herein.

**9.2**    <u>Modifications</u>.  No promise, representation, warranty or agreement made subsequent to the execution and delivery of this Agreement by either Party hereto, and no revocation, partial or otherwise, or change, amendment or addition to, or alteration or modification of, this Agreement or the other Transaction Documents shall be valid unless the same shall be in writing signed by all Parties.

**9.3**    <u>No Joint Venture</u>.  Lender and Borrower each have separate and independent rights and obligations under this Agreement and the other Transaction Documents. Nothing contained herein shall be construed as creating, forming or constituting any partnership, joint venture, merger or consolidation of Borrower and Lender for any purpose or in any respect.

**9.4**    <u>Survival</u>. All agreements, representations, and warranties made by the Borrower herein or any of the other Transaction Documents or any certificate delivered to the Lender in connection with the transactions contemplated herein or therein shall survive the making of the Loan and shall continue in force and effect so long as any amount owed to Lender under this Agreement or any of the other Transaction Documents or any extension or renewal therefor, remains outstanding.

**9.5**    <u>Discretionary Rights</u>.  All rights, powers and remedies granted Lender herein, or otherwise available to Lender, are for the sole benefit and protection of Lender, and Lender may exercise any such right, power or remedy at its option and in its sole and absolute discretion without any obligation to do so.  In addition, if, under the terms hereof, Lender is given two or more alternative courses of action, Lender may elect any alternative or combination of alternatives, at its option and in its sole and absolute discretion, and such alternative courses of action are cumulative and the taking of one alternative course of action shall not bar Lender from subsequently or concurrently pursuing another alternative course of action. All monies advanced by Lender under the terms hereof and all amounts paid, suffered or incurred by Lender in exercising any authority granted herein, including reasonable attorneys' fees, shall bear interest at the highest rate payable on the Loan until paid, and shall be due and payable by Borrower to Lender immediately without demand.

Initials BS

**9.6**   <u>Indemnity</u>.  David Lunn, Bart Shea, RFI, SCD and SCD Construction, shall indemnify and hold Lender harmless from and against all claims, costs, expenses, actions, suits, proceedings, losses, damages and liabilities of any kind whatsoever, including but not limited to reasonable attorney's fees and expenses, arising out of any matter relating, directly or indirectly, to the Loan or out of any other matter whatsoever related to this Agreement or the other Transaction Documents.  This indemnity provision shall continue in full force and effect and shall survive not only the making of the Loan but shall also survive the repayment of the Loan and the performance of all of Borrower's other obligations hereunder.

**9.7**   <u>Broker</u>. Neither the Lender nor the Borrower has used a Broker to facilitate this Agreement and the Transaction Documents.

**9.8**   <u>Joint Drafting</u>.  Lender and Borrower are represented each by its own independent legal counsel in the negotiation, preparation and execution of this Agreement and the Transaction Documents; therefore, this Agreement and the Transaction Documents will be deemed to be drafted by each of the parties hereto, and no rule of construction will be invoked respecting the authorship of this Agreement and the Transaction Documents.

**9.9**   <u>Legal Representation.</u> Borrower acknowledges and agrees it has read this Loan Agreement and the Transaction Documents carefully and understands each of its terms and conditions and agrees to be bound by each of its terms and conditions. Borrower was represented by its own independent legal counsel in the review of each of the terms and conditions and execution of this Loan Agreement and the Transaction Documents.

**9.10**   <u>Time of Essence</u>.  Time is expressly made of the essence of this Agreement.

**9.11**   <u>Notices</u>.  All notices and other communications hereunder shall be in writing, and shall be deemed to have been duly given (a) upon hand delivery thereof, (b) upon facsimile and written confirmation of transmission, (c) upon receipt of any overnight deliveries, or (d) on the third (3rd) business day after mailing United States registered or certified mail, return receipt requested, postage prepaid, addressed to each Party at the following addresses:

|                | |
|----------------|---------------------------|
| If to Lender:  | c/o Daryl Deel            |
|                | 2601 Callaway Ridge       |
|                | Joplin, MO 64804          |
|                |                           |
| If to Borrower: | c/o Bart Shea            |
|                | 2055 S Cottonwood Dr.     |
|                | Tempe, AZ 85282           |

or to such other different address(es) as either Party may specify in writing to the other using the notice procedure called for in this Section 9.11.

