GARY M. RESTAINO
United States Attorney
District of Arizona
KEVIN M. RAPP
Arizona State Bar No. 14249
Email: kevin.rapp@usdoj.gov
COLEEN SCHOCH
Georgia State Bar No. 366545
Email: Coleen.Schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone:  602-514-7500
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-19-00898-PHX-DLR (DMF) |
| Plaintiffs, | |
| vs. | **UNITED STATES' POSITION ON ORDER TO SHOW CAUSE** |
| David Allen Harbour, | |
| Defendants. | |

## SUMMARY

At a status conference on April 19, 2022, the Court ordered the government to produce certain discovery sought by Defendant Harbour by May 9, 2022. (Doc. 374)  At the same time, Defendant Harbour was ordered to advise the Court by May 16, 2022, whether an Order to Show Cause (OSC) should be entered directing Princeton Alternative Income Fund, L.P. ("PAIF" or "the Fund"), LJP Consulting, LLC and Philip Burgess (collectively, "the Witnesses"), to show cause why the Witnesses should not be sanctioned for failing to produce certain documents subpoenaed by the Defendant pursuant to Rule 17(c).

The government was at a disadvantage in responding to the Defendant's application at the April 19th status conference.  The Defendant had initially filed a sealed *ex parte* motion to compel compliance by the Witnesses with his Rule 17 subpoenas (Doc. 167),

which was granted in part and denied in part without the involvement of the government. See (Doc. 198, p. 4). Thereafter, extensive negotiations apparently took place between the Defendant's former counsel and counsel for the Witnesses to narrow and comply with the subpoenas, again without the involvement of the government.

Since the April 19th status conference, the government has reviewed the history of this particular issue and now advises the Court that the Defendant has received from both the government and the Witnesses all of the documents that are relevant to Count 3 of the Superseding Indictment, which alleges that he fraudulently obtained $1.1 million from PAIF in August 2015. Most recently, for example, the Witnesses produced documents that prove that the Defendant personally sent them a fraudulent accounts receivable aging report that the Fund relied upon in transferring $1.1 million to Harbour's company in August 2015 as alleged in Count 3. (Doc. 352). As the government previously submitted to the Court in opposing one of the Defendant's previous motions to continue the trial, see (Doc. 225), Harbour's internal bookkeeper, L.P., has told the government that Harbour personally falsified the aging report before he sent it to PAIF. *Id.*, pp. 2-3. And as the government told the Court in that same submission more than a year ago, in light of the approximately 1,228 PAIF related documents that the Defendant has already received, the additional documents that he is seeking from the Witnesses "are of marginal relevance" and his Rule 17 subpoenas are "overly broad." (Doc. 225, pp. 2-4.)

The Defendant's present attempt to compel further document production from the government and the Witnesses should be denied. In the case of PAIF, the Defendant's application amounts to harassment of one of the victims of his alleged fraud and, in the case of P. B., amounts to harassment of a potential government witness. The Court should find that the government does not need to produce additional documents to the Defendant by May 9, 2022, and that the Defendant's request for an OSC directed to the Witnesses, or for sanctions to be imposed on them, should be denied.

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

In August 2020, Defendant's then counsel, Alan Baskin, Esq., served Rule 17(c)

subpoenas on PAIF, LJP Consulting and P. B. ("the Witnesses."). On November 9, 2020, Harbour filed a motion to seal his *ex parte* motion to compel compliance with the subpoenas. (Doc. 150) and an *ex parte* motion to compel compliance with the subpoenas (Doc. 151).  The Court granted both motions by Orders filed on November 25, 2020 (Doc. 160) and December 8, 2020 (Doc. 166).   After a hearing on January 26, 2021, the Court entered an Order on January 29, 2021 (Doc. 198) compelling the Witnesses to produce eight (8) categories of documents to both the government and the Defendant or to the Court. The Court also ordered that the Witnesses "may file an application . . . should an agreement not otherwise be reached as to the payment of costs associated with the production." *Id*.

Thereafter, several months of negotiations apparently took place between counsel for the Defendant and counsel for the Witnesses about attempts to narrow the scope of the documents to be produced and the costs of production, as well as an initial production of responsive documents deemed to be insufficient by the Defendant's then-counsel.  Some of those negotiations are referenced in one of the exhibits attached to a Motion for Sanctions filed by the Defendant's subsequent counsel.  See Doc. 340 (Motion); Doc 340-1 (Exhibit 2).  Despite the obvious disagreement of the clients, the negotiations reflect a good faith effort by counsel to reach agreement without the need for the intervention of the Court.

Ultimately, after fits and starts and without recapping all of the negotiations here, the parties agreed that PAIF would begin producing additional documents to Defendant's counsel in exchange for the Defendant advancing $5,000 to partially offset the cost of production.  See email dated November 5, 2021, from Mladen Milovic to Gerald Krovatin, Doc. 340-1, p. 3 ("Gerry, we are willing to retract our requests for production of information from PAIF's PPM and related documents.  Accordingly, please deposit the check we sent to you and have your clients undertake the work to comply with our previously agreed upon document requests.  Also, please advise when we can expect to receive responses to our requests.  Thanks, Mladen.")

