GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP
Arizona State Bar No. 014249
Email: Kevin.Rapp@usdoj.gov
COLEEN SCHOCH
Georgia State Bar No. 366545
Email: Coleen.Schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

David Allen Harbour,

Defendant.

No. CR-19-00898-PHX-DLR (DMF)

**UNITED STATES' MOTION TO STRIKE REPLY DECLARATION OR, ALTERNATIVELY, MOTION FOR LEAVE TO FILE SUR-REPLY OR CROSS EXAMINE DEFENDANT HARBOUR AT AN EVIDENTIARY HEARING**

**Preliminary Statement**

In replying to the United States' Response to Defendant's Brief Regarding the Rebuttable Presumption of Detention in A Revocation Proceeding (Doc. 411 ), Defendant submitted a conclusory declaration averring, among other things, that he has no assets at his disposal. The United States anticipated that Defendant may file some type of self-serving hearsay declaration *after* the hearing in an effort to circumvent both the Rules of Evidence and local rules governing the filing of motions. (*Id*, at fn. 5) For several reasons, the Declaration by David Harbour should be stricken or not considered by the Court.

As this Court may recall Defense counsel represented that at the evidentiary hearing,

he intended to have his client and Harbour's former attorney, Ashley Adams, testify. (Doc. 400) After two days of hearings counsel called neither Harbour nor Adams. Instead, counsel has now filed a declaration authored by Harbour. (Doc. 415-1) Similarly, counsel also has attempted to rely on a self-serving declaration authored by Adams knowing full well it was at odds with her in court representations to the Magistrate Judge and an email exchange between her and Bart Shea's attorney where they object to the accuracy of the affidavit. (compare Hrg Tr., 2/1/22, pp. 339 and Ex. A).

In any event, the Court's Rules do not contemplate the filing of reply declarations. *Cf.* Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion."). Here, the United States objects to the Harbour Declaration on interrelated grounds covered by both LRCiv 7.2(m)(1) and (2); *see* LRCrim 12.1(a) (LRCiv 7.2 applies to criminal cases). Yet, by waiting until after the United States filed its Response to submit the Harbour Declaration, Defendant has deprived the United States of a full and fair opportunity to object in a memorandum authorized by the Rules. *See* LRCiv. 7.2(c) and 7.2(m)(1)-(2). To permit the United States to present its objections consistent with the Rules, and for the following reasons, the United States respectfully requests that the Court entertain its objections in this Motion to Strike, set a hearing where Harbour may be cross examined or alternatively, grant the United States leave to file a sur-reply.[1]

## <u>Argument</u>

### I. The Harbour Declaration Should Be Stricken or Disregarded

A. <u>The Law and the Rules Do Not Authorize the New Reply Declarations.</u>

The Ninth Circuit has long recognized that proffering new evidence or information in a reply brief is improper because the opposing party is deprived of an opportunity to respond. *Tovar v. United States Postal Service*, 3 F.3d 1271, 1273 n.3 (9th Cir. 1993). Accordingly, "the Court will not consider affidavits submitted for the first time with [a]

---

[1] The United States strongly disagrees with Harbour's Declaration and the issues raised in their Motion, including in their Reply. Rather than re-argue the Motion here, the United States—through this filing—does not waive, but instead expressly incorporates, all facts and arguments in its Response. (Doc. 412).

reply memorandum." *Rodrigues v. Ryan*, 2017 WL 5068468, at *4 (D. Ariz. Nov. 3, 2017); *American Traffic Solutions, Inc. v. Redflex Traffic Sys. Inc.,* 2009 WL 775104, at *1 (D.Ariz. Mar. 20, 2009) ("The remedy for dealing with new evidence first appearing in a reply is that we will not consider issues or evidence raised for the first time in plaintiff's reply."); *Wallace v. Countrywide Home Loans, Inc.*, 2009 WL 4349534, at *7 (C.D. Cal. Nov. 23, 2009) ("A district court may refuse to consider new evidence submitted for the first time in a reply if the evidence should have been presented with the opening brief."). The Court's Rules similarly do not contemplate the filing of reply declarations. *See* LRCiv. 7.2(c); *cf*. Fed. R. Civ. P. 6(c)(2).

The Harbour Declaration purports to contain information without the benefit of cross examination for the first time in support of a reply brief. This is improper. *Melendres v. Arpaio*, 2015 WL 13173306, at *9 n.13 (D. Ariz. July 10, 2015) (*Melendres II*) (rejecting expert declaration submitted with reply brief; "the Court will not consider this new declaration because parties may not present new evidence for the first time in their reply briefs") (quoting *Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("Where new evidence is presented in a reply to a motion . . . the district court should not consider the new evidence without giving the [non-]movant and opportunity to respond.")).

B. <u>The Harbour Declaration Is Inadmissible Self-Serving Hearsay.</u>

Despite defense counsel's representations to this court that he intended to call Harbour as his witness at the appeal of his motion to revoke he really had no intention to do so. Defense counsel was well aware that Harbour would have been subject to a lengthy cross-examination that would have exposed him to other crimes (perjury and obstruction, among others). In addition, Harbour's testimony at the hearing would have strengthened the United States case against him with an under-oath transcript that would have been admissible at the pending trial. Instead, counsel, setting a new standard for being disingenuous, waited until *after* the government filed a response to the defense brief to smuggle in a self-serving declaration by his client. In sum, Harbour's declaration is a transparent end run around both the rules of evidence prohibiting self-serving hearsay and

