Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
Justin R. Vanderveer, 037657
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant David Harbour

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:19-cr-00898-DLR (DMF) |
| Plaintiff, | **MOTION #3 TO SEVER AND FOR RELIEF FROM PREJUDICIAL JOINDER** |
| vs. | |
| David Allen Harbour, | **ORAL ARGUMENT REQUESTED** |
| Defendant. | |

Defendant, David Harbour, by and through undersigned counsel, respectively moves this Court to sever the counts contained in the indictment and order separate trials pursuant to Federal Rule of Criminal Procedure 8 and 14. This motion should be considered after Motions #1 and #2. Motion #1 attempts to clear away the superfluous language clogging a close examination of the charged conduct associated with the alleged payday lending fraud, that is the Group of 5, and the uncharged conduct that relates to the Group of 6. If Motion #1 is granted, then, with the exception of Counts 11 and 12, which relate to A.W. and C.H., who are charged victims, the SOL arguments can be deferred unless and until there is a conviction in payday lending. If however, the Group of 6, with

respect to whom the government has conceded (*see*, Doc. 267, the Petition to Revoke) the SOLs have run *are* going to be presented to the *petit* jury in the criminal trial, then Motion #3, dealing with severance would have to increase the number of trials from three, as outlined below, to five.

## **BACKGROUND**

Mr. Harbor was charged with 26 counts in the first Superseding Indictment (Doc. 154); counts 1-10 being wire fraud, counts 11-12 mail fraud, counts 13-23 transactional money laundering, count 24 tax evasion, count 25 false statements, and count 26 being obstruction. The second superseding indictment ("SSI") was filed on June 14, 2022 (Doc. 387) and contained the aforementioned counts, plus count 27 conspiracy, count 28 bank fraud, counts 29-30 wire fraud, counts 31-32 transactional money laundering, and counts 33-34 aggravated identity theft.

Focusing on the SSI,[1] these counts can be broken down into three alleged "frauds": first, the Payday Lending "fraud" (counts 1-23), second, the tax counts (counts 24-26), and third, the Mortgage "fraud" (counts 27-34). For the following reasons, the court must sever the counts and conduct three separate trials, one trial for each of the alleged acts/transactions. That being said, counsel understands the lengths this Court has gone through to accommodate a 15-day trial and the obvious hesitation to move trial dates again. In light of this, undersigned counsel proposes that the trial dates remain as they stand, with the court simply holding one trial for each count during the three weeks

---

[1] If the Group of 6 is included, the fourth and fifth cases are: 4) The 2007 K.B. and spouse (P.C.) "fraud," and the 2010 R.G. "fraud."

2

allotted for trial.[2] The government can, say, by the middle of October, decide which case it wants to try and in which order.

## LEGAL STANDARD

Indictments may charge a defendant in separate counts with two or more offenses if the offenses charged are of the same or similar character, are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan. *See* F.R.Crim.P. 8(a). The validity of joinder is based solely on the allegations in the indictment. *United States v. Jawara*, 474 F.3d 565, 572 (9th Cir. 2007) (quoting *United States v. Terry*, 911 F.2d 272, 276 (9th Cir. 1990)).

F.R.Crim.P. 14 states that a court may order the separate trials of counts if the joinder of offenses in an indictment for trial appears to prejudice a defendant or the government. Even if counts have been properly joined in the same indictment, if such joinder would create undue prejudice to an accused during trial, the court may order a prosecution election among counts or a severance of the counts for trial. *United States v. Olson*, 504 F.2d 1222, 1224 (9th Cir. 1974). It is at the trial judge's discretion to order the severance of counts for trial. *Id*.

