GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP
Arizona Bar No. 014249
Email: kevin.rapp@usdoj.gov
COLEEN P. SCHOCH
Georgia Bar No. 366545
Email: Coleen.Schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR- 19-00898-PHX-DLR (DMF) |
|---|---|
| Plaintiff, | |
| v. | **PROPOSED STATEMENTS OF THE CASE AND SUPPLEMENTAL QUESTIONS FOR THE JUROR QUESTIONNAIRE** |
| David Allen Harbour, | |
| Defendant. | |

Pursuant to the Court's order (Doc. 475), the Government and the Defendant submit a proposed statement of the case and three additional questions to be considered for inclusion in the proposed Juror Questionnaire.

**I.  UNITED STATES' PROPOSED STATEMENT OF THE CASE**

This case involves a single defendant, David Allen Harbour. He is charged by the grand jury with Mail Fraud, Wire Fraud, Bank Fraud, Aggravated Identity Theft, Tax Evasion, False Statement, Obstruction, and Transactional Money Laundering.

Because the Second Superseding Indictment is 26 pages long, at this stage, the Court will summarize the charges and allegations set forth in that indictment. An indictment is simply the description of the charges made by the United States against the defendant; it is not evidence of anything.

The Government alleges that Harbour, from January 2007 through August 2021, induced victims to provide him money—primarily in purported ventures involving the Dollar Stores, Texas student housing, payday lending, and homes purchased for Harbour's benefit. Harbour convinced investors to provide him money by promising them that he would use their money to, among other things, make short-term, high-interest loans to individual borrowers or in real estate. The Government alleges that Harbour and his agents made false statements to would-be investors in order to persuade them to invest, including false statements that (1) Harbour had been successful with previous investments; (2) had substantial experience in payday lending; (3) Harbour's portfolio of loans was performing well and generating profits; (4) earlier investors had already profited greatly by investing their money with Harbour; and (6) Harbour provided only that particular investor with a written personal guarantee as security for their investment.

The Government also alleges that Harbour knew his existing loans were performing poorly or not at all and were incapable of generating profits or of paying back investors. Harbour did not disclose this to his investors because doing so would have caused them to withdraw their money or stop investing. Instead, Harbour began operating his various investments as a *Ponzi* scheme—that is, using new investors' money to pay off old investors, thereby creating the false illusion that his loans and other investments were generating profits. Harbour also used victims' funds for purposes other than what he promised to his investor-victims, such as for his own lavish personal living expenses, including private golf resort membership fees, personal credit card payments, extravagant parties, mortgage payments, an expensive power boat, private chartered jets, luxury homes, jewelry, and other business ventures.

II.     **DEFENDANT'S PROPOSED STATEMENT OF THE CASE**

The Defense contends that the government's statement of the case, presented above, is a fictional retelling of a series of unrelated, isolated incidents that occurred (or did not occur) over a period of a decade's time.

There are three main pieces to the government's case:

The first involves Payday lending, a business in which those alleged by the government to be victims loaned money to Defendant to be re-loaned to others who were making Payday loans to millions of Americans in States in which high-interest loans were permitted. Every alleged victim of the defendant was receiving precisely what his or her loan agreement entitled them to receive until the Obama Administration secretly launched a program called Operation Chokepoint whose purpose, without the benefit of any law enacted permitting it to do so, was to choke-off the Payday loan business' use of certain kinds of banking accounts, thus killing Payday lending. The Obama Administration was successful in its aim and the Defendant along with the alleged victims and various other proposed government witnesses all lost all the money loaned into the business.

Later, through the auspices of sovereign Native-American nations, Payday lending resumed as did Defendant's involvement in it. This time, another lender to a Native-American tribal lending organization was senior to the money loaned to Defendant, and by Defendant, to the Native-American owned organization. When the senior lender foreclosed on the loans to the Native-American owned organization, the loans made by Defendant's business were swept up by the senior lender.

While Payday lending was booming, in 2011, 2012, and early 2013, Defendant made plenty of money from it. However, none of that money came from the alleged victims' loans. Rather, all of it was as a result of the very large interest rates charged by Payday lenders to the public for the short-term use of funds.

The second part of the government's case is a tax evasion case. In it the government contends that the Defendant hid assets. The Defendant contends that as early as in 2016, he had exposed to the Internal Revenue Service sufficient realizable collectible assets for the government to have collected on the tax then due and owing.

The third part of the case involves a claim that fraud was committed in securing funding for the purchase of a residence for remodeling by an uncharged person, identified as "B.S.," who with a partner–who was not the Defendant–sought to split an anticipated

$3+ million gain when the house was remodeled. Defendant is charged with aiding the homeowner in securing the funding for the purchase of the residence.

In a criminal case, the government always has the burden of proving Defendants' guilt beyond a reasonable doubt, whereas the Defendant has no burden of proof whatsoever and is presumed innocent of all charges.

### III.   Government's Additional Questions for Jury Questionnaire

1.   Have you, or members of your immediate family, had any employment, training, or experience in Accounting, Bank lending, Financial Investments?

If yes, please describe.

2.   Including retirement plans and college savings plans, have you invested money in stocks, bonds, futures, derivatives, hedge funds, offshore accounts, offshore investment programs, or some other investment plan or program?

If yes, please describe your portfolio, being sure to mention any investments that might be characterized as non-mainstream or untraditional.

3.   Have you, or members of your immediate family, had any employment, training, or experience in the payday lending industry or a similar high-interest, non-conventional lending industry?

If yes, please describe.

### IV.   Defendant's Additional Questions for Jury Questionnaire

Mr. Harbour submits the following additional questions to be considered for inclusion in the proposed Juror Questionnaire [Doc. 133]:

1.   Have you, any member of your immediate family, or a close family friend ever taken out a short-term, high-interest loan of a type commonly known as a Payday loan?

   a.   If so, did you find (or hear) the experience a good, a bad, or a neutral one?

2. Have you, any member of your immediate family, or a close family friend ever provided a wage assignment to a creditor whereby the creditor could deduct money directly from your bank account if the creditor was not paid?

    a. If so, how did that experience affect you?

3. Do you now, or have you ever believed, that the government only brings charges against people who are actually guilty?

    a. If you once believed that but no longer do, can you point to something specific that caused you to change your mind?

Respectfully submitted this 9th day of December, 2022.

          GARY M. RESTAINO
          United States Attorney
          District of Arizona

          *s/ Kevin M. Rapp*
          KEVIN M. RAPP
          COLEEN P. SCHOCH
          Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on December 9, 2022, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Daniel Parke*
U.S. Attorney's Office