GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP
Arizona State Bar No. 014249
Email: kevin.rapp@usdoj.gov
COLEEN SCHOCH
Georgia State Bar No. 366545
Email: Coleen.Schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, Plaintiffs, vs. David Allen Harbour, Defendant. | CR-19-00898-PHX-DLR (DMF) **UNITED STATES' OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION** |

The Court should deny Defendant's Motion for Reconsideration because there was no manifest error in the Court's denial of the Motion to Sever. Pursuant to Rule 8, the Court found that the indictment alleged a common scheme or plan, making joinder appropriate. Although Defendant states that he does not challenge the Court's Rule 8 decision, he proceeds to argue that the Court should find that the charges do not satisfy the "same or similar character" prong of Rule 8. The Court need not revisit its reasoned Rule 8 decision. Defendant engaged in a *Ponzi* scheme from at least 2007 until his arrest in 2021. Throughout that time, he employed the same means and methods to extract money from victim-investors and avoid paying his rent or mortgage as well as his taxes. He funneled money that should have gone to his victims or the IRS to fund an extravagant lifestyle that gave him access to new victims and persuaded them to "invest" with him. He also used

new investors' money and money that should have gone to the IRS to make *Ponzi* payments to the most upset of his previous investors to avoid lawsuits. The Court appropriately found that the indictment alleges a common scheme or plan under Rule 8(a).

With respect to Rule 14, the Court found that separate trials would result in waste and would require the same witnesses to testify regarding the same aspects of Defendant's conduct multiple times. While the Court did not recite the words "Rule 14," that is of no matter. Under Rule 14, joinder is not prejudicial when the same evidence would be admissible in multiple trials. The Court ruled on Defendant's motion and gave adequate reasons; there was no manifest error. The Court should deny Defendant's motion to reconsider.

**I.      Relevant Background**

Defendant was indicted for Wire Fraud and Transactional Money Laundering in July 2019. Indictment (Doc. 3). The First Superseding Indictment added Counts 24-26 (Tax Evasion, False Statement, and Obstruction) in November 2020 (Doc. 154). The Second Superseding Indictment added Counts 27-34, which relate to the purchase of the Georgia Avenue Residence, in June 2022 (Doc. 387). Trial is scheduled for February 1-24, 2023.

Defendant filed a Motion to Sever and for Relief from Prejudicial Joinder in September 2022. Mot. to Sever (Doc 446). The United States opposed this motion. Consol. Resp. 25-27 (Doc. 455). The Court denied it, finding:

> The second superseding indictment makes allegations of a common scheme or plan, which under Rule 8 justifies joinder.
>
> Further, separate trials would result in waste. Severance would result in the same witnesses testifying about the defendant's conduct regarding the same victims and for multiple investments on multiple occasions.
>
> Defendant's Motion No. 3 to sever is denied.

Oral Arg. Tr. 3:22-4:4 (Dec. 1, 2022) (Doc. 482); *see also* Order (Dec. 1, 2022) (Doc. 473).

Defendant has moved the Court to reconsider its decision under both Rules 8 and 14, and again asked the Court to sever Defendant's trial into three cases. Mot. for Recons.

2 (Doc. 480). The Government again opposes this request because Defendant merely reasserts the same arguments that the Court already rejected.

Defendant also requests for the first time that the tax counts be tried to the Court rather than a jury. Mot. for Recons. 6. The United States opposes this request. While Defendant believes that these four counts are too "complex[] and confuse[ng]" for a jury, Mot. for Recons. 6, the United States is confident that a jury can understand lying to the IRS and failing to pay a tax bill that Defendant admitted to owing.

Finally, Defendant asks to select three separate juries on February 1, and to conduct three four-day trials back-to-back-to-back. The United States opposes this request. Multiple trials would require multiple witnesses to testify to the same events more than once. It is also impractical to select three juries plus the large number of alternates that would be necessary from a single jury pool, to ask jury members to return for service weeks later, and to conduct three trials—including opening, closing, and deliberations—in the time allocated for one.

II. **Legal Standard**

A. **Motions for Reconsideration**

"A motion for reconsideration should be denied absent a manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g). A motion for reconsideration shall "shall point out with specificity the matters that the movant believes were overlooked or misapprehended by the Court, any new matters being brought to the Court's attention for the first time and the reasons they were not presented earlier, and any specific modifications being sought in the Court's Order." LRCiv 7.2(g). It shall not "repeat any oral or written argument made" in support of the original motion. LRCiv 7.2(g). "Failure to comply with this subsection may be grounds for denial of the motion." LRCiv 7.2(g).

