GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP
Arizona State Bar No. 014249
Email: Kevin.Rapp@usdoj.gov
COLEEN SCHOCH
Georgia State Bar No. 366545
Email: Coleen.Schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00898-PHX-DLR (DMF) |
| Plaintiff, | **UNITED STATES' RESPONSE TO MOTION TO DETERMINE THE ADMISSIBILITY OF 404(B) EVIDENCE [ DOC. 533] AND MOTION TO ADMIT SELECTED EVIDENCE FOR COUNTS THAT HAVE BEEN SEVERED** |
| v. | |
| David Allen Harbour, | |
| Defendant. | |

Defendant's new motion seeking yet again to preclude the Pat Spaulding and the Rhonda Gray frauds, this time under Federal Rule of Evidence 404(b), should be denied. First, the Court has already found these frauds to be admissible and probative because they show the inception of Harbour's *Ponzi* scheme. Second, the Spaulding and Gray frauds have never been offered as prior bad act evidence under Rule 404(b); they show the beginning of Harbour's protracted *Ponzi* scheme, which commenced in 2007. Harbour's tortured analysis of the frauds under Rule 404(b) is misplaced because, as the Court has already found, the Spaulding and Gray frauds are inextricably intertwined with Harbour's other frauds because they were all part of a single Ponzi scheme.

The government is seeking to admit  evidence of Harbour's false gift letter scheme

and statements to the revenue officer. This evidence is admissible in the *Ponzi* trial as a prior bad act or as admissions of a party opponent pursuant to FRE 404(b) or 801(d)(2).

**RELEVANT FACTS**

**A. January 6, 2023, First Final Pretrial Conference**

On September 9, 2022, Harbour filed a motion to strike surplusage for the second superseding indictment, including the Spaulding and Gray Frauds. (Doc. 444) The Gray Fraud was set forth in the original indictment in July 2019. Harbour has received all documents related to these frauds in the government's possession, and Jencks Act materials well before the government's obligation to provide them under 18 U.S.C. § 3500. The Court was confused by the motion and asked counsel to file it instead as a motion in limine.

On December 20, 2022, Harbour refashioned the motion precluding the Spaulding and Gray Frauds as a motion in limine. (Doc. 486) The government responded. (Doc. 520) On January 6, 2023, at the first of three final pretrial conferences, this Court addressed Harbour's motion in limine to exclude these two frauds from the trial. The court made the following observation regarding the motion in limine:

> I've had a chance to look at a couple of the motions in limine, and the first motion in limine, I think I understand now what you're -- the first time you filed this motion, I had no idea what you were asking. I spent hours trying to review this thing.
> Because you kept asking me to strike things from the superseding indictment, and I didn't understand what you wanted me to do. But now I think what you're asking me to do in the first motion in limine is to make evidentiary rulings on the admission of certain evidence.

Hr'g Tr., 1/6/23, p. 46.

The Court attempted to summarize defense counsel's argument to determine if he was seeking to exclude the Spaulding and Gray Frauds under a rule 404(b) rubric. This Court and defense counsel had the following exchange:

> THE COURT: So let me summarize what I understand your argument to be now. You're moving to prevent testimony from the group of six because of relevance, 403, and you're also arguing 404, is it 2?
> MR. DICHTER: I wouldn't be arguing 404.

1   THE COURT: What's that?
    MR. DICHTER: I wouldn't be -- 404 was what the government might
2   argue. But if they do, we have to have like a mini-trial on it.

3   It is unclear to what defense counsel was referring, but the United States never viewed this

4   evidence as prior bad acts and has not sought to admit it under that theory. After argument,

5   this Court made found the following findings regarding the Spaulding and Gray Frauds:

6       THE COURT: I think I've heard enough. I think that the probative
7       value substantially outweighs the risk of unfair prejudice, and under
        403, I'm going to allow this evidence in.
8
9       Following severance of counts 24-26 (Tax related charges) and Counts 27-34

10  (Georgia mortgage fraud/ aggravated Identity theft charges) from Defendant's Ponzi

11  scheme, the United States alerted the Court that some of the evidence involved in those

12  charges could be admissible in the Ponzi trial as 4040(b) evidence

13      MR. RAPP: -- which are -- now it just converts to 404(b). I mean,
        Kenny Bobrow is going to get on the stand and testify not only to the
14      fact that he was ripped off in the Pat Spalding fraud --
        THE COURT: I've ruled. Let's move on.
15      MR. RAPP: What's that?
        THE COURT: I have ruled.
16      MR. RAPP: What I'm suggesting, though, is that I get it that you're
        going to sever them as substantive counts.
17      THE COURT: Yeah.
        MR. RAPP: But now they become relevant -- they become relevant
18      under a different theory that shows his motive, intent, knowledge.
        THE COURT: You can offer the evidence and Mr. Dichter can object,
19      and I'll rule on it.
        MR. RAPP: All right. Very well.
20
21
22
23  Hr'g Tr., 1/16/23, p. 31.

