GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP
Arizona State Bar No. 014249
Email: Kevin.Rapp@usdoj.gov
COLEEN SCHOCH
Georgia State Bar No. 366545
Email: Coleen.Schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br> vs. <br><br> David Allen Harbour, <br><br> Defendant. | CR-19-00898-PHX-DLR (DMF) <br><br> **UNITED STATES' RESPONSE TO DEFENDANT'S EMERGENCY MOTION TO AMEND CONDITIONS OF RELEASE TO REVERT THE BOND AMOUNT TO THE $500,000 PREVIOUSLY IN PLACE [DOC. 535]** |

      Harbour's emergency motion to modify his release conditions should be denied. The condition that he opposes was the sole new condition added after Defendant "violated his conditions of release in multiple ways." After multiple evidentiary hearings, the Court found that Defendant had solicited investors for an investment and repeatedly evaded his obligation to notify pretrial services of millions of dollars in financial transactions. The Court concluded that Defendant posed "a serious flight risk" and imposed a new $500,000 cash bond to secure his appearance at trial. Defendant now asks the Court to cancel that condition a mere six months later, even though none of the circumstances that led to its imposition have changed. The Court should deny this motion for three reasons, each of which provides a sufficient and independent reason for denial.

First, Harbour has failed to point to any new information not available to him when the Court imposed the cash bond. Absent new information, there is no basis for the Court to alter his conditions. Second, Harbour remains a flight risk and a danger to the community. Defendant's substantial sentence exposure still gives him a motive to flee, and his persistent disregard for his pretrial release conditions shows that he does not respect the Court's orders. While on release, Defendant contacted victims, hid his financial situation from the Court, solicited victims for new investments, and committed new crimes. Nothing has changed since these events occurred. Finally, Defendant's concerns about his sleep schedule could be addressed by transferring him to a facility closer to the courthouse. This Court has previously moved an in-custody defendant to a facility nearby to reduce the commute for trial. This same accommodation could be implemented here. The United States asks the Court to deny Defendant's motion to revoke the cash bond. It does not oppose transferring Defendant to a closer detention facility.

## ARGUMENT

### A. Harbour Fails to Articulate Changed Circumstances

Harbour's motion to modify his release conditions should be denied because he has not identified any changed circumstances. *See* Mot. to Revert 1-4. The plain reading of 18 U.S.C. § 3142(c)(3) requires changed circumstances to seek a modification of release conditions. Defendant's motion to continue his trial to the current trial date was granted while he was detained, Order (June 23, 2022) (Doc. 396), and the method of transporting him from his facility to the courthouse has remained the same, Mot. to Revert 2. Defendant's motion should be denied because he has not shown any new circumstances since Defendant violated his pretrial release and the Court imposed the cash bond.

Under the Bail Reform Act of 1984, the "judicial officer may at any time amend the [release] order to impose additional or different conditions of release." 18 U.S.C. § 3142(c)(3). The legislative history of this provision shows that Congress intended to require a showing of changed circumstances to justify a modification of conditions: "[t]his authorization is based on the possibility that a changed situation or new information may

warrant altered release conditions." S. Rep. 98-225, *available at* 1983 WL 25404, at *16 (Aug. 3, 1983); *see also United States v. Lafrance*, No. 16-10090, 2016 WL 3882845, at *1 (D. Mass. July 13, 2016) ("Defendant has failed to show a substantial change in circumstances that warrants such a significant change in the conditions of his release, and the developments in this case, as described in the summary of the docket (set out above) similarly shows no qualifying change in circumstances for the modification sought. To the contrary, Defendant's case has progressed closer to trial: he has been indicted, discovery has been provided, and a superseding indictment broadens the scope of potential liability and increases the potential penalties.").

Courts reviewing requests to amend bond conditions under Section 3142(c)(3) read the provision "in conjunction with § 3142(f)." *United States v. Merola*, No. 08-CR-327, 2008 WL 4449624, at *2 (D.N.J. Sept. 30, 2008) ("'Under § 3142(f) of the Bail Reform Act of 1984, the Court is expressly authorized to reopen the detention hearing of a defendant when material information "that was not known to the movant at the time of the hearing" comes to light. Courts have interpreted this provision strictly, holding that hearings should not be reopened if the evidence was available at the time of the hearing. Thus, the definition of 'changed circumstances.'"); *see also United States v. Wei Seng Phua*, No. 2:14-CR-00249, 2015 WL 127715, at *1-2 (D. Nev. Jan. 8, 2015) ("Contrary to defendants' assertions, the government's factual support and reliance on 18 U.S.C. § 3142(f) are justified because this Court must consider whether new information exists that was not previously known or presented at the detention hearing to determine whether to modify the pretrial release condition at issue.")

A defendant awaiting trial may reopen a detention hearing "if the judicial officer finds that information exists *that was not known* to the movant at the time of the hearing and that has a material bearing on the issue" of whether he will flee or is a danger. 18 U.S.C. § 3142(f)(2) (emphasis added). "This provision is strictly interpreted and the hearing should not be reopened if the evidence was available at the time of the initial

hearing." *United States v. Santos*, No. 2:17-CR-00001, 2017 U.S. Dist. LEXIS 68335,4-5 (D. Nev. 3, 2017).

Defendant has been in custody for over a year. He knew that his failure to meet the conditions set by this Court would result in him being in custody during his trial. The Court has provided him with (and the United States has not opposed) every accommodation that he has requested. He was given access to a computer to review discovery and assist his counsel. (Doc. 451.) He has appeared by video at multiple hearings to avoid the inconvenience of being woken early for his bus trip to the federal courthouse. *See, e.g.*, Orders at Docs. 374, 470, 518. There are no changed circumstances here, and this motion should be denied on this basis alone.

