GARY M. RESTAINO
United States Attorney
District of Arizona

KEVIN M. RAPP
Assistant U.S. Attorney
Arizona State Bar No. 014249
COLEEN P. SCHOCH
Georgia Bar No. 366545
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Kevin.Rapp@usdoj.gov
Coleen.Schoch@usdoj.gov
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR-19-00898-PHX-DLR (DMF) |
| Plaintiff, | |
| vs. | **UNITED STATES' MOTION TO STRIKE TWO DEFENSE EXPERTS AND 3000 DOCUMENTS FOR UNTIMELY DISCLOSURE** |
| David Allen Harbour, | |
| Defendant. | |

The United States moves to preclude testimony and evidence from Defendant's proposed expert witnesses Cathie Cameron and Kathleen Nicolaides because Defendant did not provide timely notification of the subject matter of their testimony or disclosure of their reports. The Court's Scheduling Orders and Federal Rule of Criminal Procedure 16(b)(1)(C) required Defendant to disclose the contents of an expert witness's anticipated testimony by the date set by the court. Defendant failed to do so. Despite clear deadlines, Defendant provided the United States a 136-page report from Cameron three business days before trial and on a different subject matter than the topics for which she was disclosed as an expert witness three years ago. Cameron's proposed testimony fails to comply with the Federal Rules of Evidence and the requirements of *Daubert*. It is improper and will confuse and prejudice the jury.

Defendant also provided a new report from Nicolaides six days prior to trial. Nicolaides's proposed testimony also exceeds the topics for which she was noticed. Nicolaides was only noticed as an expert for the revocation hearing to testify about documents key to the Georgia Residence Fraud. The recently disclosed report examines and compares signatures of different people and on different documents than those examined for the revocation hearing. The Court should preclude both experts because they were not properly noticed, and their opinions were disclosed only a few days prior to trial. This late disclosure prejudices the government because it is not able to prepare its case and witnesses to address this anticipated testimony and is not able to locate or notice rebuttal witnesses prior to trial.

The United States also moves to preclude Defendant from using at trial nearly 3000 pages of discovery disclosed to the United States in the four days before trial. The defense has had possession of these documents since at least October 2022 and chose not to disclose them in a timely fashion, presumably in an attempt to gain a strategic advantage. This late disclosure is prejudicial to the government's ability to prepare its case and its witnesses. Given the volume of new documents, the United States is unable to analyze and integrate them into its case prior to trial.

## RELEVANT FACTS

### A. Defendant's Untimely Disclosure of Expert Testimony

In 2019, the Court entered a scheduling order setting disclosure deadlines for this case. Order, Doc. 39 (Sept. 16, 2019). Pursuant to that schedule, Defendant noticed Cameron as a forensic accounting expert in June 2020. Defendant summarized her expected testimony in a single paragraph:

> Ms. Cameron is an accounting expert and may testify to various accounting summaries and other examination of the accounting and bank records related to the events in this case. Ms. Cameron will summarize how the accounting and bank records reflect the flow of funds to and from lenders, investors, borrowers, the relevant entities, financial institutions, and principal participants. The summaries will address the relevant

> accounting methods and use of the relevant funds and the fungibility of the money flowing through the relevant accounts. Ms. Cameron's summary analysis will be provided to the government through discovery and separate communications. Ms. Cameron's CV is attached as Exhibit A.

Def.'s Notice of Expert Witnesses 1-2, Doc. 95. Notably, this document did not notice expected testimony regarding *any* opinions or conclusions or anything regarding a Ponzi scheme. Def.'s Notice of Expert Witnesses 1-2.

After the trial date was moved, the scheduling order was amended and a new deadline for both parties' expert notices was set in December 2021. Order, Doc. 240. Defendant's current counsel entered an appearance in this case in February 2022. Notice, Doc. 337. Defendant never supplemented or amended Cameron's expert notice, nor did he seek an extension of the expert notice deadline to do so.

