Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
Justin R. Vanderveer, 037657
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant David Harbour

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. 2:19-cr-00898-DLR (DMF) |
|---|---|
| Plaintiff, | **DEFEDANT'S RESPONSE TO GOVERNMENT'S MOTION TO STRIKE (Doc. 575)** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | |

Defendant David A. Harbour ("Harbour"), by and through undersigned counsel, responds to the government's motion to strike. ("Motion").

## ARGUMENT

### I. Motion to Strike Defense Exhibits

Excluding evidence is an appropriate remedy for a discovery rule violation only where the omission was willful and motivated by a desire to obtain a tactical advantage. *Taylor v. Illinois*, 484 U.S. 400, 415, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988); *United States v. Finley*, 301 F.3d 1000, 1018 (9th Cir. 2002). The chain of events that created thisissue

for the court did not arise from Defense Counsels' willful desire to gain a tactical advantage. Far from it.

At the outset of our participation in this case, we said in open court that the defense had a very large data base that prior counsel apparently thought should be disclosed mostly through impeachment exhibits. Only one defense disclosure had been made since the inception of the case in 2019. It is to be recalled that, when we entered the case, Defendant had been incarcerated since the prior December and his lead lawyer had actually been permitted to withdraw. The state of the case was in the midst of the detention hearing that, with its *de novo* appeal, would remain ongoing for several months longer. While the Defendant won the detention hearing, he could not bond out for reasons of which the Court is aware.

After it became apparent that he would not be able to bond out, we petitioned the Court to permit the Defendant access to a laptop, which was granted, and we began a painstaking process of dealing with the professionals at Teris, which had been maintaining a data base of approximately 800,000 documents since June 2016. That data base was created when Snell & Wilmer attorney James Melendres had Teris image the computers of David Harbour, Laura Purifoy, and Carol Hill.

Directed by our client's and our own search criteria, we began drawing documents from the database. These would be placed on thumb drives and, with the kind cooperation of CoreCivic authorities, the undersigned would drive them down to Florence and hand them to the authorities who would than review the contents and within a day or two

deliver the jump drive to Harbour's supervisors who would make it available with the laptop to which Harbour was granted 6 hours of time per day.

Harbour would review the documents alone and then, he and counsel would discuss them both on the phone and in person. Selections for Rule 16 reciprocal disclosure would be made and then the jump drives would be picked up by counsel, along with the client's thoughts, after which the documents that were to be produced would be reviewed again, Bates labeled, and supplied to the government. It was an unwieldy and very time-consuming process. However, all the difficulties notwithstanding, we provided substantial disclosures March 29, April 14, June 10 (2), then November 23, January 4, January 13, January 26, and January 30 with a final production expected late January 31st.

Meanwhile, the government, after a similar 4-month hiatus of its own following a production made on July 22, 2022, has made eight (8) new document productions since November 18, 2022 and continuing on December 2, December 9, January 6, January 18, January 23, January 28 and, most recently, January 30th. The government cannot make the argument that Defendant's "late" disclosures should be struck while they themselves engaged in identical conduct regarding disclosures.

Every time the government made a new production of documents, the new production caused Defendants to have to review whether or not new Defense productions were needed to respond to the ever-increasing of new government productions.

Meanwhile, the government proposed that all exhibits and documents would be exchanged by January 31, 2023. We do not expect that the government did this for the

Defense's benefit but, given the enormity of our task, we are grateful that the government had proposed the late date.

Of even more importance is this: The government did not produce a proposed Exhibit list at all November 29, 2022 and when it did, it contained only 390 exibits. When we asked how many exhibits the government intended to use, we were advised to start our numbering at Exhibit 1000. This caused us to think that, perhaps another 610 exhibits would be coming. We heard nothing further about the exhibits from the government until January 23, 2023, when the government expanded the exhibit list to Exhibit 706, almost double.

The government did not supply the exhibits and while it did supply many Bates numbers, the exhibit list is notably missing enough Bates numbers that our staff has still not been able to locate a number of the governments exhibits. In addition, the government did not inform the defense as to the witnesses it intend to call until January 30, 2023. Some of these names were new enough to us and that it caused us to need to add new exhibits, which explains the production of January 30 and 31.

