GARY M. RESTAINO
United States Attorney
District of Arizona
KEVIN M. RAPP
Arizona State Bar No. 014249
Email: kevin.rapp@usdoj.gov
COLEEN SCHOCH
Georgia State Bar No. 366545
Email: Coleen.Schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| United States of America, | CR-19-00898-PHX-DLR (DMF) |
|---|---|
| Plaintiffs, | |
| vs. | **UNITED STATES' RESPONSE TO DEFENDANTS' REQUEST TO DETERMINE THE FURTHER ADMISSIBILITY OF OPERATION CHOKEPOINT** |
| David Allen Harbour, | |
| Defendant. | |

The Court has requested the United States respond to Defendant's arguments that he will testify about Operation Chokepoint and how it led to the collapse of DNA Investments, LLC (DNA), and that his testimony will provide circumstantial evidence about the reason for DNA's failure. (Doc. 625.)

The problem with Defendant's argument is that he proposes to testify, not about the effect of Operation Chokepoint on his own business, but on the alleged effect of Operation Chokepoint on Joel Tucker's business: KSQ Management. DNA's business did not involve payday lending. DNA was established to raise money for other businesses. Defendant introduced wealthy individuals to Joel Tucker, the principal of KSQ Management, and then would "step away." (Doc. 211 at 38.)  In 2015, Defendant testified about all these issues in a deposition taken by the Federal Trade Commission. (Ex. 211.)

In that deposition, Defendant stated that DNA was "formed for the purpose of raising capital in various deals." (Ex. 211 at 28.)  DNA raised money for KSQ Management (KSQ), which is owned by Joel Tucker. (Ex. 211 at 29.) Defendant didn't know KSQ's business:

> Q:  Can you tell me about KSQ?
> A:  What would you like to know?
> Q:  What is its purpose?
> A:  I do not know.
> Q:  Okay.  You raised money for a company and you don't
> know what the company did with the money?
> A:  You are correct.

(Ex. 211 at 29-30.)

Defendant described his role with KSQ as someone who introduced wealthy individuals to Joel Tucker and then stepped away:

> So I looked – my role was, Joel, I want to introduce you to these wealthy guys.  It's their decision they [sic] want to give you money or not.  You have to sell it.  I'm not going to sell on your behalf – I'm not going – I'm not going to sit here and try to get into your life in KSQ and what it is you do or don't do.  Here they are.  They can invest with you and if you can sell them . . . . I wasn't in the meeting.  It's in my building.  I wasn't there.  I didn't attend.
> . . .
> So once I would make those introductions . . . I would step away.  So it was never that I needed, to your question, to know what it is Joel was truly doing or not doing because [the investors] met with him individually.

(Ex. 211 at 38-39.)

Defendant is unable to testify about payday lending, much less Operation Chokepoint's impact on any payday lending businesses, because he has repeatedly testified under oath that he has no personal knowledge on the subject. Joel Tucker operated KSQ.

While *Mr. Tucker* may have personal knowledge about how Operation Chokepoint affected *his* payday lending business, Defendant does not. As repeatedly represented by Defendant's counsel throughout trial, the basis of Defendant's proffered testimony will be that Defendant was present at a meeting with Mr. Tucker, at which Mr. Tucker allegedly discussed Operation Chokepoint. Thus, the only basis for Defendant's purported

knowledge on the subject is this inadmissible hearsay. No causal link can be drawn from Defendant's testimony because he possesses no first-hand knowledge of the issues, as required under Fed. R. Evid. 701.

In fact, the only testimony offered in this trial based on personal knowledge of KSQ's business is that of Lisa Berges, who testified that she reviewed KSQ's financial documents, including bank statements, and concluded that KSQ failed because Tucker spent business funds on his personal expenses and on large kickbacks to Defendant instead of putting those funds "on the street" in the form of payday loans.

The law cited in Defendant's motion is not applicable because he does not intend to testify regarding his personal knowledge of *his own* business, but his hearsay-based knowledge of *another person's* business. This testimony is not admissible and will not assist the jury in understanding how Dr. Manning's testimony is relevant to the charges against Defendant. If there was a decrease in income from KSQ at any point, Defendant's financial expert may testify to that. Dr. Manning's testimony remains irrelevant and untied to any admissible evidence.

Respectfully submitted this 16th day of February, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/Kevin M. Rapp*
KEVIN M. RAPP
COLEEN SCHOCH
Assistant U.S. Attorneys

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this same date, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing a copy to the following CM/ECF registrant:

Stephen M Dichter, *Attorney for Defendant*

 *s/Daniel Parke*
U.S. Attorney's Office