GARY M. RESTAINO
United States Attorney
District of Arizona
KEVIN M. RAPP
Arizona Bar No. 014249
Email: Kevin.Rapp@usdoj.gov
COLEEN P. SCHOCH
Georgia Bar No. 366545
Email: Coleen.Schoch@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00898-PHX-DLR |
| Plaintiff, | **UNITED STATES' RESPONSE TO DEFENDANT'S ASSORTED REQUESTS FOR JURY INSTRUCTIONS** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | |

On January 4, 2023, Defendant Harbour recommended additional non-model jury instructions in this case. The United States responds to each of these proposed instructions below.

**I.   Defendant's Proposed Non-Model Jury Instructions (Doc. 514)**

In the parties joint proposed instructions, Defendant proposed several instructions to which the United States did not stipulate and that the Court should reject.

**A.   Intent to Defraud and Good Faith**

In this proposed instruction, Harbour asks the Court to instruct the jury that a person who acts on a belief or on an opinion sincerely held is not guilty merely because that belief or opinion turns out to be incorrect or wrong. The cases cited by Harbour in support of this proposition are distinguishable. In *Powell* the court found that:

> The premise of *Cheek* is that a person cannot be convicted of willful failure to file a tax return if he subjectively believes in good faith that the tax laws do not apply to him. The test does not focus on the knowledge of the reasonable person, but rather on the knowledge of the defendant. As the Supreme Court explained: "In the end, the issue is whether, based on all the evidence, the Government has proved that the defendant was aware of the duty at issue, which cannot be true if the jury credits a good-faith misunderstanding and belief submission, whether or not the claimed belief or misunderstanding is objectively reasonable."

*United States v. Powell*, 955 F.2d 1206, 1208 (9th Cir. 1991) (citing *Cheek v. United States*, 498 U.S. 192, 206-07 (1991)).

This proposed instruction is not relevant to any of the charges in the current trial: Counts 1-23. In addition, there is no plausible argument or evidence that Harbour did not have a duty to disclose or acted in good faith when he failed to disclose material information to investors. This instruction should be rejected.

      **B.**     **Testimony of Witnesses Involving Special Circumstances, Immunity, Benefits, Accomplice, Plea**

This proposed instruction should be rejected as irrelevant. There is no evidence that any witness testified under a grant of immunity or received any other benefits from the government in exchange for testimony.

      **C.**     **Law Enforcement Witness**

Harbour requested this non-model instruction based on Arizona state case law. It should be rejected because this topic is already addressed by the Ninth Circuit Model Instruction regarding the jury's consideration of the credibility of witnesses.

      **D.**     **Statute of Limitations in Connection with Mail Fraud Charges**

Harbour proposes that the Court instruct the jury that, if they find that Defendant's receipt of funds from the alleged victims of Counts 11 and 12 was more than 5 years before the date that the government charged the Defendant with Counts 11 and 12, then they must find the Defendant not guilty of those charges. This proposal is legally inaccurate. It relies on securities fraud caselaw and statutes, which are irrelevant here and have their own statute of limitations. In addition, it ignores long-standing law that mailings—such as those

detailed in Counts 11 and 12—are an integral part of fraud. *United States v. Brown*, 578 F.2d 1280, 1285 (9th Cir. 1978) ("mailings of purported monthly payments to the purchasers of the land contracts, in our view, constitute an integral part of the transaction which the court found to be fraudulent"). The *Brown* court specifically noted that "in analogous prosecutions under the mail fraud statute (18 U.S.C. § 1341) activities tending to lull investors, either to prevent discovery of fraud or to permit further fraudulent activities to progress unhindered, have been held to **constitute a part of the execution of the fraudulent scheme and to be integral to the offense** rather than incidental to it." *Id.* (emphasis added) (citing *United States v. Sampson*, 371 U.S. 75 (1962); *United States v. Ashdown*, 509 F.2d 793 (5th Cir. 1975)).

Both Willson and Hill opened *and kept open* their Liberty Trust IRA accounts at Harbour's direction. Harbour's mailing of these individual charged payments to their IRA accounts follow the classic pattern of a "lulling" scheme, first recognized by the Supreme Court in *United States v. Sampson*, 371 U.S. 75, 80-81 (1962). In such a scheme, the mailing reassures the victim that all is well, discouraging him from investigating and uncovering the fraud. *Id.*

### E.     Advice of Counsel

This instruction should be rejected as not relevant to any evidence presented in the current trial on Counts 1-23. Harbour has not waived any attorney-client privilege. Without doing so, he is precluded from invoking an advice of counsel defense. *See, e.g., United States v. Bush*, 626 F.3d 527, 539 (9th Cir. 2010) (an advice-of-counsel instruction requires the defendant to show he made a full disclosure of all material facts to his attorney).

### F.     Defense Theory of the Case

Harbour requests that the jury be charged with the defense theory of the case, supplied following the close of trial. While there is some Ninth Circuit authority for this proposition, *United States v. Wright,* 593 F.2d 105, 107 (9th Cir. 1979) ("The district court must give an instruction relating to any legitimate theory of defense that is supported by evidence. The district court has broad discretion in formulating the instructions, however,

and neither party may demand specific language."), it is unclear what theory defense is asserting. Imperfectly formulated jury instructions will serve as a basis for overturning a conviction only upon a showing of abuse of discretion. *United States v. Green,* 745 F.2d 1205, 1209 (9th Cir. 1984).

**II.   Defendant Harbour's Additional Proposed Instructions (Doc. 513 and 526)**.

In these two filings, Defendant Harbour requests nine supplemental instructions.[1] For the reasons set forth below, the Court should reject each proposal.

