1  Stephen M. Dichter, 004043
   sdichter@cdslawfirm.com
2  Justin R. Vanderveer, 037657
   jvanderveer@cdslawfirm.com
3  CHRISTIAN DICHTER & SLUGA, P.C.
4  2800 North Central Avenue, Suite 860
   Phoenix, Arizona 85004
5  Telephone: (602) 792-1700
   Facsimile: (602) 792-1710
6

7  Attorneys for Defendant David Harbour

8                    IN THE UNITED STATES DISTRICT COURT

9                       FOR THE DISTRICT OF ARIZONA
10

11  United States of America,              Case No. 2:19-cr-00898-DLR (DMF)

12                    Plaintiff,
                                           **DEFENDANT DAVID A.
13        vs.                              HARBOUR'S REPLY TO
                                           GOVERNMENT'S RESPONSE TO
14  David Allen Harbour,                   DEFENDANT'S REQUESTS FOR
                                           JURY INSTRUCTIONS**
15                    Defendant.
16

17        David Allen Harbour (Defendant) objects to the following proposed government

18  jury instructions:
19

20        **I.     Defense Original Instructions (Doc. 514)**

21        **A.     Intent to Defraud and Good Faith.**  When this instruction was proposed,

22  the tax trial was still a jury trial.  It is a special instruction related to Counts 24-26.
23

24        **B.     Testimony of Witnesses Involving Special Circumstances.** This proposed

25  instruction will likely be relevant in the third trial.  It is not relevant in the first trial.

26        **C.     Law Enforcement Witnesses.** Defendant disagrees with the government's

27  position. Jeanette Paige, the FBI forensic accountant is, obviously an FBI agent, meaning
28

a law enforcement agent. We see no provision in the 9th Circuit Model Instruction dealing with law enforcement witnesses.

**D.     Statute of Limitations.** The Statute of Limitations has clearly expired with respect to Counts 11 and 12. The government's assertion that Willson and Hill kept their IRA accounts open at Harbour's direction was not the subject of any testimony in the trial. Neither Hill nor Willson stated that they kept their IRA accounts open based upon advice from Harbour.

Harbour also did not mail the Hill or Willson checks, nor did he cause them to be mailed.  Hill drafted, signed, and mailed her own $255 check to pay the administrative service fee on her IRA account and Willson picked up her $7,500 check at the office, drove off with it and, apparently, mailed it herself.  There was nothing that compelled her to mail the check.

Factually, although the government contended throughout pretrial proceedings is that Hill spoke to Harbour all the time about where her money was, in trial, she stated that she never spoke to Harbour about the $81,000 NorthRock loan at all.  As for Willson, she was definitely complaining, often and loudly, about the fact that she had not received payments on her February 2014 Canyon Road loan of $100,000 after the FTC shutdown Canyon Road just as soon as the FTC shut down Canyon Road.

Importantly, however, as we pointed out in the Rule 29(a) motion, the interest April 2016 interest payment was *not* made on the 2014 Canyon Road note.  The interest payment was on the *substituted* November 15, 2015 HPCG Note.  It was not in default. It is not even discussed, let alone charged, in the SSI. Though the SOL on the November

2015 Note expired in November 2021, it was never charged at all. So, there is a mismatch, that is a fatal variance, between the transaction charged as fraudulent, a February 2014 transaction, and the 2016 interest payment on the 2015 Note which was an in interest payment and is uncharged.

Assuming *arguendo* that Harbour engineered a scheme and artifice to defraud Carol Hill out of $81,000 and Alison Willson out of $100,000, both schemes reached their fruition when the money was received. Of course, in both instances, the payments were directed to companies in which Harbour did not have signature authority in the bank accounts. Hill's IRS money went to NorthRock and Willson's went to Canyon Road.

