Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
Justin R. Vanderveer, 037657
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant David Harbour

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. 2:19-cr-00898-DLR (DMF) |
|---|---|
| Plaintiff, | |
| vs. | **DEFENDANT'S REQUEST TO DETERMINE THE FURTHER ADMISSABILITY OF MANNING'S TESTIMONY** |
| David Allen Harbour, | |
| Defendant. | |

Defendant David A. Harbour ("Harbour"), by and through undersigned counsel, submits this Request for the Court to Determine the Further Admissibility of Dr. Robert Manning's Testimony.

## BACKGROUND

Previously, the Defense Doc. 625 requested this Court to advise if the foundation existed for Dr. Manning to testify to Operation Chokepoint. This Court has repeatedly stated that as a qualification for Dr. Manning's testimony, someone would need to link Operation Chokepoint as the cause for Harbour's business failings. At the time, it was

anticipated that Harbour would take the stand in his own defense and would provide the link himself between Operation Chokepoint and the collapse of his business.

However, the government's threat email coupled with and fueled by the Court's evidentiary rulings (the subject of Doc. 648, Motion for Mistrial) has made it impossible for Harbour to testify, and he has made the decision to not take the stand.

This Court warned that if a link could not be met, the Defense was running the risk of having Dr. Manning testimony stricken from the record. The Defense believes that this case has become so intertwined with Operation Chokepoint that Dr. Manning's testimony has become independently relevant and that enough evidence exists to permit jurors to link Operation Chokepoint to Harbour's business.

## **ARGUMENT**

1.   <u>Dr. Manning's testimony is independently relevant even without a linkage to Harbour's business.</u>

Federal Rule of Evidence 702(a) permits expert witness testimony if the experts specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue. Obviously, Rule 702 contains other foundational requirements for an expert's testimony, but those are not at issue here. Throughout this case, witnesses have testified regarding Operation Chokepoint, but none have been able to fully explain what it means or its impact on payday lending, generally.

Lionel Green testified that he knew about Operation Chokepoint and that it choked off the use of ACH accounts by payday lenders. February 9, 2023, TT. p. 67, ll. 22-25. Mr. Green's testimony went even farther, saying that "my understanding is that the ACH was absolutely essential to the payday lending operation." Id. at p. 67, ll. 11-13.

Joe Cathey testified that the explanation he received as why payments were stopping was because of Chokepoint shutting down electronic payday lending. February 8, 2023, TT. p. 97, ll. 1-14.

During the government's direct of Laura Purifoy, she testified that Harbour told her payments were not being received because President Obama stopped payday lending. February 14, 2023, TT. p. 100, ll. 2-6.

Lisa Berges testified that NetFinance went out of business because of Operation Chokepoint. February 9, 2023, TT. p. 152, ll. 3-5. Ms. Berge continued to testify regarding Operation Chokepoint, testifying that KSQ lost its money at the time of Operation Chokepoint. *Id*. at p. 154, ll. 1-25.

Rich Turasky testified that news of Operation Chokepoint was in the public domain.

BY MR. DICHTER:
Q. How do you know about Operation Chokepoint? What's the source of your information?
A. It was all over the papers.
Q. Everybody knew at some point?
A. It was -- yeah, it was public information.
Q. Public information?
And the public information was that the ACH accounts had been shut down?
A. I think that was one of their actions, yes.
Q. One of the government's actions?
A. Correct.

TT 2-10-23 Pg 148, Lns 5 –15

However, none of these witnesses were able to fully articulate what Operation Chokepoint really was. For example, Mr. Green was not aware of the Department of Justice initiative that started the Operation. February 9, 2023, TT. p. 68, ll. 6-12. Dr.

Manning's testimony serves as the necessary bridge between what the jury has heard about Operation Chokepoint and explaining what Operation Chokepoint means.

Without such testimony, the jury would have no context for the repeated testimony of Operation Chokepoint. At a bare minimum, Dr. Manning's testimony should be permitted to remain as it provides a useful explanation for the purposes of 702.

2.   <u>Enough evidence exists on the record to permit jurors to conclude through circumstantial evidence that Harbour's business collapsed because of Operation Chokepoint.</u>

The Defendant has provided this Court case law citations for circumstantial evidence, including in Doc. 625. Defendant incorporates such legal authority by reference here in lieu of repeating itself. The evidence currently on the record, Dr. Manning's testimony excluded, is that payday lending, as a whole, was eliminated by Operation Chokepoint. From that alone, the jury should be entitled to consider Dr. Manning's testimony in evaluating if Harbour's business was one of the entities that was impacted by it. Furthermore, the government elicited testimony from Laura Purifoy that Harbour told her Operation Choke point was the reason the money was gone. February 14, 2023, TT. p. 100, ll. 2-6. This was the same testimony expected to be elicited if Harbour were to take the stand, making his testimony unnecessary. The link between Operation Chokepoint and the impact on Harbour's business has been met through virtually every witness called by the government. Dr. Manning's testimony goes to explain what the operation was, and combined with what has been heard from other witnesses, enough evidence exists that a jury could determine Harbour's business was impacted.

Finally, we are formally asking the Court to judicially note ¶13 of Exhibit 395 for identification and admit that paragraph as a part admission of the United States that President Obama ended payday lending.

## CONCLUSION

We respectfully ask this Court to not strike Dr. Manning's testimony even though Harbour himself will not be testifying.  His inability to testify is a result of the government threats and those threats exist because of the Court's evidentiary rulings.

Enough evidence exists of Operation Chokepoint where Dr. Manning is helpful to the trier of fact in evaluating the evidence, and the jury could conclude, or not conclude, that Harbour was impacted by Operation Chokepoint based on the facts in evidence.

RESPECTFULLY SUBMITTED this 27th day of February 2023.

CHRISTIAN DICHTER & SLUGA, P.C.


By: /s/ Stephen M. Dichter
    Stephen M. Dichter
    Justin R. Vanderveer
    2800 North Central Avenue, Suite 860
    Phoenix, Arizona 85004
    Attorneys for Defendant David A. Harbour


## CERTIFICATE OF SERVICE

I hereby certify that on February 27, 2023 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Kevin M. Rapp
Kevin.rapp@usdoj.gov
Coleen Schoch
Coleen.schoch@usdoj.gov
U.S. Attorney's Office

1  40 N. Central Avenue, Suite 1800
   Phoenix, AZ 85004
2  Attorney for Plaintiff

3

4  /s/ Yvonne Canez

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28