Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
Justin R. Vanderveer, 037657
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant David Harbour

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:19-cr-00898-DLR (DMF) |
| Plaintiff, | **DEFENDANT'S RESPONSE TO COURT'S QUESTIONS REGARDING JURY INSTRUCTIONS** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | |

Defendant, David Allen Harbour, responds to the Court's requests on February 27, 2023, for clarification regarding proposed final instructions.

**Willfully Defined**

The term "willfully", as used in these instructions to describe the alleged state of mind of Defendant Harbour, means that he knowingly performed an act or knowing failed to perform an act he was required to perform deliberately and intentionally, that is, "on purpose" as contrasted with accidentally, carelessly, or unintentionally. [Modified]

**Authority:**
**1A Fed. Jury Prac. & Instr. § 17:03 (6th ed.)**
Federal Jury Practice And Instructions
February 2023 Update

**Mail Fraud Language to Include in Statute of Limitations Instruction**

In the case of mail fraud, the crime is not complete until the defendant uses the mail or causes the mail to be used in execution of the scheme to defraud.

Where the execution of the scheme as conceived by the defendant depended on a mailing, that mailing constitutes an essential step of the scheme.

The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law.

**Authority**: *United States v. Hymes*, 113 F. App'x 755, 756 (9th Cir. 2004) (first paragraph); *United States v. Eglash*, 813 F.3d 882, 885 (9th Cir. 2016)(second paragraph); *Kann v. United States*, 323 U.S. 88, 95, 65 S. Ct. 148, 151, 89 L. Ed. 88 (1944) (third paragraph).

**Defense Theory of the Case**

The Defense theory of the case is that the government has cobbled together one set of allegations involving a Native American payday lending company called Green Circle, in which it claims there are three alleged victims, Turasky and Burg, 2014, and PAIF in 2015 with a completely unrelated contention involving Canyon Road in February 2014 and one alleged victim of NorthRock in December 2012.

The government contended that at the center of the case was the relationship between Harbour's entity, DNA Investments and Joel Tucker's entity, KSQ. In that relationship, it is agreed that KSQ received $14.7 million from DNA and paid to DNA $27+ million.

There was no illegality in the business being carried on between KSQ and DNA.

There was another business called Canyon Road in which, although Harbor owned a 67% share of the profits and was paid them, Harbour had no operational control or responsibility. Canyon Road had no business relationship with KSQ.

There was a third business called NorthRock which was owned 50% by Mr. Harbour but in which he also had no operational control. NorthRock also did business with KSQ and when KSQ stopped paying DNA it also stopped paying NorthRock.

Until the time that KSQ ceased paying DNA and NorthRock, regularly, by around June 2013, every lender to DNA and every lender to NorthRock had received all of the interest and principal under the agreements between them and DNA to which they were entitled to receive.

6

After DNA no longer received those payments, Harbour decided to start a new venture called OakTree which would seek to lend money through Native American Tribal organizations. Green Circle was the Tribal entity. Though three companies in which Mr. Harbour had an interest, OakTree, Pujanza, and Milagro, Harbour became involved directly in payday lending.

Lenders loaned money to OakTree for working capital and for deployment through Green Circle to be loaned as short-term, high-interest, consumer loans or could be used as and for working capital, that is, to defray previous, current, and future expenses.

Rich Turasky supplied a loan that could be used by OakTree for either or both purposes, at Harbour's sole discretion, and Mark Burg invested money through Punjanza that could be loaned by Pujanza to OakTree at Harbour's sole discretion and used for either or both purposes.

In September 2016, PAIF, the senior lender to Green Circle, blocked OakTree's access to the Green Circle bank account and, as a result, Turasky's $350,000 loan, Burg's $1 million investment, along with about $600,000 in other funds in the Green Circle bank account were no longer able to be retrieved. The Defendant contends that the Turasky and Burg claims are in the nature of civil disputes that have been resolved by judgments in favor of Turasky and Burg.

RESPECTFULLY SUBMITTED this 27th day of February 2023.

CHRISTIAN DICHTER & SLUGA, P.C.


By: /s/ Stephen M. Dichter
    Stephen M. Dichter
    Justin R. Vanderveer
    2800 North Central Avenue, Suite 860
    Phoenix, Arizona 85004
    Attorneys for Defendant David A. Harbour


**CERTIFICATE OF SERVICE**

    I hereby certify that on February 27, 2023 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Kevin M. Rapp
Kevin.rapp@usdoj.gov
Coleen Schoch
Coleen.schoch@usdoj.gov
U.S. Attorney's Office
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
Attorney for Plaintiff


/s/ Yvonne Canez