Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
Justin R. Vanderveer, 037657
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant David Harbour

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>David Allen Harbour,<br><br>　　　　　　Defendant. | Case No. 2:19-cr-00898-DLR (DMF)<br><br>**REPLY TO GOVERNMENT RESPONSE TO DEFENDANT'S EMERGENCY MOTION TO RELEASE DEFENDANT TO ASSIST IN PREPARING FOR AND PARTICIPATING IN THE TWO-DAY SENTENCING AND FORFEITURE HEARINGS** |

The government's predictable response to the Emergency Motion is that the PSR, which was created exclusively from the government' "reports" and agent interviews support an almost life-sentence and implies, in essence, that Mr. Harbour should be grateful that the government plans to recommend *only* a 22-year sentence.[1]

In the *United States v. Elmer Stewart Rhodes*, the United States recommended only three more years for the leader of the Oath Keepers, who, to date, has been the

---

[1] Here, since at every opportunity, the government self-references itself as "The United States," we will, for only a brief moment, follow suit.

highest ranking member convicted of seeking to overthrow the government of the United States through insurrection. He received 18 years. In the *United States v. Elizabeth Holmes*, the United States also recommended a 25-year sentence for a Defendant who co-engineered a $700 - $900 million scheme-fraud involving not only investor fraud but the potential of extreme physical harm to every person who used the phony blood testing procedure.

Coupled with our list of the Top Misrepresentations of the United States Attorney's Office, attached as Exhibit 1 (Doc. 714-1) to the Rule 33 Motion (Doc. 714) filed 5/5/2023, we are hopeful that, finally, the Court will recognize the government, here, is so far and away distinguished from the "fair-blows but not foul-blows" set as the standard for Federal prosecutors in *Berger v. United States*, and will conclude that the government lacks *any* credibility on any issue of substance connected with this case.

Of course, the case *should* be thrown out. PAIF was unsupported by any competent evidence whatsoever). Turasky and Burg, arguably, had "deception," that is, Harbour's failure to disclose the FTC investigation and prior complaints by State regulators of other businesses, however, neither Turasky nor Burg had *fraud* because not only did the documents created by their own lawyers permit Harbour to use funds for expenses, more importantly, both of them (as well as Dean Avedon, Burg's financial advisor) stated under oath that Harbour was entitled to use the funds for expenses, provided that eventually the money reached Green Circle.

Exhibit 516 and Cathie Cameron's testimony showed that the condition subsequent was met.[2] Ms. Paige's testimony was actually consistent with Cameron's because Ms. Paige focused only on a single moment in time. While arguably accurate for that moment, life is lived in a continuation of moments; not in a single moment.

On March 3, 2023, the Court stated:

> Although the detention is presumed under 18 U.S.C. Section 3143(a) and I found that he's a flight risk, I find that by clear and convincing evidence that the flight risk has been sufficiently mitigated by the conditions that have been imposed and have been successfully imposed and he's done very well. I do not find that he should be placed into custody because of those reasons. (RT, March 3, 2023)

The Court told the government what can happen if the government does not produce the evidence they told the Court they would.

> The Court: "Now, if the evidence they present isn't sufficient to get us there, they could be walking on thin ice and could end up with a mistrial." (Hr. 1/27/23, pp.16, lines 7-9)

> The Court: "I'm hearing proffers from the government. I'm going to accept them as what they intend to prove and what they believe they have evidence to prove. And if they don't have the evidence, either you'll get an acquittal or a mistrial." (Hr. 1/27/23, pp.25 lines 14-18)

> The Court: "I don't know what to tell you. I'm hearing what the government's telling me, and they're making proffers about what the evidence is going to be." (Hr. 1/27/23, pp.25 lines 20-22)

---

[2] It should be recalled that of Burg's $1 million, there is no dispute that $600,000 went directly into Green Circle. Of Turasky's $350,000, the government contends that only $55,000 went directly to Green Circle. The amount that did not totals $695,000, which further reduces the applicable guideline even if the Court does not follow the requirement of loss causation (which is different from transactional causation). Neither Burg nor Turasky lost money because of their loan to (Turasky) or investment in (Burg) a Harbour entity (Oak Tree and Pujanza); the losses were the direct result of the superseding, intervening causation of PAIF's seizure of the Green Circle account and its refusal to release Burg's and Turasky's funds. This is elemental and not fairly debatable.

