Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
Justin R. Vanderveer, 037657
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant David Harbour

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| United States of America, | Case No. 2:19-cr-00898-DLR (DMF) |
|---|---|
| Plaintiff, | **DEFENDANT'S FORFEITURE MEMORANDUM** |
| vs. | |
| David Allen Harbour, | (Oral Argument Requested) |
| Defendant. | |

Defendant David Allen Harbour, by and through his attorneys, submits the following memorandum on the forfeiture of assets alleged by the government.

**<u>INTRODUCTION</u>**

The Government's Motion (Doc. 735, filed 6/2/2023) confuses what the Defendant was actually convicted of with the novella that comprised the musings of the prosecution team expressed in the Second Superseding Indictment (and in its prior incarnations). Harbour was not convicted of a 15-year Ponzi scheme. First, although the charging papers discussed such a thing, neither a "Ponzi Scheme" nor a "Pump and Dump," nor any other kind of scheme and artifice to defraud is a Federal crime. Of all the

"scheme and artifices" that one may contemplate, only one: Bank Fraud, is a Federal offense. Once again, a scheme and artifice to defraud is or may be a violation of State law under the general jurisdiction of the State Courts. Mail fraud, of which Defendant was fully acquitted is a Federal crime and so is wire fraud, of which Defendant was convicted in some counts and acquitted in others. Money laundering follows the underlying wire fraud and if the wire fraud counts fail, the money laundering counts also fail.

The Defendant was convicted of wire fraud offenses that commenced no earlier than July 30, 2014. By this time every asset seized by the government that it wants to forfeit, except a cash money judgment, had long since been acquired. The last item was purchased in December 2013.

As is explained in the "Applicable Law Section," in order for the property seized to be forfeited directly, it must have been "property involved in the offense." Only if one buys into the unsupportable fiction that Harbour was *convicted* of a scheme and artifice to defraud that commenced in 2007 can the government's position that everything seized for forfeiture was "involved" in the offense.

However, not only did the jury not get to decide whether Harbour was "guilty" of a non-existent Federal offense of a 15-year Ponzi Scheme and then convict him of it, but the government didn't even ask for such a verdict, the jury never saw the charging papers, and one of the prosecution agreed that the Defendant had not been charged with engaging in a Ponzi Scheme.[1]

---

[1] The Court expressed great frustration at the statement since the government's assertion that the case was one big Ponzi Scheme is why, as the Court stated, it had allowed the government to introduce a whole class of evidence that was incredibly prejudicial to the

Therefore, at *maximum*, the money associated with the counts of conviction total $350,000 from Turasky, $1 million from Burg, and $1.1 million from PAIF. That absolute cap is far less than the $5,596,985.89 urged by the government.[2] In other words PAIF got back $1,870,000 when it seized the Green Circle portfolio and bank account in September 2016. Obviously, Burg's $935,000 and Turasky's $350,000, minus other payments to Turasky were in the account. Whatever that might mean with respect to substitute assets being in-play for satisfaction of Burg's and Turasky's money, for PAIF, the answer is clear. It is money is zero'ed out by what it offset against the $1.1 million.

---

Defendant. We had asserted, on the other hand, that all the highly prejudicial, Pre-Payday Lending 1 ("PPDL1") evidence, including the 2007 so-called Spaulding Fraud, the Craig Jackson 2009 Loan, and the Rhonda Gray $1+ million loan in 2010 was actually being proffered as Rule 404(b) evidence that failed every one of the tests for admissibility. The mess into which the government led the Court leaves this case standing on legs so shaky that if this Court does not overturn the convictions, surely the 9th Circuit must do so.

