**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

United States of America,

　　　　　　　Plaintiff,

v.

David Allen Harbour,

　　　　　　　Defendant.

No. CR-19-00898-001-PHX-DLR

**ORDER**

Following oral argument on July 26, 2023, the Court took under advisement the Government's Motion for Preliminary Order of Forfeiture Seeking the Forfeiture of Items Seized, Substitute Assets, and Additional Assets Located Post-Conviction and Request for a Money Judgment in the Amount of $5,596,985.89. (Docs. 735, 768.) For the reasons and in the amounts set forth herein, the motion is granted in part.

## I.    Background

On June 14, 2022, a grand jury returned a second superseding indictment ("SSI") charging Defendant with twelve counts of wire fraud, two counts of mail fraud, thirteen counts of transactional money laundering, one count of tax evasion, one count of making a false statement, one count of obstruction, one count of conspiracy, one count of bank fraud, and two counts of aggravated identity theft. (Doc. 387.) The SSI alleges that Defendant was involved in a scheme, dating back to January 2007 and continuing through July 2019, to defraud investors by "promoting and selling fraudulent high-yield

investments, in most cases involving investments in high-rate loans to consumers and general investments." (*Id.* at 2.) Much of the alleged fraudulent activity occurred beyond the applicable statute of limitations and was not charged in the SSI, but the Government asserted that the non-charged activity nonetheless was part of Defendant's fraudulent scheme.

On January 6, 2023, the Court entered an order (Doc. 529) granting Defendant's motion for reconsideration (Doc. 480) of his motion to sever (Doc. 446), resulting in the severance of the charges into three groups to be tried in three separate trials. The first set of charges tried were the first ten wire fraud counts, the two mail fraud counts, and the first eleven transactional money laundering counts. These charges named five victims: Princeton Alternative Income Fund ("PAIF"), Richard Turasky, Mark Burg, Allison Wilson, and Carol Hill. The SSI set forth allegations of fraud involving six other alleged victims who were not directly connected to the charges, but whom the Government contended were victims of Defendant's years-long scheme.

The jury trial on this first set of charges went 16 days. At the conclusion of the Government's case, Defendant filed a Rule 29 Motion for Judgment of Acquittal; or, Alternatively, for a Determination of Fatal Variances Between the Charges and the Proof Adduced, asking the Court to enter a judgment of acquittal on all counts.  (Doc. 649.) On February 28, 2023, in open court and after oral argument, the Court denied Defendant's motion. (Doc. 671.) On March 2, 2023, the jury returned its verdicts. As to the wire fraud charges, the jury found Defendant guilty of counts 1-3 and 6-8, and not guilty of counts 4-5 and 9-10. As to the transactional money laundering charges, the jury found Defendant guilty of all eleven counts (counts 13-23).  As to the mail fraud charges, the jury found Defendant not guilty on both counts (counts 11 and 12). The victims of the counts for which Defendant was found guilty were Turasky, Burg, and PAIF. Defendant was found not guilty of the counts involving Wilson and Carol Hill.

On March 7, 2023, pursuant to a plea agreement, Defendant entered a plea of guilty to count 24 (tax evasion) and counts 25-34 were dismissed.

On March 16, 2023, Defendant filed a post-verdict Renewed Motion for Judgment of Acquittal, seeking acquittal on all counts. (Doc. 699.) After a June 11, 2023, oral argument, the Court issued an order granting the motion in part, acquitting Defendant of the counts involving PAIF (counts 3 and 21-23), but denying relief on the remainder. (Doc. 757.)

## II.    Forfeiture

The Government's forfeiture motion seeks the forfeiture of specific items of personal property and approximately $5.6 million. Some of the money and all the items the Government seeks to forfeit were allegedly connected to uncharged conduct and/or charges for which Defendant was found not guilty.

Criminal forfeiture focuses on the disgorgement of a defendant's ill-gotten gains. *United States v. Shkreli*, 779 Fed App'x. 38, 41 (2nd Cir. 2019). Forfeiture actions are generally broad, and funds acquired either directly or indirectly from underlying fraudulent schemes are subject to forfeiture. *United States v. Lo*, 839 F. 3d 777, 793 (9th Cir. 2016). The Government is required to establish by a preponderance of the evidence that it is entitled to the property sought. *United States v. Cherry*, 330 F.3d 658, 669-70 (4th Cir. 2003). If proceeds or directly forfeitable property are unavailable, the court "shall order" the forfeiture of substitute assets up to the value of the unavailable assets. 21 U.S.C. § 853(p). The Court may order forfeiture of a sum of money representing the amount of money involved in the offense. When a defendant's own actions have thwarted the ability of the court to order forfeiture, § 853 authorizes the forfeiture of substitute property.

