Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant David Harbour

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| United States of America, | Case No. 2:19-cr-00898-DLR (DMF) |
|---|---|
| Plaintiff, | **DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE (DOC. 824) TO DOCS. 804 and 811.** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | |

An IRS audit is a review/examination of an organization's or individual's accounts and financial information to ensure information is reported correctly according to the tax laws and to verify the reported amount of tax is correct. www.irs.gov

Defendant respectfully Replies to Doc.824, the combined government response to the Defense Motion for Reconsideration of Doc. 801 (Doc. 804) and to the Defense Motion for New Trial (Doc.811). The Court told the government to respond to both Doc. 804 and 811. The government did not respond to a single argument raised in the Motion to Reconsider. Rather, the government merely stated that it did not need to substantively respond. This cannot have been of any assistance to the Court but was, of course, an admission that it could say nothing in response. The Court is entitled to regard the failure to substantively respond as a concession and enter a new Order concerning the Forfeiture.

The government's entire response is directed at the New Trial Motion. The government is still repeating the same tired arguments in support of conduct that was not

charged at all and that does not exist in the Federal system as if, should the Court grant a new trial on the Burg and Turasky charges, all of the other uncharged misconduct might be admissible in some future re-trial. They have nothing to do with whether a new trial is granted and, if it is, whether a subsequent Motion under Rule 12(b)(3)(B)(v) (for failure to allege an offense) should be granted.

The government claims that Harbour's misrepresentations to the lenders in payday lending was not disclosing his 25% Finder's Fee, yet it does not overcome the evidence from IRS Agent Green and FBI Agent Paige that they could find no evidence that Harbour received a 25% Finder's Fee from KSQ, so no misrepresentations and no "deception." Hr. 11/29/23; p. 133, ll- 7-9. They did not refute that Green testified he did not tie any money Harbour received from KSQ to any lenders funds. The government did not refute any of the case law for Donmoyer, Dyer, Cathey, Dan and Alison Willson, and Pat and Carol Hill ($500,000) that Harbour did not cheat them because 100% of their money went to KSQ and Canyon Road. Without a "cheat," deception, standing alone, cannot sustain a wire fraud conviction. *Miller, supra.* The government did not refute the case law we have cited that a kick-back must come from the victims own money for it to be a fraud and Agent Green said it did not and Paige could not find that it did. The government did not refute the caselaw that coincidence is not evidence. The government loses multiple ways with respect to everyone who loaned money to DNA, NorthRock and Canyon Road: There was no cheat, no deception, and no proven kick-backs from victims' funds. The government did not even refute that Agent Paige testified the money Harbour made from KSQ was not illicit or fraudulent, agreeing with the testimony of Agent Green.

The government admitted that Jackson was paid back all his money. The government told the Court that for purpose of guideline calculations you never subtract the money that was returned. (Hr. 11/29/23, pg.140, lines 16-19) This was a false statement of the law: A victim's loss must be offset against its gain for sentencing. *See*,

*U.S. v West Coast Aluminum Heat Treating Co.* 265 F.3d 986, 992 (9th Cir, 2001), citing *U.S. v Harper* 32 F.3d 1387 (9th Cir. 1994). The 9th Circuit applies a general loss causation principle at sentencing "permitting a district court to impose sentencing enhancements only for losses that 'resulted from' the defendants fraud." The sentencing guidelines do not obviate the fact that the victim must have incurred a loss. *Berger* requires the court to find actual, defendant-caused loss occurred. U.S. Sentencing Guidelines Manual Section 2B1.1 cmt. application n. 3 Section 2F1.1 cmt. application 8 does not obviate the requirement to show that actual, defendant-caused loss occurred. *US v Berger*, 587 F.3d 1038 1043 (9th Cir. 2009) Nor did the government refute the case law that provides using a reasonable estimate from all the evidence for Bobrow and Case shows they were paid back 100% of their money nor do they have any similarity to the remaining offenses of conviction, so they are not entitled to forfeiture and cannot be used for sentencing. *Id.* The government did not refute any of the case law for Burg and Turasky for cheat, deception and the bargain. The government did not refute the case law regarding Section 162(a) business deductions, which proves Harbour had legitimate business expenses. The government did not refute the case law that Turasky and Burg $695,000 must be subtracted from Harbour's business expenses. The government did not refute the case law that Harbour did not receive any ill-gotten gains from Cathey, Bobrow, Case, Turasky, Burg and the Hills and result of that is no forfeiture can be applied.

