Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
Justin R. Vanderveer, 037657
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant David Harbour

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| United States of America, | Case No. 2:19-cr-00898-DLR |
|---|---|
| Plaintiff, | **DEFENDANT'S REPLY TO UNITED STATE'S RESPONSE (Doc. 851) TO DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM (DOC 839)** |
| vs. | |
| David Allen Harbour, | |
| Defendant. | |

    The government accuses the Defense of launching personal attacks on the prosecutor and the alleged victims. Every time we have pointed out misrepresentations made by the government they have been supported by citations to transcripts admitted evidence that juxtapose the misrepresentation with the transcripts and evidence. None of these allegations, and they approach 100, have been refuted specifically with citations to testimony and evidence. We continue this theme by directing the Court to the misrepresentations made by the government in Doc. 851.

    The Prosecutor told the Court that PAIF funds were diverted for other personal expenses and not for Green Circle to make new loans to consumer borrowers and cited Exhibit 910 in support of this statement (Doc.851, pg.6, ll.19-21, pg.7, ll.1-2). Exhibit 910 is tracing the $1.1 million returned to Oak Tree through Green Circle, therefore the

government is stating the $1.1 million was only for making new consumer loans.[1] This was a false statement as proven by the testimony of Burgess and the letter written by Primus on behalf of Green Circle to PAIF. Burgess told the Court and the Court confirmed with Burgess that he thought the $1.1 million was paying back all the money Oak Tree had loaned Green Circle, which means it was 100% not for consumer loans (Hr. 11/29/23, pg.120, ll.6-16). The government ignored the actual letter authored by Primus that Green Circle sent to PAIF requesting the $1.1 million (Doc.839, Burgess #37, #37A, 37B). Remember that Primus was, simultaneously, acting for Green Circle *and* for PAIF.

> *Green Circle is pleased to execute the refinance of its portfolio with Fintech in the amount of approximately $1.1 million. Green Circle will use the proceeds to reduce its current obligation to Oak Tree Management, LLC of approximately $2.7M. The $1,100,000 Fintech will be sending to Green Circle will then be sent to Oak Tree Management, LLC for such reduction of principal that Green Circle owes to Oak Tree Management, LLC on its credit line.*

The government stated that PAIF wiring the $1.1 million to Green Circle was sufficient direct and circumstantial evidence that Harbour misrepresented the viability of the consumers (Doc.851, pg.7, ll.5-8). This is a false statement. There was no evidence presented at the trial of Harbour or Purifoy manipulating the consumer borrower's on the May or 7/31/15 aging reports. At trial, the theory was that Harbour manipulated two to three monthly borrowing bases after August 2015 (dates unstated) *and not* the A/R Report for May or July, 2015. *Before* the trial, the government told the Court the fraud was the 7/31/15 aging report. Of course, there was no connection between Harbour and PAIF until July 2015, so there is no possibility that Harbour manipulated a May 2015 A/R report.

---

1 This is also what the Prosecutor told the Jury in closing arguments, specifically referencing and displaying Exhibit 910 with no evidence to support it (Tr. 2/24/23, pg.214,215). The Defense objection was overruled.

2

1
2
3   Rapp: As mentioned, the government previously advised the Court that L.P., a cooperating government witness, who was Harbour's internal bookkeeper, has told the government that Harbour personally falsified the July 31, 2015, aging report before he sent it to PAIF (Doc. 225, pp. 2-3). (Document 378 page 4 line 28 and page 5 lines 1-3)

4
5
6
7
8
9
10
11   Compare that to Purifoy's testimony that she had zero involvement in the 7/31/15 aging report. (Tr. 2/14/23, pg.185) The government admits Harbour sent the 7/31/15 aging report to Primus on 8/6/15 (Doc.851, pg.3, ll.10-11). Purifoy testified she was not in town on 8/6/15, she was at the beach in California at Half-Moon Bay and Harbour was at the lake in Idaho (Tr. 2/14/23, pgs.269, 274) on 8/6/15. Therefore she could not have "seen" and did not "see" Harbour manipulate the 7/31/15 aging report. Presumably, this revelation by Purifoy is why the government abandoned calling Primus and Burgess at the trial.

