Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
Justin R. Vanderveer, 037657
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710

Attorneys for Defendant David Harbour

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| United States of America, | Case No. 2:19-cr-00898-DLR |
| Plaintiff, | |
| vs. | **MOTION FOR RELEASE PENDING APPEAL** |
| David Allen Harbour, | |
| Defendant. | **Oral Argument Requested** |

## BACKGROUND

Bail on appeal is governed by 18 U.S.C. §1343.

**(b) Release or detention pending appeal by the defendant.--(1)** Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds

**(A)** by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 31442(b) or (c) of this title; and

**(B)** that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in--
**(i)** reversal,
**(ii)** an order for a new trial,
**(iii)** a sentence that does not include a term of imprisonment, or

1  **(iv)** a reduced sentence to a term of imprisonment less than the total of the time already
2  served plus the expected duration of the appeal process.

3        Harbour's situation meets the all the provisions of subparagraph (B) except (iii),
4  since he has already served over 2 years in prison.

5        If the Court makes such a finding under subsection (B)(iv), it must "order the
6  detention terminated at the expiration of the likely reduced sentence." *Id*. Section
7  3143(b)(1). [A] 'substantial question' is one that is 'fairly debatable'......or 'fairly
8  doubtful.'" *U.S. v Handy* 761 F.2d 1279, 1283 (9th Cir. 1985) In other words, "a
9  'substantial question' is one of more substance than would be necessary to a finding that it
10 was not frivolous." *Id*. Thus the Defendant.....need not, under *Handy*, present an appeal
11 that will likely be successful, only a non-frivolous issue that, if decided in the defendants
12 favor, would likely result in a reversal or could satisfy one of the other conditions." *U.S. v*
13 *Garcia* 340 F.3d 1013 1021 n.5 (9th Cir. 2003). The Defendant bears the burden of
14 showing he has raised a "fairly debatable" issue on appeal. *U.S. v Montoya* 908 F.2d 450,
15 451 (9th Cir. 1990).

### Errors under Rule 32(c)

17       Rule 32(c) imposes a standard of "strict compliance" by the sentencing court in
18 ruling on any unresolved objections to the PSR and the Court must either make a finding
19 on the allegation or make a determination that no finding is necessary. It is well settled in
20 this Circuit that when the district court fails to make the required Rule 32 findings or
21 determination at time of sentencing, we must vacate the sentence and remand for re-
22 sentencing *U.S. v Carter 219* F.3d 863 (9th Cir. 2000).

23       In *Carter*, the 9th Cir. ruled the district court failed to comply with F.R.C.P
24 32(c)(1) and vacated Carters sentence and remanded for re-sentencing.  Over the specific
25 and strenuous defense objection raised at the outset of the original November 29, 2023
26 sentencing hearing, this Court did not make any findings with respect to loss causation
27 nor relevant conduct.  Nor did the Court make any determination on how Harbour's fraud
28 caused the losses that were used as sentencing enhancements.

The Defense objected, in very specific terms, proposed victim by proposed victim, to both loss causation and relevant conduct in Doc. 770, pp.5-11 and 29-32 and in the Reply.[1] On its part, in its updated Sentencing Memorandum Doc.803, the government did not address either loss causation nor relevant conduct.

Ultimately, the Court imposed a sentence based upon Burg and Turasky losing $1,350,000, the Hills losing $581,000, PAIF losing $3,420,000 and Cathey losing $3,000,000 (for a total of over $8 million). The Court did not explain loss causation with respect to Burg and Turasky, nor how Cathey, Hills and PAIF were relevant conduct, nor loss causation with respect to them. The Court simply stated it found by clear and convincing evidence they were tied to the offense of conviction. The Court did not address any of the Defense objections. This was merely the culmination of the requirements of Rule 32 that the Court did not require adherence by the government, the Court's probation officers, or itself. This after having ruled earlier that the government would be required to prove loss causation and relevant conduct for anything other than the counts of conviction by clear and convincing evidence. Nor was loss causation for Burg and Turasky even proved by a preponderance of the evidence.

