Stephen M. Dichter, 004043
sdichter@cdslawfirm.com
Justin R. Vanderveer, 037657
jvanderveer@cdslawfirm.com
CHRISTIAN DICHTER & SLUGA, P.C.
2800 North Central Avenue, Suite 860
Phoenix, Arizona 85004
Telephone: (602) 792-1700
Facsimile: (602) 792-1710
Attorneys for Defendant David Harbour

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | Case No. 2:19-cr-00898-DLR |
| Plaintiff, | |
| vs. | **REPLY TO GOVERNMENT RESPONSE TO DEFENSE MOTION TO STAY FORFEITURE PROCEEDINGS** |
| David Allen Harbour, | |
| Defendant. | |

"Criminal forfeiture focuses on the disgorgement of a defendants ill-gotten gains." *United States v. Shkreli*, 779 Fed. Appx 38 41 (2nd Cir. 2019). "Criminal forfeiture operates in personam against a defendant to divest him of his title to proceeds from his unlawful activity as a consequence of his criminal conviction." *United States v Lazarenko* 476 F. 3d 642, 647 (9th Cir. 2007). Convicted defendants must forfeit "tainted property" - "property flowing .... or used in .... the crime itself," which "the defendant himself actually acquired as a result of the crime." *Honeycutt v United States*. 581 U.S. 554, 137, S. Ct. 1626, 1632, 198 L. Ed. 2d 73 (2017).

The items about which the parties are in dispute were all proven, by unrebutted government testimony, to have been acquired years before the crimes outlined in the crimes of conviction. It is beyond peradventure that jewelry and watches and gold club memberships acquitted years before the alleged fraud against Burg and Turasky, which

are the sole crimes of conviction, cannot have been the ill-gotten gains of the crimes of conviction.

Therefore the sole basis for proceeding against the property that was seized is as untrammeled, pure, non-fraudulent conduct, "substitute assets." Forfeiture of substitute assets is authorized up to the value of forfeitable property that cannot be located, has been sold, or deposited with a third party. *See*, *United States v. Nejad*, 933 F.3d 1162, 1165 (9th Cir. 2019). The substitute assets need not be traceable to the criminal proceeds of the crime. *United States v. Ripinsky*, 20 F.3d 359, 362 (9th Cir. 1994).

The document trail starts with Doc. 801 filed 11/6/2023. The defense had argued that the Court could only forfeit property connected with convicted conduct. The Court stated that it could order the forfeiture of proceeds of uncharged conduct "that, nonetheless, was part of the same scheme alleged in the counts of conviction." But, we now know, based upon other rulings, that there was no prior conduct that was part of the same scheme alleged in the counts of conviction. Although, for sentencing purposes, in ruling we think on sound bases will be reversed, the Court found that PAIF, Cathey, and Carol Hill constituted uncharged conduct that could be and was considered for enhancement to offense severity under the Guidelines and for restitution – as yet unstated – the trial proved *absolutely* that the property in question and listed in Doc. 801 (and again in Doc. 853) long-predated PAIF, Cathey, and Hill. The basis for the order of forfeiture with respect to the Items listed in ¶2 (a)-(k) is flatly wrong.

I.R.S. Agent Green showed, with great exactitude the source of those items. They came from gross revenue Harbour received in 2011-2012 or earlier. That is, from activities that were not only no part of any charge of conviction but, more importantly, were not shown to be fraudulent at all. The Court specifically excised from inclusion in sentencing anything connected with the proceeds Harbour received as a result of dealings with Bobrow, Jackson, Gray, KSQ and Canyon Road. All of the items of Abby Harbour's jewelry, which lie at the core of the controversy, were obtained during the pre-Operation

Choke Point days and were either Abby Harbour's sole and separate property because they were gifts from her husband or were community property in which Abby Harbour's undivided one-half interest cannot be severed for *forfeiture* purposes.[1]

Therefore, the sole basis for permitting forfeiture of the jewelry and other items is "substitute assets." In Doc. 853, the Court amended Doc. 801 and changed or added 21 U.S.C. §853(p) as a basis for forfeiture.

Forfeiture of substitute assets is only allowed when the ability to trace and locate the proceeds of the fraud was substantially impaired by the very manner in which Harbour committed the crimes that form the basis for forfeiture. The government can only forfeit substitute property as a result of any act or omission of the defendant.

