JON M. SANDS
Federal Public Defender
JAMI JOHNSON, NY Bar #4823373
Asst. Federal Public Defenders
250 North 7th Avenue, Suite 600
Phoenix, Arizona 85007
(602) 382-2700   voice
jami_johnson@fd.org
*Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>David Allen Harbour,<br><br>  Defendant. | No. CR-19-00898-PHX-DLR<br><br>**Reply to United States' Opposition to Defendant's Motion to Modify Conditions of Release** |

Defendant David Harbour, through undersigned counsel, hereby responds to the government's opposition to Mr. Harbour's motion to modify conditions of release. (Doc. 957.) The response in some instances appears to misapprehend the nature of Mr. Harbour's request and in others asks the Court to deny Mr. Harbour's request based on speculation unsupported by the record or by fact. As noted in Mr. Harbour's motion to modify his conditions of release (Doc. 955), the probation office does not oppose the requested modifications, which are modest, reasonable, and serve a legitimate purpose. Mr. Harbour addresses each of the government's concerns below.

    **I.**    **Removing the restriction on internet capable devices.**

Mr. Harbour requested removal of the condition that bars Mr. Harbour from using or possessing and internet-capable device primarily to permit Mr. Harbour to assist counsel in preparation of his appeal, and secondarily in order to facilitate Mr. Harbour's compliance with the separate condition that he "maintain or actively seek employment."

[Text redacted]

With respect to Mr. Harbour's ability to access and review legal materials, the government's suggestion that Mr. Habour could be provided with a "standalone computer without internet access" seems to misunderstand the nature of the condition, which does not prohibit Mr. Harbour merely from accessing the internet, nor merely from possessing a device that is connected to the internet, but instead prohibits him broadly possessing any device "capable" of internet access. While in custody first at CoreCivic in Florence and later at the BOP facility in Florence, Colorado, Mr. Harbour was provided with access to a computer that was not connected to the internet, for example because it did not have an ethernet cable connecting it to a local area network, and all available Wi-Fi networks were protected with a password. He was able to use this computer to review the entirety of his case file, which was provided to him by counsel on a BOP-approved thumb drive.

Access to such a device would, however, not comply with Mr. Harbour's current conditions of release, which bar him from accessing any device "capable" of accessing the internet, whether or not such device is actually connected to the internet. Essentially all computers available for purchase today—almost certainly including the computers on which Mr. Harbour accessed his discovery in prison—

are at least theoretically capable of accessing the internet, whether or not they are connected to the internet at any given point in time. It is not clear that there exists any device sufficient for the purpose of reviewing documents that also complies with the condition as currently written. Certainly, the government has not identified any, and counsel for Mr. Harbour has been unable to locate one.

In addition, Mr. Harbour had monitored access to the internet at both CoreCivic and while in BOP custody through the law library, which provided him with access to Westlaw so that he could read relevant cases and statutes. Mr. Harbour used these services regularly while in custody. Mr. Harbour also had access to email through CorrLinks.

The government's suggestion that paper transcripts are or could be sufficient underestimates the size of the record. I printed for my own review a double-sided copy of only the trial and sentencing transcripts in this case, without exhibits, and those transcripts alone occupy the entirety of a box measuring 1 cubic foot and weighing 20 lbs. The docket in this case is nearly 1,000 entries. Based on my review of the record to date, I believe that a copy of only the relevant portions of the record, including motions, transcripts of pretrial hearings, copies trial exhibits, and key cases would likely fill many Bankers Boxes and might weigh as much as 100 lbs. It would also take weeks to prepare.

Mr. Harbour does agree, however, with the government that the supervising officer should not have the burden of monitoring Mr. Harbour's internet access, which is why, after consultation with pretrial services, Mr. Harbour did not request an internet monitoring condition in lieu of removal of the condition altogether. Mr. Harbour is open to a monitoring condition but understands that as a practical matter that in complex fraud cases such as this one when pretrial services necessarily has limited understanding of the facts and limited understanding of what to be

looking for, that internet monitoring can quickly become burdensome and impracticable.

With respect to Mr. Harbour's need to seek and obtain employment, the government appears to misapprehend Mr. Harbour's argument that lack of internet access is materially limiting only Mr. Harbour's ability to look for a job. The problem is not merely with the job search itself. The problem is that short of manual labor—jobs for which Mr. Harbour, a 52-year-old man with no relevant work experience, would be ill-suited—essentially all jobs provide or require access to devices that are capable of accessing the internet. For example, even cash registers connect to the internet for purpose of updating inventory and processing online orders. Mr. Habour's prospect of securing employment that does not require him to use any computer whatsoever is low.

██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████████████

II.     **Replacing Home Detention with Curfew.**

As noted in Mr. Harbour's motion, the probation office does not oppose replacing home detention with a curfew requirement. The curfew requirement would allow the probation office to monitor Mr. Harbour's activities while permitting him to engage in ordinary activities such as grocery shopping and taking out the trash

without tasking pretrial services with determining whether such activities are "essential" enough to warrant approval. Mr. Harbour has recently been diagnosed with primary hypertension, for which first-line recommendation is lifestyle change including increased physical activity, which is difficult to accomplish on home confinement. Exhibit 1.

The government cites the COVID pandemic as an example of people exercising at home. First, the physical, mental health, and social problems caused by COVID-19 restrictions are at this point well-known and well-documented and do not reasonably seem a model to be emulated by Mr. Harbour for potentially years while the appeal is litigated. Second, even during the COVID pandemic, people were generally able to exercise outdoors, which Mr. Harbour's current conditions of release do not permit. Mr. Harbour therefore requests that he be placed on curfew instead of home confinement or, in the alternative, that exercise outside the home be added to the list of activities that may be approved by his pretrial services officer.

### III.   Conclusion.

Mr. Harbour therefore requests that this Court modify his conditions of release to permit internet access, to replace home detention with curfew, and to authorize pretrial services to remove his ankle monitor when necessary for medical appointments.

Respectfully submitted:     July 30, 2025.

JON M. SANDS
Federal Public Defender

*s/Jami Johnson*
JAMI JOHNSON
Assistant Federal Public Defender
*Attorney for Defendant*

# EXHIBIT 1

# (Filed Under Seal)