TIMOTHY COURCHAINE
United States Attorney
District of Arizona

KEVIN M. RAPP
Arizona State Bar No. 014249
Email: Kevin.Rapp@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-19-00898-PHX-DLR (DMF) |
| Plaintiff, | **UNITED STATES' MOTION TO REVOKE RELEASE** |
| v. | |
| David Allen Harbour, | |
| Defendant. | |

## INTRODUCTION AND SUMMARY

Defendant David Allen Harbour ("Harbour") has been soliciting investor(s) in violation of his release conditions. In sum, Harbour sent an email requesting that Daryl Deel ("Deel"), a victim/witness, invest $225,000 in Harbour's latest investment scheme. This Court specifically prohibited Harbour from contacting Deel and soliciting investments from anyone. In addition, he has solicited his own mother for the same investment. The email also details how Harbour is contemplating opening a bank account for investor funds and, therefore, incurring financial obligations. These actions were prohibited by this Court and Harbour has once again violated this Court's order. Lastly, Harbour also attempted to have this Court order a condition of release in violation of an Arizona Superior Court Order

which seriously calls into question his candor to the Court and his assigned pretrial services officer.

In sum, Harbour's array of violations triggers a statutory presumption that no conditions or combination of release conditions will assure the economic safety of the community and of others. *See* 18 U.S.C. § 3148(a)-(c). The United States therefore requests that this Court revoke his release conditions, have him voluntarily surrender to the U.S. Marshal's service, and schedule a hearing called for by the statute to determine Harbour's release status, if any. *See id*. at § 3148(b).

## RELEVANT FACTS

**A.    Release Conditions**

On August 8, 2019, Defendant was released from custody with conditions that included two terms relevant to this motion:

1. defendant shall not solicit investors for any investment while on Pretrial Release.

2. The defendant shall not obtain any new financial accounts without prior notification and approval of Pretrial Services. The defendant shall not make any financial transactions totaling over $1000.00 in any month to any person or entity without prior approval of Pretrial Services. Any transaction over $1000 to any person or entity in any month that benefits defendant also requires Pretrial Services approval. (Doc. 17) [1]

On March 1, 2022, Harbour was found in violation of certain conditions of his release and held without bond. (Doc. 346) The Magistrate Judge found that Harbour violated the following conditions:

1. Defendant Shall Not Commit Any Federal, State or Local Crime (Doc. 17)
    a. The court found that there was probable cause that Harbour committed Conspiracy to Commit Wire Fraud, Bank Fraud, and False Statement on Loan and Credit Applications in violation of federal law.

---

[1] These terms were also imposed in amended release conditions issued on May 19, 2020, and March 2, 2021. (Docs. 89 and 221)

- 2 –

    2. Avoid all direct or indirect contact with persons who are considered alleged victim(s), potential witness(es) including Burg and Turasky (Doc. 17)

    3. Notify Pretrial Services of Financial Transactions (Doc. 221)

In sum, the Magistrate Judge found that Harbour violated his condition of release in "multiple ways" and that there are not conditions the Court can set that can reasonably assure the Defendant's appearance at future court proceedings and that Defendant Harbour is unlikely to abide by any condition or combination of conditions of release. *See* 18 U.S.C. § 3148; (Doc. 346)[2]

On January 30, 2023, this Court released Harbour during trial and imposed the following conditions of release relevant to this motion:

> (1) avoid all direct or indirect contact with any persons who are considered alleged victim(s), potential witness(es), or codefendant(s): Kenneth Bobrow, Victoria Bobrow, Steve Baker, Mark Burg, Phillip Burgess, Pam Case, Joe Cathey, **Daryl Deel**, Melvin Dunsworth, Steve Emmons, Rhonda Gray, Carol Hill, Pat Hill, Maya Langbein, David Lunn, Bart Shea, Patrick Spaulding, Richard Turasky, Dan Wilson, and Allision Wilson. Contact exclusively through the defendant's counsel of record is permitted. The Government may seek to add or remove individuals on motion to the Court. (emphasis added) (Doc. 570, at 4)

