TIMOTHY COURCHAINE
United States Attorney
District of Arizona

KEVIN M. RAPP
Arizona State Bar No. 014249
Email: Kevin.Rapp@usdoj.gov
Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4408
Telephone (602) 514-7500
*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, <br><br> Plaintiff, <br> v. <br><br> David Allen Harbour, <br><br> Defendant. | No. CR-19-00898-PHX-DLR (DMF) <br><br> **UNITED STATES' SECOND SUPPLEMENTAL MOTION IN SUPPORT OF REVOKING DEFENDANT'S RELEASE AND REPLY TO DEFENDANT'S RESPONSE TO THE UNITED STATES CONSOLIDATED MOTION TO REVOKE RELEASE AND SUPPLEMENT [Doc. 988]** |

## ARGUMENT

**A. Harbour's third email to Deel provided by defense counsel supports revocation.**

On January 30, 2023, this Court, over the government's objection, set certain conditions of release during trial for Defendant David Allen Harbour ("Harbour"). (Doc. 570) Those conditions included that Harbour does not have any contact with Daryl Deel and not solicit money, property, or assets of any kind from any individual or entity for any purpose, including investments, loans or gifts, whether or not the solicitation directly or indirectly benefits Defendants or his spouse. (*Id.* at 1) On March 7, 2023, Harbour was taken into custody after being convicted of number counts of wire fraud, transactional

money laundering and pleading guilty to tax evasion. (Doc. 694)

On March 15, 2023, while in custody, Harbour directed his mother to contact Daryl Deel for the purposes of obtaining funds for legal fees and, importantly, $30,000 for an investment that misrepresents was for Abby Harbour's investment in Harbours' Jail House juice scheme. (Doc. 988-2) Deel states to Kathy Harbour "let me know when you need the additional $30,000 which I understand will be used for the tax attorney and for Abby's investment in JHS." (*Id.*) In addition, Harbour in his latest filing misrepresents to this Court that "Abby Harbour was extensively involved in research and planning [of JHS]." (Mot. at 8; fn. 2) Contrast this claim with Harbour's acknowledgement to Deel in his November 21, 2024, email, "Abby is not involved in any of this and has no idea what is going on and cannot be." (Doc. 967-1, at 6)

This is a clear violation of his conditions as he was directing someone to violate release conditions while he was in custody. In addition to the previous emails Harbour sent to or directed another to send to Deel, it represents a third basis to revoke his release and/or find him to be an economic danger to the community.

**B. Harbour's response to the Motion to Revoke and Supplemental Motion is Unavailing**

Harbour's response fails to address the government's Motion to Revoke Release and Supplemental Motion to Revoke in any meaningful way. First, it fails to address the case law that supports that offsets do not reduce loss if they are Ponzi payments, are designed to lull the victim into a false sense of security, and were made after Harbour was made aware that he was under investigation. In this case, others may have paid back victims on behalf of Harbour (*e.g*., Deel, Dunsworth, etc.) but that would not reduce his loss. Harbour also fails to address the fact that restitution even with offsets still exceeds $3.5 million. *See* USSG 2B1.1(J).

Second, Harbour fails to address the delay in filing an opening brief. Harbour, by failing to respond, concedes that he would not be released at the earliest until January 2027

as he does not take issue with the Government's calculations. Harbour does not address the possibility that he would lose credit for good time behaviour by using a smuggled phone to send an email to a person prohibited by his release conditions, soliciting an investment and using unapproved emails.

Second, Harbour fails to adequately address the numerous instances of forging documents, hijacking email addresses that supports that Harbour sent an email to Deel while out of custody on March 16, 2025, rather than his mother. There is no response to Harbour concocting the email involving the deceased Pat Spaulding, forging gift letters for the Georgia transaction, etc. Regarding emails from Bobrow's and Purifoy's computers they swore under oath they did not send them, and Harbour had access to the iPad and computer. There is no credible countervailing evidence that contradicts their claims. Again, Harbour does not address that he created an email (winnie081921@gmail.com) while in custody and sent it to an email that was not approved by the BOP.

Third, Harbour is incorrect about this Court's authority to review Harbour's release conditions when new evidence that is presented that had this Court been aware of it during his original release hearing it would been important to its decision to release him on conditions. In any case, the motion to revoke, the supplemental motion to revoke and this second motion to revoke is not a reconsideration of the Court's previous ruling but motions to revoke for newly discovered evidence and violations of his release conditions. *See e.g., United States v. Bascue,* 1996 U.S. Dist. LEXIS 1919 (D. Ore. 1996) (reconsidering its prior order of *release* pending defendant's appeal); *United States v. Spadoni,* 2012 U.S. Dist. LEXIS 46956, (D. Conn. 2012) ("Simply put, a district court is not divested of jurisdiction to issue orders concerning custody or *release* of a defendant while his conviction is on appeal."); *Stein v. Wood*, 127 F.3d 1187, 1190 (9th Cir. 1997*)* ("[A] district court retains jurisdiction to issue orders regarding the custody . . . [of a defendant] even after an appeal has been taken."). Thus, this Court retains jurisdiction over Harbour's release status during the pendency of his long-delayed appeal and this Court may consider any motion that would affect his release status, including the present motions to revoke

release.

Fourth, Harbour confuses the existence of JHS Enterprises, LLC with his efforts to solicit new investor(s) in violation of his release conditions. Indeed, Harbour quotes his trial counsel who misrepresents to this Court, "its not an investment business." (Mot. at 7) By definition, the JHS Enterprises relies solely on investors which is why Harbour is soliciting investors such as Deel and by extension his mother.

Last, Harbour does not address the core issue that Harbour represents a serious economic danger to the community. *Madoff* and the other cases cited by the government involved defendants pre-conviction. Here, Harbour has already committed obstruction pretrial by engaging in witness tampering, committing bank fraud and violating other financial conditions imposed upon him.

In the final analysis, Harbour on three separate occasions has sent emails to a victim/witness that this Court specifically prohibited him from contacting, either directly or indirectly for an investment. He did so after violating his release conditions pending trial for committing a federal offense and violating other financial conditions. In addition, he has been convicted of numerous counts of wire fraud and transactional money laundering. This Court found after trial that he engaged in obstruction by tampering with witness before trial. Harbour's release should be revoked.

Dated this 18th day of November, 2025.

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

*s/ Kevin Rapp*
KEVIN M. RAPP
Assistant U.S. Attorney

- 5 –

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 18th day of November, 2025, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and emailed a copy to the following CM/ECF registrant:

    Jami Johnson
    *Attorney for Defendant*

<u>s/Daniel Parke</u>
U.S. Attorney's Office