IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>David Allen Harbour,<br><br>　　　　　Defendant. | No. CR-19-00898-001-PHX-DLR<br><br>**ORDER** |

On March 13, 2025, the Court entered an order releasing Defendant David Harbour from custody during the pendency of his appeal. (Doc. 950.) Defendant was released on condition that, among other things, he have no direct or indirect contact with alleged victims, including Daryl Deel, and that he not directly or indirectly solicit investors for any investment while on release. (Doc. 951.)

While in custody, shortly before his release, Defendant sent a seven-page single spaced email to Deel describing a business he was creating to sell energy drinks called Jail House Shine ("JHS") and Jail House Energy ("JHE")[1] ("the Solicitation Email"). (Doc. 967-1.) The Solicitation Email explained in detail Defendant's beliefs about the demographics of his target customer pool, and his communications with a "flavor company" and branding and website companies. It also discussed Defendant's extensive

---

[1] Although Defendant's' conditions of release before and after sentencing prohibited contact with Deel and the solicitation of money from investors, there were no such conditions while Defendant was in custody. The Court therefore did not find that Defendant had violated his conditions of release by sending the Solicitation Email.

1  work with manufacturers on the price of the can and with tattoo artists creating the design
2  for the can and boxes. (*Id.* at 4 ("The artwork is still being done, so far it looks
3  incredible.").) The Solicitation Email describes Defendant's discussions with "Pilot Flying
4  J and Terribles on getting our product in their stores." (*Id.*) It indicated that the business
5  was ready to launch and that Defendant was eager to get the business off the ground—he
6  just needed financing.

> I have put all the pieces together with a lot of help from friends on the outside. I have a detailed operations guy to run everything, I have the flavor company, manufacturer, branding, website, designer of art work and stores who will buy it. All I need is help getting across the finish line.

(*Id.* at 6.)

The Solicitation Email asked Deel for help launching Defendant's new business by providing funding that Defendant would make "as risk free as [he could]" by using the equity in his mother's condo as collateral.

> I need your financial help to launch. I want to make this as risk free as I can for you. My mom owes around $375k on her condo and it's worth around $650k depending on which site you check. I would like a line of credit for $300k to start JHS and JHE. My mom said you advanced $75k in March 2023, so that would leave $225k. I will send you the source and uses that I built for your review so you can see how the money will be used. . . . Kevin Acord will open the bank account . . . . He is going to have a lady in his office do the Quick Books . . . . I will not be on the account. I would like the first draw to be $50,000 and the next draw will not be until we have met the deadlines of that first draw.
>
> . . .
>
> [W]hen my mom sells her condo you will be paid back.
>
> . . .
>
> My mom will sign whatever documents you need[.]

(*Id.* at 5–6.)

On March 16, 2025, three days after Defendant's release pending appeal, an email was sent to Deel, purportedly from Defendant's mother (the Post-Release Email). (Doc. 982-1.) The Court found that the Post-Release Email was authored by Defendant and sent

as a follow-up to the Solicitation Email. The Court found that Defendant violated the conditions of his release by sending the Post-Release Email to Deel and ordered that Defendant be returned to custody. On December 12, 2025, Defendant filed a motion to reconsider the revocation of his release (Doc. 1013), which is before the Court.

"Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993). Such motions should be granted only in rare circumstances and not be used for the purpose of asking a court "'to rethink what the court had already thought through—rightly or wrongly.'" *Defenders of Wildlife v. Browner,* 909 F. Supp. 1342, 1351 (D. Ariz. 1995) (quoting *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.,* 99 F.R.D. 99, 101 (E.D. Va. 1983)).

Defendant argues that the Court's findings about his mother's testimony were manifestly erroneous. Specifically, Defendant contends that Mrs. Harbour's testimony about the purpose of the Post-Release Email explains what she really meant—she "sent the email because she wanted to talk to Mr. Deel about selling her home and because he had a lien on it and she was considering selling her home so she could purchase a larger one that would accommodate her son and eventually visits from his children." (Doc. 1013 at 5.)

Defendant's arguments about Mrs. Harbour's testimony do not change the Court's findings about the purpose of the Post-Release Email. The Post-Release Email was oddly worded. It did not convey the messages that Mrs. Harbour testified she was trying to convey. Instead, the email asked for the same thing as the Solicitation Email—help for Defendant backed by the equity in Mrs. Harbour's condo. It did not ask for help to buy a new home. It did not state Mrs. Harbour was intending to buy a new home. It did not state that she wanted to sell her house. It did not mention her intent to buy a larger home. It did not ask for help resolving the pending lien on her condo.

The Court determined that the Post-Release Email was a thinly veiled follow-up to the Solicitation Email, worded to avoid detection of release conditions violations. It

conveyed the message to Deel that Defendant was released from custody and was eager and ready for Deel's money. (Doc. 982-1 at 2 ("David is home! . . . [H]e is chopping at the bit[.]").) It asked for Deel's help for the benefit of Defendant. (*Id.* ("I want to help him if you can help me.").) The only logical explanation for such an undefined request for help is that a prior communication explained to Deel what help was being requested. That prior communication was the Solicitation Email.

There is no evidence of Mrs. Harbour having any other communication with Deel that would have informed him of what she was asking in the Post-Release Email. As noted in Defendant's motion, there was no "evidence regarding the nature, extent or frequency of Mrs. Harbour's communication with Deel in the time leading up to the [Defendant's] release from prison[.]" (Doc. 1013 at 5.) However, there was evidence of Defendant's communication with Deel, namely the Solicitation Email. The Solicitation Email laid out in detail what Defendant was asking for—financing for the new business. And like the Solicitation Email, the Post-Release Email focuses on the equity in Mrs. Harbour's condo. It closes with a request for advice that again is undefined and does not suggest that the advice sought is about buying a larger, more expensive home.

The Court does not find Mrs. Harbour's testimony credible. From the contents of the Post-Release Email, the Court finds the writer knew Deel had information about what was being asked, and no further explanation was necessary. The contents also line up with the request Defendant made of Deel just before his release—help in the form of money, backed by the equity in his mother's condo. The Court finds that the Post-Release Email was a follow-up to Defendant's seven-page in-custody Solicitation Email, which asked Deel to invest in Defendant's new venture, and thus is a violation of the conditions of his release.

The Court has considered Defendant's arguments of manifest errors. The Court has reviewed the evidence and finds that there is no manifest error in its findings or decision. The Post-Release Email is in lockstep with the Solicitation Email. It was a follow-up to the Solicitation Email. The language and the timing of the emails alone support the Court's

findings. The evidence of Mrs. Harbour's income, arguably showing that it was possible for her to purchase a larger new home, is not newly discovered evidence that changes the Court's interpretation of the subject emails. Likewise, the transcript of the November 9, 2023 prison phone call is not material new evidence. It does not show that the Court's understanding and interpretation of the Post-Release Email is incorrect. The Court cannot find a way to interpret the Post-Release Email as anything other than a follow-up to the Solicitation Email

**IT IS ORDERED** that Defendant's Motion to Reconsider Order Revoking Release (Doc. 1013) is **DENIED**.

Dated this 23rd day of February, 2026.

Douglas L. Rayes
Senior United States District Judge