**9.12.**   <u>Severability</u>.  The illegality or unenforceability of any provisions of this Agreement or any instrument or agreement required hereunder shall not in any way

Initials BS

affect or impair the legality or enforceability of the remaining provisions of this Agreement or any instrument or agreement required hereunder.

9.13.    <u>Governing Law</u>.  The interpretation, validity and performance of this Agreement and the other Transaction Documents shall be governed by the laws of the State of Missouri, without regard to conflicts of law rules.

9.14.    <u>Additional Actions</u>.  The Borrower agrees to execute such other documents and instruments and take such additional action as may be reasonably requested by the Lender for the purpose of effectuating and carrying out the intent and purposes of this Agreement and the other Transaction Documents and the transactions contemplated hereby and thereby.

9.15.    <u>Successors and Assigns</u>.  This Agreement and the other Transaction Documents shall be binding upon the Borrower and its successors and assigns, except that the (i) Borrower will not assign or transfer its rights under this Agreement or any of the other Transaction Documents without the prior written consent of the Lender. Lender may assign this Agreement and the other Transaction Documents without the consent of Borrower.

9.16.    <u>Headings</u>.  The headings or captions of sections and paragraphs in this Agreement are for reference only, do not define or limit the provisions of such sections or paragraphs, and shall not affect the interpretation of this Agreement.

9.17.    <u>Prepayment</u>.  The Borrower may prepay the Note per the terms and conditions as outlined in the Note.

9.18.    <u>Repayment</u>.  The Borrower shall repay the Note per the terms and conditions as outlined in this Agreement and the Note.

9.19.    <u>Counterparts</u>.  This Agreement may be executed in counterparts and exchanged by facsimile or other electronic means such as email of a PDF, all of which executed and exchanged counterparts shall together constitute a single document. Signature pages may be detached from the counterparts and attached to a single copy of this Agreement to physically form one document.

9.20.    <u>JURY WAIVER</u>.  THE BORROWER HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITONALLY WAIVES ANY RIGHT TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN OR AMONG THE UNDERSIGNED AND LENDER ARISING OUT OF OR IN ANY WAY RELATED TO THIS AGREEMENT OR ANY OF THE OTHER TRANSACTION DCOUMENTS, THE TRANSACTIONS CONTEMPLATED HEREIN OR THEREIN OR ANY RELATIONSHIP BETWEEN BORROWER AND LENDER. THIS PROVISION IS A MATERIAL INDUCEMENT TO LENDER TO PROVIDE FINANCING DESCRIBED HEREIN OR IN THE OTHER TRANSACTION DOCUMENTS.

9.21.    <u>Obligations</u>.  The obligations of Borrower under this Agreement are joint and several.

Initials BS

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement on the day and year first above written.

**BORROWER:**

REMEDIATION FINANCIAL INC.

By: _____
Name: Bart Shea
Title: President and COO

SHEA CONNELLY DEVELOPMENT LLC

By: _____
Name: Bart Shea
Title: President and Manager

SCD CONSTRUCTION LLC

By: _____
Name: Bart Shea
Title: President and Manager

BART SHEA

By: _____
Name: Bart Shea
Title: Individual

David Lunn

By: _____
Name: David Lunn
Title: Individual

**LENDER:**

DEEL INVESTMENTS LP

By: _____
Name: Daryl Deel
Title: Manager

Initials BS

State of ARIZONA          )
                          )
County of MARICOPA)

     SUBSCRIBED and sworn before me on this _13th_ day of _August_, 2021 by Bart Shea, Individually, as Owner, Officer, Manager or Director of his entities either owned or indirectly owned, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

My commission expires:

_1/29/2025_

                            Notary Public

State of ARIZONA          )
                          )
County of MARICOPA)

     SUBSCRIBED and sworn before me on this _13th_ day of _August_, 2021 by David Lunn, Individually, as Owner, Officer, Manager or Director of his entities either owned or indirectly owned, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

My commission expires:

_1/29/2025_

                            Notary Public

Initials BS