In early 2022, new counsel for Defendant Harbour took the position that the

Witnesses had not produced the documents set forth in the Court's January 2021 Order, or as "pared down" as agreed between counsel. As a result, at Defense counsel's insistence, Mr. Burgess, one of the Witnesses, began to produce additional documents, and sent Ms. Adams several additional documents in thirteen (13) separate emails. Ms. Adams objected to that method of production and instructed Mr. Burgess to stop sending her emails and documents. Thereafter, Ms. Adams and Mr. Dichter filed a motion for sanctions against the Witnesses for noncompliance with the Defendant's subpoenas. (Doc. 340). Specifically, Defendant argued that the Witnesses had not produced the borrowing base certificate to support the August 11, 2015, disbursement of $1.1 million to the Defendant, as charged in Count 3 of the Superseding Indictment. *Id*. Defendant argued that the Witnesses should produce the borrowing base calculation, or a declaration that it did not exist, within 72 hours in order to avoid a motion for sanctions. *Id*.

The Witnesses filed a response on March 3, 2002 (Doc. 352). The response included a sworn Declaration from Alonzo Primus, the principal of LJP Consulting, LLC, one of the Witnesses. (Doc. 352-1). Primus traced the history of the Witnesses' dealings with the Defendant leading up to the August 11, 2015, disbursement of $1.1 million. He attached as an exhibit to his Declaration an email dated August 6, 2015, to him from the Defendant himself attaching a July 31, 2015, accounts receivable aging report. It was that email from the Defendant and that false report on which PAIF relied in transferring $1.1 million to the Defendant's company on August 15, 2011. See Primus Declaration, ¶ 15. (Doc. 352-1, p. 3). Counsel for the Witnesses explained that:

> While subsequent borrowing base calculations that were submitted by Harbour to support subsequent monthly draws from the Fund looked different from and provided more information than the July 31, 2015, Aging Summary Report, they were functionally the same. Both reports were information provided by Harbour through his companies that he intended that Green Circle and the Fund would rely on in lending additional funds.

See (Doc. 352, p. 5).

As mentioned, the government previously advised the Court that L.P., a cooperating

government witness, who was Harbour's internal bookkeeper, has told the government that Harbour personally falsified the July 31, 2015, aging report before he sent it to PAIF. (Doc. 225, pp. 2-3.)

Defendant Harbour responded to the Witnesses' submission with a Reply filed March 9, 2022. (Doc. 354). Harbour argued that, while the Primus Declaration "was a very positive moment . . . an admission we thought would never be made," there are more documents "that will cement the point that Harbour had nothing to do with the existence of the July 31, 2015, A/R Aging Report . . ." *Id.*, p. 5. Harbour insisted that the Witnesses still needed to produce four *additional* categories of documents:

> 1. Green Circle/Cash Source daily A/R Aging Reports from June 1, 2015 through August 31, 2015 including the daily LMS printouts that listed all the Green Circle borrowers by name with balances,
> 2. Green Circle's June, July, and August 2015 balance sheet, and cash flow statements,
> 3. The Emails originally requested for June through August plus September 2015,
> 4. Microbilt Scoring that supported the August 11, 2015 disbursement, including the loan portfolio of the borrowers whose accounts were scored.

*Id.*, p. 6.

## **ARGUMENT**

The additional documents that the Defendant seeks are completely irrelevant and unduly burdensome on the government and the Witnesses. As referenced above, the government addressed the Defendant's argument more than a year ago in opposing one of his motions for a continuance because he had not received subpoenaed documents from the Witnesses. (Doc. 225). The government argued there that Harbour's Rule 17 subpoenas themselves "were overly broad by seeking information unrelated to the specific allegation in the superseding indictment (SSI) regarding the fraud perpetrated on PAIF." *Id.*, p. 2. The government revealed that one of its witnesses, L.P., Harbour's internal bookkeeper, "advised investigating agents that she provided Harbour via email the Borrowing Base spreadsheet, which he then manipulated, altered, and returned to her to email to PAIF. . . In sum, L.P. was not comfortable with the spreadsheets that were provided to PAIF and

knew the false information provided by Harbour was material to their lending decision." *Id*., pp. 2-3.

The government went on in that submission to identify by specific Bates stamp numbers a total of "approximately 1,228 PAIF related documents" that had already been produced to Harbour. *Id*., p. 4. With reference to the documents that Harbour sought as a basis for a continuance last year, and the same documents that Harbour is currently seeking from the government and the Witnesses, the government submitted that "the documents sought by Harbour *after* August 11, 2015, are irrelevant to [Count 3 of the SSI]. *Id.* That is also the case for documents *before* August 11, 2015 that have nothing to do with the August 11, 2015 disbursement itself, such as Green Circle's balance sheets, cash flow statements, borrower information and "scoring" of the Green Circle borrowers' loan portfolio. None of that information can possibly undermine or impeach Harbour's own statement and conduct in producing a falsified accounts aging report, prepared by his own internal bookkeeper that was the basis for the August 11, 2015 disbursement. Defendant's continued arguments about those additional documents are a classic fishing expedition designed to harass one of his victims in this case by causing PAIF to spend time, effort and counsel fees complying with endless requests to produce irrelevant documents.

## CONCLUSION

The Defendant's latest application to compel the government to produce additional documents should be denied and the Witnesses likewise should not be subjected to an Order to Show Cause or a further application for sanctions.

Respectfully submitted this 5th day of May 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

 *s/Kevin M. Rapp*
KEVIN M. RAPP
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Stephen M. Dichter
*Attorney for Defendant*

*s/Daniel Parke*
U.S. Attorney's Office