the prohibition against presenting new evidence in a reply brief. *United States v. Edwards,* 159 F.3d 1117, 1127 (8th Cir.1998) ( "exculpatory out-of-court declarations are not admissible hearsay, even if they include a statement against the declarant's penal interest") *see also United States v. Shaver,* No. 02-2259, 89 Fed. Appx. 529, 533, 2004 WL 376854, *3 (6th Cir. Feb.27, 2004) (unpublished) ("Exculpatory hearsay may not come in solely on the basis of completeness."); *United States v. Gallagher,* No. 01-3078, 57 Fed. Appx. 622, 629, 2003 WL 179994, *5 (6th Cir. Jan.24, 2003) (unpublished) (holding that the trial court "properly concluded" that it was appropriate to exclude the self-serving portion of the defendant's statement as inadmissible hearsay and stating that "the self-serving sections of [defendant's] statement were inadmissible hearsay unaffected by Rule 106"); *see also United States v. Banales-Venegas*, 484 F. App'x 196 (9th Cir. 2012) ( holding  that the District Court did not abuse its discretion in preventing defendant from introducing complete recording of his statements to investigators in defendant's criminal prosecution for bank and wire fraud; defendant did not identify portions of his statement that explained the context of admitted statements, but rather, he simply sought to introduce his complete statement, including self-serving hearsay. 18 U.S.C.A. §§ 1343, 1344; 28 U.S.C.A. § 1291).

      Here, Harbour's declaration is clearly inadmissible self-serving hearsay. By submitting a declaration Harbour should be subject to cross examination on his credibility. This would involve lengthy cross-examination on innumerable areas of impeachment spanning fifteen years of fraud. Areas of cross-examination include, but are  not limited to, numerous dubious financial transactions, misleading  text messages, emails, forged documents, prior testimony before the Federal Trade Commission, false statements to the IRS during an audit, jail calls, chronic diversion of investor funds, lavish expenditures, etc. Moreover,  in the declaration Harbour  attempts to detail his financial picture. (*See* Doc. 410, ¶s 12-14) This is obviously incomplete as it fails to account for numerous unexplained financial transactions and sources of money and avowals of substantial assets including offshore accounts.   A preview of some examples of assets where  Harbour conveniently

failed to mention include the following:

- **Financial interest in a 16th Hole suite at Waste Management Open**. (*See* Doc. 94)
- **Stock dividends from Twin Peaks through investment in daughter's name.** (*See* Ex. D; Checks from Twin Peaks)
- **Interest in Proze**. (*See* Ex. B Interview of SKJ, dated 8/28/19; *See also* Ex. F)
- **Offshore Account**. Victim R.G. told investigating agents that Harbour claimed he placed a portion of her $1,000,000 in Harbour's mother's name in an offshore account in the Caribbean. (*See* Ex. C; FBI 302s of R.G. )
- **Incoming Wires from Gozzer Ranch**. In 2020 Harbour received $165,000 in rental payments that were not disclosed to PTS. The disposition of these funds have never been accounted for. (*See* Ex. E)
- **Baskin "kickback" of attorney fees**. As the court is aware Baskin kicked back $50,000 to an account in the name of Abby Harbour . (*See* Ex. 101, Hrg Tr. 6/16/22, pp. 53-55 ) The disposition of these funds have not been accounted for.
- **PB Financial wire in the amount of $33,386.63**. (*See* Doc. 188, p.4). Harbour received $33,000 into his mother bank account for his benefit. The disposition of these funds have not been accounted for. These funds were vaguely described by Harbour as "the deposit was the proceeds of what Mr. Harbour thought was a failed investment made in the mid-2000s – long before any of the allegations in the indictment. After learning that the company had been sold Mr. Harbour redeemed the stock certificates and PB Financial, or its successor in interest, wired $33,386.63 to the DSFCU account." (Id.)
- **Harbour's 2012 Affidavit avowing net worth of $27,000,000. (***See* Ex. G**)**

Simply put, there are numerous unanswered questions about Harbour's financial picture that are not detailed in his untimely, self-serving hearsay affidavit.

C. The Harbour Declaration Is An Unauthorized Supplemental Reply Brief.

Defendant cannot provide a second reply brief disguised as reply to the

government's memorandum on rebutting the presumption. *Id.* The Court limited Defendant to a 11-page reply. LRCiv 7.2(e)(2). The Harbour Declaration constitutes an additional, unauthorized, 2-page reply with new evidence. It should be stricken for that reason alone. LRCiv 7.2(m)(1). *See E.E.O.C. v. Creative Networks, LLC and Res-Care, Inc.*, 2008 WL 5225807, at *3 (D. Ariz. Dec. 15, 2008) (striking separate responses and replies to summary judgment statements of fact that contained further factual and legal arguments in support of the summary judgment motion).

Lastly, counsel's claim that he was unable to provide the Declaration in advance of or during the two days of evidentiary hearings, or as an attachment to Doc. 398 due to Harbour being in custody can't be taken seriously. (*See* Doc. 398, fn. 1) Defense counsel joined the defense in mid-February 2022 and effectively took over his representation shortly thereafter. He has had sufficient time to meet with his client to prepare an affidavit that would have been subject of a hearsay objection during the hearing or would have required Harbour to take the stand be subject to cross examination.

**Conclusion**

For the foregoing reasons, the Harbour Declaration (Doc. 415-1 ) should be stricken or otherwise disregarded by the Court in deciding the Motion. Alternatively, the United States should be granted leave to file a Sur-Reply and/or the opportunity to cross examine Harbour at a yet to be scheduled evidentiary hearing.

Respectfully submitted this 14th day of July, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*
KEVIN M. RAPP
COLEEN SCHOCH
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Daniel Parke*
Daniel Parke
U.S. Attorney's Office