---

[2] When you break down the "cases" and separate the government's novel from the actual facts, there are really not that many witnesses nor much government proof. Of course, if the K.B./P.C. and R.G. cases are, without the presence of any actual charges, somehow allowed to proceed as *criminal* trials, then five trials in 15 seems far too ambitious. We are making this point to highlight, of course, that once one separates out the Group of 6, there are *no* trials that could occur because there are no charges related to the Group of 6. Nevertheless, if the evidence concerning the Group of 6 is includable in the payday loan trial, the plan would break apart because, not only would we have to defend the actual charges but also defend the uncharged allegations related to the Group of 6.

# ARGUMENT

For joinder to be proper, there must be a greater "logical relationship" between occurrences. *United States v. Ford*, 632 F.2d 1354, 1371 (9th Cir. 1980) *rejected on other grounds by United States v. De Bright*, 730 F.2d 1255, 1256 (9th Cir. 1984). A logical relationship may be shown by the existence of a common plan, scheme, or conspiracy. *Id. see also United States v. Guerrero*, 756 F.2d 1342, 1345 (9th Cir. 1984) *holding that* separate acts that constitute separate offenses are sufficiently related to justify joinder if they arise out of a common plan, scheme, or conspiracy.

The situation in Mr. Harbour's case is that there are three offenses charged under one indictment and set to be tried as one case. Of course, the use of multicount indictments is common practice and wholly acceptable. *See Howard v. United States*, 372 F.2d 294, 301 (9th Cir. 1967). An issue only arises when there is no logical relationship between the occurrences.

In *United States v. Renzi*, the defendant had been charged with various counts of wire fraud, insurance fraud, racketeering, false statements in a federal tax return, and campaign contributions in the name of another. *United States v. Renzi*, No. CR0800212TUCDCBBPV, 2009 WL 10675612, at *3 (D. Ariz. Dec. 11, 2009). The Arizona District Court found that the insurance fraud and RICO counts should be severed from the wire fraud and tax counts and the campaign contribution counts should also be severed from the insurance fraud and wire fraud counts. *Id*. at 8.

The court based its decision on a lack of relationship between the time, place, and manner of the counts. *Id*. at 7. As for the campaign contributions count, the court stated

that there was no nexus between that count and any of the other counts charged. *Id.* quoting *Jawara*, 474 F.3d 565 at 578 "[T]he similar character of joined offenses should be ascertainable- either readily apparent or reasonably inferred-from the face of the indictment. Courts should not have to engage in inferential gymnastics or resort to implausible levels of abstraction to divine similarity." Under F.R.Crim.P. 8(a), there was no similar character as to the offenses charged in Counts 1-27 and the campaign contributions count, or were they based on the same act or transaction or conceded with parts of a common scheme or plan. *Id.*

Similarly, a motion to sever was granted by the Arizona District court where felony possession charges did not relate to a murder and drug charge. *United States v. Goldtooth*, No. CR-19-08108-PCT-DGC, 2021 WL 1688237, at *4 (D. Ariz. Apr. 29, 2021). The government had charged the defendant with six counts – four of which pertained to the unlawful possession of firearms and ammunition, one count of possession of methamphetamines, and one count murder. *Id.* at *1.

In its finding, the court evaluated cases from the 2nd and 3rd Circuits. *Id.* at *2-3. The court held that all offenses charged must have a F.R.Crim.P. 8(a) connection; the rule does not say that joinder is proper if "some of the offenses charged" have connections. *Id.* at *3. F.R.Crim.P. 8(a) seeks to strike a balance between the efficiencies to be gained by trying a case together and the prejudice that a defendant would suffer by a jury hearing incriminating evidence on a variety of charges. *Id.* The court ultimately determined that the murder count and the drug count needed to be tried separately since the counts did not arise out of the same act or transaction. *Id.* at 4.

5

These cases are similar to that of Harbour, in that, while some of the counts do relate to the same alleged plans, schemes, or conspiracies, not every count in the indictment relates to the others.

Obviously, the mortgage fraud/bank fraud charges must be severed from the payday lending and tax charges. We think this to be self-evident, really, and needing little, if any, discussion. We will be interested in seeing how, if it does, the government even attempts to keep these charges in the same case as the payday lending and tax cases.