B. **Rule of Criminal Procedure 8**

Under Rule 8(a), an indictment "may charge a defendant in separate counts with two or more offenses if the offenses charged . . . are of the same or similar character, or are

based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." In the event of misjoinder, "Rule 8 'requires reversal only if the misjoinder results in actual prejudice because it had a substantial and injurious effect or influence in determining the jury's verdict.'" *United States v. Jawara*, 474 F.3d 565, 579 (9th Cir. 2007) (quoting *United States v. Lane*, 474 U.S. 438 (1986)) (affirming joinder where no actual prejudice occurred)).

### C. Rule of Criminal Procedure 14

"If the joinder of offenses . . . appears to prejudice a defendant or the government, the court may order separate trials of counts . . . or provide any other relief that justice requires." FED. R. CRIM. P. 14(a). "'The defendant has the burden of proving that the joint trial was manifestly prejudicial,' such that 'defendant's right to a fair trial was abridged.'" *United States v. Jawara*, 474 F.3d 565, 579 (9th Cir. 2007) (quoting *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir. 1986)). "Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence." FED. R. CRIM. P. 14(b). "A motion under Rule 14 is addressed to the discretion of the trial judge, and that the Court's exercise of such discretion, will not be disturbed, absent abuse." *United States v. Olson*, 504 F.2d 1222, 1224 (9th Cir. 1974) (citing *Tillman v. United States*, 406 F.2d 930 (5th Cir. 1969); 8 J. Moore, FED. PRAC. & P. P14.02(1), at 14-3 (2d ed. 1968)).

### III. Argument

Defendant engaged in a *Ponzi* scheme from at least 2007 until his arrest in 2021. Throughout that time, he lived an extravagant lifestyle funded by money obtained from his investor-victims for non-existent "investments," for non-existent "services," for investments from which he stole 25% off the top, for investments about which he lied about the risk and the potential returns, and for purported investments from which he diverted money for *Ponzi* payments and personal expenses. Defendant also avoided paying taxes that he admitted he owed and instead continued to live a lifestyle that he could not afford. Throughout his scheme, Defendant used oral and written lies, worthless personal

guarantees, and forgeries to accomplish his fraud of both the IRS and his investor-victims. Defendant also deployed his lifestyle as a tool to find and persuade new victims to "invest" with him. The indictment alleges a "common scheme or plan" that authorizes joinder under Rule 8, and Defendant has not met his burden to show that "manifest prejudice" will result from a single trial. There was no "manifest error" in the Court's decision, and the motion to reconsider should be denied.

### A. The Court Correctly Denied Defendant's Motion Under Rule 8(a).

Defendant appears to assert that the Court erred under Rule 8 because it did not address whether each of the charges were of the "same or similar character." Mot. to Recons. 7-8, 10-11 (citing multiple decisions analyzing this prong of Rule 8). A "same or similar character" analysis was *not* required here because the Court found joinder appropriate under the "common scheme or plan" prong of Rule 8(a). Oral Arg. Tr. 3:22-24 (Dec. 1, 2022). Rule 8(a) is written in the disjunctive. Joinder is appropriate if any one of the three prongs is satisfied: "if the offenses charged . . . are of the same or similar character, **or** are based on the same act or transaction, **or** are connected with or constitute parts of a common scheme or plan." FED. R. CRIM. P. 8(a) (emphasis added). The Court should deny Defendant's motion because it already correctly applied the "common scheme or plan" prong to the indictment; there was and remains no reason for it to analyze the indictment under the other two prongs of the Rule.

#### *1. The Court Need Not Address the Less-Favored "Same or Similar Character" Prong.*

Because it has already found joinder appropriate under the "common scheme or plan" prong of Rule 8(a), there continues to be no reason for the Court to address whether or how the Second Superseding Indictment satisfies the less-favored "same or similar character" prong. Only one prong of Rule 8(a) must be met to authorize joinder. FED. R. CRIM. P. 8(a). For this reason, Judge Campbell's analysis in *United States v. Goldtooth*, No. CR-19-08108-PCT-DGC, 2021 WL 1688237, at *1 (D. Ariz. Apr. 29, 2021), which Defendant asks the Court to adopt, does not apply here. The indictments in *Goldtooth* and

in *United States v. Shellef* (on which *Goldtooth* relies) did not satisfy the "common scheme or plan" prong of Rule 8. *See Goldtooth*, 2021 WL 1688237, at *3; *Shellef*, 507 F.3d 82, 97–98 (2d Cir. 2007).