24  **B. The Court has Already Ruled that the Spaulding and Gray Frauds Are**
       **Probative and Admissible.**
25
26      As noted above, when considering the objection to the admission of the Spaulding

27  and Gray Frauds, the Court specifically ruled that the frauds were admissible and probative.

28  In response, defense counsel has either ignored or misunderstood the Court's ruling and

filed a 17-page motion challenging the admission of the evidence because the government has not complied with, among other things, the notice requirement of Rule 404(b). Surprisingly, after having notice of the Spaulding fraud for over six months (June 2022 Second Superseding Indictment) and the Gray fraud for nearly three-and-a-half years (including the disclosure of Jencks Act material and numerous documents underlying the frauds), defense counsel devotes a considerable portion of his motion to the government's failure to provide adequate notice.[1]

In addition to notice in the SSI, Bobrow sued Harbour in Maricopa County Superior Court, in February 2022, based on the Spaulding Fraud, and Harbour is represented by the same defense counsel that now represents him in this criminal case.[2] In any event, to the extent Harbour is repackaging his motion as a request for the Court to reconsider its ruling on his motion in limine, it should likewise be denied as he has not provided any additional facts or authority different from what the  court has already considered. "A motion for reconsideration should be denied absent a manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." LRCiv 7.2(g).

## ARGUMENT

### A. The Pat Spaulding Fraud and the Rhonda Gray Fraud are Inextricably Intertwined with Harbour's Protracted Ponzi Scheme.

Harbour erroneously analyzes the inclusion of these two frauds under Rule 404(b). As the Court has already ruled, evidence of these two frauds are admissible as proof related to a charged scheme. The Ninth Circuit has recognized that two categories of evidence can be "inextricably intertwined" with charges such that a Rule 404(b) analysis is not necessary: "First, evidence of prior acts may be admitted if the evidence 'constitutes a part

---

[1] The Pam Case interview detailing the Spaulding Fraud and underlying documents were disclosed on August 4, 2020. HARBOUR-042330- 042927.

[2] *See KB-2011 v. HPCG and David Harbour*, HARBOUR_055268-055322.

of the transaction that serves as the basis for the criminal charge.' Second, prior act evidence may be admitted 'when it was necessary to do so in order to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004) (citations omitted).

Regarding the first category, "'[t]he policies underlying rule 404(b) are inapplicable when offenses committed as part of a single criminal episode become other acts simply because the defendant 'is indicted for less than all of his actions.'" *United States v. Vizcarra–Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995) (some quotation marks omitted) (quoting *United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir. 1993)); *see also United States v. Williams,* 989 F.2d 1061, 1070 (9th Cir. 1993) ("Evidence should not be considered 'other crimes' evidence when the evidence concerning the other act and the evidence concerning the crime charged are inextricably intertwined."). With respect to the second category, the Ninth Circuit counsels: "it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *Vizcarra–Martinez*, 66 F.3d at 1012.

Here, for example, the Spaulding Fraud is the inception of Harbour's Ponzi Scheme in 2007. As argued in numerous other pleadings, "Pat Spaulding's" involvement in a $7 million investment involving the Dollar Stores and Texas student housing is pure fiction. Spaulding's signature was forged, he did not live in Kansas City, and was not involved in the finance industry. He also died in 2009, and yet Harbour sent an email to "Pat" at an Gmail address created in Phoenix, Arizona, in 2014, threatening to sue "Pat Spaulding" five years after his death. Tellingly, defense counsel has argued that Bobrow's investment with "Pat Spaulding" was paid back several years later, and Pam Case's portion of that investment was paid in part after she sued Harbour. Such payments are part of the *Ponzi* scheme. The investment was a fiction, and both Bobrow and Case were paid in the form of *Ponzi* payments sourced with other investors' money.

As this Court is aware, the United States alleges that Harbour conducted a 14-year Ponzi Scheme designed to allow him to live a lavish and unsustainable lifestyle. This lifestyle also allowed him entrée and introductions to high-net worth individuals at various high-end resorts (El Dorado in Cabo San Lucas, Mexico, and Gozzer Ranch in Harrison, Idaho) and private or invitation-only golf clubs. The United States expects to offer trial testimony that Harbour received investor money, used it for his lavish expenditures, and provided investors with modest interest payments or none at all. The information related to the Spaulding and Gray frauds has been detailed in the SSI and Jencks Act statements from the victims (provided well before the government's obligations), and documents related to the frauds were provided years ago and referenced in the government's preliminary exhibit list. In sum, Harbour's motion to determine the admissibility of Rule 404(b) evidence or exclusion based on untimely notice is misplaced. It should be denied.