**B.  Defendant is a Flight Risk and an Economic Danger to the Community.**

Defendant also continues to pose a flight risk and a danger to the community. He faces three separate trials and a sentencing guideline range of nearly twenty years. This alone gives him a reason to flee. In addition, while on pretrial release for fewer charges and facing a lower potential sentence, Defendant persistently flouted his pretrial release conditions, deceived the Court regarding his financial transactions, and committed new crimes. The Court imposed the bond condition that Defendant seeks to remove after finding that he solicited investors for a new investment and repeatedly evaded his obligation to notify pretrial services of millions of dollars in financial transactions. Order 4 (July 22, 2022) (Doc. 427). Defendant's high sentencing exposure, as well as his unpredictable financial situation and his disregard for the Court's authority over his finances and his actions make him a flight risk.

The Ninth Circuit permits the Court to consider possible punishment as an incentive for a defendant to flee in assessing a defendant's risk of flight. *See United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Here, Defendant's potential punishment creates a strong incentive to flee. If found guilty on all the charges in the Ponzi trial, Harbour faces an applicable guidelines range for Counts 1-23 of 135-168 months (11.25-

14 years).[1] The counts severed into the tax trial (Counts 24-26) and the bank fraud trial (Counts 27-32), each involve separate victims and would result in consecutive sentences.[2] *See* U.S.S.G. § 5G1.2 (Sentencing on multiple counts of conviction); *United States v. Kneeland*, 148 F.3d 6, 16 (1st Cir. 1998) (grouping not appropriate when defendant convicted of both fraud and money laundering, as those crimes are not related); *United States v. Bove*, 155 F.3d 44, 50 (2d Cir. 1998) (grouping not appropriate when conspiracy to structure financial transactions to avoid tax and filing false tax return had different "victims"). Because of his commission of new crimes, Harbour's sentencing exposure has substantially increased since he was first indicted in August 2019.

Of some concern is defense counsel's erroneous calculation of the applicable guidelines in this case. Mot. to Revert 4. To put it mildly, they are wholly incorrect. The United States recently provided a plea offer to the Second Superseding Indictment, which Harbour, on the record and with the advice of counsel, rejected. Ex. A, Letter to S. Dichter (Dec. 13, 2022). This plea offer includes all of the applicable offense characteristics and relevant conduct. U.S.S.G. §§ 2B1.1(b)(1)-(20), 1B1.3(a)(2), 1B1.4. The United States also provided Harbour examples of similar cases tried in this District and the resulting sentences. Ex. A, Letter to S. Dichter ((Dec. 13, 2022). Harbour is facing years of confinement if convicted and therefore has a motive to flee.

Defendant's argument that the government is responsible for his victims' losses because of Operation Chokepoint is nothing more than yet another "attempt to 'finesse'" his frauds. Order 4 (July 22, 2022). To avoid detention for his many pretrial release violations, Defendant argued that "he did not violate the conditions of release because the $1,950,000 was an advance on expected income, not a loan." Order 4 (July 22, 2022). The Court found "this argument unpersuasive" because "[a]n advance of income before it is

---

[1] If Harbour is convicted of counts 1-23, he would also start his second trial on Counts 24-26 as a criminal history category II.

[2] Aggravated identity theft carries a mandatory consecutive sentence of 24 months. 18 U.S.C. § 1028A.

owed or is due is a loan, and this particular transaction is commonly known as a pay-day loan." Order 4 (July 22, 2022). It rejected "Defendant's attempt to "finesse" this transaction, which is clearly a loan, by labelling it as an advance on expected income, [a]s an obvious attempt to circumvent the condition of release that he report financial transactions to PTS." Order 4 (July 22, 2022). The Court should similarly reject Defendant's current argument. He continues to attempt to avoid responsibility for defrauding investors, violating his pretrial release conditions, and misleading this Court.

Lastly, shortly before a January 2022 trial date, Harbour also mislead this court that he was suffering from long-haul COVID in a successful effort to delay the trial and give him time to alter the testimony of witnesses. During that time, Defendant committed new offenses victimizing both previous (Bobrow) and new victims (Equitable Home Mortgage). There are no new circumstances, and Harbour remains a flight risk and an economic danger to the community.

### C. Harbour's Concerns about Trial Transportation Can be Accommodated.

The Court can accommodate Harbour's concerns about his trial transportation by moving him to a facility closer to the U.S. Federal Court. This would reduce the time it would take him to get to court and mitigate his complaints regarding sleep deprivation. This Court accommodated the defendant in *United States v. Woodard*, CR-10-01721-002-PHX-DLR, by taking a similar action. (*Woodard*, Docs. 301, 305) In that case, the defendant had a more difficult task then Harbour. In *Woodard*, the defendant was *pro se*. He had to give opening statements, respond and make objections, and conduct cross examination, among other trial related activities. In contrast, Harbour has at least two experienced attorneys who will represent him throughout the trial.

The Court imposed Harbour's current bond condition after much consideration of Defendant's violations and his risk of flight. None of the circumstances considered by the Court have changed, and Harbour should not be treated any differently than other defendants. Defendant's motion to cancel the bond condition should be denied. The United

States does not oppose accommodating Harbour's concerns by transferring him to a facility closer to the Court.

Respectfully submitted this 24th day of January 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*
KEVIN M. RAPP
COLEEN SCHOCH
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

*Attorneys for defendant David Allen Harbour*

*s/Daniel Parke*
U.S. Attorney's Office