During Defendant's pretrial revocation process, Defendant disclosed a report from Nicolaides analyzing certain signatures relevant to the Georgia Residence fraud. Nicolaides testified regarding the topics in her report at one of the revocation hearings in June 2022. Minute Entry, Doc. 390.  After the grand jury returned a second superseding indictment in November 2022, undersigned counsel for the United States acknowledged (despite no formal notice) that the government would accept Nicolaides's report submitted for the revocation hearing as an expert notice of her testimony with respect to the new charges in the SSI. Ex. B at 2 (email exchange among counsel). Defense counsel never raised the existence or potential for a supplemental report from Nicolaides. Yet six business days before the commencement of trial, on January 24, 2023, Defendant disclosed an entirely new 25-page report by Nicolaides. This report describes her forensic handwriting examinations of entirely different signatures on documents that are relevant to Defendant's *Ponzi* trial. Ex. F, Nicolaides Ponzi Trial Report.

Three days *after* that, Defendant disclosed the 136-page report of Cameron that far exceeds her noticed expert testimony. Ex. A, Cameron Report. This report identifies each charged count and opines that Defendant did not commit the alleged wire fraud, mail fraud,

and transactional money laundering based on an analysis of documents provided to her by Defendant. Cameron also opines, after reviewing various pleadings in the case (*e.g.*, the SSI, Motions in Limine, etc.), that Defendant did not run a Ponzi scheme. Ex. A, Cameron Report.

### B. Defendant's Untimely Rule 16 Disclosures

On January 26, 2023, at 4:14 p.m., four business days before trial. Defendant disclosed to the United States approximately over 2,000 pages of discovery. Defendant then disclosed an additional 1,000 pages of discovery two days before trial on January 30, 2023. Based on the United States' (as-yet-incomplete) review of the metadata of these documents, it appears that some of these documents were scanned into a computer in January 2021, and others in October 2022. Ex. E, Metadata for disclosed documents. The United States has also located a jail call in from October 2022, in which Abby Harbour tells Defendant that she is scanning in documents for his defense.[1] Moreover, defense counsel provided a proposed stipulation to certain exhibits on the same day as the 2,000-page document disclosure. At least 272 files on the proposed stipulation were disclosed for the first time on the same day. Counsel necessarily had possession of all of those documents prior to drafting the stipulation.

Included in Defendant's January 26 disclosure is a document that purports to be an agreement between Harbour and victim-investor Gray supposedly regarding her investment of approximately $1 million with him in March 2010. Ex. C, Promissory Note (2010). The document is not signed by victim-investor Gray, and she is expected to testify that she never was presented with that document. It has never been disclosed in any litigation or forum in the 13 years since Gray made the investment, including in the civil lawsuit that Gray filed against Harbour. Prior to Defendant's current defense counsel, Defendant had four additional attorneys, none of whom disclosed or mentioned this document. Moreover, Defendant did not cite this document or attach it as an exhibit in any

---

[1] Monday, October 17, 2022, at 10:11 a.m.

of his four motions to preclude Gray's testimony. *See* Def.'s Mot. to Dismiss, Doc. 98; Def.'s Mot. to Dismiss, Doc. 199; Def.'s Mot. in Limine, Doc. 486; Def.'s Mot. to Determine Admissibility of 404(b) Evidence, Doc. 533.

Defendant first referenced this document in the January 27, 2023, hearing. Only after the hearing, he notified the United States that this document had been disclosed the day prior, buried among 2,000 pages of new discovery. When undersigned counsel asked about the providence of this document, defense counsel advised that it was recently located in a storage locker. Ex. D (Email among counsel (Jan., 27, 2023). Defense counsel then supplemented this explanation and stated that he has had this particular document since June 2022 and referenced it an October 2022 pleading.