Meanwhile, on January 26, having received the government's expanded list on January 23rd, we supplied, with descriptions and Bates labeling a list of our Exhibits 1000 through 2120, all of which had been produced. While the government had likely produced 80,000 documents since 2019, until November 29, 2022, and January 23, 2023, the defense had absolutely no idea of which ones of the 80,000+ documents the government intended to use as Exhibits. The exhibits were buried in the massive production.

It should be easily understood that the defense's exhibit list, in material part, had to follow and be driven by the government's list. Considering that the government has the complete burden of proof, we feel somewhat aggrieved that we are being asked to shoulder the blame. Our task would have been easier had, first, the cumbersome procedure for identification of potential defense exhibits not existed, and second, had the government produced its entire exhibit list sometime earlier than just after Thanksgiving.

In short, the deadline proposed by the government has been met. Just barely, but the deadline has been met. Obviously, if the defense cannot use its Exhibits, the Defense cannot possibly win the case. A check of the visitors log at CoreCivic will show that most weeks the undersigned made at least one and often two visits to the facility and so, there is certainly no delay to be attributed to the client. The supervisory personnel there would likely concede that Harbour never missed a day with the laptop assisting counsel in preparing the Defense. Given the circumstances, we do not know how we could have done a better job.

The government relies on *Taylor* to claim that "As in Taylor, Defendant's eleventh-hour document disclosures were 'willful and blatant,' and 'the inference that he is deliberately seeking a tactical advantage is inescapable." See Doc. 575 pg. 12-13 ln. 26-2. However, the two instances are highly dissimilar. First, in Taylor, the government filed a discovery motion "well in advance" of the trial. *Taylor*, 484 U.S. at 400. The defendant failed to identify a witness named Wormley even though Wormley was known to the defense at the time. *Id*. Then on the *second day* of trial, defendant made an oral motion to include Wormely as a witness *after* the prosecution's main witnesses had

completed their testimony. *Id*. This is not analogous to the present issue. First, trial has not yet started, and the government has not presented their case. It was the timing in *Taylor* was the primary reason for the exclusion of Wormley as a witness. Second, the issue of Wormley testifying was that the defense failed to disclose them upon request and Wormley had been known as a witness at the time of the request. Here, we have documents in question have only been disclosed in response to the governments productions to rebut their incoming evidence. While the standard of Taylor is undoubtedly applicable, the factual situation before this Court does not merit exclusion. Furthermore, the 9th Circuit acknowledged that in Taylor, the Supreme Court suggested that even if there is a discovery violation, a sanction other than preclusion will often be adequate and appropriate. *Finley*, 301 F.3d at 1018.

**II. Kathleen Nicolaides**

In October 2022, Counsel reviewed at the $255 check that is the basis of the Carol Hill mail fraud count of the Indictment amidst the entire group of checks in which it was situated. After 50+ years in the business, it was clear that there were at least two signatories on the checks. While they both appeared to be "David Harbour," but they appeared very different from one to other to my own eye.[1] Therefore, I sent a group of checks to our document examiner and asked her to perform a forensic examination.

I did not hear back from her for a while. Concerned, I reached out to her in early December and learned to my dismay that her husband had suddenly died of a heart attack

---

[1] I first used forensic document examiners in prosecuting a murder case in 1973 at Fort Meade, Maryland and have used them steadily throughout my practice both as an AUSA and as a defense lawyer.

6

in October and that she had been unable to work, as one might expect, for all of November into December.

The best I could do was to get a commitment that she would do the examination and get me a result in mid-January. The day I got her report, I forwarded it to the government. I would have liked for the government to have received it earlier just as I would have liked to have received it earlier. The examination found that there are two groups of checks bearing signatures that that are distinct from each other. One group includes the signature appearing on the $255 check for the benefit of Carol Hill and a larger check written to her husband. These were not signed by the same person who signed the large majority of the checks in the group. She cannot state that Carol Hill signed them but can state that they are distinct from the majority of the checks that Harbour indicated that he had signed. We got the report out as quickly as we could.

The government, for both expert witnesses, relies on *United States v. Anderson* in which Judge Bolton precluded an expert for untimely disclosure. *See* Doc. 575 pg. 7 ln. 8-19. However, as Judge Bolton wrote:

> "One, there was no timely disclosure of Mr. Brown's testimony or even his existence. The email that you sent didn't even – sometime just before trial didn't even disclose the identify of the individual that you were referring to." *Id.* at ln. 14-16.