**A.   Documents as Controlling**

In this proposed instruction, Harbour asks the jury to be instructed that whether that person was a lender or an investor is determined by the documents signed by the parties and not by the characterizations of the lawyers. The Court should reject this proposed instruction for two reasons. First, it has no relevance to this case. Defendant Harbour misrepresented and omitted material facts to unsophisticated investors, who relied upon his expertise due the trust relationship he cultivated. Second, Harbour relies on state authority that is inapplicable to the charges in the second superseding indictment.

**B.   Role of Lenders or Investors Own Counsel: Construction Against the Party Choosing the Words**

Harbour asks for an instruction that a lender or investor who engages counsel to draft or modify transactional documents cannot blame the Defendant for that which his or her own counsel authorized Defendant to do. Again, this instruction should be rejected as irrelevant to this case. Harbour gained the trust of the unsophisticated victim investors and misrepresented and omitted material facts that were unknown to *both* the investor and to the investor's attorney in order to obtain their investment.

**C.   Affirmative Misrepresentation as a Basis for Fraud**

Harbour cites 18 U.S.C. § 1014 ( Loan and credit applications generally; renewals

---

[1] Two of the proposed instructions apply only to Counts 27-34, which are not the subject of the current trial.

and discounts; crop insurance) in support of instruction that the borrower must supply all documentation required by the lender. The Court should reject this instruction. First, this is a misrepresentation of the statute as it does not address false documents provided to a lender. Second and more importantly, Harbour fails to articulate how this instruction is relevant to this case.

### D. Drafting of Pujanza Amended and Restated Operating Agreement: Construction Against the Party Choosing the Words

Harbour recycles the proposed instruction above and requests and additional instruction specific to Mark Burg's investment. Harbour requests that the jury be instructed that, if Mark Burg's attorney drafted the operating agreement and it allowed Harbour to use money for any purpose, then no diversion of money occurred. This instruction should be rejected because this case is about Harbour's fraud in obtaining the investment from Mr. Burg. Neither Burg nor his attorney were aware that Harbour fraudulently misrepresented and omitted material facts in order to secure Mr. Burg's $1 million investment.

### E. Interpretation That Points to Defendant Being Not Guilty

Harbour, relying on the proof beyond a reasonable doubt instruction, requests an instruction that, if the evidence permits two reasonable interpretations, one of which points to the Defendant's guilt and the other to the Defendant being not guilty, the jury must adopt the interpretation that points to the Defendant being not guilty and reject that interpretation that points to his guilt.

The Court should reject this instruction for two reasons. First, it is legally inaccurate. Second, Harbour cites neither authority nor a case where such an instruction was given.

### F. Fraud as Determined When Conduct is Engaged In

Harbour asks that the Court instruct the jury that Defendant's willful intent to defraud a victim is determined at the time he allegedly devised the scheme and artifice to defraud. This instruction should be rejected as it is not relevant to the facts of this case. Harbour made multiple misrepresentations and omissions *before* taking his victims' money. For example, he failed to disclose that he had millions of dollars in personal

- 5 -

guarantees, a finder's fee whereby he would receive 25% of the victim's money for providing it to Joel Tucker, that he received numerous state regulatory complaints for consumer fraud by the payday lending activities of entities of which he owned a majority interest. Harbour also failed to disclose the risks associated with such an investment to unsophisticated and trusting investors. Lastly, by 2013, his own financial picture was bleak. he had blown the investor funds on expensive luxuries and, by his own admission, was living off of "personal loans" from Deel, Dunsworth, and (a completely unknowing) Bobrow. The Court should reject this proposed instruction.

### G. Failure to Repay a Debt

Harbour argues that the jury should be instructed that the mere failure to pay on a promissory note does not constitute a crime. Harbour cites the Bankruptcy Code, 11 U.S.C. § 1101, as authority for this proposition, but fails to explain its relevance. This instruction should be rejected because it fails to take into account the numerous misstatements and omissions of material facts made to the investors *prior to* the execution of their promissory notes.

### H. Bank Fraud – Receipt and Materiality and Negative Inference Against Government from Failure to Produce Evidence

These two instructions appear to apply to Counts 27-34 and, therefore, are not relevant to the current trial.

### I. Impracticability (Commercial Frustration)

This proposed instruction should be rejected for multiple reasons. First, Harbour cites various Arizona state court decisions in support of the instruction, but no binding authority from the Ninth Circuit or even a sister circuit. Second, it has no applicability to the facts of this case. Harbour may be requesting this instruction because he could not foresee the impact of Operation Chokepoint on his payday lending scheme. Some of the investors had no idea they were actually in payday lending (i.e., Dan and Allison Wilson and Carol Hill, etc.). The investors were induced into the investment by misrepresentations and omissions. Harbour has now blamed the collapse of his scheme on Operation Choke

point. This defense is of obvious recent vintage. Harbour apparently located an expert to testify about operation Chokepoint in December 2021 or January 2022—three years after his indictment.[2] It is also noteworthy that the expert report's disclosure was intentionally delayed until November 2022 for strategic advantage even though the expert (Dr. Manning) and defense counsel agreed in July 2022 that the report was complete.[3] This instruction should be rejected.

Respectfully submitted this 22nd day of February, 2023.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/ Kevin M. Rapp
KEVIN M. RAPP
COLEEN SCHOCH
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on 22nd day of February 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

s/Daniel Parke
U.S. Attorney's Office

---

[2] It is likely that Dr. Manning is mistaken about being contacted in December 2021 or January 2022 as Defense Counsel did not assume the case until February-March 2022.

[3] *See* Email between Dr. Manning and Steven Dichter (June 9, 2022). According to the email exchange Dr. Manning's report was finalized on July 7, 2022. The United States will file a motion to strike Manning's testimony based on Defendant's intentional delay in disclosure as well as its lack of relevance of his testimony