The government's reliance on *United States v. Brown*, 578 F.2d 1280, 1285 (9th Cir. 1978) is misplaced because that was a securities case in which the mailings were part of the offering and sale of securities. By April 2016, Willson absolutely knew all was not well. Her Declaration, Exhibit 676, signed under penalty of perjury, makes this completely clear. In ¶ 12 of the Declaration, she stated that her interest payments ceased in September 2014 and she was told about the FTC takeover of Canyon Road.  In November 2015, her Canyon Road loan was converted into a general business loan to HPCG on which she received interest payments through April 2016.  Count 11 is based solely upon the $7,500 check and nothing more. The circumstances of the payment in April 2016 cannot possibly relate to the alleged February 2014 fraud (the second Canyon Road loan) as the SSI contends.

If the government's contention is that the April 16, 2016 $7500 payment is part of the February 2014 (second) Willson loan to Canyon Road, the statute of limitations has

run and the jury must be instructed concerning the statute of limitations unless this Court, as "gatekeeper" throws Count 11 out on its own.  The Court has several paths to this outcome because the $7,500 interest payment was actually made on the November 15, 2015 HPCG Promissory Note, which is not and has never been charged as part of the scheme and artifice to defraud.

However, if the payment of the $7,500 is alleged to have been integral with the February 2014 Canyon Road loan, then statute of limitations is a jury question along with the requirement that the government prove beyond a reasonable doubt that the $7,500 payment was in furtherance of the February 2014 scheme.  Like the "in furtherance" element, if the SOL is an issue of fact for the jury, the jury must be properly instructed on it.

**E. Advice of Counsel.**  Not applicable to the first trial

**F. Defense Theory of the Case**.  Is being submitted this date.

## II.   Defense Additional Instructions (Docs. 513 and 526)

**A.     Documents as Controlling.** These proposed instructions relate solely to Turasky and Burg. To call either of them "unsophisticated", when combined, as surely they must be, with their advisors and counsel, does not meet the straight-face test. Turasky's and Burg's financial and legal advisors drafted the operative documents and, once signed, those documents represented the intent of the parties. The government seems to be forgetting that the fraudulent conduct with which Harbour was charged in the SSI was specifically that he used their Turasky's and Burg's funds for expenses.  In other words, Harbour did not tell Turasky and Burg that he was going to use their funds to pay

4

expenses. However, the documents their lawyers drafted allowed Harbour to use the money for expenses and their testimony agreed.

The SSI is not like a peanut shell or a hot dog wrapper for the government to discard, as if it never existed, once the indictment has been returned and the case proceeds. In this case, the grand jury charged that Harbour defrauded Turasky and Burg because Harbour did not tell them that he was going to use their funds for expenses, the government cannot simply proceed in complete disregard with what the grand jury charged.

**E.     Interpretation that Points to Defendant Being Not Guilty.** The government states that this contention is legally inaccurate (without citing to authority as to why or how the statement is legally inaccurate) and because we did not cite a case in which the instruction had been given. The instruction proposed is from 1A Fed. Jury Prac. & Instr. § 12:10 (6th ed.) (O'Malley); Section 12.10.

> Unless the government proves, beyond a reasonable doubt, that Defendant[s] [has] [have] committed each and every element of the offense[s] charged in the indictment, you must find Defendant[s]  not guilty of the offense[s]. **If the jury views the evidence in the case as reasonably permitting either of two conclusions—one of innocence, the other of guilt—the jury must, of course, adopt the conclusion of innocence.** [Emphasis Added]

Formerly Devitt & Blackmer and later Devitt & Blackmer & O'Malley, these were the instructions commonly used in Federal Courts before the advent of the Circuit Model Jury instructions.

**F.     Fraud as Determined When the Conduct is Engaged In.**  Counsel's habit of asking witness questions that lead-off with "did he tell you" are not evidence.

Nor are questions that misstate the actual *evidence* that draw the answer "no" evidence. So, in this case, there are only four human (alleged) "victims." None of them were DNA-KSQ lender/investors. We ask the Court to pause and let that sink in.