Mr. Dichter: "I'm just sorry you're believing it. I really am." (Hr. 1/27/23, pp.25 lines 23-24)

The Court: "Oh, I'm not believing it. I'm believing he's saying that." (Hr. 1/27/23, pp.25,26, lines 25,1)

The Court: "Mr. Rapp understands where this is going, and if he doesn't have it, I think he's going to let us know." (1/27/23, pp. 26, lines 9-10)

The government proffers fell completely flat. Hopefully, the Court will, finally, realize that the government misled the Court. Were the Court to conclude that the effort was deliberate or reckless, that conclusion would be completely justified. The fundamental problem was that, as we said from the outset, what the government induced the grand jury to charge was not a Federal crime. There is no such thing as a 15-year Ponzi scheme under Federal law. There is only wire fraud (or, mail fraud) in which the crime is the use of interstate wire facilities (or the mails) in furtherance of the scheme to defraud the victim of the scheme and artifice to defraud.[3]

The reality, assuming that Court follows the Guidelines' definition of relevant conduct and loss causation, is that the fraud and money laundering counts and a criminal history of 0-1 are all that exists. This is the foundation of why we have consistently maintained that the government did not understand its own case.[4] The government also misunderstood or, at least, mischaracterized the testimonies of Professor Manning and Cathie Cameron both of which it described as "flimsy," meaning only that, assuming

---

[3] And, in fact, one of the trial team members, to the Court's astonishment, at a side-bar during the defense's presentation of its case, informed the Court directly that the government was not contending that there was a Ponzi scheme. The Court expressed incredulity. [Reference]

[4] And, to be sure, this was the most charitable way to describe the government's conduct.

*arguendo* that the government actually ever read their reports and the three volumes of Congressional Hearings, the government did not understand them.

If the government is looking to help the "victims" who made loans to DNA, North Rock, or Canyon Road, the causal connection of those losses was none other than the Obama Administration, in the case of DNA and NorthRock, and the FTC in the case of Canyon Road. It was unrebutted, nor could it be, that the Supreme Court overturned the FTC's use of Section 13(b) of the Act against people in Harbour's position.[5]

Assuming, *arguendo*, that the Court elects to proceed under the contention, however erroneous it may ultimately prove to be, that the offense severity level is to be adjusted upwards to reflect $2,450,000 in losses to PAIF, Turasky, and Burg, the range is still around 41-51 months.[6]

---

[5] Operation Choke Point is, standing alone, a factor so intertwined with the facts of the case that the government mischarged that it argues strongly in favor of sentencing even beneath the Guidelines (like for probation) but for the fact that Defendant has already served about 17 months in prison. But for Operation Choke Point, this case simply never would have existed. Of the alleged $41+ million in "losses," all but the Counts of conviction, amounting to no more than $2,450,000, are directly associated with Operation Chokepoint or with pre-payday lending activities that the *government* asserts wound up in payday lending. This includes Bobrow (Spaulding $2.5 million – which was repaid), the Gray ($1 million – which has not been repaid) and the Jackson ($6 million – which was repaid). While Jackson argues that Harbour ought to be held responsible for the $6.71 million lost in the Anthony Stacy Palo Verde, LLC matter (Stacy had repaid Jackson the difference between the claim and the $9 million Jackson invested), Jackson's basis for a threatened lawsuit is negligent misrepresentation because he claims that Harbour introduced the investment to Jackson). Whether this made, or makes, Harbour an insurer or guarantor of Jackson's investment is bound-up in the 10th and earlier tolling agreements. It may be yes; it may be no. No lawsuit has been filed.

[6] Our objections to the PSR, currently stricken and the subject of a motion to extend page limits submitted on Friday, May 26, 2023 (Doc.726) adequately refute the other proposed adjustments well enough to be able to convince the Court to not impose them.

He has served 17 months. The First Step Program provides for a reduction of 54-days per year of the sentence imposed as opposed to the sentence served. So, hypothetically, if Harbour received a sentence of 41 months (1230 days of which he has already served - 510 days less the short time that he was released for trial), he would get 15% off, or 185 days. This would reduce the total to be served from 1230 to 1045 and subtracting the 510 days already served, would leave around 535 days to serve (just under 1.5 years). With educational programs and half-way house availability, the relatively short amount of time he might have remaining would make the time he spends, hopefully, in Tucson under a year.[7]

It must be conceded that the presumption of innocence – to which the government paid not even lip service every time it argued for Harbour's detention between December 2019 and now – has ceased.