[2] PAIF transferred $1.1 million but when it seized Green Circle's accounts in September 2016, it received a total of $1,870,000. As is explained in the text of this Memorandum, that amount included Burg's $1 million and Turasky's $350,000, the rest being Oak Tree money contributed after the $1.1 million was sent on August 11, 2015. Reviewing and correcting Exhibit H to Ms. Paige's Declaration, a net of $350,000 of Turasky money (or fungible substitute cash) wound up at Green Circle. Turasky also received repayments but they are not calculated in Exhibit H. According to Turasky's Declaration, he received a total of about $80,000 in repayments. We assume this included the $22,004.79 in Counts 9 and 10 of which Harbour was acquitted. In our computations, we will use the number $230,000 for the payments Turasky received Exhibit H to the Paige Declaration concedes that Burg received $65,000. Exhibit H does not address the $1,870,000 PAIF received. It also must be deduced.

3

With PAIF completely out of the computation, we are left with Turasky's $500,000 in total, less payments made to Turasky of $230,000, resulting in a net to Turasky of $270,000 which, along with Burg's net $935,000, totals $1,205,000.[3]

The seized property could not have possibly been property *involved* in the offense. The funds used to purchase the property the government seized and wishes to forfeit obviously did not come from offenses committed later.

Therefore, unless the Court were to adopt the government's theory, creating a hitherto new Federal offense previously unknown and which cannot exist under Federal law, over which the Court cannot possibly have subject matter jurisdiction, and which, even if it did exist was not something considered by the *petit* jury, let alone the subject of a conviction, the only kind of forfeiture that can rationally be purchased is one involving substitute assets. And the maximum forfeitable is the aforestated $1,205,000.

## **APPLICABLE LAW**

The government has requested forfeiture pursuant to 18 U.S.C. §§ 981 and 982, 21 U.S.C. § 853, and 28 U.S.C. § 2461(c). Under the aforementioned U.S. Codes Sections, the government is seeking forfeiture of all right, title, and interest in any personal or real property involved in the offenses Defendant has been convicted for, or any property traceable to the property used in the convictions including: (a) all money or other property that was the subject of each transaction, transportation, transmission or transfer in violation of a statute listed in 18 U.S.C. § 982; (b) all other property constituting

---

[3] It is also be remembered that $600,000 of Burg's original $1 million went directly into the Green Circle bank account and was not used for expenses.

4

proceeds obtained as a result of those violations; and (c) all property used in any manner or part to commit or to facilitate the commission of those violations including the sum of money representing the amount of money involved in the offenses and specific personal property as identified by the government.

In requesting forfeiture, the government is required to establish by a preponderance of the evidence that it is entitled to the property sought. See 21 U.S.C. 853(n); *United States v. Dejanu*, 163 F. App'x 493, 498 (9th Cir. 2006). Forfeiture actions are subject to the 8th Amendment's limitations and are excessive if they are grossly disproportional to the gravity of a defendant's offense. *United States v. Bajakajian*, 524 U.S. 321, 334, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998). Forfeiture actions are generally broad but limited to the proceeds gained either directly or indirectly from the underlying convicted fraudulent schemes. *United States v. Lo*, 839 F.3d 777, 792 (9th Cir. 2016).

In *United States v. Shkreli*, 779 Fed Appx. 38 (2nd Circuit 2019), the court stated that criminal forfeiture focuses on the disgorgement by a defendant of his ill-gotten gains. *See, generally,* U.S. v Torres 703 F.3d 194 (2nd Cir. 2012) (forfeiture is gain based); *see also*, *United States v. Genova*, 333 F.3d. 750, 761 (7th Cir. 2003) (restitution is loss based whereas forfeiture is gain based). In *United States v Garcia-Guizar*, 160 F.3d 511 (9th Cir. 1998) the court held that a defendant may be ordered to forfeit proceeds from the crimes "for which he was convicted." Harbour was convicted only with respect to Green Circle, that is, was convicted of offenses starting on or about July 30, 2014. The government cites to cases that are not opposed to this principle.

5

In sum, unless the Court adheres to the government's profoundly incorrect thesis that the "offense of conviction" was a "Ponzi scheme that lasted from 2007 until 2021, the amount in controversy here is a maximum of $1,205,000; not the government's $5,596,985.89. As is stated, above, this kind of forfeiture – the direct forfeiture of the seized assets – does not apply in this case.