## III.    Discussion

The requirements of forfeiture are broader than Defendant contends. He argues that the Court may order forfeiture only of assets involved in the offenses for which he has been convicted. However, the Court may order forfeiture of the proceeds from uncharged conduct that nonetheless was part of the same scheme alleged in the counts of conviction. *United States v. Cox*, 851 F.3d 113, 128 (1st Cir. 2017). As this Court noted in an earlier ruling in this case:

The government may seek forfeiture of all proceeds tied to a scheme, not merely those acquired within the statute of limitations period. *See* 18 U.S.C. § 981(a)(1)(C) (providing that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable" to mail fraud, wire fraud or a conspiracy to commit mail and wire fraud is subject to forfeiture); *U.S. v. Emor*, 850 F. Supp. 2d 176, 217 (D.D.C. 2012) (quoting *U.S. v. Venturella*, 585 F.3d 1013, 1015 (7th Cir. 2009)) ("When a defendant has engaged in a mail or wire fraud scheme, forfeiture is not limited to the proceeds gained through the particular mailing or wire transaction on which the conviction was based; rather, it 'extends to the entire scheme' of which the mailing or wire transaction was a part.").

*United States v. Harbour*, No. CR-19-00898-001-PHX-DLR, 2021 WL 872690, at *2 (D. Ariz. Mar. 9, 2021)

The evidence at trial established that Defendant employed a scheme to gain the trust and create relationships with wealthy people who were looking for investment opportunities. Defendant's extravagant lifestyle was the primary vehicle for making these connections and developing friendships. His apparent wealth, as expressed through his lifestyle, created a false impression that supported his representations to investors that he had a record of successful investments. Once he developed the relationships, he pitched investment opportunities in pay-day lending to his targets, promising extraordinary returns based on false representations and omissions of material facts. Although some of money entrusted to Defendant by these victims made it to the investment, much of it was used by Defendant, without the consent of the investors, for personal expenses, and to pay other investors, never reaching the purchased investment. The Government set forth the amount of money it claims Defendant fraudulently obtained and for which it seeks forfeiture in the money judgment calculation in Exhibit H attached to its motion. (Doc. 735-3 at 1-4, 33-34.)

The Government has proven by a preponderance of the evidence that the money Defendant obtained from Mark Burg—$935,000—was obtained directly through wire fraud, for which Defendant was found guilty, and was involved in transactional money laundering, for which Defendant also was found guilty, and are proceeds that are unavailable.

The Government has proven by a preponderance of the evidence that the money Defendant obtained from Richard Turasky (SNI Fund I)—$327,995.21—was obtained directly through wire fraud, for which Defendant was found guilty, and was involved in transactional money laundering, for which Defendant was found guilty, and are proceeds that are unavailable.

The Government has proven by a preponderance of the evidence that the money Defendant obtained from Kenneth Barbrow—$177,026.67—was substantially connected to and was obtained directly from wire fraud, for which Defendant was found guilty, and was involved in transactional money laundering, for which Defendant was found guilty, and are proceeds that are unavailable.

The Government has proven by a preponderance of the evidence that the money Defendant obtained from Joe Cathey—$1,335,518.50—was substantially connected to and was obtained directly from wire fraud, for which Defendant was found guilty, and was involved in transactional money laundering, for which Defendant was found guilty, and are proceeds that are unavailable.

The Government has proven by a preponderance of the evidence that the money Defendant obtained from Patrick Hill—$351,654.71—was substantially connected to and obtained directly from wire fraud, for which Defendant was found guilty, and was involved in transactional money laundering, for which Defendant was found guilty, and are proceeds that are unavailable.

The Government has proven by a preponderance of the evidence that the money Defendant obtained from Carol Hill—$81,284.99—was substantially connected to and obtained directly from wire fraud, for which Defendant was found guilty, and was involved in transactional money laundering, for which Defendant was found guilty, and are proceeds that are unavailable.

The Government has proven by a preponderance of the evidence that the money Defendant obtained from Pamela Case—$111,666.68—was substantially connected to and obtained directly from wire fraud, for which Defendant was found guilty, and was involved

in transactional money laundering, for which Defendant was found guilty, and are proceeds that are unavailable.

The Government has failed to prove by a preponderance of the evidence that Defendant obtained from the other victims for which the Government seeks forfeiture money that was substantially connected or tied to the scheme involved in either the wire fraud or transactional money laundering charges for which Defendant was found guilty. The Government has proven that Defendant obtained money from some of the other alleged victims through fraudulent schemes, but has not proven by a preponderance of the evidence that those other schemes were substantially connected to the scheme for which he was found guilty and has not proven that the funds obtained from those other victims were obtained directly from wire fraud, for which Defendant was found guilty, or was involved in transactional money laundering, for which Defendant was found guilty.