Besides not refuting any of the Defense case law, it also does not respond to any of the Defense citations from the trial record to prove all of the governments misrepresentations to the Court on the alleged payday lending scheme. *See*, Doc. 804, pp. 14-17. It did not say the IRS was wrong in its calculations of gross receipts or business expenses or that the business expenses were not legitimate. Instead it states that Harbour did not provide the documents or support that he had legitimate business expenses for the trial.

3

The government misrepresented that Harbour failed to disclose the Quick Books to his own expert, Cathie Cameron. She testified the CPA who formerly had the Quick Books had moved firms and no longer had them. Tr. 2/24/23; p. 25. If they no longer existed, then Harbour did not deny or not disclose them to his expert. The government repeated on 7 of 13 pages that Harbour did not provide his expert with the subject documentation supporting his business expenses. The government told the court what the documentation would be to support legitimate business expenses. Cameron stated that she received precisely those documents the government contended she should have received but did not receive. TR. 2/24/23; pp. 23-25. AUSA Schoch asked Cameron if Cameron summarized all the expenses in her report and she stated, yes, in Exhibit 1. Tr. 2/24/23; p. 45. The Court agreed that Cameron testified that Harbour incurred business expenses with Oak Tree. Hr. 6/6/23; p. 103. Finally, the Court can see all of the documents relied upon by Cameron in Exhibit 6 of her report. All the documents the government said should have been supplied to her were supplied to her, but the Court stated that the jury rejected her testimony.

The documents Harbour did not and could not give to the expert because they were under audit were the 2014 returns. It would have been beneath the standard of care for any criminal defense lawyer to hand under audit documents to an expert (or anyone else). More importantly, Rapp is the one who told the Defense to produce the tax returns and Schedules C and E to the government and the Court to support Cameron's testimony that Harbour incurred legitimate business expenses in 2014 and did not use Burg's and Turasky's money for his personal expenses.[1]

---

[1] If you can believe it, the government actually had Agent Lopez call IRS Senior Counsel Wong to verify the Stipulation was authentic and filed by Wong, as if to suggest that the defense had concocted it *ab initio*. Mr. Wong confirmed that he filed the stipulation in the Tax Court. What more can one say to prove that in fact it is authoritative. Though it is not now an issue, Wong's statements to Lopez are a party admission under Rule 801(d)(2). There is only one government, as the Court ruled when it permitted the Western District of Missouri Superseding Indictment against Tucker to be used over a hearsay objection.

The "new evidence" are the tax returns ***and*** the Stipulation that the tax returns reporting of gross receipts and expenses, as modified by the Stipulation, which recognized additional gross receipts and left expenses unchanged, constitute the unassailable, authoritative, resolution of gross receipts and legitimate, ordinary, necessary and helpful business expenses.[2]

The government says the tax returns do not have any relevance to the misrepresentations and omissions that Harbour made to Turasky and Burg. This makes absolutely no sense. The Court ruled in Doc. 800 that Harbour misrepresented to Turasky and Burg that he would use their money for business expenses and to fund Green Circle. The Court ruled there was no evidence that Harbour had legitimate business expenses, but if he did have legitimate business expenses, he was allowed to be reimbursed from Turasky and Burg's money. The 2014 Schedules C and E prove Harbour did have legitimate business expenses of $1,393,124, which is more than the $695,000 Harbour temporarily used of Burg's and Turasky's money, therefore, there were no misrepresentations.