12
13
14
15   The government states the Defense misrepresented the testimony that Burgess did not testify that Harbour sent the aging reports to Andreev to be sent to PAIF (Doc.851, pg.2, ll.22-28). This is a false statement. The Defense did not misrepresent the testimony at all.

16
17
18   Burgess: That they would send an accounts receivable to him [Harbour] on those two that were produced and then the accounting for the borrowing bases, and he [Harbour] would modify them and send them back to him [Andreev] and ask him to send them to us (Hr. 11/29/23, pg.105, ll.11-14).

19
20
21
22
23   The government states that Primus never tried to hide his dual employment with PAIF and Green Circle, because it was stated in his Declaration in 2022 (Doc.851, pg.4, ll.14-20). Seriously? The 2022 Declaration has nothing to do with what Green Circle and Harbour knew in 2015. Dunsworth stated nobody knew about Primus dual role (Doc.839, Attachment C Dunsworth Declaration).

24
25
26
27
28   Primus is a CPA, he knew he needed to disclose his conflict of interest when he was red lining agreements between Green Circle and PAIF. Even after the Defense pointed out that Burgess own documents show Green Circle did not pay GT Law $500,000 and Primus, as now admitted by the government an Officer of PAIF, is the one who paid them, the government is still saying that Green Circle paid $500,000 to GT Law

and it was not authorized by PAIF. This is another intentional misrepresentation. The government states that Burgess did not testify that Green Circle was ongoing operational business (Doc. 851, pg.5, ll.23). To the contrary, Burgess testified that Green Circle never missed a payment to PAIF and on 12/1/2023 provided spreadsheets that Green Circle paid all of its vendors and interest to Oak Tree and payments to Milagro. The government is contesting that this is not evidence of an ongoing operational business?

The government then states that Primus declaration and Burgess testimony proves the 7/31/15 aging report came directly from Harbour and not Andreev or Primus (Doc.851, pg.4, ll.1-4). Like the way in which the Prosecutor tried to manipulate Wesley Wong's words, here he is again trying to be clever with words. The evidence proved that Harbour received the 7/31/15 aging report directly from Andreev on 8/6/15 and forwarded the exact same report to Primus and copied Farrell, it got to Primus through Harbour directly from Andreev (Hr. 11/29/23, pg.86, ll.13-16).

The Prosecutor has the emails and heard the testimony that Harbour received it and forwarded it on, how is this not a deliberate misrepresentation of the facts? If the 7/31/15 aging report was wrong (and to this day not one witness has ever proven that it was) there is no evidence that it was manipulated by Harbour.

Purifoy testified that Andreev was in charge of the accounts receivable (Tr. 2/14/23, pg.108). To punctuate this misrepresentation by the government, Burgess testified that he does not know if Harbour changed the numbers he got from Andreev (11/29/23, pg.104, ll.25 and pg.105, ll.1-5). He also admitted he does not know who actually put together the aging reports that was sent to Primus (11/29/23, pg.56, ll.2-8). Burgess and Purifoy testimony along with the direct evidence proves Harbour did nothing wrong with the 7/31/15 aging report whatsoever. If it was wrong, why didn't Primus state it was wrong, show what numbers were wrong and attach the correct May and July aging report to his Declaration, so the Court could see what was manipulated? Burgess testified

he "discovered" the consumer loans had been manipulated within 6, 7, 8 months after seizing the Green Circle portfolio in September 2016 (Hr. 11/29/23, pg.29, ll.12-16).

Here is the key part, he said it was the aging report for May *and* July 2015.[2] There is no evidence to support either, but is a vital problem for the government. Harbour and Purifoy could not have sent anything to Bob Farrell or PAIF in May 2015 and the government did not refute this fact. So out of the 467 loans, how many were in May and how many were in July?

Meanwhile, Burgess, has now told the Court exactly how many consumers were allegedly manipulated or not funded, there were 467, with a value of $212,320 that were either; "A." Not funded or "B." Manipulated[3] (Doc.851, pg.5, ll.28). Why did Burgess not attach the supporting documents of these 467 loans to Primus declaration, which was submitted on March 3, 2022, Doc.352-1? Primus' Declaration does not mention any consumer loans being manipulated or not funded. This is the first time in 7 years the number of consumer loans have actually been provided in any document.[4]

Burgess admitting exactly how many consumers were "manipulated or not funded" and the amount is a very important admission. It computes for the Court the average loan amount, which is $454.64 [$212,320 / 467 loans]. This is important because it tells the Court how many loans were actually made by Green Circle with the funds

---

2 The government never mentions the May 2015 aging report in Doc. 851. This has to be taken as a concession that it could not have come from Purifoy as Burgess testified, which proves he was not honest with the Court.