The Court of Appeals will review this Court's legal conclusions *de novo* and this Court's *factual* determinations for clear error. However, this Court never announced either its legal conclusions nor any factual determination in support of loss causation or relevant conduct. What is puzzling about the Court's sentencing enhancements, is both the Court and the government acknowledged that Harbour's offense of conduct had to of caused the loss. (Hr.11/29/23, pp.129-130) Yet, the government never even advanced, let alone proved, loss causation (to *any* standard of proof) and the Court never made any findings of law or fact for the 9th Circuit to examine, let alone determine.

---

[1] The Defense objected to the relevant conduct and loss causation of Pat and Carol Hill, Doc.770-1 Exhibit 7, Joe Cathey Doc.770-1 Exhibit 7A, PAIF Doc. 770-1 Exhibit 1, and Burg and Turasky Doc. 770 pg.5-11 and again in Docs, 804, 838, and 849.

3

The Supreme Court is clear on loss causation and proximate cause.

> In all cases of loss, we are to attribute it to proximate cause and not to any remote cause. The judicial remedy cannot encompass every conceivable harm that can be traced to alleged wrong doing. The proximate cause analysis is whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits. To put it differently, the proximate cause requirement generally bars suits for alleged harm that is too remote from the defendants unlawful conduct. That is ordinarily the case if the harm is purely derivative of the misfortunes visited upon a third person by the defendant's acts. *See Lexmark v Static Control Components Inc.* 572 US 118 (Supreme Court 2014).

The Supreme Court also ruled; "The purpose of proximate cause requirement is to preclude liability where the link between conduct and result is merely fortuitous." *Paroline v U.S.* 572 U.S. 434 (2014).

With respect to Cathey and Hill ($3,581,000), the unrefuted evidence was that Operation Choke Point shutdown payday lending, which caused the losses to the people who loaned money to NorthRock and DNA Investments. The Court stated as such; "I don't think we can go to -- the evidence is that the money lending operations to payday lenders were shut down by the government." (Hr.6/6/23, pg.24, ll.15-17). The testimony of every single witness who addressed the subject along with the documentary evidence was that each lender was getting paid on time and per their loan agreements, until Operation Choke Point.[2]

The Court did not explain at Sentencing how Harbour's misrepresentations to Cathey and the Hills caused Operation Choke Point, which the Court agreed shutdown the payday lenders, which caused their losses. *see Miksian and Calderon.* The Court never required the government to provide any evidence supporting the losses in the PSR were caused by Harbour's misrepresentations. "The government bears the burden of

---

2 The government has never refuted and the Court did not address the Objection that Paige never traced Carol Hill $81,621.34 to NorthRock. Without any evidence of NorthRock or KSQ Management receiving the money, how can there be a loss associated with Harbour.

4

demonstrating the amount of the loss sustained by a victim was a result of the offense," see *Robers v US* 572 US 639 (Supreme Court 2014)

The case law in the 9th Circuit is clear on loss causation. In *U.S. v Lonich* 23 F.4th 881 (9th Cir. 2022), the court ruled the following;

> The Jury did not determine whether the defendant caused the losses and through its verdict, the jury never decided whether the defendant caused the losses. The government at sentencing did not sufficiently prove the defendant caused the losses. The PSR did not sufficiently show the defendant was responsible for the banks failing. Especially given indications that other factors both internal and external to the bank may have contributed to the collapse. Causation includes two distinct principles, cause in fact, or what is commonly known as 'but for' causation and legal causation.

Compare *Lonich* to Harbour; the jury did not determine that Harbour caused the losses for anyone included in loss causation, the government did not put on any evidence that Harbour caused the losses for anyone listed in loss causation, the PSR did not even mention how Harbour caused the losses for the people listed in loss causation, and the evidence at the trial, agreed to by the Court, showed there were other factors both external and internal that may contributed to the collapse and were unforeseeable to Harbour for each person/entity listed in loss causation.