(a) cannot be located upon the exercise of due diligence

(b) has been transferred or sold to, or deposited with a third party

(c) has been placed beyond the jurisdiction of the court

(d) has been substantially diminished in value, or

(e) has been commingled with other property which cannot be divided without difficulty

When this reaches the 9th Cir. it is more than likely they will agree that Harbour does not meet any of these requirements to allow the government to forfeit substitute property. The government traced and located all the money. Its newly minted, BFF, Phil Burgess, the lead defendant in a $75 million fraud suit brought by the SEC in the District of New Jersey, has all of Oak Tree's money, meaning that it has all of Burg's and Turasky's money all of which is within the jurisdiction of the Courts of the United States. It did not diminish in value, and it was not commingled with other property. Most importantly, Harbour committed no acts or omissions by that allows the government to

---

[1] The government made reference to third-party claims but did so as if there had been none filed. Nor does service of Doc. 927 show its service on Abby Harbour. However, Abby Harbour did file a third-party claim within the period in which she was allowed to do so. We have seen no disposition as to Abby Harbour's claim.

forfeit substitute property. To the extent the Court found, without any explanation, that the government had done so, respectfully, the Court erred, and we expect the 9th Circuit to so find.

"Prosecutorial misconduct amounting to a due process violation limits the government's power to seek criminal forfeiture." *Libretti v. U.S*. 516 U.S. 29, 42-47, 116 S. Ct. 356 133 L.Ed. 2d 271 (1995) "Egregious misconduct occurs when the prosecutor's manipulation of evidence is likely to have an important effect on the jury's determination." Quoting *Donnelley v DeChristoforo* 416 U.S. 637 647 94 Ct. 1868 40 L.Ed. 2d 431 (1974)

The government misrepresented the evidence to the court over 100 times. Its prosecutor told the court he had evidence he never really had. He also represented to the court it would hear testimony from government witnesses that would support his proffers and evidence. At the trial the government witnesses' testimony refuted the prosecutor's proffers and proved he made misrepresentations to the court. These false representations were intentional and manipulated the court into allowing testimony into the trial that should never have been allowed. This prosecutorial misconduct was a due process violation against Harbour and under the 9th Cir. legal authority will limit the government's power to seek criminal forfeiture.

The 9th Cir. ruled, in a money judgment it is the amount "received in connection with the commission of the crime." The purpose is to "eliminate the gains realized from criminal activity." U.S. v Casey 444 F.3d 1071 (9th Cir. 2006) The 9th Cir. will see that Harbour did not receive any money with respect to Cathey and Hill's, therefore there are no "amounts" or "gains" realized to be forfeited. FBI FA Paige and Purifoy testified 100% of Cathey and Hill's money went to KSQ and none of it was diverted to Harbour. Under the legal authority of the 9th Cir. Harbour did not have gains from Hills and Cathey to eliminate and award forfeiture. With respect to Burg and Turasky, Paige traced, located, their money too. It was transferred to the investment, Green Circle, and to

Harbour's entities that incurred the cost of Harbour's operations as testified to by IRS Agent Green, Laura Purifoy, Cathie Cameron and certified by the IRS in their settlement as shown in Document 841-1 Attachment D. Harbour did not have any ill-gotten gains from Burg and Turasky under the legal authority of the 9th Cir. and 18 U.S.C. Section 981(a)(2)(B) to award forfeiture.

The prosecutor admitted under questioning by the court the property it has in its possession and wants to use as substitute property was purchased with Harbour's Gross Income (FBI FA Paige Exhibit 918), that is the over $30 million received from KSQ and Canyon Road, none of which was proven to be the money of any lender or investor. Indeed, the prosecutor told the court that Harbour's Gross Income was not probative to any material fact in the case.

In addition, the substitute property also belongs to Abby Harbour, who is an innocent spouse. "A court may not order forfeiture of property of an innocent spouse." *U.S. v Lester*, 85 F.3d 1409, 1412 (9th Cir. 1996) Abby Harbour has a 100% interest in her property and a 50% interest in the other substitute property under the community property laws of the State of Arizona. "State law determines whether claimants have property interest." *U.S. v Hooper*, 229 F.3d 818 at 820 (9th Cir. 2000)

If the court does include substitute property, it shall conduct an ancillary proceeding "if a third party files a petition claiming an interest in the property." Rule 32.2(e)(2) and 21 U.S.C. Section 853(n). Abby Harbour filed a petition with the court that she has a 50% interest in the substitute property that is not her sole and separate property she received as a gift from Mr. Harbour.