> (2) Not directly or indirectly solicit investors for any investment while on Pretrial Release, whether as part of employment or otherwise. (*Id.*)

---

[2] This Court, after a *de novo* review, found that Harbour violated his conditions but imposed a cash bond of $500,000 as a condition of his release. (Doc. 375) Harbour was never able to satisfy this condition and remained in custody pending trial. Both the Magistrate Judge and the District Court, however, determined that Harbour did not commit the separate crime of witness tampering. (Docs. 346 and 375) After trial at sentencing this Court imposed a two-level increase for obstruction finding that he did commit witness tampering: "I've heard enough. I recall. So, I am going to find that the government has proven by clear and convincing evidence that defendant engaged in witness tampering." (Doc. 869; 17: 21-24)

>    (3) Not solicit money, property, or assets of any kind from any individual or entity for any purpose, including investments, loans, gifts, whether or not that solicitation directly or indirectly benefits Defendant or his spouse. (*Id.*)

On January 31, 2024, a year later after being convicted for numerous counts of wire fraud and transactional money laundering, Harbour was sentenced, and the Judgement included the following terms once he was released from custody:

>    (1) avoid all direct or indirect contact with any persons who are considered alleged victim(s), potential witness(es), or codefendant(s): Kenneth Bobrow, Victoria Bobrow, Steve Baker, Mark Burg, Phillip Burgess, Pam Case, Joe Cathey, **Daryl Deel**, Melvin Dunsworth, Steve Emmons, Rhonda Gray, Carol Hill, Pat Hill, Maya Langbein, David Lunn, Bart Shea, Patrick Spaulding, Richard Turasky, Dan Wilson, and Allision Wilson. Contact exclusively through the defendant's counsel of record is permitted. The Government may seek to add or remove individuals on motion to the Court. (emphasis added) (Doc. 930, at 4)

>    (2) not directly or indirectly solicit investors for any investment while on Pretrial Release, whether as part of employment or otherwise. (*Id.*)

>    (3) You are prohibited from making major purchases, incurring new financial obligations, or entering into any financial contracts over $5,000.00 without the prior approval of the probation officer. (*Id.*)

On March 13, 2025, this Court over the government's objections released the defendant pending appeal. (Doc. 951) This Court again imposed the terms of released that were identical to the terms that were contained in his Judgement, namely the prohibition against contacting numerous victim/witnesses, including Daryl Deel[3], and solicitating investors.

---

[3] The victims were referenced by initials in the Judgement.

**B. Violations**

On November 1, 2024, while in custody, Harbour sent a five-page singled spaced email to victim Daryl Deel outlining in detail an investment opportunity and solicitating him for an investment with the following pitch:

> "I need your financial help to launch. I want to make this as risk free as I can for you. My mom owes around $310k on her condo and it is worth around $650k depending on which site you check. I would like to a line of credit for $300k to start JHS and JHE. My mom says you advanced $75k in March 2023, so that would leave $225k. Once I get the PO's the company will have great value and be able to pay you back.[4] I will not be on the account. I would like the first draw to be $50,000 and the next draw will not be until we have met all the deadlines of the first draw. You will see the total amount of the draws is around $150k which includes my legal."

> "I will for sure get enough PO's to pay you back. If I don't, which is not an option, when my Mom sells her Condo you will get paid back….I think we will sell for a Billion dollars, but even if we don't, we will make enough to pay people back and have a great life."

> "My Mom will sign whatever documents you need and Kevan can create any documents you need to secure your interest in the money comes in from sales." (Ex. A)

In addition to solicitating Deel for an investment there are two additional violations implicated by Harbour's email. First, it appears from the email that he has already solicited his mother to invest in his purported investment opportunity because Deel's contribution would apparently be secured by equity in her condominium. This is, of course, another investor and Harbour would be prohibited from soliciting her as well. Harbour's mother is 83 years old and likely vulnerable to Harbour's demand to liquidate a safe and secure investment (her condo) to invest in Harbour's new quixotic scheme. This Court may recall that the government pointed out that in 2015, when Harbour's various schemes were unravelling, he started using his mother's bank account to shield money from defrauded

---

[4] PO likely means purchase orders.