Slightly more difficult, but not all that challenging are the payday loan and tax charges. This is more easily seen from the vantage point of the payday loan charges looking forwards than from the tax charges looking backwards.

The tax charges are not traditional tax evasion/tax fraud charges. Were they of the usually seen type of tax charges, the SOL on Count 24 (evasion) would have expired. The year *charged* is calendar year 2012. Counts 24 was not charged until November 24, 2020, well past the 6-year SOL. Thus, in order to fit within the SOL, the government charged a variety of tax evasion called "specific acts of evasion." All of the acts associated with the alleged evasion occurred well-after the alleged payday loan fraud ended. Nor does the government allege that the evasion had anything to do with payday lending.

The false statement count (Count 25) relates to a Form 433-A made on April 26, 2017. The obstruction count (Count 26) relates to the period between March 2017 and June 2018. This was long after the so-called payday lending fraud ended (the last money laundering count is September 2, 2015) and long before the mortgage fraud/bank fraud claims commenced (July 2021).

The government's strategy is as obvious as is the Court's need to thwart it. he government has three bare-bones cases. It's payday lending case rests on three wires fraud victims, M.B., PAIF, and R.T. Of these, M.B.'s case will collapse, *inter alia* because the Operating Agreement drafted by *his own lawyers* and the loan agreement of which he was acutely aware, gave Harbour the absolute right to borrow funds and the money Harbour borrowed was, when it was called for by Green Circle, forwarded to Green Circle, as the government well-knows. The M.B. charges should go nowhere. R.T. has signed a Declaration that, when read in association with the evidence that is referred to in it, fully defeats that R.T. charges.  So, does A.W.'s Declaration.

The PAIF allegation has been shredded by the documents which, though suppressed by PAIF notwithstanding the Court's order to produce them, were, nonetheless, already in the huge databank maintained by a third party professional organization since 2016. Those documents have been produced to the government and it is noticeable that one of the names formerly on the first no-contact if released list is no longer on the latest version of that list. Obviously, the government has realized that the documents we supplied (the Emails with PAIF during July-August 2015) completely undid that witnesses' former proposed testimony.

As for the two "new" mail fraud victims (as of 2020), the government has naught except two late checks which, we have supposed, the government will claim are part of the payday loan fraud that the government concedes was barred by the expiration of the SOL. We have discussed those counts in Motion #2.

7

**CONCLUSION**

Defendant respectfully moves this Court to sever the charges in the indictment and conduct three separate trials, one for each overarching offense pursuant to F.R.Crim.P. 8(a) and 14. There is no logical relationship between the three overarching offenses: one offense relates to a Payday lending business, the second offense relates to tax counts from 2017-18, and the third offense is a mortgage fraud issue from after Mr. Harbour had already been indicted on the other counts.

There is absolutely no causal nexus between any of these three distinct offenses and therefore, they must be severed and be tried separately to avoid any confusion of the issues or undue prejudice on Mr. Harbour. We are willing to try them back-to-back-to-back. We can pick three juries at the same time. The government can pick which case to try first (unless, of course, the Court makes the decision on its own).

RESPECTFULLY SUBMITTED this 9th day of September 2022.

CHRISTIAN DICHTER & SLUGA, P.C.


By: /s/ Stephen M. Dichter
    Stephen M. Dichter
    Justin R. Vanderveer
    2800 North Central Avenue, Suite 860
    Phoenix, Arizona 85004
    Attorneys for Defendant David A. Harbour

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| 1 | Kevin M. Rapp |
| 2 | Kevin.rapp@usdoj.gov<br>Coleen Schoch |
| 3 | Coleen.schoch@usdoj.gov |
| 4 | U.S. Attorney's Office<br>40 N. Central Avenue, Suite 1800 |
| 5 | Phoenix, Arizona 85004<br>Attorneys for the United States |

/s/ Yvonne Canez