In the absence of a common scheme or plan (which would necessarily run through and connect all of the charges to one another), Judge Campbell addressed whether under the other two prongs of Rule 8(a) all counts "must have a connection to each of the counts with which they are joined." *Goldtooth*, 2021 WL 1688237, at *3. Judge Campbell's concern is not applicable where there is a common scheme or plan like Defendant's decades-long *Ponzi* scheme. The *Goldtooth* indictment also contained only the most basic of allegations; little "from which the court could determine the relationship among the claims." Consol. Resp. 26. As the Ninth Circuit noted, "where the government seeks joinder of counts on the basis of "same or similar character," it crafts a barebones indictment at its own risk." *Jawara*, 474 F.3d at 578. "In contrast, the 26-page SSI provides detailed information regarding Harbour's overlapping and interrelated schemes." Consol. Resp. 26. The analysis in *Goldtooth* and *Shellef* is unnecessary where the "common scheme or plan" already ties together all of the charges.[1]

### 2. The Court Correctly Applied the Common Scheme or Plan Prong of Rule 8(a).

In denying Defendant's motion to sever, the Court found that "[t]he second superseding indictment makes allegations of a common scheme or plan." Oral Arg. Tr.

---

[1] Moreover, "same or similar character" is the least-favored prong. The Ninth Circuit has opined that it "is the most amorphous and controversial of the three grounds for joinder." *Jawara*, 474 F.3d at 575. "Numerous courts and commentators have questioned the logic and fairness of such a rule." *Id.* (citing, *inter alia*, *Halper*, 590 F.2d at 430 ("When all that can be said of two separate offenses is that they are of the 'same or similar character,' the customary justifications for joinder (efficiency and economy) largely disappear . . . . At the same time, the risk to the defendant in such circumstances is considerable.")); 1A Charles Alan Wright, FED. PRAC. & P. § 143 (3d ed. 1999) ("Joinder on this ground poses obvious dangers of prejudice to the defendant . . . . [I]t may fairly be asked whether joinder of this kind should ever be allowed. If the offenses arise out of separate and unrelated transactions, there is likely to be little saving in time and money in having a single trial.").

3:22-24 (Dec. 1, 2022). It also found that "separate trials would result in waste" because "the same witnesses [would] testify[] about the defendant's conduct regarding the same victims and for multiple investments on multiple occasions." Oral Arg. Tr. 3:25-4:4 (Dec. 1, 2022). Neither finding was error.

The Ninth Circuit has "not specifically defined the requisite nexus for a 'common scheme or plan'; because the words are self-defining, courts generally permit joinder under this test where the counts 'grow out of related transactions.'" *Jawara*, 474 F.3d at 574 (citing *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir. 1996)). "Stated another way, we ask whether 'commission of one of the offenses either depended upon or necessarily led to the commission of the other; proof of the one act either constituted or depended upon proof of the other." *Id.* (quoting *United States v. Halper*, 590 F.2d 422, 429 (2d Cir. 1978) (alterations omitted); *see also United States v. Anderson*, 642 F.2d 281, 284 (9th Cir. 1981)). As the Court has already found, the Second Superseding Indictment alleges a common plan or scheme.

Defendant's commission of the offenses charged "depended upon or necessarily led to the commission of the other" and "proof of the one act . . . depend[s] upon proof of the other." *Jawara*, 474 F.3d at 574 (internal quotation marks, alterations, and citation omitted). Defendant conducted a decades-long *Ponzi* scheme by means of the same misrepresentations, omissions, forgeries, and victims. The type of fraud for which he solicited funds did not matter, as Defendant himself testified in another proceeding. For example, the Pat Spaulding Fraud, Rhonda Gray life insurance Fraud, KSQ, Green Circle and the Georgia Residence Fraud involve forging the names of another, the diversion of investor funds to make *Ponzi* payments to earlier investors to deter them from suing him or otherwise going to the authorities, and the diversion of investor funds for Harbour's personal expenditures. Defendant also used a pattern of not paying any liabilities: he did not pay his taxes; he did not repay his investor-victims as required by the notes he gave them; he did not pay his rent or mortgage payments on multiple properties. He also did not pay his taxes. Instead, he used his victims' money and money that he should have paid to

the IRS to make *Ponzi* payments to previous investors and to fund his own lavish lifestyle. Defendant had the same motive for not paying his tax bill. Defendant's lifestyle itself was also a means of his fraud: it gave him connections and access to new victims and persuaded them to entrust him with their money. Consol. Resp. 22. Defendant lied to the IRS, as he did to his investor-victims, about his employment and income. He also repeatedly moved and hid money from the IRS, as he did from his investor-victims.