**B. Evidence Related to Severed Counts 24-34 Is Relevant As Either Admissions by Harbour or 404(B) Evidence.**

**1. Tax Evasion**

As the Court knows from counts 24-26 of the SSI, Harbour was subject to a tax audit for his payday lending activities. This audit resulted in charges of evasion of taxes, false statements, and obstruction. One of the first IRS Revenue Officers that Harbour met with was Lionel Greene. (*See* Ex. A). The United States intends to call Green to testify in the Ponzi trial because Harbour's statements to Green are relevant to his Ponzi scheme. First, Harbour engages in the same efforts to portray himself as successful by touting his high-profile athletic and political connections. Second, Harbour confirms with Greene that he received a 25% finder's fee for any investments he obtained for Joel Tucker. Other witnesses will testify that this fee was never disclosed to the investors. Third, Harbour confirms that he signed numerous promissory notes with investors. Fourth, Green further confirms that Harbour expenses his settlement with the FTC. This is significant because the money that Harbour used to pay his FTC settlement came from PAIF and is charged as Count 23 of the SSI. This is an additional reason why the settlement with the FTC is

relevant and should be admitted. Fifth, during the examination, Green noticed that significant funds from KSQ were being used to pay back C.J. in the form of Ponzi payments. Green receives the affidavit from Harbour wherein Harbour admits that he owes money to C.J. [3] Finally, Harbour is unable to explain the nature of the relationship between himself and Joel Tucker/KSQ and the large sums of money being transferred back and forth. In sum, Green's testimony is relevant to counts 1-23, and is therefore admissible under Federal Rule of Evidence 801(d)(2).

### 2. The False Gift Letter

As the court may recall, Harbour (along with his wife Abby) presented Kenneth and Victoria Bobrow a false gift letter that was eventually provided to Equitable Home Mortgage. Harbour needed to "paper" the transaction so that it appeared that Bobrow was gifting the $334,000 to Shea, so that Shea could complete the transaction and the Harbours could reside in the $3.5 million Georgia Residence. Both Bobrows will testify in the Ponzi trial. In the Ponzi trial, the United States will present an array of documents that were forged or falsified (*e.g.*, the Pat Spaulding note, the email address in  Spaulding's name established five years after his death, the agreement between Gray, Harbour and Eckholt's forged signature, etc.). In this context, the false gift letter is admissible under Rule 404(b).

Prior to the admission of Rule 404(b) evidence, the government must make a threshold showing that the evidence tends to prove a material point, the prior act is not too remote in time, the evidence is sufficient to support a finding that the defendant committed the other act, and, in cases where knowledge and intent are at issue, the act is similar to the offense charged. *United States v. Huddleston*, 485 U.S. 681, 691 (1988); *United States v. Mayans,* 17 F.3d 1174, 1181 (9th Cir. 1993) (The government "must articulate precisely the evidential hypothesis by which a fact of consequence may be inferred from the other acts evidence.").

It is material in the Ponzi trial that Harbour falsified the gift letter, as it demonstrates

---

[3] This affidavit was disclosed to the defense in August 2020 and provided to the court under seal as Doc. 538.

his knowledge of and his intent with respect to other forged and falsified documents. It is not remote in time because it is in the same time period—2021—that Harbour was tampering with Burg, the Willsons, Hill, Turasky, etc. Harbour clearly committed the act because he sent the falsified gift letter by email to Equitable Home Mortgage and, of course, both Bobrows will identify the Harbours as presenting them with the false document. There are numerous examples Harbour falsifying a document usually by forging someone's name so that he can receive a benefit. For example, Harbour forged Spaulding's name on the note between Bobrow and Harbour. There is also strong circumstantial evidence that he created an email address for Spaulding five years after his death to assume his identity and then sent "Pat Spaulding" a performative email. Harbour forged Robert Eckholt's signature on contract between Harbour and Gray to induce her to pay him $10,000 per month. Finally, Harbour falsified the gift letter so that it appeared to Equitable Home Mortgage that Bobrow was gifting the money to Shea. The false gift letter shows Harbour's knowledge and intent with respect to the other forgeries and they were not a mistake. *See United States v. Edelmann*, 458 F.3d 791, 809–10, (8th Cir. 2006) (finding, in prosecution for mail fraud wire fraud and money laundering, trial judge did not err by admitting subsequent other bad-act evidence regarding a forged court order because the government established the defendant's participation in the disputed bad act by a preponderance of the evidence and the disputed evidence was similar to the charged conduct; the appellate court acknowledging that subsequent bad acts are admissible under Rule 404(b)). In sum, the evidence of the false gift letter should be admitted.

   Respectfully submitted this 23rd day of January, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*
KEVIN M. RAPP
COLEEN SCHOCH
Assistant U.S. Attorneys

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 23, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Daniel Parke*
Daniel Parke
U.S. Attorney's Office