## LAW AND ARGUMENT

### A.    Preclusion of Defense's Experts

As described above, Defendant has, by any metric, failed to provide timely notice and disclosures as required by Federal Rule of Criminal Procedure 16(b)(1)(C) and the Court's scheduling orders. Defendant is obligated to comply with the time set by the Court for Defendant's disclosures. Fed. R. Crim. P. 16(b)(1)(C)(ii). That time must be set "sufficiently before trial to provide a fair opportunity for the government to meet the defendant's evidence." Fed. R. Crim. P. 16(b)(1)(C)(ii). Defendant has not complied with the expert disclosure deadline set by the Court and has not provided the government a fair opportunity to meet his evidence.

"If a party fails to comply with this rule, the court may" order discovery, grant a continuance, bar the undisclosed evidence, or enter any other just order. Fed. R. Crim. P. 16(d)(2). Here, the Court should bar the evidence, as it is too close to trial to order discovery, and Defendant's trial has already been continued many times at his request. Courts throughout the country routinely preclude expert testimony and late disclosed discovery in its entirety for far less than what has occurred here. In *Taylor v. Illinois*, the Supreme Court held that preclusion of a defense witness did not violate the Sixth Amendment when it was imposed as discovery sanction. 484 U.S. 400, 415–16 (1988).

Misconduct that is "willful and motivated by a desire to obtain a tactical advantage that would minimize the effectiveness of cross-examination and the ability to adduce rebuttal evidence" is a basis for preclusion. *Id.* ("The trial process would be a shambles if either party had an absolute right to control the time and content of his witnesses' testimony."). The Supreme Court further held that precluding defendant's eleventh-hour alibi witness was justified because defense counsel's failure to notice that witness was "willful and blatant," and "the inference that [the defendant] was deliberately seeking a tactical advantage [was] inescapable." *Id.* at 416–17; *see also United States v. Combs*, 267 F.3d 1167, 1179 (10th Cir. 2001) ("Even in the absence of prejudice, integrity and scheduling considerations alone may justify suppression of otherwise admissible evidence offered by the delinquent party.").

In the Ninth Circuit, complete "[e]xclusion is an appropriate remedy for a discovery rule violation only where 'the *omission* was willful and motivated by a desire to obtain a tactical advantage.'" *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002) (quoting *Taylor v. Ill.*, 484 U.S. at 415) (emphasis in original). In *United States v. Scholl,* the Ninth Circuit also upheld a trial court's exclusion of nine cashier's checks as a sanction for defendant's discovery violation where defendant's counsel possessed the cashier's checks for some time, but only disclosed them after the start of trial. 166 F.3d 964 (9th Cir. 1999) (government would be unable to fully investigate."). "In light of representations made earlier that a 'full forensic financial audit' had been conducted and turned over, and the fact that counsel had possessed the records for some time, the court found that Scholl's failure to disclose the checks until after the jury was sworn was a strategic decision to government would be unable to fully investigate."

**B.     Preclusion of Defendant's Expert Witness is the Only Effective Remedy**

The testimony of both Nicolaides and Cameron should be precluded because of Defendant's failure to timely notice them as experts for trial and untimely disclosure of their opinions. This Court has discretion to preclude an expert witness when there are disclosure violations—particularly where the purported expert opinions are, like

Cameron's, improper. In *United States v. Nash,* the Ninth Circuit recognized this Court's discretion to exclude expert witness testimony and found that the district court did not abuse its discretion in that case, where there were inexcusable disclosure violations: "The district court did not abuse its discretion in concluding that the failure to disclose was willful and was justified in excluding the witness's testimony on that ground." 115 F.3d 1431, 1439 (9th Cir. 1997). The Ninth Circuit went on to point out the "limited relevance" of the expert accounting witness's opinion to the defendant's intent. *Id.* at 1440.