The disclosure that occurred in *Anderson* is not similar to this situation. The Defendant proved notice of expert Cathie Cameron as far back as 2020 (Doc. 95, filed on June 15, 2020); Kathleen Nicolaides had also been used as an expert by the Defendant

7

previously, and Defendant needed additional work completed only in response to continued disclosures and updated case theories propounded by the government. Furthermore, Ms. Nicolaides's name has been repeatedly given to the government as a witness in this case and was disclosed on exchanged joint witness lists. In *Anderson*, the defendant did not even provide a name. As Ms. Nicolaides has been used by the Defendant before, the government cannot be permitted to play coy that they were unaware of what Ms. Nicolaides was an expert in forensic document examination.

### III.     Cathie Cameron

Ms. Cameron was designated as a defense forensic accountant at the outset of the case. *See* Doc. 95. She had an early preliminary report done in June of 2022. However, the government continually adjusted the focus of its accusations – this could be seen in the motions – and this meant that the focus of the Cameron report also needed to shift. The second problem was that, to this moment, the government has not complied with Rule 16(G), F.R.Crim.P. and by that we mean with neither the version of the Rule that was in force until December 1, 2022 nor, most especially, with the version of the Rule that went into effect then. The government has never produced any report at all, merely a series of flow-charts that meet none of the Rule 16 requirements. A separate motion to strike the government forensic accountant is being filed today as well and its contents are incorporated by reference as if fully set-forth herein.

While the government contends that its forensic accountant will offer no opinions, this is not true. The government's witness points to sources of funds and the disposition of funds but the arrows themselves are laden with opinion. For example, why did the

witness choose to select day "x" to examine the bank account when she could see that funds had been received within a day or two of the disbursement of funds. This is hardly unusual in a business.

More importantly, it should be readily understood that, until the government's final report was received, the defense forensic accountant could hardly be expected to produce a final report and, as suggested, it was not until January 30 that we understood that there was not and had never been a Rule 16(G) expert report. Additionally, the final government charts, if the court is going to allow the government to use them, were not received until January 4, 2023.

The government next contends that Ms. Cameron should be excluded because her opinions that this was not a fraud draw on the conclusion into Harbour's state of mind, which is an impermissible conclusion for an expert to make. As far as Ms. Cameron would opine on the mental state of Harbour, it is understood that type of inference is impermissible. However, the government's reliance on *United States v. Cooper* is misplaced. *See* Doc. 575 pg. 10 ln. 1-9. In *Cooper*, the defendant moved to preclude a fraud conclusion by government experts. *United States v. Cooper*, 286 F. Supp. 2d 1283, 1292–93 (D. Kan. 2003) To conclude something is a fraud requires a finding that <u>all</u> of the elements of fraud are met, which includes the mental state of the defendant. But to conclude something is not a fraud merely requires a finding that <u>one</u> of the essential elements of fraud is not present. If a *prima facie* case is not present, then it cannot possibly be a fraud. Ms. Cameron will not testify as to the mental state of Harbor, period. Harbour has been charged with wire fraud and mail fraud; if Harbour did not use

interstate wire communications or mailings in furtherance of a scheme, there is no fraud. *See* 18 U.S.C. 1334; 1341.

### Conclusion

The government seeks to gut the defense case on every level the day prior to the trial. If this is permitted, the chance of the Defendant receiving a fair trial is non-existent. We have diligently provided the documents as they were identified and have made fewer recent productions (since November). The latest defense productions, the 9th and 10th, were prompted more than anything by the government's disclosures in December and January; they are a reaction to the government's affirmative action.

RESPECTFULLY SUBMITTED this 31st day of January 2023.

CHRISTIAN DICHTER & SLUGA, P.C.

By: /s/ Stephen M. Dichter
Stephen M. Dichter
Justin R. Vanderveer
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Attorneys for Defendant David A. Harbour

### CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2023 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Kevin M. Rapp
Kevin.rapp@usdoj.gov
Coleen Schoch
Coleen.schoch@usdoj.gov
U.S. Attorney's Office
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004

1  Attorney for Plaintiff
2
3  /s/ Yvonne Canez