Carol Hill is NorthRock.[1] The government has introduced no evidence that NorthRock received finder's fees from KSQ nor do the NorthRock bank statements show them. The KSQ-DNA finder's fee agreement is solely between those companies.

Meanwhile, Alison Willson is associated with Canyon Road, which, according to government witnesses Larry Cook and Lionel Green, had no connection to KSQ. The government introduced no evidence that anyone got finder's fees from Canyon Road. And Mark Burg and Richard Turasky are OakTree. The government has introduced no evidence that any finder's fees were paid in OakTree.

Meanwhile, the regulatory complaints had nothing to do with DNA which is where the $13+ million was earned by Harbour. After puffing the case for years, the government did not show that one cent of the money paid by KSQ to DNA was fraudulently obtained, let alone that Harbour knew it was. And, in Canyon Road, the evidence is unrefuted and irrefutable that it was the errors and omissions of Carrington, the owner of the call center, "CWB," that led to the shutdown of Canyon Road in September 2014. As to the regulatory complaints, the Court will remember that Larry Cook testified that the portfolios under Canyon Road that were involved in its "primary"

---

[1] The $500,000 she and her husband put in in February 2013 did go to DNA but here there could have been a failure to disclose a finder's fee because the Hills signed a finder's fee agreement themselves. Exhibit 368. Moreover, the $500,000 is not a count in the SSI.

but not sole business line, served about 1.4 million consumer lenders. If the Court looks at the regulatory complaints, the count of consumer borrowers for whom the regulators are speaking numbers as many as, perhaps, 9 or maybe 11. So, if we agree that the regulatory complaints involve 10 complainants, the materiality is one complaint for every 140,000 consumer borrowers.

Moreover, the only risk involved in payday lending was the risk that the government would shut it down. It is significant that, aside from Professor Manning, who only provided the fine detail, Lionel Green, Larry Cook, Lisa Berges, Laura Purifoy, and Richard Turasky *all* testified about Operation Chokepoint and its affect on the business, including, in Purifoy's case, its effect on DNA's business. To finish up dismantling counsel's argument, Jeanette Paige's testimony and her charts showing the $13 million plus received by Harbour from KSQ between 2011 and 2013 and her tracing million in Canyon Road money to Harbour.

**G.     Failure to Repay a Debt**. There was no fraud in this case. The unrebutted and irrefutable evidence is that Burg's and Turasky's money, plus about $600,000 of Harbour's money was converted by PAIF in September 2016 when PAIF locked OakTree out of the Green Circle bank accounts.  Alison Willson's $100,000 was lost when the FTC shut down CWB and Canyon Road. Carol Hill's money was lost when KSQ was forced out of business. Luckily, $1.1 million was obtained from PAIF before it seized the $1.9 million a year later.

**H.**     Inapplicable

**I.**     Inapplicable.

7

1    RESPECTFULLY SUBMITTED this 27ᵗʰ day of February 2023.

2                                    CHRISTIAN DICHTER & SLUGA, P.C.

3
                                     By: /s/ Stephen M. Dichter
4                                        Stephen M. Dichter
                                         Justin R. Vanderveer
5                                        2800 North Central Avenue, Suite 860
                                         Phoenix, Arizona 85004
6                                        Attorneys for Defendant David A. Harbour
7

8                          **CERTIFICATE OF SERVICE**

9
            I hereby certify that on February 27, 2023 I electronically transmitted the attached
10   document to the Clerk's Office using the CM/ECF system for filing and for transmittal
     of Notice of Electronic Filing to the following CM/ECF registrants:
11

12   Kevin M. Rapp
     Kevin.rapp@usdoj.gov
13   Coleen Schoch
     Coleen.schoch@usdoj.gov
14   U.S. Attorney's Office
     40 N. Central Avenue, Suite 1800
15   Phoenix, AZ 85004
     Attorney for Plaintiff
16

17

18   /s/ Yvonne Canez

19

20

21

22

23

24

25

26

27

28

8