Even if the Court grants one of the motions remaining submitted, the Rule 29 or Rule 33 motion, there will be a sentence imposed, if only for Count 24. However, assuming the post-trial motions are denied, as this and our other prior papers have emphasized, while we cannot know what sentence the Court will impose, we have every confidence that the Court will adhere to the very clear requirements for "relevant conduct" and "loss causation." And, if it does, then the not-to-exceed 2-year *cap* under the plea agreement for the Count 24 guilty plea would be the highest level of punishment

---

[7] Another feature of the First Step Program is that Harbour is to be designated to an institution in his home State commensurate with his custody level. This strongly suggests the Camp at Tucson.

available under Guidelines sentencing. Level 13 is the appropriate level for Count 24, which means 10-17 months.[8]

The government's assertion that Harbour was convicted of a 15-year Ponzi scheme remains, in a word, absurd. Harbour was convicted of some of the Counts with which he was charged but not a single one dated back to earlier than July 1, 2014. The jury returned not guilty verdicts with respect to anything that occurred prior to July 1, 2014 and, in fact, acquitted Mr. Harbour of anything and everything charged prior to July 1, 2014.

Similarly, if the government does not understand the meaning of the jury's rejection of absolutely everything arguably connected with KSQ, DNA, NorthRock, and Canyon Road, we hope that the Court does.[9] The jury, the extent that it could, appropriately blamed the United States of America; not Harbour for every cent it learned was lost in payday lending before July 1, 2014 and this was notwithstanding the government's blatant use of the most "flimsy" of proffered evidence, which the

---

[8] No upwards adjustment for under reporting income by more than $10,000 is warranted because this was not an income evasion case; it was charged as an evasion of payment case. Also, the plea agreement itself specifies that the loss was no more than $170,000. In response to motions in limine and once the cases were severed and the tax case was set for a judge-alone trial, the government dropped the $4+ million allegation that, in the Second Superseding Indictment, had replaced the First Superseding Indictment's allegation of $179,012 as of the last act of evasion, the June 8, 2018 meeting with tax officials.

[9] As we are aware that the current iteration of the Guidelines seemingly permits acquitted conduct to be punished, so too are we aware that there are ongoing efforts being made to reverse this and, of course, the fact that a Court *can* sentence based upon acquitted conduct, if it is proven to be relevant conduct, does not require the Court to do so. It is, really, the ultimate in a "heads I win; tails you lose" theory.

government failed to elicit, in any event, with the Court's imprimatur, to keep Harbour off the stand.

Had Harbour been able to testify about PAIF, Turasky, and Burg and had his testimony been appropriately limited to those charges, he would likely have been acquitted. In fact, with the only "glue" even allegedly linking pre-July 1, 2014 with post-July 2014 (the Hill and Willson charges) having all been acquitted by the jury, in a retrial, he could testify about the post-July 1, 2014 events fully and completely. It was only the evidence the Court now knows or should know was wholly irrelevant (see Doc. 714-1, the list of government misrepresentations), coupled with the ever-present threat of an unrestrained prosecutor charging Harbour with perjury for whatever he said about events many years in the past which the prosecutor disagreed that kept Harbour off the stand.

The government's assertions about what Harbour needs to do to be prepared to address the Court also misses the mark. The issue is not the preparation, it is, principally, the difference between being awake to address the Court versus being asleep on his feet because of the transportation schedule we discussed both in the Motion and also discussed in the Motion that led to Harbour's release before the trial.

Last, with respect to forfeiture, we agree that there is little to try. The government has proved that, with the exception of one piece of jewelry purchased in November 2013, every other item seized was purchased after April 2011 and has already been traced to monies received from either KSQ or Canyon Road. Not a cent of the proceeds used to purchase the jewelry was attributed or could have been attributed to money from Bobrow, Gray, or Jackson. The first bank record available in this case was the November 1, 2010

bank statement that showed a total of $64,000 on-hand. So, the money for purchases of jewelry could not have come from pre-Payday lending activities. The government has, in essence, already lost the forfeiture trial.

    RESPECTFULLY SUBMITTED this 30th day of May 2023.

                      CHRISTIAN DICHTER & SLUGA, P.C.

                      By: /s/ Stephen M. Dichter
                          Stephen M. Dichter
                          Justin R. Vanderveer
                          2800 North Central Avenue, Suite 860
                          Phoenix, Arizona 85004
                          Attorneys for Defendant David A. Harbour

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 30, 2023 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Kevin M. Rapp
Kevin.rapp@usdoj.gov
Coleen Schoch
Coleen.schoch@usdoj.gov
U.S. Attorney's Office
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
Attorney for Plaintiff


/s/ Yvonne Canez