## **SUBSTITUTE ASSETS**

The government has also requested that substitution of property pursuant to § 853. Forfeiture of substitute property is available only when the defendant's own acts or omissions caused the property to be unavailable or diminished in value. *United States v. Valdez*, 911 F.3d 960, 966 (9th Cir. 2018). Put another way, when a defendant's own actions have thwarted the ability of the court to order forfeiture, § 853 authorizes the forfeiture of substitute property. *Id*. However, in terms of personal money judgements, once the government identifies untainted property it believes may be used to satisfy a personal money judgment, it must return those to the district court and establish that the elements of § 853(p) have been met. *United States v. Nejad*, 933 F.3d 1162, 1166 (9th Cir. 2019) *citing to Honeycutt v. United States*, 581 U.S. 443, 454, 137 S. Ct. 1626, 1635, 198 L. Ed. 2d 73 (2017).

The government can also not meet the substitute assets burden. As is known to all, Exhibit 516 shows the ultimate disposition of the Turasky and Burg money. It all went into the Green Circle Bank account where it was deployed, when Green Circle needed to deploy it, in payday lending. Of the Burg $1 million, $600,000 went immediately into the Green Circle account while $400,000 trailed, was use for expenses, which was permitted,

and soon got to Green Circle, with Burg losing no payments because, even though he was required to be paid nothing until his investment timed out after five years (December 2019), what he was paid was remitted on the basis of the full $1 million and not a lesser sum.

As for Turasky, he paid-in $500,000 (over time), of which $150,000 was returned after the first deposit of money in July 2014. Ms. Paige showed that $55,000 of his money went immediately to Green Circle. Exhibit 516 and Cathie Cameron's unrebutted testimony proved, without any contradicting evidence, that at the time of PAIF's seizure of the Green Circle portfolio which shut down access to the Oak Tree funds in the Green Circle account, the full amount of Burg's and Turasky's money remained in that account. In arriving at the proper "cap" for forfeiture, given that the Government, through Ms. Paige's Declaration (Doc. 735-3) and Exhibit H have conceded that payments to Burg must be deducted for forfeiture purposes, so too must the government concede that payments to Turasky must also be deducted.

Counts 9 and 10, of which Defendant was acquitted, represented payments made to Turasky in the amount of $10,942.24 (Count 9) and $11,062.49 (Count 10). The total of $22,004.73 must be deducted as was Burg's $65,000. So too must the immediate repayment of $150,000. And, so too, must be PAIF's own self-help seizure of $1,870,000, which completely eradicates the PAIF $1,100,000.

Altogether, the deductions are: Burg - $65,000, Turasky - $172,004.79, and PAIF's entire $1.1 million. Thus, out of the theoretical total of $2,450,000, what remains, before we examine the other factors is $1,205,000.

In order for the government to meet the substitute asset burden, it must be the defendant's *own acts* that causes the money to be unavailable. Here, nothing done by Defendant caused Turasky's and Burg's money to be lost. It was the independent actions of PAIF that caused their money to be unavailable. PAIF still exists, having emerged from Bankruptcy, and we wonder why the government has not demanded that PAIF repay the money.

As for PAIF, it lost absolutely nothing. As of August 11, 2015, there was $2,610,000 million in the Green Circle account from Oak Tree contributions. When the transfer was made, the account had $1.5 million remaining. Afterwards, Oak Tree contributed another $300,000.

As is shown in Exhibit 516 and in Cathie Cameron's testimony, when PAIF shut down access to the Oak Tree funds in Green Circle's bank account, there was $1,870,000 sitting in the account. This was more than enough to cover Burg's $1 million and Turasky's $350,000 leaving over $450,000 in addition.

And, what needs to be remembered is that when PAIF foreclosed the Green Circle portfolio, it obtained Green Circle's accounts/notes receivable, which amounted about $9 million.[4]

In short summary, there can be no direct forfeiture of the seized property because that property was not involved in the offenses of which the Defendant was convicted. There can also be no forfeiture of the seized property as "substitute assets" because

---

[4] PAIF was owed $3.5 million and benefitted from the foreclosure of Green Circle by the overage in the accounts/notes receivable. It also benefitted by avoiding payment to Milagro of the $2.5 million that Milagro was owed in consulting fees.