The Government has proven by a preponderance of the evidence that the property described below is property involved in wire fraud, or property traceable to such property, for which Defendant was found guilty, and was involved in transactional money laundering, or property traceable to such property, for which Defendant was found guilty:

(a) 18 Karat White Gold Diamond Cuff Bracelet (Tr. Ex. 887)

(b) 18 Karat Yellow and White Gold Custom Kansas University Jayhawk Pendant and Cable Chain (Tr. Ex. 888)

(c) Scott Kay Engraved Platinum Classic Band Stamped (Tr. Ex. 889)

(d) Hamra Jewelers Engraved Custom Platinum Diamond Ring (Tr. Ex. 890)

(e) Patek Philippe Stainless Steel Nautilus Watch and Steel Bracelet with Serial Number A384EAP (Tr. Ex. 891)

(f) Engraved Custom Platinum Eternity Band (Tr. Ex. 892)

(g) Rolex Day-Date Pearlmaster Watch with Serial Number G527156 and Masterpiece Bracelet (Tr. Ex. 893)

(h) $3,000 Cash

(i) Paradise Valley Country Club Equity in the amount of $12,437.42

(j)  Whisper Rock Golf Club Membership in the amount of $52,819.77.

**IT IS ORDERED** that the Government's Motion for Order of Forfeiture (Doc. 735) is **GRANTED IN PART**. Defendant forfeits to the United States:

1. A sum of money equal to $3,320,146.50 in United States currency, representing the amount of money involved in the offenses.

2. All right, title, and interest in any and all personal property, involved in or traceable to any transaction set forth in Counts 1-3, 6-8, and 13-23 of the Second Superseding Indictment. Such property includes the following personal property:

a. 18 Karat White Gold Diamond Cuff Bracelet (Tr. Ex. 887)

b. 18 Karat Yellow and White Gold Custom Kansas University Jayhawk Pendant and Cable Chain (Tr. Ex. 888)

c. Scott Kay Engraved Platinum Classic Band Stamped (Tr. Ex. 889)

d. Hamra Jewelers Engraved Custom Platinum Diamond Ring (Tr. Ex. 890)

e. Patek Philippe Stainless Steel Nautilus Watch and Steel Bracelet with Serial Number A384EAP (Tr. Ex. 891)

f. Engraved Custom Platinum Eternity Band (Tr. Ex. 892)

g. Rolex Day-Date Pearlmaster Watch with Serial Number G527156 and Masterpiece Bracelet (Tr. Ex. 893)

h. $3,000 Cash

j. Paradise Valley Country Club Equity in the amount of $12,437.42

k. Whisper Rock Golf Club Membership in the amount of $52,819.77.

The Court has determined that the Subject Property is subject to forfeiture pursuant to Title 18, United States Code, Sections 981 and 982, Title 21, United States Code, Section 853 and Title 28, United States Code, Section 2461(c). The Government has established the requisite nexus between the Subject Property and the offense(s) of which Defendant was found guilty. The Court finds that Defendant has forfeited all right, title and interest that he may have in the Subject Property.

Upon the entry of this Order, the United States is authorized to seize the Subject

Property and to conduct any discovery to identify, locate or dispose property that is subject to forfeiture, in accordance with Fed. R. Crim. P. 32.2(b)(3). Upon entry of this Order, the United States is authorized to commence any applicable proceeding to comply with statutes governing third party rights, including giving notice of this Order. Any person asserting a legal interest in the Subject Property must, within thirty days of the final publication of notice or receipt of notice, whichever is earlier, petition the court for a hearing without a jury to adjudicate the validity of any alleged interest in the property, and for an amendment of the Preliminary Order of Forfeiture, pursuant to 21 U.S.C. § 853(n).

Pursuant to Fed. R. Crim. P. 32.2(b)(3), this Preliminary Order of Forfeiture shall become final as to Defendant at Defendant's sentencing and shall be included in the sentence and judgment. If no third-party files a timely claim, this Order shall become the Final Order of Forfeiture, as provided by Fed. R. Crim. P. 32.2(c)(2). Any petition filed by a third party asserting an interest in the Subject Property shall be signed by the petitioner under penalty of perjury and shall set forth the nature and extent of the petitioner's right, title, or interest in the Subject Property, the time and circumstances of the petitioner's acquisition of the right, title or interest in the Subject Property, and any additional facts supporting the petitioner's claim and the relief sought, and serve a copy upon JOSEPH BOZDECH, Assistant United States Attorney.

After the disposition of any motion filed pursuant to Fed. R. Crim. P. 32.2(c)(1)(A) and before a hearing on the petition, discovery may be conducted in accordance with the Federal Rules of Civil Procedure upon a showing that such discovery is necessary or desirable to resolve factual issues. The United States shall have clear title to the Subject Property following the Court's disposition of all third-party interests, or, if none, following the expiration of the period provided in 21 U.S.C. § 853(n)(2), for the filing of third-party

//
//
//
//

petitions. The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Fed. R. Crim. P. 32.2(e).

Dated this 3rd day of November, 2023

Douglas L. Rayes
United States District Judge