The government tells the Court it does not know where the money went that Harbour received in 2013 and 2014, except Paige traced where the money went in Exhibit 918 and per the 2014 tax return, approved by the United States after audit, Harbour *paid* $1,393,124 of expenses in 2014. What is more important about the government's remarks on Doc. 824, page 9 about the money is what the government claims it was spent on, jewelry, family trips, homes, etc.. This reaffirms the argument

---

[2] The government argues that the Tax Court proceeding is still open in terms of the expenses still being "open." This is completely inaccurate. What is still open for resolution in the Tax Court, as it affects this case, is only one thing: Whether the net operating losses for 2014 and 2015 (well over $10 million) can be carried back to 2012. If the parties are unable to agree, that trial is set for March 1, 2024. We have stated this before, but to state it again: the Plea Agreement provides that the 2012 tax and the restitution are one and the same, If the 2014-2015 losses are carried back to 2012, the restitution amount under the Plea Agreement will be markedly reduced, if not eliminated.

5

made by the Defense in Doc. 804 that the government did not refute, that Harbour did not use lenders' funds to pay personal expenses. This is why there cannot be any forfeiture allowed, no lender money can be tied to paying for any personal expenses or purchases, as testified to by Purifoy and Cameron, in addition to the absence of "ill-gotten" gains.

The government stated the source of Harbour's gross receipts were from Ponzi/investment fraud schemes. This statement puts the prosecutor into yet another "box." This is because the government contention in Doc. 824 and, as of the 11/29/23 hearing, is that the gross receipts received by Harbour from KSQ are taking a 25% finder's fee from the lenders' funds.

This is (remains) false and (again) misstates the trial testimony of both Green and Paige. Agent Green and Receiver Cook agreed that KSQ and Canyon Road were real companies in the payday lending industry. They both testified that payday lending makes a lot of money and flows up from the consumers on the street. The Court ruled that KSQ and Canyon Road were legitimate businesses in payday lending. (Hr. 7/26/23, pg.56) Paige and Purifoy both testified that 100% of the lenders' money went to KSQ. Agent Green audited Harbour and reported that he had $1,214,000 in gross receipts in 2014. He testified the gross receipts did not come from lenders' funds or a 25% kickback, which actually disproved the government's entire theory of fraud.

The government is acknowledging, in Doc. 824 that Harbour had gross receipts as set forth in the Stipulation. This really ends the inquiry because it was the court's determination in Doc. 800, p. 10, that Harbour had no gross receipts that led the Court to determine that Harbour could not have legitimate business expenses, thus causing the use of Burg's and Turasky's money for expenses to be "personal" and not "business." The admission of the existence of gross receipts will enable the Court to conclude the government has conceded a new trial must be granted because the 2014 tax return, as

6

agreed to by the government, proves Harbour's innocence of the remaining charges.[3] It also eliminates the allegations of Green Circle being a "scheme." The government claims that, but for the KSQ fraud, there would have been no Green Circle fraud. Hr. 6/6/23, p. 154. But, KSQ was actually proven to not be a fraud, so the government's theory collapses once again.

The government next says the Stipulation is hearsay. At this point, it is clear that the government has "lost it." [4] The government correctly perceives that what we have previously called a gossamer thread supporting the remaining counts convicted at trial are now severed, with everything else buttoned up via the Plea Agreement and the Defendant having already served the sentence authorized under Count 24, per that plea agreement.

Neither is the tax return, agreed to by the IRS, hearsay. It is part and parcel of the stipulation and, therefore, part of the official record of the Tax Court and a business record. The government says the 2014 tax return would be used to impeach Cameron and Harbour. This is absurd. The truth is exactly the opposite. The United States has agreed to the legitimacy of the gross receipts, business expenses and, thus, the net income or loss in the 2014 Tax returns and this supports Purifoy's, Cameron's, and Green's testimony.

With respect to the government concern as to through whom the Stipulation would

---

[3] The Stipulation leaves the government in the worst possible position: The tax return *under audit* might very well have not been admissible altogether or, even if admissible, entitled to no weight *because* it had been challenged by the government. The Stipulation as to the legitimacy of the 2014 Return shreds all of those arguments concerning the 2014 tax return and the extrinsic circumstantial evidence previously introduced (and rejected by the jury and the Court) and substitutes the authoritative position of the United States of America. Neither are subject to this Court's doubts, nor those of the United States Attorney's Office's. The only issue left to try is not the expenses, as they are fixed, firm and final, it is whether the losses in 2014 and 2015 can be related back to the 2012 tax liability. Therefore, the only effect on this case could be to affirm, modify, or eliminate the restitution associated with the Count 24 conviction.