3 Burgess testified to both happening. His first story was that Harbour changed them in the LMS from being past due to current. His second story was Green Circle never funded the consumer borrower's. The government did not refute that Burgess had two different stories, nor did it pick which story Harbour actually did, but in cannot be both.

4 The government did not refute that Primus had access to the LMS, Infinity, which means PAIF had access and could monitor the portfolio in real time with live data feeds. This also means Burgess was not honest with the Court. More importantly, it means PAIF would know, in real time, if loans were manipulated in the LMS. This is more evidence why Burgess story of 467 bad loans does not hold water.

from Oak Tree and PAIF. The government stated that the Defense calculations were not intelligible (Doc.851, pg.5, ll.10-12).

We will only use the numbers from the Green Circle bank statements to show it is ridiculous that PAIF lost any money when it seized the Green Circle portfolio, as opposed to using it to collect millions it used to help pay Ranger back the $32 million. The Green Circle bank statements show $3,087,203. Burgess testified PAIF, itself, loaned $5.5 million. Therefore the total loaned to consumers from Oak Tree and PAIF sources was $8,587,203 [$3,087,203 + $5,500,000], which equals 18,887 loans [$8,587,203 / $454.64].

The government admitted that PAIF received the entire consumer loan portfolio for the $1.1 million advance (Doc. 851, pg.6, ll.1). The 18,887 consumer loans did not disappear when PAIF sent $1.1 million to Green Circle. If we add the $750,000 of Oak Tree money Burgess admits he had in reserve, the value of PAIF's collateral was $9,337,203 [$8,587,203 + $750,000].[5] That is basic, simple math. How in the world could PAIF only collect $2 million to have a $3.4 million loss out of $9,337,203? The government did not explain this in Doc.851. How could it, what could it possible say? 18,887 loans less 467 loans that were either not funded or manipulated is 18,420 loans that 100% passed the Microbilt scoring and were deemed good loans that would pay, per the testimony of Burgess. 18,420 loans x $454.64 = $8,374,468 is the value of the collateral on the street in Microbilt approved loans. Subtract $750,000 from the $5.5 million and apply the average loan amount and the Court will see the collection rate that would be needed for PAIF to collect 100% of its $5.5 million (less $750,000) = $4,750,000. This means PAIF would need a 57% collection rate or stated differently even at a 43% default rate, PAIF would still collect 100% of its money. PAIF stating they only

---

5 The government said that Burgess did not conceal the $750,000 PAIF had in a segregated account because the Defense did not ask him about it. "Ask me no questions and I will tell no lies" can be applied here. If the prosecutor knew it, *he* had the obligation to disclose it.

collected $2 million, means they had a default rate of 76% or a collection rate of 24% [$2,000,000 / $8,374,468] on loans that were deemed good and collectible by Burgess in his testimony. This is impossible.

The government makes another misrepresentation that is not supported by the math when it said 467 loans worth $212,320 that Harbour pledged for the $1.1 million advance represented 20% of the *entire* portfolio already in default (Doc.851, pg.6, ll.1-2). We know Primus stated Oak Tree had loaned approximately $2.7 million as if August 4, 2015. *Id.* The Green Circle bank statements have $2,615,000 as of July 2015, so we will use that number for the calculations.[6]

Using Burgess' stated average loan amount of $454.64, this means Green Circle pledged (not Harbour) 5,751 loans [$2,615,000 / $454.64] to PAIF for the $1.1 million advance. Does this equal 20% of the portfolio? No. 5,751 loans x 20% = 1,150 loans, which means 8% of the entire consumer loan portfolio was in default not 20% [467 loans / 5,751 loans]. If Burgess is to be believed that 467 loans were bad, then PAIF got 5,284 loans worth $2,402,317 [(5,751 loans – 467 loans) x $454.64]. PAIF was over collateralize even after the alleged bad loans by $1.3 million. Assuming that PAIF never loaned another dollar, what would the collection rate need to be for them to collect $1.1 million out of 5,284 loans, to not lose any money? Simple, 45%. They could have a default rate of 55% and still collect all $1.1 million with the portfolio that was pledged even after deducting the 467 loans.