*Lonich*, standing alone, supports Harbour meets the requirements that his appeal is a "non-frivolous issue" and raises substantial questions. In our own District, Judge Campbell ruled; "the Plaintiffs must prove that the defendants misrepresentation (or other fraudulent conduct) proximately caused the plaintiffs economic loss." He further says; "Stated differently, the plaintiff must show a causal connection between the loss and the misrepresentation." *Smilovits v First Solar Inc.* 119 F. Supp. 3d 978 (D. AZ 2015)

This hits the heart of the issue, the government never proved Harbour's misrepresentations or other alleged fraudulent conduct caused the lenders (Cathey, Burg, Turasky and the Hills) or PAIF to lose their money and the Court never required them to do so. The 9th Cir., in *US v Hicks* 217 F.3d 1038 (9th Cir. 2000) vacated the sentence

because the court erred in calculating the loss actually caused by the defendants offense. The *Hicks* court cited *State v Munoz* 233 Conn 106, 659 A. 2d 683,692 (Conn 1995). In *Munoz* the court ruled;

> The doctrine of intervening cause, which has deep roots in the law of proximate cause, both criminal and civil....refers to a situation in which the defendants conduct is a 'but for' cause, or cause in fact, of the victims injury, but nonetheless some other circumstance subsequently occurs, the source of which may be an act of the victim, the act of some other person, or some nonhuman force that does more than supply a concurring or contributing cause of the injury, but is unforeseeable and sufficiently powerful in its effect that it serves to relieve the defendant of criminal responsibility for his conduct.

The evidence from the trial record supported there were other circumstances that occurred that were unforeseeable to Harbour, Operation Choke Point and PAIF's seizure of the Green Circle portfolio. The same case law also applies to Burg, Turasky and PAIF.

Before we get to PAIF, we will first address Burg and Turasky. At sentencing the government did not provide any evidence to prove that Harbour's misrepresentations caused the losses of Burg and Turasky. Nor did the Court explain why it did not require the government to prove that Harbour's misrepresentations caused the loss or provide its own legal conclusions on how Harbour's misrepresentations caused their losses. The Court did not address the case law regarding subsequent events, including internal and external factors unforeseen to Harbour and not related to the misrepresentations to Burg and Turasky. PAIF's seizure of the Green Circle portfolio is why they lost their money. Burgess testified he had a redemption request and he took over four other portfolio's at the same time as Green Circle.

*First*, neither the government or the Court refuted the case law in the 9th Cir. that Harbour must be credited with the value of the money Oak Tree was owed from Green Circle as of September 2016. The Court in the Holmes case said the government had not established by either a preponderance of evidence or clear and convincing standard that

Theranos collapsed because of Holmes conspiracy. "Just because they lost their money does not deprive the defendant of credit for the inherent value." *see U.S. v Holmes* (N.D. Cal. 1-10-2023) In the instant case, there is no evidence that Harbour's misrepresentations to Burg and Turasky caused PAIF to seize control of Green Circle.[3] The testimony of Burgess, the Green Circle bank statements, the spreadsheets turned over by Burgess and the evidence provided by the Defense in Doc 839 including the corresponding attachments proved the value of the Green Circle consumer loans was at least $8.3 million. Adding the $750,000 PAIF held in reserve for a total value of approximately $9 million as of September 2016. This was more than sufficient to cover PAIF ($5.5 million) and the amount owed to Oak Tree ($1.9 million).

      The 9th Cir. also ruled; "the District Court was obligated to determine the actual value if any of the fund and to deduct that value from the amount of the loss." *U.S. v Geringer* 672 Fed Appx 651 (9th Cir. 2016).  This Court never determined the value of the portfolio, it simply relied on the testimony of Burgess on what he allegedly collected ($2 million), without any supporting evidence or explanation and the documents he supplied, as shown in Doc. 839, showed his testimony to be erroneous or false.

      Stated differently, the Court never made a factual determination on the value of the portfolio nor did it require the government to refute the Defense analysis of the value of the portfolio in September 2016. The value to Oak Tree was everything above PAIF's $5.5 million, which was $3.5 million, which was enough to pay back *all* the Oak Tree lenders, but, most specifically, Burg ($1 million) and Turasky ($350,000).  The Court never explained why it did not consider the value of the loans outstanding, nor did it

---

[3] Burgess testified that Green Circle received a subpoena from the SEC in September 2016 which caused PAIF to immediately call the loan.  Actually, the subpoena was received by Green Circle in May, 2016 and the loan was not called until four months later.  A simple lie, but a significant lie by Burgess. Moreover, the SEC subpoena had nothing to do with Harbour.  It had to do with something called Drawbridge Financial in which Harbour had no involvement.

require the government to explain how Burgess only collected $2 million from over 18,000 loans (Doc.855).