The court has not yet granted this hearing yet, but when it does this hearing will be short because the prosecutor told the court that the jewelry was purchased with Harbour's Gross Income, and this was also shown in Exhibit 918. There is no fraud associated with Abby Harbour receiving her jewelry as a gift from Mr. Harbour and her ownership of the jewelry as community property. This admission by the prosecutor of Harbour's Gross

Income having no probative value to any material fact in the case was months after the forfeiture hearing, another misrepresentation by the prosecutor that hamstrung the court in making its forfeiture order.

Since the substitute property is not tainted property and per the admission of the prosecutor it was righteously purchased by Mr. Harbour and is either community property or a gift to Abby Harbour, the court must look to the legal authority of *Lester*, *supra.,* and order the government to return all of the substitute property back to Abby Harbour.

Not only is this property not tainted, but it served no purpose to any material fact in the case, therefore it cannot be related to any victim in the case. If it is not related to any victim, there cannot be any nexus to any victim. As we have repeatedly told the court, the gross income is all over the case against Harbour. The gross income is the non-existent finder's fee which is the alleged fraud of Cathey and the Hills. The gross income is the money in 2014 that Harbour used to front all the expenses he incurred to operate and build Oak Tree through his related entities, which were then reimbursed with Burg and Turasky money. Per the IRS the gross income came the exact same entities that Harbour transferred Burg and Turasky money as FBI FA Paige proved with her exhibits. Harbour's Gross Income having nothing to do with the government's case against Harbour means Harbour did not commit fraud against Cathey, Hill, Burg and Turasky and did not have any ill-gotten gains and did not have any tainted property.

**Allowable Expenses Are to Be Subtracted From Forfeited Amounts**

The Court ordered forfeitures based upon four alleged victims: Cathey, which will fall away when the November 1, 2024 Guidelines amendments are deemed retroactive; Carol Hill, the same, and Burg and Turasky where the expenses are greater than the total of their loans/investments. The 5th Cir. defined "direct cost" as "all the variable costs that can be specifically identified as cost of performing the contract." *U.S. v Landers*, 68 F.3d 882, 884 n.2d (5th Cir. 1995)

IRS Agent Lionel Green who audited Harbour for tax years 2010 - 2014, testified Harbour's expenses were directly related to his business, therefore they are direct cost. The 2014 Tax Returns Schedules C and E showed about $1.4 million in expenses for 2014.  The Defense expert reached the same total. The IRS stipulated and agreed, post-trial, to this expense figure. Where the government misled the Court, and the Court, thus, erred, was when the Court conflated "gross receipts" with "net income." The Court determined, wrongly, that because Harbour had no *net income* in 2014, his use of Burg and Turasky funds for "business expenses" was fraudulent. Without net income, the Court stated, there could be no proper business expenses. Standing alone, but it hardly stands alone, this error should be sufficient to reverse the case on appeal.

The Pujanza Management LLC Operating Agreement allowed the Manager to be reimbursed for cost incurred. The declaration and Settlement Agreement signed by Rich Turasky stated Harbour was the Manager and could use the funds loaned by Turasky to reimburse expenses that had been incurred at his discretion.

Fed. R. Crim. P. 32.2(b)(1)(B) - To determine the nexus, the court may rely on evidence admitted at trial as well as additional relevant and reliable evidence. The court did not consider the 2014 Tax Return Schedules C and E as relevant and reliable evidence when it determined the forfeiture for Burg and Turasky. The court did not consider the language in the Pujanza Management Operating Agreement specifically stating the Manager, Harbour, could use the money to reimburse expenses that had been incurred. The court did not consider Doc. 841-1 Attachment D showing the transfers of Burg and Turasky $695,000 to reimburse expenses that had been incurred. Doc 841-1 Attachment D aligns directly with the testimony of Burg, Turasky, Purifoy, IRS Agent Green and Cathie Cameron. The testimony of each witness, along with the 2014 Tax Return prove Harbour did not use Burg and Turasky money to pay for personal expenses, buy tainted property, or that the transfers were illegal or ill-gotten gains. The court did not explain why it ignored this evidence.

Joe Cathey - There were no illegal or unlawful Proceeds attained by Harbour, nor any illegal transactions under the case law. The evidence proved Harbour did not acquire any money from Cathey, let alone illegally. Harbour never met Cathey, never talked to him, never solicited him, never called, emailed, or texted him, never had a bargain with him, and never controlled or possessed his money. (FBI FA Paige testified Harbour was not a signer on the NorthRock bank account. There is no evidence of Harbour ever using the wire with Cathey to meet the elements of wire fraud) Under Milheiser there was no bargain between Harbour and Cathey.