- 5 –

investors. In sum, Kathy Harbour received $439,125 sourced from Joel Tucker dba Graywave Capital Management LLC, Melvin Dunsworth dba KC Lending LLC, and other Harbour controlled accounts and entities. (*See* Doc. 873-1) The Government's concern was prescient because as recent as February 2025 the undersigned advised this Court of the following:

> MR. RAPP: Judge, can I just interject for a minute on that? I'm not saying that she's involved in his fraudulent scheme. I'm saying that she is north of 80 years old. We have heard evidence of Mr. Harbour using -- taking advantage of vulnerable victims. He had a huge tax liability, and one of the ways to evade taxes is to use a nominee bank account and have money flow through it.
>
> And all I would like to do is question her about that to figure out why he was using her account post-indictment. And so, our concern is that if he goes home to her, that he may use her in some fashion unbeknownst to her or, you know, maybe a trusting mother, but we'll be back -- we'll be right back where we started. (Doc. 953; 32:1-6)

Another term of Harbour's release includes that Harbour was prohibited from making major purchases, incurring new financial obligations, or entering any financial contracts over $5,000.00 without the prior approval of the probation officer. (Doc. 930) Harbour clearly is setting up an account to facilitate an investment by Deel (and perhaps others) and receive "purchase orders" that would constitute a financial obligation. This is also prohibited. He tells Deel that he will not be on the bank account, but the implication is he is clearly in control of the funds. (Ex. A)

Finally, the investment that Harbour is pursuing, in violation of his conditions, also constitutes employment that he failed to disclose to probation: "You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change."

(Doc. 951) The concern that Harbour would pursue a job that involved soliciting investors was raised at the February 24, 2025 hearing on his release conditions:

> MR. RAPP: Now we have a defendant who has proffered two jobs, one they were unwilling to give this Court much information about because they had patents pending,[5] and it was some kind of an investment job. And so that I guess has gone away, but that by definition would require him to solicit investors.
>
> THE COURT: Before any job he takes, he'll have to -- if he's released, he'd have to clear it with Pretrial Services and the probation office. (Doc. 953)

Upon his release this Court impressed the severity of violating a condition:

> THE COURT: And, Mr. Harbour, these are the conditions. Now, let's make sure we understand. Last time there was a problem, and I think you didn't quite understand how serious every condition is. And if there's a close call about anything you're going to do, check with Pretrial Services or your probation officer to make sure you're not going to step across the line, because you'll end up back in custody immediately. You understand that?
>
> THE DEFENDANT: Yes, sir.

(Doc. 954; 5:1-4)

Next, Defendant attempted to circumvent an Arizona Superior Court Order of Protection by urging his attorney to request that he be allowed to have contact with his children knowing at the time he knew full well that he was prevented from having any contact by virtue of an order of protection issued by Maricopa County Superior Court Commissioner Giaquinto. (*See* Ex. B) The Superior Court Commissioner granted the Order after considering allegations that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Importantly, Harbour intentionally failed to inform this Court of the existence of this serious Order in a brazen attempt to have this Court circumvent this existing order. Fortunately, the existence of the Order or Protection was found by his assigned pretrial

---

[5] Harbour sought a patent for this product. (*See* Ex. D)

- 7 –

officer before this Court allowed for contact with his children. (Ex. C) Last, the email from the PTS officer demonstrates that neither Harbour nor his attorney disclosed the existence of the Order to this Court. (*Id.*)