"[E]ach of Harbour's frauds begets another fraud of similar character and design." Consol. Resp. 26-27. For example, because he owed Bobrow and Case approximately $2,500,000, he then worked to defraud Gray of her $1,000,000 life insurance fund. When that money ran out, Defendant involved himself in the KSQ fraud. Despite testifying that he knew nothing about payday lending, Defendant was a two-thirds owner of the entity that transferred funds to Tucker. When that fraud failed, Defendant transitioned to the Green Circle fraud. He made similar misrepresentations and omissions to Green Circle investors so that he could divert their money into *Ponzi* payments to previous investors, sustain his lifestyle, and avoid his taxes. Finally, even after being arrested for fraud, Defendant was intent on living in a multimillion-dollar residence to maintain his veneer of success. He had no real employment, no assets, and subprime credit, but convinced others to invest in the multi-million-dollar Georgia residence by fraudulently orchestrating a false gift letter scheme and forging secured promissory notes. *See* Consol. Resp. 26-27.

The "predominant consideration is whether joinder would serve the goals of trial economy and convenience; the primary purpose of this kind of joinder is to ensure that a given transaction need only be proved once." *United States v. Roselli*, 432 F.2d 879, 901 (9th Cir. 1970). "When the joined counts are logically related, and there is a large area of overlapping proof, joinder is appropriate." *Id.* at 899. Separate trials would require the United States to "redundantly prove that Harbour solicited the same victims for multiple investments on multiple occasions and to re-call the same witnesses to testify about their investments and conversations with Defendant if the Court were to sever this case into different trials." Consol. Resp. 25-26. For example, K.B. would be needed to testify in the

first and the third of Defendant's proposed trials, C.H. would testify in all three trials, as would L.P, and A.W. would testify in the first and second trials. Defendant also made representations to the IRS about his income, employment, finances, and payday lending activities. In all three trials, the jury would be informed of the tax investigation and Defendant's representations to the government about his employment and income and would infer that he had failed to pay certain amounts. *See Bayless v. United States*, 381 F.2d 67, 72-73 (9th Cir. 1967) (affirming joint trial because the evidence of each crime would be admissible in a trial for the other). The charges are properly joined under Rule 8 as a common scheme or plan.

### B. Defendant Has Not Shown Manifest Prejudice Under Rule 14.

Defendant also argues that the Court failed to address whether the trial should be severed under Rule 14 due to prejudice to Defendant. In fact, the Court considered the evidence that will be presented, found that witness would have to testify in multiple trials about the same topics, and denied Defendant's motion. That it did not use the specific words "Rule 14" is of no matter. Defendant's motion to reconsider should be denied on this basis alone. LRCiv. 7.2(g). If the Court nevertheless chooses to address Rule 14 again, it should still deny the motion to sever. It is Defendant's burden to show that he will be manifestly prejudiced by a single trial. He cannot meet this high burden because he has not pointed to *any* specific witness or evidence that would be inadmissible in a separate trial and would prejudice him in a joint trial. Furthermore, should any prejudice arise during trial, it can be cured by proper instruction of the jury.

#### 1. Defendant Has Not Shown Manifest Prejudice.

"On appeal from a trial court's denial of severance, the defendant must show that the denial was so 'manifestly prejudicial' that it overcomes the dominant concern with judicial economy." *United States v. Seifert*, 648 F.2d 557, 563 (9th Cir. 1980); *see also Jawara*, 474 F.3d at 579 (quoting *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir.1986)). A denial is "manifestly prejudicial if it violated one of the defendant's substantive rights." *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987)

(affirming denial of severance); *see also Schaffer v. United States*, 362 U.S. 511, 515 (affirming denial of request for severance under Rule 14 by one defendant from another because there was no prejudice).

Defendant has not identified how he believes he will be prejudiced and which of his substantive rights would be violated. *See* Mot. to Recons. The complete lack of specificity in his argument is fatal. The United States has provided Defendant with complete disclosures, a draft exhibit list, and a draft witness list. If Defendant would be manifestly prejudiced by any of the proposed evidence, Defendant should identify it with specificity, and explain how it would be prejudicial and why it would not be admissible in all three of his proposed trials. He has done none of that, and the motion should be denied.