In this district, the court has routinely precluded forensic accounting expert witnesses based on untimely disclosure and irrelevance of their noticed testimony. In *United States v. Anderson*, 12-cr-01606-PHX-SRB, Senior Judge Bolton precluded a defense accounting expert for untimely disclosure, among other things, finding:

> Well, I'm not going to permit Mr. Brown to testify for several reasons, most of which are outlined in the government's motion. One, there was no timely disclosure of Mr. Brown's testimony or even his existence. The email that you sent didn't even—sometime just before trial didn't even disclose the identity of the individual that you were referring to. If you wished to disclose expert, the procedure that you would be required to follow would be to seek the Court's permission to make the late disclosure and call witness and explain to me why it was that you were unable to timely comply.

Doc. 502 at 8 (Oct. 22, 2015); *see also* Doc. 175.

As in *Anderson*, Defendant never alerted the United States *or the Court* that he intended to provide new expert reports on the eve of trial. Defendant failed to do so even though the parties have already been before the Court regarding his untimely notice of another expert witness, Dr. Manning, whom Defendant disclosed for the first time two-and-a-half months prior to trial. When addressing the United States' motion to preclude that expert, the Court had the following exchange with defense counsel:

> THE COURT: Now, in reviewing your response, and correct me if I'm wrong, it looked like you were -- this was a trial strategy to wait till the last minute to disclose that. Am I reading that wrong?

> MR. DICHTER: No. Absolutely wrong. The court inquired of the United States when the defense was supposed to provide notice of the witness:
>
> THE COURT: When was it supposed to be disclosed?
>
> MR. RAPP: Well, disclosed -- it was supposed to be disclosed when -- Mr. Dichter is saying, oh, we didn't have a deadline for experts. No, no. We had a deadline for experts when Mr. Baskin was on the case. We just don't -- we're not creating another scheduling order.
>
> THE COURT: What was the deadline?
>
> MR. RAPP: The deadline was about a year ago.

Hr'g Tr., Doc. 546 (Jan. 21, 2023); *see also* Minute Entry, Doc. 557 (Jan. 17, 2023).

Defendant's deadline to disclose his experts was in December 2021. Am. Scheduling Order, Doc. 240 (June 14, 2021). During that hearing, Defendant referenced another defense expert that would be testifying at trial. The United States then alerted the Court that the government had not received any disclosures from Defendant's forensic accountant. The Court and the United States then have the following exchange:

> MR. RAPP: Well, you got to connect it, Judge. You just can't --
>
> THE COURT: Well, he's telling me he's got witnesses going to come here and say –
>
> MR. RAPP: I'm sure he does, yeah. He's got a forensic accountant. We've never seen anything from that. Never seen any summary charts or anything from a forensic accountant.

Hr'g Tr., Doc. 546 (Jan. 21, 2023); *see also* Minute Entry, Doc. 557 (Jan. 17, 2023). The Court should find here, as it did in *United States v. Woodard*, 10-cr-01721-PHX-DLR, that an accounting expert witness is "unnecessary" to the defense, where the only expected testimony was regarding "taking money that went into those accounts and comparing it to what they're showing." Docs. 328; 358 p. 1 (Dec. 2, 2014). In both *Woodard* and *Anderson*, the Ninth Circuit declined to overturn the defendants' convictions based on the preclusion of an accounting expert.

Here, Defendant's disclosure of entirely new subjects for expert testimony days before trial *was* "willful and motivated by a desire to obtain a tactical advantage," *Finley*, 301 F.3d at 1018. Had it not been, Defendant could have alerted the Court and the government to his intention to disclose such reports, or filed a motion in limine to allow these experts' testimony, or sought the Court's permission to make the late disclosure offer witness testimony to explain why he was unable to timely comply with the scheduling orders and Rule 16. Defendant took none of these steps. Instead, Defendant both failed to timely notice either of these experts and then disclosed large swaths of new topics of testimony days before trial to gain a tactical advantage. The United States does not have the "fair opportunity for the government to meet the defendant's evidence" guaranteed by Rule 16, and preclusion will not violate Defendant's Sixth Amendment rights.