8

Harbour was not and is not the reason that the money is unavailable and, for substitute assets to be forfeited, their unavailability must be the fault of the Defendant.

## **DOCUMENTS**

The government's last complaint is about financial documents. We were sent a variety of form by the Probation Office and were directed to complete them. The Probation Office also asked that tax returns for 2019, 2020, and 2021 be sent. The Probation Office asked that documents be produced that support the positions taken in the disclosures by the Defendant. Defendant has no documents where he is located except those he receives from me.

All the financial disclosures the Probation Office asked to be completed have been completed, signed, and returned. Nothing else has, to date, been requested. The U.S. Attorney's Office never sent over anything resembling a request for production so we sent the U.S. Attorney's Office nothing, relying on the Probation Officer to send the forms over to the government, which she did, except for the tax returns, which Ms. Briggs, for reasons not disclosed, asked us to send over ourselves.  We did that.

It is doubtful that there is any aspect of defendant's financial life since November 2010 (which are the first bank records produced by the government) of which the government is not intimately and acutely aware. If the government has any specific questions, and the Court determines has those specific requests have anything to do with the remaining issues in the case (forfeiture and sentencing), we will be happy to address them. In other words, with reasonable specificity, what does the government think it needs that it does not already have? As for keeping its options open in the future with

respect to forfeiture, whatever. One cannot get blood from a stone. I am certain that, if the Defendant had any more money or property available from which money could be drawn, I would have gotten paid what I was supposed to be paid.

## **CONCLUSION**

Forfeiture focuses on the Defendant's gain from the offenses of conviction and only from the offenses of conviction. Harbour gained nothing from Burg's and Turasky's money. Their money all went to Green Circle, albeit not all of it went immediately. It did not have to all go ever, but it did all go and there is sat and still sits even if PAIF, having emerged from Chapter 11 has put it somewhere else. As the government now argues (*see,* Doc. 710), the money Harbour used to make the first payment to the FTC did not come from Burg's money or Turasky's money. The government's latest argument is that it came from KC Lending (which was not and is not a complaining "victim," nor a "victim" at all.[5]

We are hopeful, of course, that the jury verdict will be overturned and that the issue of forfeiture can be completely avoided,[6] however, even if the forfeiture proceeds,

---

[5] Exhibit 917, which was requested from us by the Court last week shows the second of the two payments to the FTC. It was in the amount of $750,000. The first wire, at the top of the page, shows that the Abby Harbour received a $750,000 wire from Deel Investments on April 8, 2016, into a BHO Harris Bank account. The second wire shows the same $750,000 wired from the BMO Harris account to the CWB Receivership on April 11, 2016. Deel was one of those whom the Receiver identified on the stand as participating in the settlement. We have prepared a separate Power Point to use in the proceedings that tracks the payments to the FTC. They show that Burg's and Turasky's money was not used.

[6] The $170,000 associated with Count 24 was paid to the government at or around the time the tax counts were added to the Indictment (November 2020).

we have established what the maximum amount can be, that the seized assets are not directly forfeitable, and that the prerequisites for their forfeiture as substitute assets have not been met.

RESPECTFULLY SUBMITTED this 5th day of June 2023.

CHRISTIAN DICHTER & SLUGA, P.C.


By: /s/ Stephen M. Dichter
    Stephen M. Dichter
    Justin R. Vanderveer
    2800 North Central Avenue, Suite 860
    Phoenix, Arizona 85004
    Attorneys for Defendant David A. Harbour

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2023, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Kevin M. Rapp
Kevin.rapp@usdoj.gov
Coleen Schoch
Coleen.schoch@usdoj.gov
U.S. Attorney's Office
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
Attorney for Plaintiff


/s/ Yvonne Canez