[4] The Stipulation is easily authenticated under any number of subparts of F.R.Evid., Rule 902 and is not hearsay under Rule 803(8). It is a record of a Court of the United States and so are the tax returns to which the Stipulation applies.

7

be entered into evidence, the response is simple. Have the Tax Court slap a seal on it and it is self-authenticating. The government next suggests that the "new" evidence would not alter the testimony of the witnesses. By pointing this out, it proves the case for the Defense how material the new evidence really is. Burg and Turasky would now have to agree Harbour used their money per the terms of their agreements. Dean Avedon, a CPA and who prepares tax returns for a living, would certainly agree that, if the IRS allowed expenses as deductions it would have to mean they were legitimate business expenses. As indicated in our first quote in this document, it is the IRS and *solely* the IRS that makes that final determination (unless the Tax Court and courts of appeal make the final determination where the IRS and the taxpayer do not agree).

Purifoy testified that she reconciled Harbour's Amex and bank statements, then she classified the expenses as either business or personal. The 2014 Tax Return, now audited by the IRS and agreed to, would support her testimony that Harbour did not use investor money for personal expenses and she classified them appropriately. Similarly, Cook would be shown the 2014 Tax Return and the Stipulation to prove that Harbour did not have any income in 2014 or 2015. The government mistakenly equated gross receipts with income. It was absolutely true that Harbour had no income in 2014. He suffered a net loss, proving Harbour was honest in his unsworn FTC interview.[5]

Purifoy, Green, Cook, Avedon, Burg and Turasky are all government witnesses whose testimony would be impacted in favor of Harbour with the 2014 tax return. Their testimony, along with the IRS all prove Harbour is innocent of the charges in Doc. 800.

---

[5] Cook already knew about Harbour's gross receipts, because he had Harbour's DNA bank statements showing the money Harbour received from KSQ and Canyon Road. That is why Cook asked about Harbour's *income*, not his revenue. Since Cook could not have known about Harbour's business expenses, the question he asked was the correct question: What was your *income*? The IRS agreed after auditing Harbour's 2014 tax return, that he had no income but losses, which is normal for new businesses. It also explains why Burg and Turasky testified that Harbour could use their money to reimburse business expenses he had incurred.

8

The government does not refute that Paige's tracing was the only inculpatory evidence at trial. The Court found that Paige traced money from Turasky and Burg to personal expenses of Harbour and he did not have business expenses to offset the tracing. The 2014 Schedules C and E creates severe doubt that Harbour did not have legitimate business expenses for which he could be reimbursed which, in turn, creates severe doubt on the Court's ruling. *See, U.S. v Quiles*, 618 F.3d 383 (3rd Cir. 2010).

The Prosecutor also misstated the case law to the jury in closing arguments on the intent to defraud. *U.S. v Miller*, 953 F.3d 1095 (9th Cir. 2020) changed the law in the 9th Cir. to deceive *and* cheat, not deceive *or* cheat. The Prosecutor told the Jury they could find Harbour guilty of the intent to deceive *or* cheat.

> Rapp: Intent to deceive. The intent to defraud is an intent to deceive or cheat. Not telling you the truth or omitting to tell you the truth. These were not mistaken false statements.

(Mr. Dichter indicates objection.) (Tr. 2/28/23, pg.131)

When a prosecutor misstates the law in closing arguments to a jury, it is prosecutorial misconduct. *Spivey v Head* 207 F.3d 1263 1275 (11th Cir. 2000). The Prosecutor also made over 20 misstatements to the jury during closing arguments about the evidence in the trial. "The government commits prosecutorial misconduct if it makes unsupported factual claims during closing arguments." *See U.S. v Kojayan* 8 F.3d 1315 (9th Cir. 1993).