This is in alignment with the email from Primus in August 2015, after the funding of the $1.1 million, that Green Circle default rates are not that high (Doc.839, Burgess #39). If, for example, Primus did not fund 467 loans with Oak Tree's money or someone who had access to the LMS changed 467 consumers who were in default to current, PAIF still would not have lost any money because of the value of the portfolio. Since Burgess

---

6 This is less than the amount above $3,087,203, because Oak Tree funded an additional monies to Green Circle for consumer loans after July 2015.

7

testified no loans after July 2015 were changed, then every loan from that point, per Burgess, was a good loan and would only make the Portfolio better. This means Oak Tree's additional $472,000 funded to Green Circle after July 2015 added 1,038 consumer loans to PAIF's collateral.

The government stated the sworn testimony of Burgess and Primus and the hundreds of documents prove Harbour caused the loss to PAIF of $3,420,060.58 (Doc.851, pg.7, ll.25-28, pg.8, ll.1-3) Except the government has only produced one document, the Declaration of Primus that is tied to the 7/31/15 aging report and nothing to the May 2015 aging report and the government did not produce hundreds of documents at the trial from PAIF. In fact, it produced zero. The government, when examining Purifoy regarding PAIF used Exhibits 516, 666, 669, 1354, 1518,2293 and 2294. None of them came from PAIF.

It has never provided any witness testimony or documents supporting that Harbour manipulated the aging report for May and July 2015. The evidence proved beyond any peradventure that it could not be and was not Harbour. Nothing was ever manipulated and all this was contrived; differently of course. One way by Primus and the opposite way by Burgess. The testimony and evidence proved Harbour was not in charge of funding the loans and did not have access to the LMS to change the consumers. It has not provided any testimony how Harbour could manipulate the consumer loans without access to the LMS, nor did it refute that Harbour and Purifoy did not have access to the LMS. It has never provided any explanation, testimony or documents on how 467 loans worth $212,320 caused PAIF to lose $3.4 million. Stated differently, the government did not refute the Defense stating that up to 500 alleged bad loans could *not* cause PAIF to lose $3.4 million (Doc. 839, pg.6 ll.1-8).

It was the Prosecutors words to the Court on how he would prove the fraud and that never happened, the opposite happened. Purifoy's testimony exonerated Harbour under the Prosecutors theory of the 7/31/15 aging report and now Burgess theory of her

8

providing the aging report to Farrell for May 2015. These were two very material misrepresentations to the Court by the Prosecutor and Burgess. With Burgess testimony, the alleged fraud changed from Purifoy seeing Harbour physically change the 7/31/15 aging report on a piece of paper before sending it to PAIF, to the consumer lenders were not funded at all or were changed in the LMS in May and July 2015.[7]

In what has become commonplace, the government came up with a new theory and told the Court Harbour lulled PAIF by sending PAIF altered borrowing bases after August 2015 so they would not call the loan. Purifoy's, and now Burgess' testimony, ended that latest theory. Burgess testified PAIF received 14 borrowing base schedules and they were not altered. It was the two aging reports, one in May and one in July 2015, that were altered. Even though every theory the Prosecutor has trotted out has been rebutted by the evidence and the testimony of his own witnesses, the government is still trying to say Harbour caused PAIF to lose $3.4 million.

The Prosecutor also tells the Court that PAIF is relevant conduct. Burgess said it was two aging reports. Harbour and Purifoy never spoke to PAIF in May 2015 when they extended credit to Green Circle, so no misrepresentations. The evidence proved the 7/31/15 aging was not changed from Andreev, so no misrepresentation. The evidence proved Harbour and Purifoy had zero access to the LMS, so no misrepresentation. The evidence proved Harbour and Purifoy did not control the cash, so no misrepresentation on the non-funded loans.