*Second*, it is the law of the case that Harbour's fraud as Turasky and Burg was that he used part of their money to reimburse business expenses and, with the Court finding that Harbour had no gross receipts in 2014, he could not, perforce, have legitimate business expenses that could be paid and, therefore, the use of Burg's and Turasky's funds was for personal expenses. The Court was not restricted to evidence that would be admissible at trial for purposes of sentencing *U.S. v Hopper* 27 F.3d 378, 382 (9th Cir. 1994). Yet, the Court did not explain why it did not consider the Stipulation and the 2014 Schedules C and E and gross income at sentencing.[4] It never stated what its legal conclusion was to not use them for sentencing as mitigating factors, which proved Harbour used their money per the relative agreements. If the law of case doctrine does *not* apply, then what were the misrepresentations to sustain the guilty verdict for sentencing enhancements?

The Court, in each of its Orders (Docs. 757, 800 and 801) has never ruled the misrepresentation against Burg and Turasky were anything but Harbour not following the relevant agreements on how he used their money. Since the Schedules C and E along with the government's tracing in Exhibits 908 and 912, prove Harbour used Burg and Turasky money per their relative agreements, then how Harbour used their money was not fraudulent.

Therefore, the Court must be saying the misrepresentations were something other than Harbour using their money in contradiction to the relevant agreements, which it

---

4 The Court used the testimony of Burgess to go from not having a preponderance of the evidence of a fraud to clear and convincing evidence of a fraud but did not consider the Stipulation and Schedules C and E and Gross Income, all of which had been approved by United States for sentencing with respect to Burg and Turasky with no explanation.

8

never has.[5] The Court did not state on the record what those misrepresentations or material omissions were or how they caused the losses in order to support the verdicts and the sentencing enhancement. *See*, *U.S v Spinney* 795 F.2d 1410 1415 (9th Cir. 1986).

This brings the Court to another 9th Circuit case that directly supports Harbour and shows there was no loss causation. The false statement by the Defendant must have caused the loss. *see U.S. v Meksian* 170 F.3d 1260 1263 (9th Cir. 1999). The Court's ruling was the false statement Harbour made to Burg and Turasky was how he would use their money. The new evidence proves there was no false statement, so no fraud and no loss causation and no relevant conduct. In *Meksian*, the 9th Circuit reversed the District Court sentencing, because the loss did not result from the false statement by the Defendant. The Second Cir. agreed with the 9th Circuit when it ruled; "[t]o establish loss causation the plaintiff must allege that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *See*, *US v Calderon*, 944 F.3d 72 (2nd Cir. 2019). Here, the government never even addressed how the misrepresentations to Burg and Turasky caused their losses.

The Defense objected to PAIF's contentions in Doc. 770-1 Exhibit 1 and the Court did not explain how the government had met the burden to overcome those objections. The Court ruled the evidence proved Harbour did not send any altered documents to PAIF and if he made material omissions it would be a fatal variance with the SSI (Doc. 757). The Court ruled PAIF did not even meet the preponderance of the evidence standard with respect to relevant conduct to the offense of conviction (Doc.801) and required Burgess (PAIF) to testify under oath, which meant he and PAIF were not "victims" at all. Then at Sentencing the Court simply stated by clear and convincing evidence PAIF is tied to the offense of conviction, then applied $3.4 million as a sentencing enhancement, but did not explain its factual findings on how it came to that

---

5 Under the law of the case doctrine, there are three factors that must be met for the Court to change its ruling. The government never attempted to challenge any of them. *Jeffries v. Wood*, 114 F.3d 1484, 1488-89 (9th Cir. 1997).

9

legal conclusion. The only "new evidence" for sentencing was the testimony of Phil Burgess and the "spreadsheets" he turned over on 12/1/23.[6] The "spreadsheets" provided no evidence to support the aging reports in May and July 2015 were *not* accurate. Burgess testimony was clear, he did not have any evidence that Harbour altered any documents and he received 14 borrowing base spreadsheets, which were accurate, since he testified the only items not accurate were the aging reports from May and July 2015. The government then specifically stated what was not accurate, 467 loans worth $212,320. The government did not say how those 467 loans were not accurate or if they were in May or July 2015. Regardless, per the testimony from the trial record, if all 467 loans were not accurate, then someone other than Harbour had to of misstated the aging reports. There is no evidence to counter this and the government has the burden.