Carol Hill - The same case law that applied to Cathey also applies to Hill. Harbour was acquitted on Carol Hill, which negates forfeiture. Hill testified she did not give Harbour her $81,000, she gave it to Dunsworth same as Cathey. Paige testified she did not trace $81,000 from Carol Hill into the NorthRock bank account. Without the tracing of any money, there cannot be any ill-gotten gains or fraud. Paige and Purifoy both testified that 100% of Hill's $500,000 loan went to KSQ, it was not wrongfully transferred nor diverted to Harbour, which is required under Monterey. Hill testified she wanted the high interest rates. Hill got exactly what she bargained for, there was no lie or misrepresentation about the nature of the bargain which is required under Milheiser. As with Cathey, there is no evidence the money Harbour received from KSQ, Harbour's Gross Income, came from Hill's $500,000 loan which is required for wire fraud under Lew.

The court stated at the 6/6/23 hearing the government shut down the lending operations and that is why the lenders lost their money. This relates to forfeiture due to the nature of the bargain under *Milheiser*. Cathey and Hill lost their money due to Operation Choke Point not because of any lie about the nature of the bargain. Further supporting there was no wire fraud and therefore no forfeiture or restitution.

Turasky - the court committed plain error awarding Turasky forfeiture. The government admitted that Turasky did not have any loss for restitution and Turasky

testified he had been paid all of his money, and he did not have a loss. 18 U.S.C. Section 981(a)(2)(C) - "In cases involving fraud in the process of obtaining a loan or extension of credit, the court shall allow the claimant a deduction from the forfeiture to the extent the loan was repaid, or the debt was satisfied, without any financial loss to the victim." Per the statute, Turasky is not eligible for forfeiture.

Burg has multiple issues when it comes to forfeiture. The evidence proved $600,000 of Burg's money went to the investment and the remaining $400,000 was used to reimburse expenses that Harbour had incurred. Per document 841-1 Attachment D and the case law, Harbour did not commit wire fraud against Burg. It also supports Burg and Turasky money was not used for money laundering in 18 U.S.C. 1956 and 1957. Paige traced Burg's money to the investment and to Harbour's related entities, these entities incurred the cost to operate Harbour's business per the testimony of IRS Agent Green, Purifoy and Cameron. Agent Green called the transfers that Paige traced as "inter-company transfers" and Purifoy called them "due to due froms" both are legal and commonly used in business. This came to completion when the IRS in its Settlement filed in Tax Court on 11/13/2023 allowed $1.4 million of business expenses to the same entities that Harbour transferred Burg and Turasky's $695,000. Therefore, there was no lie about the nature of the bargain on how Harbour would use their money. In addition, the IRS Settlement proved there was no wrongful transfer of Burg and Turasky's money under Monterey. Not only were there no ill-gotten gains, but there was also no wire fraud per the case law.

The Supreme Court, in *U.S. v Santos,* 553 U.S. 507 (2008), defined proceeds as profits to eliminate the merger problem. The IRS in their final audit of Harbour for 2014 did not consider the $400,000 of Burg and the $295,000 of Turasky that Harbour used to reimburse expenses as profits or gross income.

We expect the case to be reversed in its entirety and think the Circuit will, at a minimum, remand the case for resentencing. If the government proceeds at any point in

time before the Circuit has completely disposed of the appeal to sell off Abby Harbour's jewelry, we hope the Court will someday order the prosecutors to retrieve or replace it.

We do not dispute that the government can proceed along the path of forfeiture with respect to third-party claims but, even if it successful, the chances of reversal are so profound that the Court should nonetheless stay any property disposition.

RESPECTFULLY SUBMITTED this 13th day of August 2024.

CHRISTIAN DICHTER & SLUGA, P.C.

By: /s/ Stephen M. Dichter
      Stephen M. Dichter
      Justin R. Vanderveer
      2800 North Central Avenue, Suite 860
      Phoenix, Arizona 85004
      Attorneys for Defendant David A. Harbour

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 13, 2024 I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and for transmittal of Notice of Electronic Filing to the following CM/ECF registrants:

Kevin M. Rapp
Kevin.rapp@usdoj.gov
Assistant United States Attorney
Joseph F. Bozdech
Joseph.bozdech@usdoj.gov
Assistant United States Attorney
Jennifer Levinson
Jennifer.levinson@usdoj.gov
U.S. Attorney's Office
40 N. Central Avenue, Suite 1800
Phoenix, AZ 85004
Attorney for Plaintiff


/s/ Yvonne Canez