## APPLICABLE LAW

In the ordinary course, defendant would have remained in custody to serve his sentence, however, he requested release pending appeal. Title 18 U.S.C. sections 3146 and 3148 govern the granting, modification, and revocation of release pending appeal. Section 3148 provides that a court or a judge shall release or detain a person according to the provisions of section 3146 even though that person has been convicted of an offense and is either awaiting sentence or has filed an appeal (or a petition for a writ of certiorari) unless the court has reason to believe that no one or more conditions of release will reasonably assure that the person will not flee or pose a danger to any other person or to the community. Here, the court released Harbour on certain conditions. The judicial officer is given the power to amend his order at any time in order to impose additional or different conditions of release even if these conditions result in the defendant having to remain in custody. 18 U.S.C. §3146(e). Considering Harbour's violations of his conditions, the court should order Harbour to surrender to the U.S. Marshals, set a hearing immediately to determine if his release should be revoked pending appeal, and remain in custody.

## ARGUMENT

Harbour is a serious economic danger to the community. While in custody he attempted to solicit investments from a victim/witness Deel and apparently his 83-year-old mother by urging her to access equity in her condominium for an investment. (Ex. A) Harbour knew he was prevented from doing so if he was released from custody and certainly knew this was prohibited while in custody. Second, he is opening a bank account to accept funds from investors. He clearly understood that having a bank account is in violations of his conditions as he advises Deel that his name would not be on it. His release

conditions prohibited him from taking on any additional financial obligations. Third, the investment that he is pursuing is clearly employment that he failed to inform his PTS officer that he was pursuing. Last, he attempted to have this Court circumvent a Superior Court Order of Protection preventing contact with his children. (See Ex. B)

This Court should reconsider his release pending appeal, and it may do so under § 3148(b)(1)(A) or (B). The facts set forth above and in the attached exhibits establish probable cause to believe that Harbour is a serious economic danger to the community. They also establish by clear and convincing evidence that Harbour violated conditions that were imposed upon release but instead did so while in custody by *directly* contacting a named victim and soliciting him for an investment.

Defendant has been convicted by a jury and bears the burden of establishing his entitlement to release on conditions, including, *inter alia*, proving by clear and convincing evidence that he is not likely to flee or pose a danger, including economic danger, to the safety of any other person or the community if released. 18 U.S.C. § 3143(b)(1); *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985). Given his behavior while in custody and now on release, he cannot meet that burden.

Harbour may readily acknowledge that the email does solicit Daryl Deel for an investment, proposes securing the investment with equity in his mother's condo, discusses setting up a bank account, and he may even concede that he knew that these were prohibited activities. But, he may argue, this email was from 2024 and it took place while he was in custody, therefore, it is not technically a violation of his release conditions. This misses the point, to put it mildly. As argued previously, Harbour continues to pose a severe danger to the community that also encompasses economic danger. *United States v. Hoover*, 2014 WL 2094201 (D. Az 2014) ("The Ninth Circuit allows district courts to assess the economic danger of a defendant's release, not just the defendant's use of force or physical violence); *United States v. Reynolds,* 956 F.2d 192 (9th Cir. 1992.) ("We agree with the district court that Reynolds has failed to show by clear and convincing evidence that he does not constitute an economic danger to the community. We further hold that danger may, at least

in some cases, encompass pecuniary or economic harm."); *see also United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir. 1979) (danger is not limited to physical harm; the concept includes the opportunity to exercise a substantial and corrupting influence). The Court attempted to distinguish *Provezano* from Harbour's situation when he was released pending appeal stating:

> "[Provezano] had a large body of people who were under some control by him and his family. Mr. Harbour doesn't have anything close to that. In fact, the people who he's relying on are no longer available to him for that reliance for money when he needed it. He had especially one person who he took extreme advantage of. That person's no longer available to him for that.

(Doc. 953; 35-36)

The Government respectfully disagrees with this Court's analysis of *Provenzano* as it applies to Harbour. Here, Harbour is essentially "going back to the well" to solicit both his mother and Deel who provided him funds and/or access to bank accounts to launder money during his scheme to defraud. In sum, his close proximity to his mother, in particular, access to a computer and a phone, gives him the opportunity to, like *Provenzano*, exert a "corrupting influence."