The Ninth Circuit has addressed the severance under Rule 14 in more than one hundred published cases. Defendant's resort to case law from Districts in (for example) Kansas, Georgia, and Connecticut betrays the weakness of his argument. Furthermore, the three Ninth Circuit cases he does rely on do not support his argument. In *United States v. Olson*, the Ninth Circuit reversed a district court that dismissed an indictment with prejudice after rejecting joinder under Rule 8. 504 F.2d 1222, 1224 (9th Cir. 1974). The appeals court held that the indictment did allege a common scheme or plan and chastised the court for infringing on executive powers. *Id.* In *Bayless v. United States*, the Court concluded "that the trial court did not abuse the discretion lodged in it, by refusing to require separate trials for the offenses of escape and burglary" because the evidence to which Defendant objected "would be admissible in a separate trial for the other crime. 381 F.2d 67, 72-73 (9th Cir. 1967). Finally, in *Jawara*, the court found misjoinder under Rule 8, but found that there was no manifest prejudice at the trial under Rule 14, in part because the trial court properly instructed the jury. 474 F.3d at 579. It therefore affirmed Defendant's conviction. *Id.* ("The defendant has the burden of proving that the joint trial was manifestly prejudicial," such that his "right to a fair trial was abridged."). Defendant has not shown manifest prejudice will result from a single trial, and if any potential prejudice should arise, the jury can be instructed to mitigate its effect.

### 2. There is No Prejudice Because the Evidence is Admissible in All Three Proposed Trials.

Manifest prejudice cannot exist where "all of the evidence of the separate count would [still] be admissible upon severance." *United States v. Prigge*, 830 F.3d 1094, 1098 (9th Cir. 2016) (affirming denial of severance) (quoting *United States v. Johnson*, 820 F.2d 1065, 1070 (9th Cir. 1987)). When conducting a Rule 14 analysis, a court should evaluate the evidence presented (or to be presented) for each of the charged offenses and if that evidence would be admissible if they were separate cases. *Bayless*, 381 F.2d at 72.

Defendant asks the Court to determine prejudice under Rule 14 based on the face of the indictment. Mot. to Recons. 5. This is incorrect and presumably prompted by his failure to identify any manifestly prejudicial evidence that would not be admissible in separate trials. Instead of identifying allegedly prejudicial evidence Defendant argues only that one trial "creates a risk of evidence from one charge spilling over into an unrelated charge." Mot. to Recons. 5. A vague and hypothetical risk does not establish manifest prejudice. Furthermore, the charges against Defendant are not "unrelated," they are part of Defendant's common scheme and plan. Finally, as detailed above in Section III.A.1, and as the Court already found, Oral Arg. Tr. 3:25-4:4 (Dec. 1, 2022), there is substantial overlap in the evidence to be presented for each of the charged offenses that would be admissible in separate trials. "Severance would result in the same witnesses testifying about the defendant's conduct regarding the same victims and for multiple investments on multiple occasions." Oral Arg. Tr. 3:26-4:3 (Dec. 1, 2022).

### 3. Any Potential Prejudice Can be Cured by Instructing the Jury

Even if Defendant were to identify any prejudice stemming from a single trial in the future, that prejudice can be cured by proper instruction of the jury. In *Schaffer*, the Supreme Court held that a proper instruction of the jury had cured any potential prejudice in a multi-defendant trial. 362 U.S. at 516. "[T]he judge was acutely aware of the possibility of prejudice and was strict in his charge—not only as to the testimony the jury was not to consider, but also as to that evidence which was available in the consideration of the guilt

of each petitioner separately under the respective substantive counts." *Id.* A "trial judge has a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Id.* Should Defendant identify any specific prejudice during trial, it should instruct the jury in order to mitigate that prejudice.

### IV. Conclusion

The Court should deny Defendant's motion for reconsideration. There was no manifest error in the Court's decision, and Defendant has not pointed to any new facts or law that the Court did not previously consider.

Respectfully submitted this 30th day of December, 2022.

> GARY M. RESTAINO
> United States Attorney
> District of Arizona
>
> s/Kevin M. Rapp
> KEVIN M. RAPP
> COLEEN SCHOCH
> Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Stephen M Dichter
Justin R Vanderveer
*Attorneys for Defendant*

s/Daniel Parke
U.S. Attorney's Office