### C. Cameron's Proposed Testimony Should Be Precluded

Even if the court did not preclude Cameron's proposed testimony for discovery violations, her testimony should be precluded under Federal Rules of Evidence 401, 402, and 702. As with all evidence, the threshold issue for admissibility of expert testimony is relevance. Fed. R. Evid. 401, 402. Expert testimony is relevant under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), if it will assist the trier of fact to better understand the evidence or to decide a material fact in issue.

Cameron's irrelevant opinions can be generally grouped into the following categories: (1) opinions related to the individual counts; (2) opinions related to whether Harbour was conducting a Ponzi scheme. As a preliminary matter, there is no information suggesting that Cameron's opinions regarding whether a Defendant committed wire fraud and transactional money laundering on which she seeks to express opinions have ever been analyzed or critiqued via peer review. Even setting aside the issue of timeliness under Rule 16, Defendant's expert disclosure is insufficient because the opinions themselves are conclusory, and the lack of or other information related to Cameron's qualifications or prior experience testifying on related issues prevents the government from even beginning to cross-examine her.

Cameron's proposed testimony is similar to that in *United States v. Cooper,* 286 F. Supp. 2d 1283, 1292–93 (D. Kan. 2003). There the government's experts were expected to testify that the defendant's activities constituted "fraud." The defendant filed a motion to preclude the government from offering such opinion testimony on the grounds that Rule 704(b) prohibits an expert witness from giving an opinion "that certain activities constitute 'fraud' when an element to these crimes is that the defendant intended to defraud." *Id.* at 1293. In granting the defendant's motion, the court explained that the "term "fraud" is a legally specialized term which tracks the statutory and common-law language of the intent elements of the offenses with which the Defendant is charged." *Id.* "When an expert witness opines that a defendant's activity is fraudulent, the witness expressly draws the conclusion or inference that the defendant acted with the intent to defraud." *Id.* "Such testimony does not merely provide the facts or opinions from which the jury can infer the defendant had the requisite mental state" and should be excluded. *Id.*; *see also United States v. Morales,* 108 F.3d 1031, 1037 (9th Cir. 1997) ("A prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea.")

This intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent. *See United States v. Dennison,* 937 F.2d 559, 565 (10th Cir. 1991) (holding the trial court properly excluded testimony from an expert that a hypothetical person suffering from the same mental disorder as the defendant could not form the specific intent to commit assault); *United States v. Windfelder,* 790 F.2d 576, 582 (7th Cir. 1986) (holding that it was error to admit into evidence an IRS agent's testimony that the defendant intentionally understated his income).

Neither Cameron (nor any other expert witness) may give opinion testimony regarding the Defendant's intent or lack thereof. First, any direct opinion regarding whether Defendant had the intent to defraud the victim investors would be inadmissible under Rule 704(b). Second, opinions regarding whether the Defendant's conduct is indicative of an intent to defraud are inadmissible, because Cameron is not qualified to give such testimony.

Cameron's experience as a forensic accountant does not qualify her to express opinions regarding the Defendant's state of mind or to conclude or infer the defendant had the requisite mental state. Rather, if believed, this testimony would necessarily dictate the conclusion that Defendant did not act with the intent to defraud. "[T]his intrusion into the province of the jury is precisely the sort of testimony Rule 704(b) is designed to prevent." *Dennison*, 937 F.2d at 565.