It is only seldom that the phrase, "hoist by one's own petard" can be rightfully used but this is one of those times. The government issued a challenge to the Defense – show us the 2014 tax return as it will be authoritative as to business receipts and expenses – confident, in its arrogance that, because the return was under audit, any attempt to do so would be derided by the prosecutor saying, "well, so the 2014 return is under audit" and the Court saying, "Mr. Dichter, is that correct? Though as revealed earlier, the government actually asked the IRS Senior Counsel whether there really was a Stipulation and was obviously disappointed in the extreme to be told there was. Adding to the self-

immolation of the government's case by choosing to "let it ride" on the 2014 tax returns – then under an audit that was completed after the throw-down, the government has made it even worse, by sacrificing Burgess on the altar of cross-examination. This resolved, in Harbour's favor, the issues of whether Green Circle got all of Burg's and Turasky's money by proving it did and they were paid interest on it all, proving the bargain was real eliminating any intent to defraud or to deceive or to cheat. *U.S. v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016).

Where do we go from here? The government did not even reply to the motion to reconsider so it should be granted without opposition. There is no loss causation for Burg and Turasky for sentencing even under a preponderance standard (remembering the Court has told the government it must meet the much higher "clear and convincing" standard) and no "gain" for forfeiture. The government's arguments concerning the IRS stipulation that accepted, with modifications in Harbour's favor, the gross receipts, and made no changes in the business expenses allowed by Agent Green, not constituting "new evidence" does not pass the straight face test. Harbour must be given a new trial on the Counts of conviction. Then per the Court's ruling in Doc. 800 and the Court's limitations on the sweep of the SSI re variance, those Counts will have to be dismissed on Motion.

If it does not rule before sentencing on the New Trial motion, then the Court must still use the new evidence for sentencing, forfeiture, and restitution because the new evidence eliminates the sole remaining basis for the convictions emanating from the trial. Since Green Circle was not a scheme and artifice to defraud, all the alleged relevant conduct falls away. *U.S. v. Vargem*, 747 F.3d 724 (9th Cir. 2014).

Burgess's 11/29/23 testimony and documents supplied on 12/1/23 also must be used for sentencing since they show that Green Circle actually received the $2.9 million and paid Turasky and Burg on the full amounts of their advances. Since money is fungible, the Court's ruling in Doc. 800 is overcome.

As we have stated, regardless of whether a New Trial is ordered and regardless of

whether, afterwards, Harbour is cleared of the Burg and Turasky charges *in toto*, as he must be, Harbour stands convicted of Count 24. As of 12/26/2023, with mandatory good time, Harbour has overserved his conviction on Count 24. Guideline-wise, Harbour has served the equivalent of a 44 month sentence. The founder of the Arizona Nikola Corporation, Trevor Milton, was just sentenced to 48 months by Judge Ramos on the $660 million fraud in the S.D.N.Y. case against him (1:21-cr-00478-ER). The final punctuation mark to end the United States Attorney's 4 years of misrepresentations to the Court was that the United States of America agreed with Harbour's position that Harbour did not use Turasky and Burg's money for personal expenses.

With the Court's ruling in Doc. 800 and the testimony of Green, Purifoy, and Burgess, the 2014 tax return, and with conclusiveness of the IRS stipulation on the Court's last questions concerning gross receipts and legitimate business expenses, the evidence supporting Harbour's position is overwhelming and incontrovertible. What more does Harbour need to do in order to prove his innocence? Here, we must remember, even if the government does not, that proving one's innocence is actually not a feature of the American Constitutional system. The answer is he can do no more and need not. The truth is that, at this point, with the tax conviction served, he is imprisoned for crimes never committed.

RESPECTFULLY SUBMITTED this 26th day of December 2023.

CHRISTIAN DICHTER & SLUGA, P.C.

By: /s/ Stephen M. Dichter
    Stephen M. Dichter
    2800 North Central Avenue, Suite 860
    Phoenix, Arizona 85004
    Attorneys for Defendant David A. Harbour

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 26, 2023 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Kevin M. Rapp
Kevin.rapp@usdoj.gov
U.S. Attorney's Office
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
Attorney for Plaintiff


/s/ Yvonne Canez