The $1.1 million was a repayment from Green Circle to Oak Tree for money it had loaned and the evidence proves Primus and Burgess knew this is what the money was for, so once it got to Oak Tree from Green Circle it had nothing to do with PAIF, which is why Exhibit 910 is irrelevant. To make this point crystal clear, only because the

---

7 We must again ask the Court, where did the Prosecutor come up with his theory of the fraud? It was not Purifoy or Burgess both of their testimony exonerate Harbour of the Prosecutors theories. What was his evidence when he made his Proffer to the Court?

Prosecutor is still hanging on to this as a fraud, Burgess and Primus 100% knew PAIF was advancing the $1.1 million to Green Circle to pay-back Oak Tree for money it had loaned Green Circle. Once the money reached Oak Tree, Primus, Burgess, PAIF nobody had any control or say what happened to it except the person it belonged too. The evidence proved and the government admitted in Doc. 710, the $1.1 million belonged to Dunsworth. Dunsworth deciding to make a personal loan to Harbour has nothing to do with PAIF and there is nothing illegal about it. Again, Exhibit 910 has no relevancy to the case against Harbour.[8] There is no relevant conduct for PAIF. Which agrees with the Court in Doc. 801 that PAIF did not meet the preponderance of the evidence for forfeiture. Nor do they meet the requirements for Restitution or Sentencing.  Burgess was required to testify under oath because neither he nor PAIF was considered to be victims by the Court. Had they been victims, Burgess would not have been cross-examined.

What did the government did not refute from Defense Doc. 839

Burgess did not disclose his ownership of PAIF to Green Circle or Harbour, which being a convicted Felon would be material information. Green Circle made enough money from the consumer loans to always pay Oak Tree and PAIF its debt payments and its operating expenses; The $1.1 million was a repayment of the money that Dunsworth through his entity KC Lending loaned Green Circle and then Dunsworth loaned the $1.1 million as a personal loan to Harbour, making Exhibit 910 irrelevant; Green Circle paid Burg and Turasky on their full amounts: $1 million and $350,000; PAIF had access to the Green Circle LMS through Primus which allowed them to see the portfolio in real time with live data feeds; Harbour, Purifoy or Andreev did not send any financial statements

---

8 The $1.1 million Green Circle sent Oak Tree is Gross Income to Oak Tree and not probative of any material fact in the case. Therefore, the $1.1 million cannot be used to prove any charges against Harbour. With the prosecutors admission, Exhibit 910 should never have been allowed in the trial. It was completely prejudicial to Harbour and could easily have swayed the return of all the verdicts of guilt.

or aging reports to Alonzo Primus or Bob Farrell in May 2015 to be forwarded to PAIF for PAIF to make a decision to extend credit to Green Circle.

Burgess has never supplied any emails with any financial documents from Harbour, Purifoy or Andreev from May 2015; Primus had his own financial statements for Green Circle which included monthly income statements and accounts receivable aging reports; the only person Farrell could have received financial information for Green Circle in May 2015 was Primus; Harbour and Purifoy did not meet Farrell until July 2, 2015.

Primus used his own aging report numbers for the August 31, 2015 borrowing base; Green Circle had at least 18,000 consumer loans on the street after the "manipulated" or "not funded" loans were subtracted from the entire portfolio; Burgess testified that normal default rates are 20% or less and Primus in an email stated Green Circle did not have high default rates; Loans that were funded and approved by Microbilt were good loans and would pay; the calculations proving mathematically PAIF had to of collected more than $2 million based on Burgess and Primus own numbers of loans funded, avg. loan amount and default rates.

## Conclusion

The government lost PAIF and correctly so both because it failed in its proof and because of a fatal variance, which the government has never addressed. The government gets no new trial motion. As usual, the government never actually refutes anything; it simply reiterates and reiterates its talking points, shifting its theories again and again.

RESPECTFULLY SUBMITTED this 26th day of January 2024.

       CHRISTIAN DICHTER & SLUGA, P.C.

       By: /s/ Stephen M. Dichter
         Stephen M. Dichter
         Justin R. Vanderveer
         2800 North Central Avenue, Suite 860
         Phoenix, Arizona 85004

Attorneys for Defendant David A. Harbour

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2024 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Kevin M. Rapp
Kevin.rapp@usdoj.gov
Assistant United States Attorney
Joseph F. Bozdech
Joseph.bozdech@usdoj.gov
Assistant United States Attorney
U.S. Attorney's Office
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
Attorney for Plaintiff


/s/ Yvonne Canez