The Court never ruled or determined what evidence existed to support Burgess testimony that the 7/31/15 aging report was not accurate. Besides the testimony of Burgess, nobody has ever said the 7/31/15 aging report was not accurate, not even Primus who was the accountant for Green Circle and Chief Credit Officer of PAIF. If it is not accurate where is the accurate one?[7]

The Court told the government it has the burden to prove Harbour committed fraud (11/29/23, pg.138). Burgess saying the 7/31/15 aging report was not accurate, and admitting he does not know if Harbour changed the numbers, then having two completely different stories of what was inaccurate both of which were 100% inconsistent with the other, and not providing the "real" or accurate 7/31/15 aging report cannot possibly meet the clear and convincing requirement to prove that Harbour changed the numbers. In

---

6 The Court must have decided to use the testimony of Phil Burgess as evidence for sentencing, but then decided to ignore the Defense evidence in Docs. 839 and 855 proving Harbour did not commit any fraud on PAIF without any explanation.

7 This has to be the first ever fraud case that alleges a false financial statement that was relied upon without providing the "real" financial statement to prove it was actually false. Otherwise how would you know?

order for the government to meets it burden, it was required to show by clear and convincing evidence what was not accurate on the 7/31/15 aging report, then show by clear and convincing evidence that it was Harbour who altered it.

The sole evidence was that Harbour received the 7/31/15 aging report and forwarded it on to Primus. Other than Burgess saying it was not accurate, there is no evidence that it was not accurate and if it was not accurate the evidence 100% shows it was Andreev, a Green Circle employee, who provided the non-accurate aging report, not Harbour. Burgess testimony did not provide any new evidence that Harbour actually committed wire fraud against PAIF for the Court to change its ruling in Doc's. 757 and 801. There is no evidence that Harbour made a false statement or the subject of any statement by Harbour to PAIF was false.

The government did not prove how the 7/31/15 aging report not being accurate caused PAIF to lose $3.4 million. Stated differently, how did the unproven false statement of an inaccurate aging report of 467 loans cause PAIF to lose $3.4 million? Even if the government produced a 7/31/15 aging report that was not accurate by 467 loans consisting of $212,320, and that somehow Harbour was the one who did the manipulation, that must be the direct cause of PAIF losing $3.4 million. *Id. Calderon* applies directly to PAIF. Per the government the "subject" of the fraud was the 467 loans, therefore those 467 loans had to of caused the loss.[8]

Burgess testified that PAIF loaned $5.5 million and Green Circle bank statements showed Oak Tree loaned $3,087,203. There is no question that the evidence proves Green Circle had over 18,000 consumer borrowers and the value of the consumer loans were at least $8.5 million and they were good loans. The Court did not require the government to prove how those 467 loans actually caused a $3.4 million loss. The Court did not explain

---

[8] It cannot be anything else because the court ruled that would be a fatal variance. Doc.757.

11

on the record, its fact finding process to determine how those 467 loans caused PAIF to lose $3.4 million.

In *Meksian,* the Defendant made false statements by overstating his income which led the SBA to loan him the money and they would not have approved his loan had he not made the false statement and the business subsequently failed. The 9th Cir. ruled the false statement is not what caused the business to fail and the loss. The same can be applied here, assuming the government does produce to the Court a shred of evidence that Harbour altered the 7/31/15 aging report by overstating the value of the consumer borrower's (which the evidence showed will be impossible), that did not and could not cause PAIF to lose $3.4 million. Neither the government nor the Court explained how the misrepresentation, false statement, of the aging report caused the loss, which is required under the case law.

The Court did not even address the Defense loss causation analysis in Docs. 839 and 855. The Defense actually provided the Court with a loss causation analysis and it was based upon the testimony and evidence provided by Burgess, the government and the evidence from the trial record, the Green Circle bank statements and the emails between Purifoy, Harbour and Primus. This loss causation analysis proved PAIF could not have lost any money, yet the Court never addressed it except by simply stating it had read the motions and ruled. It was the government's burden to prove the loss causation, not the Defense. In addition, the Court did not make any factual findings to support adding PAIF as a sentence enhancement.