In any event, the cases that address economic danger are not limited to *Provezano* or *Reynolds*. Like the instant case, in *United States v. Cohen,* 2010 U.S. Dist. LEXIS 138508, at *26–*27 (N.D.Cal. Dec. 20, 2010), the District Court upheld a Magistrate Judge's pretrial detention order based on economic harm where "fraudulent activity is ongoing, or defendant has a propensity to continue fraudulent activity."

The best discussion of economic danger, however, is found in *United States v. Madoff*, 586 F.Supp.2d 240, 250–54 (S.D.N.Y. 2009). Although recognizing that pretrial detention for danger to the community primarily has occurred in connection with felonies enumerated in 18 U.S.C. § 3412(f), the Madoff court accepted that, in certain circumstances, economic or pecuniary harm "may give rise to a consideration for danger for purposes of detention, either prior to trial or where the convicted awaits appeal." *Id*. at

253. (The Court concludes that economic danger is a proper consideration in pretrial bail determinations, based on *Reynolds, Cohen* and *Madoff*). *See also United States v. Possino*, 2013 WL 1415108, at *2 (C.D. Cal. Apr. 8, 2013) ("If Congress had meant to limit detention to the offenses listed in 18 U.S.C. § 3412(f), it could have said so. The presumption of detention for § 3412(f) offenses is not inconsistent with proving economic danger by clear and convincing evidence. In the absence of clear statutory guidance, the Court declines to limit pretrial detention for economic danger only to those offenses listed in § 3412(f)");*United States v. Tragas*, No. 09-20023-10, 2020 WL 5064383, at *7 (E.D. Mich. Aug. 27, 2020) (denying defendant's motion for compassionate release because "[w]hile defendant has no violent criminal history," his extensive fraudulent activity rendered him an economic danger to the community). Importantly, *Madoff* and *Possino* are distinguishable from the instant case as both defendants, unlike Harbour, were found to have violated release conditions *pre-conviction*. Finally, Defendant's dishonesty for failing to disclose to this Court the existence of an Order of Protection that prohibited him from engaging in activities that he was asking this Court to order as a modified condition of release further supports revocation.

In the final analysis, from the date Harbour was released on conditions in August 2019 he has an interrupted series of violations that were both prior to and post-conviction that have included committing state and federal crimes (Conspiracy to Commit Bank Fraud and False Statement on a loan application), tampering with witnesses (as found by this Court at sentencing) , failing to advise PTS of opening financial accounts, soliciting investors post-conviction that he was prohibited from contacting, etc. Before revoking Harbour's release, Magistrate Judge Fine aptly described the frustration with Harbour's lack of compliance to release conditions and the inability of PTS to supervise him while out of custody stating:

> "[N]o matter how these conditions get written, and I have attempted to do it three times with the government and defense counsel, three times, initially and twice on revocations. No matter what I write, I wind up with a defense attorney in front of me telling me that that

transaction's okay because the language didn't cover it. Mr. Harbour's free to do whatever he wants financially based on characterizations by him and his cronies about what the money is. So, people are reading the release conditions and they're quelling through the cracks between them so that Mr. Harbour is completely unsupervised financially." (Doc. 356; 71:14-22)

## **CONCLUSION**

For the foregoing reasons, the United States moves the Court to Order Harbour to surrender to the U.S. Marshal's in the Sandra Day O'Connor Federal Courthouse, set a hearing to reconsider his release conditions, and conduct a hearing pursuant to 18 U.S.C. § 3143(b).

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Kevin Rapp*
KEVIN M. RAPP
Assistant U.S. Attorneys

|   |   |
|---|---|
| 1 | **CERTIFICATE OF SERVICE** |
| 2 | I hereby certify that on the 30th day of October, 2025, I electronically transmitted |
| 3 | the attached document to the Clerk's Office using the CM/ECF System for filing and |
| 4 | emailed a copy to the following CM/ECF registrant: |

Jami Johnson
*Attorney for Defendant*

*s/Daniel Parke*
U.S. Attorney's Office