Second, even if the anticipated testimony disclosed for the first time in Cameron's report had been timely noticed, and if she was somehow qualified to provide such opinion testimony, her use of the terms "fraud," "fraudulent," "defraud," *etc.*, would be excluded under Rule 704(a) pursuant to *Torres*, because the intent to defraud is a necessary element of the crimes charged, and her opinions using these terms go beyond merely suggesting the ultimate conclusion. *See DeMerrell,* 206 Fed. App'x 418, 426 (6th Cir. 2006); *Woods v. Lecureux,* 110 F.3d 1215, 1219–20 (6th Cir. 1997). The conclusions that Cameron draws are those that must be let for the trier of fact. They are impermissible expert opinion in light of the fact that 18 U.S.C. 1347 requires that the defendant act with specific intent to commit fraud. *United States v. Alvarez*, 837 F.2d 1024, 1031 (11th Cir. 1988) ("Rule 704(b) bars expert testimony that expressly states an opinion as to defendant's state of mind at the time of the offense."). Cameron directly opines on whether Defendant had the intent to commit wire and mail fraud and transactional money laundering. After analyzing various counts, Cameron opines that the crime of transactional money laundering did not occur because Defendant merely transferred his personal cash. She reaches similar conclusions on Defendant's state of mind regarding his intent, the source and use of funds. None of these conclusions or opinions are appropriate for submission to the jury. The Court should preclude her proposed testimony.

**D.    Preclusion of January 26th and January 30th Defense Disclosures**

The Court should also preclude Defendant from using at trial the at least 3,000 pages of documents that Defendant chose to disclose for the first time on January 26 and 30, 2023. Rule 16 requires that a "party who discovers additional evidence or material before

or during trial must promptly disclose its existence to the other party or the court if: (1) the evidence or material is subject to discovery or inspection under this rule; and (2) the other party previously requested, or the court ordered, its production." Rule 16(c). The government requested reciprocal discovery at the outset of this case, and hundreds of these documents have been marked by Defendant as trial exhibits. To address Defendant's apparently intentional and strategic eleventh-hour disclosures, the Court should bar the use of the undisclosed evidence at trial under Rule 16(d)(2).

Barring this late-disclosed evidence does not violate the Sixth Amendment. Defendant has been represented by an array of experienced criminal specialists, including his current defense counsel.[2] All well know the risks of sandbagging the United States with last-minute disclosures in an attempt to obtain a tactical advantage. As the district court noted in *United States v. Byrom*, "[Byrom's] right under the Confrontation Clause of the Sixth Amendment is to the "*opportunity* for effective cross-examination." 817 F. Supp. 2d at 887 (quoting *United States v. Whitfield,* 590 F.3d 325, 363 (5th Cir. 2009)) (emphasis original). To the extent that Byrom's opportunity was limited, it was due to the deliberate actions of her attorney. When counsel engages in willful discovery omissions for purely tactical reasons, the Sixth Amendment is not offended by the imposition of proportionate sanctions. *See Taylor*, 484 U.S. at 415. Exclusion is an appropriate remedy for a discovery rule violation only where the omission was willful and motivated by a desire to obtain tactical advantage." *Finley*, 301 F.3d at 1018 (citing *Taylor*, 484 U.S. at 415) (internal quotation marks omitted).

Here, the United States moves to preclude Defendant's use at trial of all of the late-disclosed documents and also asks the Court to order Defendant not mention the existence of these unauthenticated documents at trial. Defendant intentionally withheld these documents for at least three months and provided them in large document dumps days before trial. As in *Taylor*, Defendant's eleventh-hour document disclosures were "willful

---

[2] https://www.ckllclaw.com/the-team/stephen-m-dichter/

and blatant," and "the inference that [he] [i]s deliberately seeking a tactical advantage is inescapable." *Id.* at 416–17; *see also Combs*, 267 F.3d at 1179 ("Even in the absence of prejudice, integrity and scheduling considerations alone may justify suppression of otherwise admissible evidence offered by the delinquent party."). Defendant should not benefit from this intentional sandbagging, and the Court should preclude Defendant from using or discussing at trial the at least 3,000 pages of documents disclosed for the first time on January 26 and 30, 2023.

Respectfully submitted this 31st day of January, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Kevin M. Rapp*
KEVIN M. RAPP
COLEEN SCHOCH
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on January 31, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants who have entered their appearance as counsel of record.

*s/ Daniel Parke*
Daniel Parke
U.S. Attorney's Office