The Court did not address the admission by the government that Harbour's Gross Income was not probative of any material fact in the case. The Defense pointed out to the Court how material this admission was to the Sentencing because it raised a substantial question to how the Court could include the people listed for loss causation. The Court did not state on the record the legal conclusion it reached to not address this admission.

## Conclusion

The government was required to prove by clear and convincing evidence and the Court was required to explain its legal conclusions and detail the critical fact finding process it went through to determine how the Defendant caused the losses for sentencing enhancements. The District Court was required to be the critical fact finder and make its own independent findings and explain how the Defendant's misrepresentations were responsible for the loss. *See Lonich, supra.* There is no question under the case law of this Circuit, Harbour's appeal of his sentence enhancement for loss causation and relevant conduct are not frivolous.[9] The Court failed to state what evidence was clear and convincing that they were tied to the offense of conviction and how Harbour's misrepresentations caused their losses. The Court relieved the government of its burden to prove that Harbour caused the losses, by not requiring them to provide the Defense or the Court a loss causation analysis. The Court's unexplained and unsubstantiated loss causation and relevant conduct conclusions dramatically changed Harbour's sentencing guidelines. Harbour is a Base Offense Level 7. The Court added sophisticated means (+2), money laundering (+1), obstruction (+2), and multiple counts (+2). At worst, Harbour was a Level 14 before subtracting 3 levels for acceptance of responsibility.

Without the Court's loss causation conclusions, Harbour is Level 11 which is a guideline range of 8-14 months. Substantial questions are raised under 18 U.S.C. Section 3143(b).[10]

All of this aside, even with the current sentencing in place, under the First Step Act, good time credits, programming and the eligibility of the Second Step Act or

---

[9] The Court never ruled how PAIF, Joe Cathey and Pat and Carol Hill were tied to the offense of conviction or defrauded. The Court did provide any reasoning why the extensive case law cited by the Defense in Docs. 804 and 849, did not apply.

[10] The guideline range for the tax plea is 10-16 months, but the Court could have sentenced up to 24 months. Which means disregarding the burden to prove loss causation added at least 72 months to Harbour's sentence.

halfway house, Harbour is actually looking at serving an additional 24-30 months in some sort of custody, including half-way house time no matter what happens and even if he loses the appeal entirely. With the perimeters of his actual sentence well-known and the plea bargain finally bringing Harbour's case to a close, it cannot be argued that Harbour is a flight risk. He has already done over two years and the future can only be better than the past.

If he wins his appeal, he will have already well-overserved the new time to which he would be eligible to be sentenced and the time he overserved can never be recaptured. Harbour has a wife, two young daughters, an 81 year old mother a sister, sisters-in-law, brothers-in-law, nephews, cousins, and still some friends in the community. Even if the worst comes to pass and Harbour remains sentenced to 8 years, he will have the same 24-30 months to serve were he to have to report back to a prison after an unsuccessful appeal. Harbour was on release for 2 ½ years then out again during the trial and was never a flight risk. Harbour meets the clear and convincing evidence that he is not a flight risk. The appeal could take more than a year for the 9th Circuit to decide and, if the 9th Circuit vacates the sentence solely for loss causation, Harbour will have spent 14 months more in prison than the maximum allowed pursuant to his plea on Count 24.

As the Court is aware the $500,000 property bond formerly in place has been exonerated. In view of everything addressed herein, we believe this case has a likely chance of reversal on appeal either on the merits or on sentencing. With no flight risk whatsoever, the Defense respectfully requests that Harbour be released on his own recognizance to report directly to a facility in the unlikely event that he has anything left to serve if his appeal is denied.

RESPECTFULLY SUBMITTED this 7th day of February 2024.

CHRISTIAN DICHTER & SLUGA, P.C.

By: /s/ Stephen M. Dichter
    Stephen M. Dichter

Justin R. Vanderveer
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Attorneys for Defendant David A. Harbour

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 7, 2024 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Kevin M. Rapp
Kevin.rapp@usdoj.gov
Assistant United States Attorney
Joseph F. Bozdech
Joseph.bozdech@usdoj.gov
Assistant United States Attorney
U.S. Attorney's Office
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
Attorney for Plaintiff


/s/ Yvonne Canez